UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

McCONNELL DORCE, CECILIA JONES, and SHERLIVIA THOMAS-MURCHINSON, individually and on behalf of all others similarly situated,

          Plaintiff,

-against-

CITY OF NEW YORK, NEIGHBORHOOD RESTORE HOUSING DEVELOPMENT FUND CO. INC., BSDC KINGS COVENANT HOUSING DEVELOPMENT FUND COMPANY, INC., MARIA TORRES-SPRINGER (Commissioner of the New York City Housing Preservation and Development); JOHN DOE #1 to #10, and JANE DOE #1 to #10,

          Defendants.

Case No. 1:19-CV-02216 DAB

**AFFIRMATION
IN SUPPORT**

------------------------------------------------------------------------ x

  **BRIAN J. MARKOWITZ**, an attorney duly admitted to practice law before this Court, and the Courts of the State of New York, hereby affirms the following under penalties of perjury:

  1. I am a partner with the law firm of Goldstein Hall PLLC, attorneys for Defendants, Neighborhood Restore Housing Development Fund Corporation ("Neighborhood Restore") and BSDC Kings Covenant Housing Development Fund Company, Inc. ("Bridge Street") in the instant action. As such, I am fully familiar with the facts and circumstances set forth below based upon my review of the files maintained by my law firm's office, and conversations with my client in connection with this matter.

  2. I submit this affirmation in support of Defendants' motion for an Order pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.")

dismissing the claims asserted by Plaintiffs, McConnell Dorce ("Mr. Dorce"), Cecilia Jones ("Ms. Jones"), and Sherlivia Thomas-Murchinson ("Ms. Murchinson"), (collectively, "Plaintiffs"), and for such other and further relief as the Court deems just, proper and equitable.

## **RELEVANT FACTS AND PROCEDURAL HISTORY**

3. In 2015, the City of New York (the "City") commenced an in rem tax foreclosure action in Kings County Supreme Court, captioned In Rem Foreclosure Action No.: 53 Borough of Brooklyn, Index No.: 8700/15, ("Brooklyn 53") pursuant to Title 11, Chapter 4 of the Administrative Code ("NYC Admin. Code"), as amended by Local Law 37 of 1996 and Title 28, Chapter 28 of the Rules of the City, (a.k.a. "Third-Party Transfer Program"), to foreclose, inter alia, unpaid tax liens filed against certain properties, including the property formerly owned by Mr. Dorce and the HDFC in which Ms. Jones was allegedly a shareholder. The Court granted the City the in rem Judgment on December 14, 2017. In a deed dated September 6, 2018, pursuant to the Third-Party Transfer Program, the City conveyed these properties to Neighborhood Restore.

4. Separately, and contrary to the allegations in the complaint, Ms. Murchinson was never a tenant of any building subject to Brooklyn 53, or any previous in rem proceeding. With regards to Plaintiff Murchinson, on or about 1979, Ms. Murchinson's parents became tenants of unit 4R (the "Apartment") of the building located at 248 Madison Street, Brooklyn, New York 11216 (Tax Block: 1656; Tax Lot: 48 (the "Building").  Around the same time that Ms. Murchinson's parents became tenants of the Apartment, Ms. Murchinson began periodically and sporadically occupying the Apartment with them. Throughout Ms. Murchinson's occupancy of the Apartment, there was never any landlord-tenant relationship between Ms. Murchinson and the owner of the Building and/or any tenant of the Building.

5. On April 4, 1995, the Building, owned at the time by the City, was converted into a Housing Development Fund Corporation ("HDFC"), a low-income, limited equity housing

cooperative incorporated under Article XI of the New York State Private Housing Finance Law. As part of the conversion process, all of the tenants residing at the Building at the time of the conversion, including Ms. Murchinson's parents, were offered to become shareholders of the HDFC by being offered a stock certificate and a proprietary lease in exchange for a nominal fee. The stock certificate and proprietary lease were in Ms. Murchinson's parents' names only.

6. Sometime in the 2000's, Ms. Murchinson's parents passed away. Upon information and belief, on or before her parents' death, Ms. Murchinson permanently ceased sporadically occupying the Apartment. Ms. Murchinson never inherited or made any claims of inheritance to the Apartment.

7. On or about November 2, 2011, the City obtained ownership of the Building through an in rem tax foreclosure action captioned In Rem Foreclosure Action No.: 51 Borough of Brooklyn, Index No.: 8700/07, ("Brooklyn 51").

8. On or about July 8, 2012, the City transferred the Building to Neighborhood Restore as part of the Third-Party Transfer Program. On or about February 10, 2016, Neighborhood Restore sold the Building to Bridge Street.

9. Thereafter, on or about May 2, 2016, Ms. Murchinson went to the Building to "claim ownership" of unit 4R. On or about May 16, 2016, Ms. Murchinson mailed a cease and desist letter to Bridge Street and their management company requesting termination of the management company's services and self-proclaiming herself as the lawful shareholder and/or tenant of the Building.

10. In response, on our about June 3, 2016, Bridge Street, through its attorneys, replied to Ms. Murchinson's Cease and Desist Letter by personally delivering Ms. Murchinson a response letter explaining her lack of any legal right to the Apartment and asking her to stop harassing

Plaintiff, the General Contractor and the Managing Co. A copy of the response letter ("Plaintiff's Cease and Desist Letter") is annexed hereto and made a part hereof as **Exhibit "A"**.

11. Despite being put on notice, Ms. Murchinson continued to claim ownership of the Apartment by engaging in a series of tortious and borderline criminal behavior toward Bridge Street, Management Co., the General Contractor and its sub-contractors.

12. From around May 2, 2016, until Bridge Street sought a temporary restraining order to enjoin Ms. Murchinson, which resulted in an Order from the Honorable Dawn Jiminez-Salta dated March 22, 2017, Ms. Murchinson had continuously denied the general contractor and its various sub-contractors meaningful access to the Building to prepare for and to commence performance of renovations inside and outside of the Building by physically preventing their entry into the Building.

13. From around May 2, 2016, until Bridge Street sought a temporary restraining order to enjoin Ms. Murchinson, which resulted in an Order from the Honorable Dawn Jiminez-Salta dated March 22, 2017, Ms. Murchinson had continuously reported the general contractor and its sub-contractors to the New York City Police Department and the New York City Department of Buildings for allegedly performing various construction work without a license/permit and for trespassing.

14. From around May 2, 2016, until Bridge Street sought a temporary restraining order to enjoin Ms. Murchinson, which resulted in an Order from the Honorable Dawn Jiminez-Salta dated March 22, 2017, Ms. Murchinson had continuously been illegally entering the Building to prevent the general contractor's sub-contractors, Service and Clyde from performing their corresponding duties in the Building by making physical and verbal threats endangering the health and safety of said individuals. Further, Ms. Murchinson had been changing locks on the gates

surrounding the Building, by putting a padlocked chain in certain entrances of the Building, and by erecting "No Trespass" signs inside and outside the Building.

15. As a result of Ms. Murchinson's actions, Bridge Street sought a temporary restraining order which resulted in an Order from the Honorable Dawn Jiminez-Salta enjoining Ms. Murchinson from entering or coming into contact with the Building and the property in which it sits with the only exception of her being allowed to visit apartments 1L and 1R as a guest on a temporary basis, limited to three times a month and no more than one day at a time. Further, Ms. Murchinson was enjoined from claiming, orally, in writing, or otherwise, ownership rights to the Building, among other restrictions. A copy of the Honorable Dawn Jiminez-Salta's Order is annexed hereto and made a part hereof as **Exhibit "B"**.

16. On March 11, 2019, Plaintiffs filed a Complaint seeking, *inter alia*, damages resulting from In Rem Judgments for violations of: (i) the United States Constitution; (ii) the New York State Constitution; (iii) 42 U.S.C. Section 1983 ("Section 1983"); and (iv) New York General Business Law §349 ("GBL §349").

**A.    This Court Does Not Have Subject Matter Jurisdiction Over Plaintiffs' Claims**

17. As more fully stated in the accompanying Memorandum of Law ("MOL"), Plaintiffs' cause of action seeking damages resulting from the In Rem Judgments must be dismissed by this Court pursuant to the *Rooker-Feldman* doctrine (see MOL, "Argument", Point I).

18. According to the doctrine, federal district courts are divested of subject matter jurisdiction over actions seeking appellate review of state court judgments (*see* MOL, "Argument", Point I). In order for the *Rooker-Feldman* doctrine to apply, the following elements must be satisfied: (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state-court judgment; (3) the plaintiff invites the district court's review and rejection

of that judgment; and (4) the state-court judgment was rendered before the district court proceedings commenced (*Id*). Additionally, the *Rooker-Feldman* doctrine also bars a federal district court's jurisdiction over claims that are "inextricably intertwined with state court determinations." (*Id*).

19. The first prong of the Rooker-Feldman doctrine is whether the Plaintiffs in the federal case previously lost in the state court. First, in 2017, Plaintiff Dorce failed to appear in connection with Brooklyn 53, and the in rem Judgment was entered against him. Plaintiff Jones alleges to be a shareholder of a building located at 1197 Dean Street, Brooklyn, NY, which was owned by 585 Nostrand Avenue Housing Development Fund Corp ("585 Nostrand"). Similarly, 585 Nostrand defaulted in Brooklyn 53, and an in rem judgment of foreclosure was entered against it. Interesting to note, at no time during the pendency of Brooklyn 53 or since the entry of the in rem judgment did 585 Nostrand ever challenge the Brooklyn 53 proceeding or the entry of judgment against it. With respect to Ms. Murchinson, in 2011, after the death of Ms. Murchinson's parents, the building that Ms. Murchinson's parents formerly occupied an apartment, 248 Madison Street, Brooklyn, NY[1], defaulted in an in rem tax foreclosure action, In Rem Foreclosure Action No.: 51, Borough of Brooklyn, Index No.: 8700/07 ("Brooklyn 51"), which resulted in the in rem Judgment. Again, it is important to note that the building never challenged the entry of the default judgment.

20. Applying the first prong of the Rooker-Feldman doctrine, it is beyond dispute that the Plaintiffs lost in the state court prior to commencing the federal action. It is beyond dispute that each of the properties at issue herein were the subject of an in rem foreclosure proceeding. In

---

[1] The Complaint incorrectly identifies the property as 248 Madison Dean Street, a street that does not exist within the City of New York.

each case, the owner or the property defaulted, and the City was awarded a Judgement. As such, the first prong of the Rooker-Feldman doctrine is clearly satisfied.

21. Second, the injuries alleged by the Plaintiffs are clearly a result of the in rem Judgment – with respect to the loss of the Premises due to its transfer to Neighborhood Restore under the Third-Party Transfer Program, and, ultimately, with respect to one property, to Bridge Street – are the crux of Plaintiffs' instant action – i.e. Plaintiffs seek damages as a result of the in rem Judgment.

22. As more fully stated in the accompanying MOL, Plaintiffs' causes of action all pertain to matters that did not exist prior to the commencement of the state in rem foreclosure action, but rather, were the result of the in rem foreclosure proceeding entered in 2011 (Brooklyn 51) or 2017 (Brooklyn 53).

23. Therefore, as more fully stated in the accompanying MOL, this Court must find that the second Rooker-Feldman factor is satisfied herein.

24. Third, the graverman of Plaintiff's complaint seeks this Court to review the validity of the in rem Judgment, and, as such, the motion to dismiss satisfies the third Rooker-Feldman requirement. While Plaintiffs' complaint purportedly challenges a statute, the claim falls within a *Rooker-Feldman* exception which applies because the complaint seeks a future relief. As more fully stated in the accompanying MOL, the third prong of the *Rooker-Feldman* doctrine applies because the challenges are inextricably intertwined with the state court judgments and could not succeed without a conclusion that the judgments were wrong. Furthermore, the Plaintiffs lack standing to pursue such forward-looking claims.

25. Lastly, the in rem Judgments that Plaintiffs are seeking review of were granted in 2011 and 2017 respectively– years before Plaintiffs commenced this instant action. As such,

*Rooker-Feldman*'s fourth prong is satisfied and the court lacks subject matter jurisdiction. Timing requirements are straightforward and it is clear that the Plaintiffs loss in the state court action occurred and was entered before filing their federal complaint.

**B.     Plaintiffs' Jones and Murchinson Lack Standing To Bring The Action**

26.     As more fully stated in the accompanying MOL, Plaintiffs' Ms. Jones and Ms. Murchinson's causes of action seeking damages resulting from the In Rem Judgments must be dismissed by this Court pursuant to their lack of standing (see MOL, "Argument", Point II).

27.     To meet the minimum constitutional threshold, a plaintiff must establish "first, that it has sustained an 'injury in fact' ...; second, that the injury was in some sense caused by the opponent's action or omission; and finally, that a favorable resolution of the case is 'likely' to redress the injury."

28.     Here, Plaintiff Jones alleges to have owned shares in an HDFC cooperative that, in turn, owned the property located at 1197 Dean Street in Brooklyn, New York 11216, also known as 585 Nostrand Avenue (Kings County Block #1207, Lot #72). Compl. ¶ 96. Further, Plaintiff Murchinson alleges she owned shares in an HDFC cooperative, that, in turn, owned property located at 248 Madison Street, in Brooklyn, New York (Kings County Block #1823, Lot #29). Compl . ¶ 113. Because the property known as 585 Nostrand Avenue and 248 Madison Street was the object of the City's in rem foreclosure action, only the property's legal owner, the HDFC, can be alleged to have suffered the requisite injury to confer standing. Plaintiffs' Jones and Murchinson, alleged shareholders of their respective HDFC's, are not directly injured by the state court judgment. The injury occurred to the HDFC or corporation, and therefore, Ms. Jones and Ms. Murchinson lack standing.

**C.    The Complaint Fails To State A Claim For Relief**

29.    Notwithstanding the fact that this Court lacks subject matter jurisdiction, and that Plantiff's Jones and Murchinson lack standing to even bring any causes of action, the Complaint simply fails to properly allege any causes of action and therefore must be dismissed.

**i.    The First and Second Causes of Action Fail to State a Claim against Defendants Neighborhood Restore or Bridge Street.**

30.    Plaintiffs fail to state a claim against Defendants Neighborhood Restore or Bridge Street for violation of due process provided in the US Constitution or the State Constitution. Compl. ¶ 146, 153.[2]  Specifically, Plaintiffs' allege the City instituted the *in rem* proceedings against property owners, "without issuing them notice reasonably calculated to inform them of the proceeding" and that the City had "actual knowledge that it was not providing notice reasonably calculated to inform property owners of the proceeding." Compl. ¶ 144, 145, 151, 152.

31.    The Plaintiffs' do not allege Defendants Neighborhood Restore or Bridge Street failed to provide notice. Further, there is no requirement for Defendants Neighborhood Restore or Bridge Street to provide any such notice. This burden rests with the City.

32.    Upon commencement of an in rem action by the filing of a List of Delinquent Taxes in the relevant County Clerk's office, the City must publish and post notice of foreclosure and mail notice to owners at a specific address requested by the owner or, in the event an owner has not made such a request, to the name and address, if any, appearing in the latest annual record of assessed valuations (the assessment roll). Ad. Code § 11-406.  Upon information and belief, the

---

[2] Plaintiffs' second cause of action should be dismissed as improperly pled, as there is no "14th Amendment to the New York State Constitution." Compl. ¶ 153.

City has fully and completely complied with all relevant notice requirements, requirements that have been upheld by the State Courts.

33. However, to the extent that the Court may deem the allegations in these causes of action to be against Neighborhood Restore and Bridge Street, Defendants Neighborhood Restore and Bridge Street adopt and incorporate the City's arguments which demonstrate the City did comply with notice requirements. For the foregoing reasons, Plaintiffs' first and second causes of action should be dismissed.

### ii. The Third and Fourth Causes of Action Fail to State a Claim

34. Plaintiffs' third cause of action alleges "violation of rights under the Fifth Amendment of the Constitution of the United States of America." However, the 5th Amendment to the US Constitution is applicable only against federal officials.

35. Defendants Neighborhood Restore and Bridge Street are not federal officials and therefore, the 5th Amendment does not apply.

36. The fourth cause of action, for "violation of rights to pursuant to the Fifth Amendment of the [state] Constitution" is improperly pled as there is no 5th Amendment to New York's Constitution.

37. Since the pleadings of the third and fourth Causes of action are defective, they must be dismissed. Even giving Plaintiffs the maximum benefit of a doubt, that they meant to allege violation of due process pursuant to the 14th Amendment of the US Constitution, which applies to state and local governments, those allegations also fail to state a claim as a matter of law, as Defendants Neighborhood Restore and Bridge Street are not state or local government entities.

### iii. The Fifth Cause of Action Fails to State a Claim

38. 42 U.S.C. § 1983 does not grant plaintiffs any substantive rights, but rather provides a vehicle to recover for alleged constitutional violations.

39. Since Plaintiffs fail to allege the violation of any federal right in their § 1983 claim, their fifth cause of action should be dismissed as improperly pled.

### iv. The Sixth Cause of Action Fails to State a Claim

40. Plaintiffs fail to identify which 14th Amendment provision they invoke, and instead, vaguely state that "Defendants, by their actions, have accordingly violated the civil rights of, and denied constitutional liberties to, Plaintiffs and those similarly situated." Compl. ¶ 183. Accordingly, Plaintiffs' sixth cause of action, for "violation of the Fourteenth Amendment of the United States Constitution," should be dismissed as improperly pled.

41. However, assuming arguendo that Plaintiffs mean to invoke the 14th Amendment's equal protection provision (since their first cause of action invokes the 5th Amendment's due process clause), such claim still cannot lie.

42. First, nowhere in the Complaint do Plaintiffs claim to be members of a constitutionally-protected class. Instead, Plaintiffs allege only that the subject properties were located "in a community predominately populated by African Americans, Caribbean Americans, Hispanic Americans and Middle Eastern Americans (in other words, a community of color)." Compl. ¶¶ 79, 96 and 113.

43. As set forth by the City, the subject properties were included in their respective in rem actions based on their tax arrears. (See Exhibit B to the Declaration of Andrea Feller, submitted in support of the City of New York's Motion to Dismiss). Plaintiffs offer no plausible allegations of discriminatory intent to target their properties as opposed to those owned by similarly-situated individuals.

44.     Plaintiffs' vague assertions of "civil rights violations" are the essence of "bare" allegations, which alone do not sufficiently plead selective treatment or discriminatory intent by the City.

45.     As more fully stated in the accompanying MOL, this Court must dismiss Plaintiffs' sixth cause of action (see MOL, "Argument", D).

    **v.     The Seventh Cause of Action Fails to State a Claim**

46.     Plaintiffs' seventh cause of action fails to state a claim against Defendants Neighborhood Restore or Bridge Street. Specifically, Plaintiffs' allege "the City Defendants' conduct constitutes ultra vires activity exceeding the lawful authority expressly, actually, or implicitly granted to the City by New York State's Legislature." Compl. ¶¶ 187. As such, Plaintiffs' seventh cause of action must be dismissed as to Defendants Neighborhood Restore and Bridge Street for failure to state a claim as such cause of action is, on its face, not directed against Neighborhood Restore and Bridge Street.

    **vi.    The Eighth Cause of Action Fails to State a Claim**

47.     As more fully stated in the accompanying MOL, this Court must dismiss Plaintiffs' eighth cause of action for failure to state a claim (see MOL, "Argument", F).

48.     Plaintiffs' eighth cause of action alleges violations of the New York General Business Law ("GBL") § 349. However, for the GBL to apply, the action must be consumer-oriented.

49.     Since Plaintiffs do not, and cannot, allege that the City's in rem tax foreclosure program or Neighborhood Restore and Bridge Street's Third-Party Transfer Program are "consumer oriented," their eighth cause of action should be dismissed.

**vii.** **The Tenth,[3] Eleventh and Twelfth Causes of Action Fail to State a Claim**

50. The tenth, eleventh and twelfth causes of action allege, respectively, that plaintiffs are entitled to declaratory judgment, an injunction and attorneys' fees. However, these are remedies, not causes of action and should be dismissed.

51. Even assuming that these were valid causes of action, which they are not, Plaintiffs fail to allege any basis for these claims, as the Court lacks subject matter jurisdiction over all of the claims in this action, Plaintiffs Jones and Murchinson lack standing to bring any claims, and the remaining causes of action each fail to state a claim upon which relief may be granted.

**WHEREFORE**, for the reasons set forth herein, this Court must (i) dismiss Plaintiffs' Complaint in its entirety and with prejudice; and (ii) grant Defendants such other and further reliefs that this Court deems just, proper and equitable.

Dated:     New York, New York
           May 15, 2019

/S/Brian J. Markowitz____
**BRIAN J. MARKOWITZ**

---

[3] The Complaint lacks a "Ninth Cause of Action."