**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MCCONNELL DORCE, CECILIA JONES, and
SHERLIVIA THOMAS MURCHINSON,
individually and on behalf of all others similarly
situated,

                               Plaintiffs,

      v.

CITY OF NEW YORK, NEIGHBORHOOD
RESTORE HOUSING DEVELOPMENT FUND
CO. INC., BSDC KINGS COVENANT HOUSING
DEVELOPMENT FUND COMPANY, INC.,
MARIA TORRES-SPRINGER (Commissioner of the
New York City Department of Housing Preservation
and Development); JOHN DOE #1 to #10, and JANE
DOE #1 to #10,

                             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civil Action No. 1:19-cv-02216-DAB

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTIONS TO DISMISS**

**VALLI KANE & VAGNINI LLP**

By: /s/ *Matthew L. Berman*
Matthew L. Berman
Robert J. Valli, Jr.
Yolande I. Nicholson, Esq., *Co-Counsel*
600 Old Country Road
Garden City, New York 11530
Tel: (516) 203-7180
Fax: (516) 706-0248

*Attorneys for Plaintiffs*

**ROPES & GRAY LLP**

By: /s/ *Keith H. Wofford*
Keith H. Wofford
Gregg L. Weiner
Alexander B. Simkin
1211 Avenue of the Americas
New York, New York 10036
Tel: (212) 596-9000
Fax: (212) 596-9090

*Attorneys for Plaintiffs McConnell Dorce, and*
*Sherlivia Thomas Murchison*

Date of Service: July 18, 2019

76935394_9

Cases

*Abuzaid v. Mattox*, 726 F.3d 311 (2d Cir. 2013) ........................................................ 13

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................. 3

*ATSI Commc'ns, Inc. v. Sharr Fund, Ltd.,* 493 F.3d 87, 98 n. 2 (2d Cir. 2007) ........................ 3

*Baldwin Union Free Sch. Dist. v. Cty. of Nassau*, 9 N.E.3d 351, 361 (N.Y. 2014) .................... 28

*Baretta v. Wells Fargo Bank, N.A.,* 693 F. App'x 26 (2d Cir. 2017) ............................... 10

*Bingham v. Zolt*, 66 F.3d 553 (2d Cir. 1995) ............................................................. 17

*Blakely v. Cardozo*, 2007 WL 2702241 (S.D.N.Y. Sept. 17, 2007) ................................... 16

*Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA, Inc.*, 818 N.E.2d 1140 (N.Y. 2004) ........................................................................................................ 29

*Boening v. Nassau Cty. Dep't of Assessment*, 69 N.Y.S.3d 666, 669 (N.Y. App. Div. 2018)...... 27

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n.*, 531 U.S. 288 (2001) ..................... 23

*Canzoneri v. Inc. Vill. of Rockville Centre*, 986 F. Supp. 2d 194 (E.D.N.Y. 2013) .................... 14

*City of Amsterdam v. Helsby*, 332 N.E.2d 290, 292 (N.Y. 1975) ................................... 28

*Civic Ass'n of Deaf of New York City, Inc. v. Giuliani*, 915 F. Supp. 622 (S.D.N.Y. 1996)........ 30

*Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)................................ 12

*Dusenbery vs. United States,* 534 U.S. 161 (2002) ..................................................... 23

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280 (2005) ................................ 9

*Fullerton Ave. Land Dev. Ltd. v. Cianciulli,* 48 F. App'x 813 (2d Cir. 2002) ........................ 12

*Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006) .............. 3, 17

*Gonzalez v. Deutsche Bank Nat'l Tr.*, 632 F. App'x 32 (2d Cir. 2016)................................. 11

*Green v. Mattingly,* 585 F. 3d 97 (2d Cir. 2009) ........................................................ 10

*Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229 (1984)..................................................... 22

*Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005)........................ 10, 11, 12

*In Rem Tax Foreclosure Action No. 53 Borough of Brooklyn*, 63 Misc. 3d 1207(A), 2019 WL 1431423 (N.Y. Sup. Ct. Mar. 28, 2019) ................................................................. 2

*Islamic Comm. Ctr. v. City of Yonkers*, 742 F. App'x 521 (2d. Cir. 2018) ......................... 14

*Johnson v. De Grandy*, 512 U. S. 997 (1994)............................................................ 10

*Kamhi v. Town of Yorktown*, 547 N.E.2d 346 (N.Y. 1989) ........................................... 28

*Kelo v City of New London, Conn.*, 545 U.S. 469 (2005).............................................. 22

*Knick* ........................................................................................................ 23

*Knick v. Township of Scott*, 139 S.Ct. 2162, 2170 (2019) ............................... 2, 14, 20, 21

*Lee v. Sony BMG Music Entm't, Inc.*, 557 F. Supp. 2d 418 (S.D.N.Y. 2008)........................ 3

*Levy v. City of New York*, 726 F. Supp. 1446 (S.D.N.Y 1989)....................................... 26

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1962) ....................................................... 14

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) ............................. 3, 25

*Miner v. Clinton Cty.*, 541 F.3d 464 (2d Cir. 2008) ................................................... 26

*Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978) ................................... 23

*Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950)................................... 18

*Nelson v. City of New York*, 352 U.S. 103 (1956) ..................................................... 21

*New York v. Feldman*, 210 F. Supp. 2d 294 (S.D.N.Y. 2002)........................................ 29

*No. 53 Borough of Brooklyn* ............................................................................ passim

*Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978)................................... 23

*Public Utils. Comm'n vs. Pollak*, 343 US 451 (1952).................................................. 23

*Pyke v. Cuomo*, 567 F.3d 74 (2d Cir. 2009) ........................................................... 25

*Redmond v. Bank of NY Mellon Corp.*, 697 F. App'x 23 (2d Cir. 2017)............................. 11

i

*Schroeder v. City of New York*, 371 U.S. 208 (1962) ........................................................ 19

*Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256 (2d Cir. 1995) ............................ 29

*Stutman v. Chemical Bank*, 731 N.E.2d 608 (N.Y. 2000) ................................................. 29

*Sung Cho v. City of New York*, 910 F.3d 639 (2d Cir. 2018) ............................................. 11

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ................................................. 12

*Sybalski v. Ind. Grp. Home Living Program, Inc.*, 546 F.3d 255 (2d Cir. 2008) ............. 24

*Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015) .............................. 29

*Tupaz v. Clinton Cty.*, 499 F. Supp. 2d 182 (S.D.N.Y. 2007) ........................................... 26

*United States v. 116 Emerson St.*, 942 F.2d 74 (1st Cir. 1991) ........................................ 14

*Vossbrinck v. Accredited Home Lenders, Inc.,* 773 F.3d 423 (2d. Cir. 2014) .................. 11

*Weigner v. New York*, 852 F.2d 646 (2d Cir.1988) ........................................................... 19

*Weissman v. Evans*, 438 N.E.2d 397 (N.Y. 1982) ............................................................ 24

*Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) ........................................................................................................................ 14

*Wilson v. Deutsche Bank Nat'l Tr.*, 410 F. App'x 409 (2d Cir. 2011) .............................. 11

**Statutes**

Local Law 37, Title 28, Chapter 8 of the Rules of the City of New York ............................. 4

N.Y. CONST. art. 6 ............................................................................................................... 20

N.Y. PRIV. HOUS. FIN. § 573(3)(a) (McKinney 2019) ........................................................ 22

N.Y. PRIV. HOUS. FIN. § 573(4) (McKinney 2019) ............................................................ 16

N.Y. Priv. Hous. Fin. Law § 573 (McKinney) .................................................................... 15

NY GBL § 349 ............................................................................................................. 28, 30

NYC Admin. Code § 11-401(4) ............................................................................................ 7

NYC Admin. Code § 11-406(a) .......................................................................................... 17

Title 11, Chapter 4 of the New York City Administrative Code ........................................... 4

U.S. CONST. amend. V ........................................................................................................ 20

U.S. CONST. amend. XIV .................................................................................................... 20

**Other Authorities**

Kelly Mena, *How Changes to a City Housing Program Could Save Vulnerable Homeowners*, BROOKLYN DAILY EAGLE (July 12, 2019) ........................................................................ 25

# **Table of Contents**

PRELIMINARY STATEMENT ................................................................................................... 1

STANDARD OF REVIEW ...................................................................................................... 3

FACTUAL ALLEGATIONS OF THE COMPLAINT ................................................................. 4

ARGUMENT ............................................................................................................................ 9

I.      The Court Is Vested With Subject Matter Jurisdiction .............................................. 9

   A.      The *Rooker-Feldman* Doctrine Does Not Negate Jurisdiction ......................... 9

   B.      Plaintiffs' Claims Are Not Barred By the Doctrine Of Comity, Nor are Plaintiffs Barred by The Tax Injunction Act ...................................................................................... 13

II.     Plaintiffs Jones and Thomas-Murchison Have Standing ...................................... 14

III.    The Complaint Adequately States A Claim For Relief As To Each Cause Of Action ...... 17

   A.      Plaintiffs Properly Plead the First and Second Causes of Action (Violation of Due Process) .................................................................................................................... 17

   B.      Plaintiffs Adequately Plead The Third And Fourth Causes Of Action (Takings Without "Just Compensation") ............................................................................................ 19

   C.      Plaintiffs Adequately Plead The Fifth Cause Of Action (Section 1983 Claim) ............. 23

   D.      Plaintiffs Adequately Plead The Sixth Cause Of Action (Equal Protection Violation) . 24

   E.      Plaintiffs Adequately Plead The Seventh Cause Of Action (Violation of Municipal Home Rule) .......................................................................................................... 26

   F.      Plaintiffs Adequately Plead The Eighth Cause Of Action (Violation of GBL § 349) ... 28

   G.      Plaintiffs Adequately Plead The Tenth, Eleventh, and Twelfth Causes Of Action (Declaratory and Injunctive Relief; Attorneys' Fees) .......................................... 30

CONCLUSION ....................................................................................................................... 31

Plaintiffs MCCONNELL DORCE, CECILIA JONES and SHERLIVIA THOMAS-MURCHISON ("**Plaintiffs**"),[1] on behalf of themselves and all others similarly situated, by and through their undersigned counsels, hereby submit this memorandum in opposition to Defendants' motions to dismiss (ECF Nos. 31 & 34).  The first motion to dismiss the complaint (the "**Complaint**," ECF No. 7) was filed by the City of New York (the "**City**"), on behalf of itself and Maria Torres-Springer (Commissioner of the New York City Department of Housing Preservation and Development) (collectively, the "**Municipal Defendants**").  The second motion to dismiss was filed by BDSC Kings Covenant Housing Development Fund Company, Inc. ("**BDSC**") and Neighborhood Restore Housing Development Fund Co. Inc. ("**Neighborhood Restore**") (collectively with the Municipal Defendants, "**Defendants**").

## PRELIMINARY STATEMENT

This case concerns Defendants' uncompensated seizure of private real property and appurtenant interests and value without legal authorization.  Defendants use an unconstitutional, unprecedented, and unfair process to seize buildings owned largely by persons of color, and to divest such owners of the benefit and long-term security provided by property ownership.  The buildings seized by the City without compensation are then handed over to the City's chosen partners and developers, such as BSDC and Neighborhood Restore, in private, closed-door transactions.  Defendants argue they are entitled to do this with impunity, so long as they take residential property which (1) happens to be in the geographic area of another property that is "distressed"; and (2) is a property on which charges are owed to the City (even if those charges haven't ripened to tax lien status).

---

[1] The caption inadvertently misspells Ms. Thomas-Murchison's last name.

Defendants style this sham as a "modified *in rem* process." But this "process" violates fundamental principles of private property and due process enshrined in the U.S. and New York constitutions. When presented with evidence of Defendants' identical misconduct, a New York state judge recently described it as "unconscionable and shocking to the conscience of the court." *In Rem Tax Foreclosure Action No. 53 Borough of Brooklyn*, 63 Misc. 3d 1207(A), 2019 WL 1431423, at *9 (N.Y. Sup. Ct. Mar. 28, 2019) (holding the Defendants' conduct would have been illegal if not enjoined or reversed by the Court). This decision is attached as Exhibit A. Moreover, contrary to the Defendants' arguments, there is no jurisdictional impediment to bringing this action in this Court. As the U.S. Supreme Court confirmed just last month, "[i]f a local government takes private property without paying for it, that government has violated the Fifth Amendment . . . without regard to subsequent state court proceedings. And the property owner may sue the government at that time in federal court . . . ." *Knick v. Township of Scott*, 139 S.Ct. 2162, 2170 (2019). This is such a lawsuit.

Plaintiffs ask the Court to find the municipal statute under which the Defendants execute their "modified *in rem* process" unconstitutional on its face and as applied, and otherwise illegal. Indeed, the City law pursuant to which the "modified *in rem* process" is advanced is repugnant to the Constitution and thus void. The Complaint is more than sufficient to state viable causes of action. Tellingly, Defendants' motions to dismiss resort (improperly) to relying on purported facts outside of the Complaint. None of the grounds asserted in the motions to dismiss are meritorious. Accordingly, the motions should be denied.[2]

---

[2] Plaintiffs are responding to both the Municipal Defendants' motion to dismiss (ECF No. 31) and BDSC's and Neighborhood Restore's motion to dismiss (ECF No. 34). Defendants' memoranda make identical arguments to dismiss the Complaint, with the exception of one additional argument on standing raised by BDSC and Neighborhood Restore. For ease of reference, we refer only to the Municipal Defendant's Memorandum of Law in Support of Motion to Dismiss the Complaint (ECF No. 33), except to respond to the standing argument in Section II.

76935394_9

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to FRCP 12(b)(6), "a claim must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (internal citation omitted).

Furthermore, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Although *Twombly* has introduced a "flexible plausibility standard" into motions to dismiss, *ATSI Commc'ns, Inc. v. Sharr Fund, Ltd.,* 493 F.3d 87, 98 n. 2 (2d Cir. 2007) (internal quotation marks omitted), this standard does not mean a court should weigh competing fact allegations and determine which is more credible. Notwithstanding, the standard remains "heavily weighted in favor of the plaintiff", and the Court must "read a complaint generously." *Lee v. Sony BMG Music Entm't, Inc.*, 557 F. Supp. 2d 418, 423 (S.D.N.Y. 2008).

While a court may take judicial notice of the *existence* of "documents issued by government agencies," it is improper for a court to accept those documents for the truth of the matters asserted. *See, e.g.*, *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). The Court must thus disregard Defendants' attempt to go beyond the pleadings at the motion to dismiss stage, as anything beyond the pleadings is not properly before the Court at that time. *See* Declaration of Andrea B. Feller ("**Feller Dec**.," ECF No. 32). Plaintiffs'

Complaint satisfies the requirements of FRCP Rule 8(a).  As detailed below, each of Defendants' legal arguments fails on the merits.

**FACTUAL ALLEGATIONS OF THE COMPLAINT**

The Complaint challenges the legality and constitutionality of Defendants' self-styled "modified *in rem* process," Mun. Defs.' Memo. Supp. Mot. Dismiss 2 [hereinafter "**MOL**"], and assertion of municipal authority, through which the City seizes private citizens and affordable-housing cooperatives' real property, nullifies all related personal property, and transfers the real property to one of the City's private partners (the "**TPT Program**") in a *sub rosa* transaction. Compl. ¶¶ 1–3, 31–34, 51–52.  Defendants never identity the source of their purported power to enact or to utilize the "modified *in rem* process" and the TPT Program.  The TPT Program is set forth in Title 11, Chapter 4 of the New York City Administrative Code (the "**Code**"), in Local Law 37 of 1996 ("**Local Law 37**").  Local Law 37 is codified in Title 28, Chapter 8 of the Rules of the City of New York.  Plaintiffs also challenge Defendants' claimed right to utilize Local Law No. 37 to seize properties for purposes other than tax collection, since this claimed right is outside of the *in rem* authority granted to municipalities by the New York State legislature. Compl. ¶¶ 4–6, ¶¶ 186–190.

### *Defendants' Illegal Conduct*

The City has requested *in rem* judgments from New York State Courts for the TPT Program in a wholesale fashion, illegally seizing bundles of private property and handing them off to its favored developer "partners" for nominal consideration ($1.00), under the guise of tax collection. In a significant number of cases, the property belonged to African-American and/or Hispanic owners (many elderly), or were located in predominantly African-American, Hispanic and immigrant communities.  *Id.* ¶¶ 31–34, 78, 89, 106, 124.  One court has called this conduct not

4

only illegal, but "unconscionable and shocking to the conscience." *No. 53 Borough of Brooklyn*, 2019 WL 1431423, at *9.

Contrary to Defendants' presentation, the present action is not a tax lawsuit asserted by taxpayers who were aggrieved by the City lawfully foreclosing and auctioning off their properties. The Complaint clearly alleges that Plaintiffs' property was deceptively and surreptitiously seized from them with no notice, Compl. ¶¶ 68–71, 74, 85, 102, 120, with no opportunity to be heard, *id.* ¶ 68, for purposes other than tax collection, *id.* ¶¶ 29, 44–46, 91–92, 108–09, 125–26, and with no compensation or right of redemption, *id.* ¶¶ 93, 110, 128, 162, 172, 88, 105, 123, even when the purported tax charges constituted a tiny fraction of the value of the property, *id.* ¶ 43, and there was no indication that the property owners had abandoned such property or that the property was distressed, *id.* ¶¶ 86, 103, 121.  Indeed, several of Plaintiffs or their families were living in the properties that Defendants seized at the time the City was awarded *in rem* judgment.  *Id.* ¶¶ 96, 113, 115.

Defendants' "modified *in rem* process" does not actually serve any tax purpose because the City collects none of the taxes or charges upon which it moved the state court for seizure and extinguishment of the prior owners' title and value in the property.  *Id.* ¶¶ 33, 49, 90, 107, 125. Instead, Defendants use the purported tax charges as a pretext to advance the City's desire to seize and transfer private property without the constitutional detail of noticing the illegal seizure, or otherwise paying for the illegal taking.  *Id.* ¶¶ 46, 86, 93.

In 2017, the City made an application to the Kings County Supreme Court (Justice Partnow) to seize outright—obtaining fee simple absolute title by judgment—scores of properties in Brooklyn, New York, purportedly because of unpaid charges that accrued from water, sewage, and emergency repairs made by the City in those properties.  *See No. 53 Borough of Brooklyn*,

2019 WL 1431423, at *1–2.  In fact, many of the purported charges were unsubstantiated, had not ripened to tax lien status, had actually been paid by the property owners, or were simply inaccurate. *See, e.g.*, *id.* at *17 (even after removal from administration, "HPD continued to add charges and interest"), *18 (property owner had "not been given credit for many of the charges that it paid"); *see also* Compl. ¶¶ 40 (the City seizes property "even . . . where amounts owed to the City for taxes do not yet have lien status"), 52 (in some instances, the city incorrectly delineates tax liens). The City's 2017 property seizures, which were initially granted on default by Justice Partnow on the basis of the Municipal Defendants' *ex parte* application[3], and the subsequent transfer of title to its co-conspirators like co-defendants BSDC and Neighborhood Restore were effected: (1) notwithstanding that the City is only permitted to use the *in rem* powers granted to it by New York State for actual tax collection, Compl. ¶ 4; (2) without regard for the fact that the New York Court of Appeals has held that any takings utilizing those powers cannot be for *de minimis* amounts; and (3) without regard for the "due process" of law requirements developed under New York law for the utilization of *in rem* takings for actual tax collections, or even the due process requirements of Local Law No. 37.  On information and belief, the City has taken hundreds if not thousands of residential properties away from private owners, such as Plaintiffs, in this manner.  *See No. 53 Borough of Brooklyn*, 2019 WL 1431423, at *1 (noting that the city filed applications "to simultaneously foreclose on numerous tax delinquent properties" including properties in sections 3–9, 10–11, 13, 15–16, and 21 of the Kings County tax map).

---

[3] Justice Partnow subsequently reversed the judgment the City seeks to rely on here, which extinguished the real and/or personal property rights of Plaintiffs as to the properties of several property owners similarly situated to Plaintiffs. *No. 53 Borough of Brooklyn*, 2019 WL 1431423, at *9, *14, *17, *20, *24, *29 (vacating the judgment for each property and restoring title to the property owners).  Like Plaintiffs here, these property owners attested that they had no actual notice that the City sought to or actually seized their property. *Id.* at *1, *6, *10, *18, *22, *25.

6

The City's illegal conduct is far outside the bounds of what Local Law 37 allows.  Compl. ¶¶ 33, 52.  Even though Local Law 37 includes an expansive definition of the "distressed property" that is subject to seizure by the City,[4] Defendants admit to disregarding these requirements in seizing properties.  MOL 14–15.  As acknowledged by Justice Partnow, the City's conduct is far outside the legislative intent behind Local Law 37.  *No. 53 Borough of Brooklyn*, 2019 WL 1431423, at *23.  Citing to the testimony in support of the bill which became Local Law No. 37, Justice Partnow observed that both then New York City HPD Commissioner Deborah C. Wright and former New York City Human Resources Administration Commissioner Lilliam Barrios-Paoli confirmed "that the goals of this legislation was [sic] to identify 'troubled buildings' and 'prevent abandonment.'"  *Id.*  "This testimony also set forth that the legislation providing for the Third Party Transfer Program was a 'tough provision,' which 'would be utilized where owners are irresponsible,' and 'tenants are being harassed and not provided with essential services,' or 'where buildings are unlikely to become economically viable without complete tax and mortgage restructuring.'"  *Id.*  This is not how the Defendants are actually employing the law as they are seizing properties that are "not distressed, where the shareholders are the owners of the cooperative units who have rehabilitated the . . . property and have essential services, and where [the property owner] has not abandoned the . . . property, but is actively seeking to pay off the tax liens."  *Id.*

Unbelievably, the City's seizures include properties of owners, like Dorce, who have entered into installment repayment agreements regarding outstanding water and sewer charges or have made additional lump sum payments demanded to clear their accounts with the City, or, in

---

[4] In short, a "distressed" property is one that: (i) as determined by the commissioner of finance owes 15% or more in taxes and (ii) either (a) had an average of at least five hazardous or immediately hazardous violations of the housing maintenance code, or (b) is subject to a lien(s) for any expenses incurred by the department of housing prevention and development for the repair or elimination of any dangerous or unlawful conditions in an amount of $1,000 or more. NYC Admin. Code § 11-401(4).  Notably, Plaintiffs' properties were not "distressed," although Defendants' seizure would have been unconstitutional even if they were.

the limited instances where the owners became aware of the City's *in rem* proceedings, have "relied on . . . representations in the Installment Agreement and assumed the . . . property had been removed from the in rem action." *Id.* at *5; see also Compl. ¶52.  In at least some instances, the installment repayment plans are for payment of amounts incorrectly delineated as tax liens. Compl. ¶ 52.  Regardless, at no point does the City remove the property from the *in rem* proceeding even after entry into an installment repayment plan.  *Id.*

The City's rationale for its seizures is that it unilaterally (and secretly) decided the properties are not "viable," for which there is no basis in Local Law No. 37.  After illegally seizing such properties, Defendants do not auction them off to the highest bidder in a regular tax lien or foreclosure sale but instead give them to their insider development partners for nominal consideration without collecting any of the purported tax arrears that were the purported basis of the seizure in the first instance.  *Id.* ¶¶ 31–34, 78, 89, 106, 124.  In other words, the City forgives all tax debt and receives no tax revenue when it utilizes this approach.  *Id.* ¶¶ 33, 90, 107, 125.  It is clear that the Defendants are "making arbitrary and capricious internal determination to seize property . . . for purposes other than the collection of Tax Liens."  *Id.* ¶ 31.

### *Plaintiffs' Resulting Injuries*

Defendants' illegal conduct results in the improper takings of private property, for improper purposes, without providing sufficient (or, at times, any) notice to the private property owners that are being divested of their ownership and equity in their properties.  *Id.* ¶¶ 73–74. Specifically, Dorce was stripped, without notice, of his ownership of the property located at 373 Rockaway Boulevard, Brooklyn, New York, which he had owned since 1977, and owned free and clear of any mortgages since 2012.  *Id.* ¶¶ 79–80, 85.  Jones's and Murchison-Thomas' homeownership interest in, and the significant equity of the cooperative housing development fund

corporations (the "**HDFC**s") that owned property at 1197 Dean Street, Brooklyn, New York and 248 Madison Dean Street, Brooklyn, New York, respectively, were wiped out without any opportunity for these plaintiffs or the HDFC in which they own shares to oppose the property's seizure. *Id.* ¶¶ 68, 96–97, 101–02; *Id.* ¶¶ 112, 130. As Justice Partnow held when enjoining and reversing Defendants' illegal conduct:

> Due regard for property ownership is a fundamental tenet of the United States Constitution and the New York Constitution. * * * Here, the transfer of [private property], pursuant to the Third Party Transfer Program, would constitute an unlawful taking of private property without just compensation in violation of [the owner's] constitutional rights under the Takings Clause of the Fifth Amendment to the United States Constitution and article I, section 7, of the New York State Constitution.

*No. 53 Borough of Brooklyn*, 2019 WL 1431423, at *12–13.

Defendants' illegal conduct also results in a redistribution of property ownership and wealth away from individuals that are of African-American and/or Hispanic American descent to private companies and partners of the City such as defendants Neighborhood Restore and Bridge Street, utilizing the TPT Program. Compl. ¶ 75. In many instances, the buildings illegally seized by Defendants are long-standing, family-owned, and/or affordable housing HDFC properties, with residences therein that provide long-term affordable homeownership for extended families. *Id.* ¶ 76. In many instances, these buildings are held free and clear of any mortgage lien recorded against the property. *Id.* ¶ 77. These buildings are predominantly in communities of color. *Id.* ¶ 78.

## ARGUMENT

### I.    The Court Is Vested With Subject Matter Jurisdiction

####    A.    The *Rooker-Feldman* Doctrine Does Not Negate Jurisdiction

The *Rooker-Feldman* doctrine does not apply here. In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, the Supreme Court confirmed that the *Rooker-Feldman* doctrine is "narrow" and

essentially stands for the limited proposition that a state court litigant cannot appeal a state court decision directly to a federal district court.  544 U.S. 280, 284 (2005) (holding that the *Rooker-Feldman* doctrine is "confined to cases . . . brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"); *see also Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005) ("*Rooker* and *Feldman* thus established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments").  Because Plaintiffs bring independent federal claims and do not seek to appeal any state court decision, *Rooker-Feldman* has no application here.

There are four requirements for the *Rooker-Feldman* doctrine to negate jurisdiction: (1) the federal-court litigant lost in state court; and (2) the state court litigant complains of injuries caused by the state court judgment; and (3) the state court litigant invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced.  *Green v. Mattingly,* 585 F. 3d 97, 101 (2d Cir. 2009); *see also Baretta v. Wells Fargo Bank, N.A.*, 693 F. App'x 26, 28 (2d Cir. 2017).  Defendants cannot even make a *prima facie* showing that the doctrine applies, because no Plaintiffs in this action were even *parties* to prior state court actions, much less losers in them. *See Lance v. Dennis*, 546 U.S. 459, 464–66 (2006) ("[W]e have held *Rooker-Feldman* inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding."); *Johnson v. De Grandy*, 512 U. S. 997, 1005–06 (1994) (*Rooker-Feldman* does not bar actions by a nonparty to the earlier state suit).  The prior state court actions name the respective *res* of each parcel of property, not Plaintiffs herein, as defendants.  *See* Feller Dec. Ex. B (ECF No. 32-2).  Defendants fail to address this point,

despite themselves acknowledging that the doctrine only applies where "the federal plaintiff lost in state court."  MOL 5.  Therefore, *Rooker-Feldman* is inapplicable.

*Vossbrinck v. Accredited Home Lenders, Inc.*, cited by Neighborhood Restore and BSDC, does not hold otherwise.  773 F.3d 423 (2d. Cir. 2014).  There, Vossbrinck was a party to a foreclosure action by a private lender, in which the action is against the borrower.  *Id.* at 425.  This is entirely different than an *in rem* proceeding against a property directly.  Additionally, *Vossbrink* supports Plaintiffs because it confirms that *Rooker-Feldman* has no application to claims that were not litigated in state court, even if they concern related factual matters.  *Id.* at 427 (*Rooker-Feldman* has no application to fraud claims that do "not require the federal court to sit in review of the state court judgment" and where it applies, the proper procedure is remand, not dismissal).

Defendants also fail the second prong, because Plaintiffs' injuries are not caused by a state court judgment.  *See Sung Cho v. City of New York*, 910 F.3d 639 (2d Cir. 2018) (finding *Rooker-Feldman* inapplicable because plaintiffs brought claims that "speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments." (quoting *Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70, 94–95 (2d Cir. 2015) (internal quotations marks omitted)); *Hoblock*, 422 F.3d at 88 (a federal suit complains of injury from a state-court judgment only when plaintiffs injuries are not merely "ratified, acquiesced in, or left unpunished by" the state court judgment).[5]  Here, Plaintiffs' injuries are caused by the state's Third Party Transfer program, the City's failure to provide notice (either of the action itself, or of

---

[5] Ignoring *Sung Cho* and *Hoblock*, Municipal Defendants cite *Barretta v. Wells Fargo Bank, N.A.*, 693 F. App'x 26, 28 (2d Cir. 2017), *Wilson v. Deutsche Bank Nat'l Tr.*, 410 F. App'x 409, 410 (2d Cir. 2011), *Redmond v. Bank of NY Mellon Corp.*, 697 F. App'x 23, 24–25 (2d Cir. 2017), and *Gonzalez v. Deutsche Bank Nat'l Tr.*, 632 F. App'x 32, 33–34 (2d Cir. 2016).  These cases are inapplicable because none involved a foreclosure by a governmental entity, or any taking of the remaining property value—in all of these cases, the foreclosing parties were private entity creditors, so the constitutional issues raised herein were not litigated.  Additionally, each of these cases other than *Redmond* involved *pro se* plaintiffs and all involved plaintiffs who directly sought to reverse the state court's foreclosure proceeding.

any purported right of redemption), and the City's failure to provide just compensation for the taken remaining property value—not by the state in rem proceedings.  Plaintiffs' injuries were perhaps "ratified" and "left unpunished by" the state court—not caused by it.  *Hoblock*, 422 F.3d at 88.

The third prong is also not satisfied as the Complaint's prayer for relief does not seek to overturn any state court judgment.  *See* Compl. at 44–45.  It seeks declaratory relief, injunctive relief, and monetary damages for Defendants' violation of Plaintiffs' constitutional rights under the U.S. Constitution and their civil rights under 42 U.S.C. § 1983, and asserts state law claims over which the Court may exercise supplemental jurisdiction.  *Id*.  Moreover, the Complaint also asserts claims based on Defendants' misconduct after the state court decision Defendants rely on, including their continued failure to notify the relevant property owners and their affirmative misrepresentations.  *Id*. ¶ 70, 95, 120.  The *Rooker-Feldman* doctrine obviously cannot apply to prevent review of Defendants' misconduct that took place after the relevant state court decision.

Moreover, even if all of the prongs of the doctrine had been met—which they have not— the doctrine does not apply to general constitutional challenges to the validity of a statute.  *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 (1983); *see also Fullerton Ave. Land Dev. Ltd. v. Cianciulli,* 48 F. App'x 813, 815 (2d Cir. 2002).  As set forth in the Complaint, Mayor Bill de Blasio stated that he intends to expand the TPT Program to seize upwards of forty additional dwellings annually, and thus the TPT Program represents a continued threat to property owners in minority communities targeted by the City's program.  Compl. ¶ 49; s*ee also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) ("[A] plaintiff satisfies the injury-in-fact requirement where . . . there exists a credible threat" that an alleged unconstitutional law will be

12

enforced) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979) (internal quotation marks omitted)).

Finally, applying *Rooker-Feldman* in this case would also run contrary to *Knick*, which confirms that a victim of an illegal taking has an immediate right to proceed to federal court under Section 1983 regardless of any procedures a State may have set up.  139 S.Ct. at 2169–70.

B.      Plaintiffs' Claims Are Not Barred By the Doctrine Of Comity, Nor are Plaintiffs Barred by The Tax Injunction Act

Defendants assert that comity and the Tax Injunction Act (the "**TIA**") bar federal subject matter jurisdiction.  Federal court jurisdiction is barred under the comity doctrine when "relief would necessarily interfere with state tax administration," and when adequate state remedies exist. *Abuzaid v. Mattox*, 726 F.3d 311, 312 (2d Cir. 2013).  Here, the instant suit in no way disrupts state tax administration because the City is not using the TPT Program to collect or administer taxes.  Compl. ¶¶ 10, 32–33, 90, 107, 125.  The City enforces its real property tax liens through Chapter 3 of Title 11 of the Code, which may proceed unimpeded by the instant suit.

For similar reasons, the TIA does not bar Plaintiffs' claims.  The TIA prohibits federal court jurisdiction over suits to enjoin or restrain, *inter alia*, the collection of state tax, provided again that there is an adequate state court remedy.  MOL 8.  The TPT Program is not a statute for the collection of tax, and the state collects no taxes through the statute.  Compl. ¶ 10, 32–33, 90, 107, 125.  Accordingly, since "[i]nhibiting state collection of taxes and harming state coffers are what [the Tax Injunction Act] seeks to safeguard against," MOL 9, it is of no applicability in this case.

Comity and the TIA also do not bar jurisdiction because, even if Defendants could satisfy the first prong, there is no adequate state court remedy.  Plaintiffs assert federal constitutional claims that can proceed only in this court and seek the forward-looking relief of enjoining

Defendants' continued illegal conduct.  Furthermore, any requirement that Plaintiffs pursue state court remedies as a condition precedent to bringing these federal claims has been abrogated by the Supreme Court's recent decision in *Knick*, which held exactly the opposite.  139 S.Ct. at 2177.[6]

## II.    Plaintiffs Jones and Thomas-Murchison Have Standing

As an initial matter, there is no challenge to Plaintiff Dorce's standing by any of the Defendants.  Although the Municipal Defendants do not contest Plaintiffs Jones and Thomas-Murchison's standing, Neighborhood Restore and BDSC (the "**TPT Defendants**") argue that Jones and Thomas-Murchison do not have standing to challenge Defendants' illegal seizure of their homes because their homes were in cooperative buildings and the resultant injury is to the HDFCs themselves.  TPT Defs.' Memo. Supp. Mot. Dismiss 14–15.  This is flatly wrong and contrary to settled law.

To satisfy the requirements of Article III standing, a party must establish three elements: injury-in-fact, causation, and redressability.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1962).  Jones and Thomas-Murchison establish each of these elements, since they were illegally stripped of their rights as property owners and relegated to the status of tenants in their own homes.  Compl. ¶¶ 100, 118.  *See, e.g.*, *Canzoneri v. Inc. Vill. of Rockville Centre*, 986 F. Supp. 2d 194, 200–01 (E.D.N.Y. 2013) (loss of home and related "great distress" is a "concrete, actual injury" sufficient to establish standing); *see also United States v. 116 Emerson St.*, 942 F.2d 74 (1st Cir. 1991) (finding that the wife of an accused drug dealer had standing to context forfeiture of a house owned in her husband's name).

---

[6] Defendants cite a case that relies on *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), which was expressly overturned by *Knick*, 139 S.Ct. at 2179.  *See, e.g.*, *Islamic Comm. Ctr. v. City of Yonkers*, 742 F. App'x 521, 525 (2d. Cir. 2018) (applying comity and the TIA to bar Section 1983 actions based on lack of ripeness for failure to exhaustively litigate in state court based on *Williamson Cty.*).

The fact that Jones and Thomas-Murchison were shareholders in a cooperation does not mean that they cannot also suffer direct injuries for standing purposes, as they have here. *See Ceribelli v. Elghanayan*, 990 F.2d 62, 64 (2d Cir. 1993) (coop shareholders can bring a direct action); *see also Siegel v. Engelmann,* 143 N.Y.S.2d 193, 194–95 (Sup. Ct. 1955) ("[S]tockholders are directly injured and primarily interested" when the acts of others diminish the value of their stock or otherwise impair their proprietary rights).

Jones and Thomas-Murchison were both shareholders in HDFCs who lost their real and personal property the through the City's modified *in rem* process (Compl. ¶¶ 57, 58), their homeownership rights in such properties, along with equity value of their shares. Compl. ¶¶ 101, 112, 119, 130. In addition to losing their homesteads, their familial legacies, their proprietary leases, and the value of their coop shares, they lost the protections that come from being part of a HDFC, including long term stability and affordable housing as owners. *Id.* at ¶¶20, 115–116. Indeed, the central purpose of HDFCs is to provide long term homesteading and ownership to low-income individuals and families who would otherwise be unprotected from the dislocation of market forces, or harassment, overcharges, dislocation or displacement from landlord-tenant relationships. *See* N.Y. Priv. Hous. Fin. Law § 573 (McKinney) (one of the primary purposes of HDFCs is improvement of housing for persons of low income by providing them with long-term, affordable, stable residences "by reason of ownership of shares in such corporation").

This is not a purely economic loss as the loss of one's home is acutely personal. Jones and Thomas-Murchison lost the benefit of dominion and control over their cooperative residences that were appurtenant to their share interest in the HDFCs. *Id.* ¶¶ 96, 113. They also lost the benefit of the self-determination resulting from owning shares and residential units in the HDFCs, *id*., due to the City's abuse of *in rem* power. Compl. ¶¶ 20, 96-97, 101, 112, 113-116, 119, 130.

Moreover, even if Plaintiffs' claims were somehow construed as derivative, they would still be proper because this is a clear case of demand futility.  To the extent the relevant HDFC cooperative corporations still exist, they have been stripped of all assets by Defendants' illegal conduct and thus do not have any functioning board that could consider a demand by Jones or Thomas-Murchison to bring this lawsuit.  Further, HDFC charters are explicit that the HDFC business is to be conducted exclusively in the interest of the residents; and acts or omissions by the corporate board would be *ultra vires* to the extent it is not so conducted.[7]

The TPT Defendants rely primarily on *Blakely v. Cardozo*, No. 07 Civ. 3951 DLC, 2007 WL 2702241 (S.D.N.Y. Sept. 17, 2007).  *Blakely* is distinguishable for three reasons.  First, the plaintiff in *Blakely*, proceeding *pro se*, sought standing to bring the suit on behalf of the HDFC cooperative and did not allege that she suffered a separate and distinct injury.  *Id.* at *3 (plaintiff "has not alleged that the City has violated an independent duty to her").  This is different than this case where Jones and Thomas-Murchison allege personal injuries to themselves.  Second, the *Blakely* court was addressing whether the plaintiff had standing to review and reverse an *in rem* foreclosure action.  *Id.* at *2.  That has no relevance to whether a plaintiff has standing to bring the constitutional claims at issue here.  Third, because the *Blakely* plaintiff was proceeding *pro se*, the court found that she was not a capable representative of the HDFC coop because the law requires that a corporation be represent by counsel.  *Id.* at *3.  The *Blakely* court did not hold that a

---

[7] "The certificate of incorporation of any [HDFC] organized pursuant to the business corporation law and this article shall, in addition, provide that each housing project of such corporation shall be operated exclusively for the benefit of the persons or families who are entitled to occupancy in such housing project by reason of ownership of shares in such corporation . . . ."  N.Y. PRIV. HOUS. FIN. § 573(4) (McKinney 2019).

shareholder-representative could never, under any facts, have standing to challenge an *in rem* foreclosure of a property owned by a HDFC cooperative.[8]

## III.   The Complaint Adequately States A Claim For Relief As To Each Cause Of Action

### A.   Plaintiffs Properly Plead the First and Second Causes of Action (Violation of Due Process)

Defendants' threshold argument is that Plaintiffs fail to state a claim for violation of the due process clause of the U.S. Constitution because Plaintiffs do not allege that the City failed to comply with the statutory notice provisions of what Defendants now refer to as "the City's *in rem* law." MOL 10.  Defendants' argument is wrong for two reasons.  First, Plaintiffs credibly allege that Defendants did not comply with the statutory notice requirements of Local Law No. 37, Compl. ¶¶ 68, 70, 71, 74, 85, 87, 104 and 122, and Plaintiffs specifically allege that "the City instituted *in rem* proceedings with actual knowledge that it was not providing notice reasonably calculated to inform property owners of the proceeding" in the First Cause of Action.  *Id.* ¶ 145. Defendants' affidavit purporting the contrary is not appropriately considered on a motion to dismiss.  *See, e.g.*, *Global Network Commc'ns, Inc.*, 458 F.3d at 156–57.  Further, Defendants admit that the City's *in rem* laws require both constructive notice (by publication) and actual notice (by mailing) to the owner of the affected property, and Defendants do not dispute that they failed to attend to each such requirement.[9]

---

[8] The *Bingham v. Zolt* case cited by the TPT Defendants is helpful to Plaintiffs.  66 F.3d 553, 562 (2d Cir. 1995).  It confirms that even where a plaintiff is solely injured in his capacity as a shareholder of a company, he can nevertheless have standing to bring direct claims where equity requires.  *Id.*

[9] For example, NYC Admin. Code § 11-406(a) required the Municipal Defendants to publish "a notice of foreclosure" in the City Record and two newspapers which are "published in and are circulated throughout the county in which the affected property is located."  Defendants do not even argue that they complied with this, or any other requirement in NYC Admin. Code § 11-406, *et seq*.

<u>Second</u>, the statutory notice requirements themselves are constitutionally deficient for the purposes for which Defendants apply them.   In order words, constitutional law is clear that Plaintiffs are entitled to more notice than they received before the title to their real and personal property, and their value and investment in such properties, is extinguished by *in rem* judgment. The United States and New York Constitutions both require that Plaintiffs receive actual "due process" before being summarily dispossessed of the ownership of their properties that Plaintiffs' labored to improve for decades.   *See Mullane v. Central Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950) (notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").   As the Supreme Court put it, "when notice is a person's due, process which is a mere gesture is not due process."   *Id.* at 115.   Because the statutory procedure itself is constitutionally deficient, Defendants' conduct would be unconstitutional even if they complied with the statute (which Plaintiffs credibly allege they did not).

Plaintiffs' allegations that Defendants' notice process was inadequate and that they knew it are more than sufficient to defeat dismissal at this stage.   Plaintiffs allege that Defendants continued to accept tax and other payments from Plaintiffs even after Defendants had purportedly seized their properties.   Compl. ¶¶ 52, 95.   Thus, Defendants must have known that Plaintiffs did not know about the purportedly pending foreclosure proceedings and they nevertheless tactically remained silent so they could proceed with their illegal transfer.   This allegation alone is sufficient to defeat Defendants' arguments.   Furthermore, Justice Partnow's decision systematically walks through numerous other property owners who, like Plaintiffs, present evidence that Defendants' seized their property with no actual notice.   *No. 53 Borough of Brooklyn*, 2019 WL 1431423, at *1, *3, *11, *13, *18.   Plaintiffs' notice-related allegations are credible because someone (let alone

18

multiple people) would not knowingly fail to show up for a court proceeding where he or she risks being dispossessed of substantial property rights and interests due to charges constituting a fraction of the property value.

Defendants' argument that they are entitled to a presumption that mail is delivered is irrelevant and frankly raises more fact questions that will need to be resolved through discovery, such as: what did they mail, to whom, and when?  Likewise, the City's lengthy arguments that it at least sometimes mails voluntary extra-statutory notices to Plaintiffs and their tenants are (1) contrary to the well-pled allegations in the Complaint, (2) not relevant to whether Defendants' complied with the statutory notice requirements, and (3) not relevant to whether the statutory notice requirements comply with constitutional due process guarantees.

Defendants also rely on the Second Circuit's decision in *Weigner v. New York*, 852 F.2d 646, 649–50 (2d Cir.1988) for the proposition that "the state's obligation to use notice 'reasonably certain to inform those affected' does not mean that all risk of non-receipt must be eliminated." However, this proposition was specifically rejected by the U.S. Supreme Court in *Schroeder v. City of New York*, 371 U.S. 208, 212–14 (1962).  Although Defendants cite *Schroeder*, it supports Plaintiffs.  The *Schroeder* court stated, "[a]s was emphasized in *Mullane,* the requirement that parties be notified of proceedings affecting their legally protected interests is obviously a vital corollary [sic] to one of the most fundamental requisites of due process—the right to be heard. 'This right . . . has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.'"  371 U.S. at 212.

B.   Plaintiffs Adequately Plead The Third And Fourth Causes Of Action (Takings Without "Just Compensation")

Last month, the Supreme Court held that "[i]f a local government takes private property without paying for it, that government has violated the Fifth Amendment—just as the Takings

19

Clause says—without regard to subsequent state court proceedings.  And the property owner may sue the government at that time in federal court . . . ."  *Knick*, 139 S.Ct at 2170.  Plaintiffs clearly allege (and the Defendants have admitted) that Defendants have taken their property without paying for it.  Compl. ¶¶ 93, 110, 128.  That should be the end of the inquiry on a motion to dismiss.

Defendants argue that they did not engage in an unconstitutional taking because "there is no statutory prohibition against foreclosing non-'distressed' properties."  MOL 14.  Of course, that is precisely Plaintiffs' point.  Defendants' self-styled "modified *in rem* process" is unconstitutional because, *inter alia*, it permits Defendants to seize property simply because (a) the property owners owe some nominal amount of purported tax debt and (b) the property is near a distressed property even though not distressed itself.  Whether or not this process complies with some statute is entirely irrelevant as to whether it complies with constitutional guarantees.  Further, both the U.S. and the New York Constitutions prohibit the taking of personal property without due process of law, U.S. CONST. amend. V ("[N]or be deprived of life, liberty, or property, without due process of law."), U.S. CONST. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law."), N.Y. CONST. art. 6 ("No person shall be deprived of life, liberty or property without due process of law."), and without just compensation, U.S. CONST. amend. V ("[N]or shall private property be taken for public use, without just compensation."), N.Y. CONST. art. 7 ("Private property shall not be taken for public use without just compensation.").  In addition, Justice Partnow's decision eviscerates Defendants' arguments that the legislature intended to allow them to seize non-distressed properties.  *See No. 53 Borough of Brooklyn*, 2019 WL 1431423, at *23.  While not relevant to addressing constitutional guarantees, Defendants are simply wrong about what Local Law 37 allows.

Defendants also make a fallback argument that they did not engage in an unconstitutional taking because there is a mechanism for property owners to claim surplus value (*i.e.,* the difference between what the property is worth and the purported arrears). First, in light of the Supreme Court's decision in *Knick*, this argument cannot stand because Plaintiffs are not required to exhaust state court remedies before pursuing an action in federal court. *See Knick*, 139 S.Ct. at 2170. Further, Defendants' argument is a red herring. The imaginary process they point to for property owners to claim the surplus value consists of asking for "additional time to sell the property and pay the liens from the proceeds." MOL 16. The Complaint alleges that Defendants' "modified *in rem* process" provides "no method pursuant to which the former owner . . . may claim the 'surplus' value." Compl. ¶ 39. Defendants' only response is to claim Plaintiffs' allegation is "inaccurate." MOL 16 n. 18. That response does not provide a basis to disregard the well-pled allegations of the Complaint.

Defendants rely principally on *Nelson v. City of New York*, 352 U.S. 103 (1956), to support their argument that there is no requirement that a former owner receive surplus funds following an *in rem* tax foreclosure. Defendants, however, gloss over significant differences. In *Nelson*, there was an express process for the property owner to claim the surplus value and the court held that he could be found to have voluntarily elected not to pursue it. Here, there is no such process. In other words, even if a property owner had received notice that the City intended to seize his $5 million property due to a $100,000 tax debt using this so-called "modified *in rem* process," nothing in the statute or the City's practices would provide for the property owner to claim the surplus value. In addition, as Justice Partnow held, *Nelson* has no application where, as here, a property owner maintains that it had no actual notice of the *in rem* proceeding. *No. 53 Borough of Brooklyn*, 2019 WL 1431423, at *13. This is because, even if there were a mechanism for Plaintiffs to claim

21

surplus funds as part of a "modified" *in rem* proceeding, such a mechanism would be purely illusory if nobody told them about the proceeding in the first instance. Nelson thus did not decide the precise question presented here. Furthermore, to the extent that *Nelson* might have been read in the past to imply more broadly that no takings claim could arise in this context if the property owner had not first pursued a state claim for surplus, *Knick* now makes it clear that reading would be incorrect. *See Knick*, 139 S.Ct. at 2170.

Moreover, even if Defendants paid Plaintiffs fair value for their property, the taking would still be illegal because Defendants lack a legitimate public use necessary to justify a taking. The City alleges that the "secondary goal" of the TPT Program is "creating and preserving affordable housing." MOL 18. This is not credible because an HDFC *already* by its nature provides affordable housing to persons of low income. N.Y. PRIV. HOUS. FIN. § 573(3)(a) (McKinney 2019). Defendants simply cannot seize Plaintiffs' property for political or other non-public purpose, or for non-tax-lien-collection purposes. *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 245 (1984) ("A purely private taking could not withstand the scrutiny of the public use requirement; it would serve no legitimate purpose of government and would thus be void"). Here, Plaintiffs credibly allege that Defendants' tax enforcement is a pretext for political or other non-public purposes. *See* Compl. ¶¶ 44, 46, 48, 73; *see also Kelo v City of New London, Conn.*, 545 U.S. 469, 477 (2005) ("Nor would the City be allowed to take property under the mere pretext of a public purpose, when its actual purpose was to bestow a private benefit.").[10]

Defendants also argue that the Fifth Amendment is applicable only against federal employees. MOL 13. This is a misrepresentation of the law and the cases cited by Defendants.

---

[10] Plaintiffs' allegation that tax-collecting is a pretext for Defendants' misconduct is also supported by the fact that Defendants have alternate, more efficient ways to collect taxes in these circumstances, including the New York City Tax Lien Sale program. *See* NYC Admin. Code § 11-319.

*See Public Utils. Comm'n vs. Pollak*, 343 US 451, 461 (1952) ("These Amendments concededly apply to and restrict only the Federal Government and *not private persons*.") (emphasis added). The U.S. Supreme Court confirmed that "[t]he Due Process Clause of the Fifth Amendment prohibits the United States, *as the Due Process Clause of the Fourteenth Amendment prohibits the States*, from depriving any person of property without due process of law." *Dusenbery vs. United States,* 534 U.S. 161, 167 (2002) (internal quotation marks omitted) (emphasis added). The law is also clear that that the due process clause of the Fourteenth Amendment incorporates the Fifth Amendment's just compensation clause to prohibit State and specifically municipal conduct. *Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 123 (1978).

C.    Plaintiffs Adequately Plead The Fifth Cause Of Action (Section 1983 Claim)

Defendants admit that Section 1983 "provides a vehicle to recover for alleged constitutional violations." MOL 19. Because Plaintiffs adequately allege constitutional violations, they have adequately pled a Section 1983 claim. *See Knick*, 139 S.Ct at 2177 ("We conclude that a government violates the Takings Clause when it takes property without compensation, and that a property owner may bring a Fifth Amendment claim under § 1983 at that time."). Notably, none of Defendants dispute that they are acting under "color of state law" and are subject to the requirements of Section 1983.

The Municipal Defendants can clearly be liable for constitutional violations under § 1983. *See, e.g.*, *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 (1978) ("[M]unicipalities and other local government units [are] included among those persons to whom § 1983 applies."). Even if Neighborhood Restore and BDSC are not local government units, they are also liable under § 1983 as a result of the close nexus and joint activity between them and the City.  *See, e.g.*, *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n.*, 531 U.S. 288, 295 (2001) ("[S]tate action may be found if . . . there is such a 'close nexus between the State and the challenged action'

23

that seemingly private behavior 'may be fairly treated as that of the State itself.'") (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)); *Sybalski v. Ind. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (Section 1983 extends to entities where "the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the state,' or the entity's functions are 'entwined' with state policies") (quoting *Brentwood Acad. v. Tenn. Secondary Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

D.   <u>Plaintiffs Adequately Plead The Sixth Cause Of Action (Equal Protection Violation)</u>

Plaintiffs more than adequately plead an equal protection violation.  Indeed, earlier this year, Justice Partnow held that identical conduct by the City "raises equal protection concerns." *No. 53 Borough of Brooklyn*, 2019 WL 1431423, at *8.  Defendants argue that there are no equal protection violations because Defendants' decisions to usurp Plaintiffs' properties were "based on their tax arrears."  MOL 21.  But that is simply not the case.  For example, consider the following hypothetical properties:

|  | Property Value | Tax Arrears | Location | Seizure Status |
|---|---|---|---|---|
| Property A | $1 million | $20,000 | Near a "distressed" property in a community of color | Subject to seizure |
| Property B | $1 million | $20,000 | Not near any "distressed" properties | Not subject to seizure |

As is clear, two identical property owners are being treated differently simply because one lives in a community where he or she is more likely to have a neighbor who owns a "distressed" property as defined in Local Law No. 37, which Defendants argue is sufficient so as to invoke purported *in rem* powers to extinguish the latter property owner's title and equity value.  This is the height of unequal treatment.  *See, e.g.*, *Weissman v. Evans*, 438 N.E.2d 397, 400 (N.Y. 1982) ("[W]hile equal protection does not necessarily require territorial uniformity . . . a territorial

distinction which has no rational basis will not support a state statute . . .").  This is particularly true where, as here, the geographic distinctions are a proxy for protected racial characteristics. *See, e.g.*, *Pyke v. Cuomo*, 567 F.3d 74, 78 (2d Cir. 2009) (recognizing that "seemingly neutral geographic distinctions may in fact be being used as insidious proxies for suspect *racial* classifications") (emphasis in original).[11]

Defendants argue that Plaintiffs offer "no plausible allegations of discriminatory intent to target their properties as opposed to those owned by similarly-situated individuals."  MOL 21.  But that is simply not the case.  Plaintiffs credibly allege that Defendants are currently motivated by purposes other than tax collection, to take valuable properties from persons of color least able to "take on city hall" or HPD in order to transfer such properties for free to private organizations, in a scheme "*intended to*, or that resulted in, a redistribution of property ownership and wealth away from individuals that are of African-American and/or Hispanic American descent . . . .")  Compl. ¶ 75; *see also id.* ¶ 49 (Mayor de Blasio saying that "[w]e will seize their buildings"); *id.* ¶ 10 (TPT Program "was enacted and is currently being utilized for purposes other than the collection of Tax Liens").[12]

In addition, even if there are no protected classes involved at all, Defendants' conduct cannot survive even rational basis review, as there is no rational reason to treat otherwise similarly-situated property owners differently based on whether they own property physically near a distressed property.

---

[11] Public press reporting supports Plaintiffs' allegations that Defendants seize properties predominately in neighborhoods of color.  *See* Kelly Mena, *How Changes to a City Housing Program Could Save Vulnerable Homeowners*, BROOKLYN DAILY EAGLE (July 12, 2019), https://brooklyneagle.com/ articles/2019/07/12/third-party-transfer-reforms/.

[12] These facts are plausibly alleged and thus must be accepted as true for purposes of Defendants' motions to dismiss. *See McCarthy*, 482 F.3d at 191.

The cases Defendants rely on are inapposite.  Although *Nelson v. City of New York* rejected an equal protection challenge of an earlier Administrative Code provision that provided that when its strict foreclosure provisions were invoked, they were required to be used against all parcels in a section of the City on which charges were outstanding for four years, Justice Partnow capably explained the important distinction from Defendants' current conduct where "property [i]s included in the Third Party Transfer Program . . . despite not being a distressed property and where the provisions of the Administrative Code pertaining specifically to distressed properties were applied to it."  *No. 53 Borough of Brooklyn*, 2019 WL 1431423, at *8.  Indeed, the fact that the TPT Program allows Defendants to target particular properties for seizure so long as they are located in close proximity to a "distressed" property even if they are not "distressed" themselves is crucial difference from the conduct being evaluated by the *Nelson* court.  Defendants' reliance on *Miner v. Clinton Cty.*, 541 F.3d 464 (2d Cir. 2008), *Tupaz v. Clinton Cty.*, 499 F. Supp. 2d 182 (S.D.N.Y. 2007) and *Levy v. City of New York*, 726 F. Supp. 1446 (S.D.N.Y 1989) is also misplaced.  *Miner* and *Tupaz* involve the same facts (*Miner* is the appeal of *Tupaz*) and do not address the circumstances that are present here, where similarly-situated property owners are being treated differently for no rational reason.  *See Miner*, 541 F.3d at 467–71; *Tupaz*, 499 F. Supp. 2d at 184–86.  *Levy*'s holding that "landholders" do not qualify as a suspect class has no bearing on this case, where Plaintiffs allege that Defendants are intentionally and purposefully targeting property owners who live in communities of color and are likely to be African-American or Hispanic American.  *Levy*, 726 F. Supp. at 1453.

E.  Plaintiffs Adequately Plead The Seventh Cause Of Action (Violation of Municipal Home Rule)

Because state governments generally have plenary lawmaking power, political subdivisions can only exercise such power to the extent delegated by the State.  *Boening v. Nassau*

26

*Cty. Dep't of Assessment*, 69 N.Y.S.3d 666, 669 (N.Y. App. Div. 2018).  For a local taxing law to be valid, the state legislature must delegate the power of taxation in "express terms," as the delegation "cannot be inferred."  *Id.*  The State clearly did not authorize Defendants to steal people's private property through an illusory process that uses tax collection as a pretext, which is precisely what Defendants are doing here.

Defendants argue that the City has authority to take *ultra vires* actions (outside of its grant of authority from the New York State legislature and the New York State Constitution) and enact its own *in rem* laws for purposes other than tax collection.  *See* MOL 2.  The City claims that, *on its own initiative*, it broadened its own authority to utilize *in rem* proceedings.  However, Defendants offer no explanation as to the source of this claimed inherent authority, and cite no statutory, constitutional, case law or other authority for the proposition that the City can simply enact laws because it wishes to enhance some "goal."  *See* MOL 2, and *passim*. Defendants couch their entire argument as if they are actually enforcing a taxation statute, even though Defendants do not refute the Complaint's central allegation that *the City collects no taxes through the TPT Program* and, in contrast, actually extinguishes all tax liability associated with properties seized through the TPT Program.  *See, e.g.*, Compl. ¶¶ 10, 16, 32–33, 89–90, 106–07, 124–25 (alleging the City collects no tax liens through the TPT Program); *id.* ¶ 32 (tax liability extinguished).  Additionally, defendants admit that *the City authorized itself* to dispose of residential properties utilizing an *in rem* process for a purpose other than tax collection.  MOL at 2.

Indeed, because Plaintiffs credibly allege that the taxing-aspect of Defendant's co-called "modified *in rem* process" is a pretext, Defendants can obtain no protection from the Municipal Home Rule Law's authorization of local laws relating to tax collection.  Municipal Home Rule Law § 10(1)(ii)(a)(8).  Thus, Plaintiffs more than adequately plead a claim for violation of the

Municipal Home Rule Law.  *See, e.g.*, *Baldwin Union Free Sch. Dist. v. Cty. of Nassau*, 9 N.E.3d 351, 361 (N.Y. 2014) (holding Nassau County taxing law invalid because "the legislature [did not] specifically authorize[] the County to enact local legislation with those characteristics"); *Kamhi v. Town of Yorktown*, 547 N.E.2d 346, 348–49 (N.Y. 1989) (holding that a town's attempt to require a property owner to pay money or contribute parkland as a condition of developing a condominium project invalid).

In addition, Local Law No. 37 violates New York State's Home Rule.  *See, e.g.*, *City of Amsterdam v. Helsby,* 332 N.E.2d 290, 292 (N.Y. 1975) (local laws relating to "property, affairs or government" may not be inconsistent with the provisions of the Constitution or of any general law).

F.   <u>Plaintiffs Adequately Plead The Eighth Cause Of Action (Violation of GBL § 349)</u>

Defendants argue that this case is not a "typical" violation of GBL § 349. MOL 23. Plaintiffs agree.  It is not common that the City affirmatively seeks to deceive its own citizens but that is precisely what is happening here.  Defendants are taking people's property and then acting as if they didn't so that these now-former property owners continue to pay municipal charges on properties that the City contends they no longer own.  That is the height of a deceptive practice that is plainly outlawed under GBL § 349.

GBL § 349 makes it illegal to engage in "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  The Court of Appeals has confirmed that a plaintiff must prove three elements to successfully bring a claim under § 349: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."  *Stutman v. Chemical Bank*, 731 N.E.2d

608, 611 (N.Y. 2000).  Defendants do not address this test but appear to concede the second and third elements.

Defendants argue that their deceptive conduct is not "consumer-oriented" because it is "related to tax collection."  MOL 24.  Defendants' argument that deceptive conduct is permissible as long as it is "related to taxes" fails for at least three reasons.

First, the Court of Appeals has held that the scope of § 349 applies to "virtually all economic activity," *Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA, Inc.*, 818 N.E.2d 1140, 1143 (N.Y. 2004) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002)), and that it has been "construed liberally," *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002).  The Second Circuit has acknowledged that to satisfy the consumer-oriented standard, "the gravamen of the complaint must be *consumer injury or harm to the public interest.*"  *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (citation omitted) (emphasis added).  "The critical question is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer . . . ."  *Id.*  "[C]ourts have found sufficient allegations of injury to the public interest where plaintiffs plead repeated acts of deception directed at a broad group of individuals."  *Feldman*, 210 F. Supp. 2d at 301.  In addition, the consumer-oriented requirement can be satisfied by showing that the conduct "potentially affects similarly situated consumers."  *Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015).  Here, Plaintiffs allege that Defendants have stolen their property in secret and then lied to them to induce them to pay charges and other fees on properties that the Defendants claim

Plaintiffs no longer own.  Clearly this conduct involves "economic activity" and "harm to the public interest."[13]  GBL § 349.

Second, even if Defendants were allowed to engage in deception for the purpose of tax collection, Plaintiffs credibly allege that the purported tax-aspect of the TPT Program is a mere pretext as Defendants do not collect any taxes as part of the program.  *See* Compl. ¶¶ 10, 16, 32–33, 89–90, 106–07, 124–25.  To the contrary, they abandon tax debts that property owners are ready, willing and able to pay.  *See id.* ¶ 32–33.

Third, even if the TPT Program actually involved the collection of taxes, the deceptive part of Defendants' conduct is that they lied to Plaintiffs, not collected taxes.  One arm of the City told Plaintiffs they owe property charges and other fees while another arm secretly seized their properties with no actual notice.  This surely constitutes a "deceptive act[] or practice[]."

G.    Plaintiffs Adequately Plead The Tenth, Eleventh, and Twelfth Causes Of Action (Declaratory and Injunctive Relief; Attorneys' Fees)

Without quibbling over whether requests for declaratory relief, injunctive relief, and attorneys' fees pursuant to the Civil Rights Attorneys' Fees Awards Act of 1976 are causes of action or remedies, the point is that Plaintiffs are entitled to them.  *See, e.g, Civic Ass'n of Deaf of New York City, Inc. v. Giuliani*, 915 F. Supp. 622, 625 (S.D.N.Y. 1996) (granting declaratory and injunctive relief against municipal actors).  Defendants do not dispute that, if the facts are as alleged, Plaintiffs are entitled to such relief.

---

[13] The cases cited by Defendants for the argument that tax collection is not consumer-oriented are inapposite.  Each those cases involved taxes and other fees/charges that were properly charged.  That is a far cry from the facts alleged here.  *See* Compl. ¶¶ 95, 192; *see also No. 53 Borough of Brooklyn*, 2019 WL 1431423, at *17–18.

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be denied.  Alternatively, Plaintiffs should be granted leave to amend the Complaint to address any purported pleading deficiencies.

Dated:     July 18, 2019
           Garden City, New York

                                        Respectfully submitted,


**VALLI KANE & VAGNINI LLP**              **ROPES & GRAY LLP**


By: /s/ *Matthew L. Berman*               By: /s/ *Keith H. Wofford*
Matthew L. Berman                         Keith H. Wofford
Robert J. Valli, Jr.                      Gregg L. Weiner
Yolande Nicholson, *Co-Counsel*           Alexander B. Simkin
600 Old Country Road                      1211 Avenue of the Americas
Garden City, New York 11530               New York, New York 10036
Tel: (516) 203-7180                       Tel: (212) 596-9000
Fax: (516) 706-0248                       Fax: (212) 596-9090


*Attorneys for Plaintiffs*                *Attorneys for Plaintiffs McConnell Dorce and*
                                          *Sherlivia Thomas-Murchison*

31

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2019 a true and correct copy of Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss was served via electronic email on all counsel of record.

Date:   July 18, 2019


/s/ *Matthew L. Berman*
Matthew L. Berman, Esq.

76935394_9