Docket No.  19 Civ. 02216 (DAB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MCCONNELL DORCE, et al.,

Plaintiffs,

-against-

CITY OF NEW YORK, et al.,

Defendants.

**MUNICIPAL DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

***GEORGIA PESTANA***
*Acting Corporation Counsel of the City of New York*
*Attorney for Municipal Defendants*
*100 Church Street*
*New York, N.Y.  10007*
*Tel:  (212) 356-2565*


*Of Counsel: Andrea B. Feller*
*Michael S. Adler*
*Kent Langloss*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................... 1

STANDARD OF REVIEW ................................................................................................... 2

ARGUMENT

       POINT I

              PLAINTIFFS FAIL TO MEET THEIR BURDEN OF PROOF AS TO SUBJECT MATTER JURISDICTION ...................................................................2

       POINT II

              THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF ..................................................................................6

              A.   Plaintiffs Fail to State a Claim for Violation of Due Process....................................................................6

              B.   Plaintiffs Fail to State a Claim for Unconstitutional Taking...............................................................8

                  i.  Properties included in *in rem* actions need not be "distressed" ...............................................8

                  ii.  TPT is not a taking...............................................9

              C.   Plaintiffs Fail to State a Claim for Lack of Equal Protection.................................................................11

              D.   Plaintiffs Fail to State a Claim for Violation of the Municipal Home Rule Law.......................................12

              E.   Plaintiffs Fail to State a Claim for Violation of NY General Obligation Law § 349 ...................................12

       CONCLUSION......................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**                                                                                                                          **Pages**

*Abuzaid v. Mattox*,
   726 F3d 311 (2d Cir 2013)...................................................................................................5

*Adams v. Vermont Office of Child Support*,
   717 FedAppx 33 (2d Cir 2017)............................................................................................3

*Albert v. Carovano*,
   851 F2d 561 (2d Cir 1988)..................................................................................................11

*Anderson v. US.*,
   2019 WL 2552938 (Fed Cl 2019)........................................................................................11

*ASARCO, Inc. v. Kadish*,
   490 US 605 (1989)...............................................................................................................5

*Ashcroft v. Iqbal*,
   556 US 662 (2009)...............................................................................................................2

*Baldwin Union Free Sch. Dist. v. Cty. of Nassau*,
   22 NY3d 606 (2014)............................................................................................................12

*Matter of Belardo v. Schenectady*,
   28 AD3d 986 (3rd Dept 2006)..............................................................................................1

*Brodsky v. Carter*,
   673 FedAppx 42 (2d Cir 2016)............................................................................................3

*Charles v. Levitt*,
   716 FedAppx 18 (2d Cir 2017)............................................................................................4

*City of NY v. Commissioner*,
   70 F3d 142 (DC Cir 1995)...................................................................................................2

*Coleman v. D.C.*,
   70 FSupp3d 58 (DC Cir. 2014)............................................................................................10

*Dekom v. Fannie Mae*,
   2019 USDistLEXIS 53167 (EDNY 2019)...........................................................................3

*Dodd v. O'Sullivan*,
   2019 USDistLEXIS 85996 (NDNY 2019) ..........................................................................3

*Downsville v. Atkin*,
   183 Misc. 2d 425 (Sup. Ct., Del. Co. 2000),
    *aff'd, 279 A.D.2d 779* (3rd Dep't 2001)..........................................................................2

**Cases**                                                                                          **Pages**

*Engstrom v. Elan Corp.*,
   2011 USDistLEXIS 120167 (SDNY 2011) ................................................................2

*Exxonmobil Inter-America v. Advanced Info. Eng'g Servs.*,
   328 FSupp2d 443 (SDNY 2004) ........................................................................13

*Fair Assessment v. McNary*,
   545 US 100 (1981)...............................................................................................6

*Gaidon v. Guardian Life* Ins*. Co. of Am.*,
   94 NY2d 330 (1999) ..........................................................................................12

*Golden v. Mercer County Tax Claim Bureau*,
   190 BR 52 (WD Pa 1995).................................................................................11

*Herbert v. Cattaraugus Co.*,
   2017 USDistLEXIS 187263 (WDNY 2017) ......................................................3

*Hoffer v. Ancel*,
   32 FedAppx 593 (2d Cir 2002)...........................................................................5

*In re In Rem Foreclosure Action*,
   118 Misc.2d 1081 (Sup. Ct. Queens Co. 1983) .............................................9, 10

*In Rem Foreclosure Action No. 52, Borough of Bronx*,
   Index No. 40000/2015 ("*Bronx 52*")
   (Sup. Ct., Bx Cty., May 31, 2019; Block 2876, Lot 1, 1600 Nelson Ave.),...........8

*In Rem Tax Foreclosure Action, Borough of Brooklyn, No. 53*,
   63 Misc3d 1207(A), 2019 WL 1431423  (Sup. Ct., Kings Cty. 2019)....................3

*In Rem Tax Foreclosure Action No. 47*,
   (Sup. Ct. Richmond Co. 2006).............................................................................9

*Industrial Bank of Washington v. Sheve*,
   307 FSupp 98 (D.DC 1969) ..............................................................................11

*ISCA v. City of New York*,
   77 NY2d 688 (1991) .......................................................................................6, 7

*Jones v. Flowers*,
   547 US 220 (2006)...............................................................................................7

*Joseph v. Hyman*,
   659 F3d 215 (2d Cir 2011)...................................................................................5

**Cases**                                                                                       **Pages**

*Kamhi v. Town of Yorktown,*
    77 NY2d 423 (1989) ........................................................................................12

*Knick v. Township of Scott,*
    139 SCt 2162 (2019) .....................................................................................4, 11

*Krechmer v. Tantaros,*
    747 FedAppx 6 (2d Cir 2018) ...........................................................................3

*Leonard F. v. Israel Discount Bank,*
    199 F3d 99 (2d Cir 1999)..................................................................................2

*Levy v. New York,*
    726 FSupp 1446 (SDNY 1989)........................................................................11

*Lewis v. Guardian Loan Co.,*
    2019 USDistLEXIS 140485 (DConn 2019) .....................................................3

*Mennonite Bd. v Adams,*
    462 US 791 (1983)........................................................................................6, 7

*Miner v. Clinton County,*
    541 F3d 464 (2d Cir. 2008)..............................................................................12

*Mosby v. Ligon,*
    418 F3d 927 (8th Cir 2005) ..............................................................................4

*Mullane v Central Hanover Trust Co.,*
    339 US 306 (1950)........................................................................................6, 7

*Muller-Paisner v. TIAA,*
    289 FedAppx 461 (2d Cir 2008) .......................................................................2

*Nelson v, City,*
    352 US 103 (1956).......................................................................................9, 10

*Nitchie Barrett Realty Corp. v. Biderman,*
    704 FSupp 369 (SDNY 1988)...........................................................................7

*O'Bryan v. Stark,*
    77 AD3d 494 (1st Dept 2010)............................................................................7

*Piedmont Gardens, LLC v. LeBlanc,*
    168 FSupp3d 391 (DConn 2016),
     *aff'd*, 733 FedAppx 576 (2d Cir 2018) ........................................................5

**Cases**                                                                    **Pages**

*Pyke v. Cuomo,*
 567 F3d 74 (2d Cir 2009)..................................................................12

*Raffino v. Weihe,*
 2016 USDistLEXIS 60747 (DConn 2016) ...........................................3

*Redmond v. Bank of NY Mellon Corp.,*
 697 FedAppx 23 (2d Cir 2017)...........................................................4

*Riley v. Comm'r of Finance,*
 618 FedAppx 16 (2d Cir 2015)............................................................3

*Robinson v. Cusack,*
 2007 USDistLEXIS 50073 (EDNY 2007)............................................6

*Rosenwasser v. Fordham Univ.,*
 772 FedAppx 1 (2d Cir 2019) .............................................................6

*Schroeder v. New York,*
 371 US 208 (1962)...............................................................................7

*Sentlowitz v. Cardinal Development, LLC,*
 63 AD3d 1137 (2d Dept 2009) ..........................................................13

*Sheth v. N.Y. Life Ins. Co.,*
 273 AD2d 72 (1st Dept 2000).............................................................13

*Simon v. Smith & Nephew, Inc.,*
 990 FSupp2d 395 .................................................................................2

*Sticesen v. Fay,*
 2019 USAppLEXIS 24869  (2d Cir 2019) ...........................................3

*US v. Lawton,*
 110 US 146 (1884)..............................................................................10

*Walton v. N.Y. State Dep't of Corr. Servs.,*
 25 AD3d 999 (3d Dep't 2006),
  *aff'd as modified*, 8 NY3d 186 (2007) ..........................................13

*Weigner v. New York,*
 852 F2d 646 (2d Cir 1988)...............................................................6, 7

*Weissman v. Evans,*
 438 NE2d 397 (NY 1982)..................................................................12

**Cases**                                                              **Pages**

*Wik v. City of Rochester*,
   632 FedAppx 661-662-63 (2d Cir 2015) ...............................................3

*Williamson Co. Reg. Planning Comm'n v. Hamilton Bank*,
   473 US 172 (1985)...................................................................4, 5

*Winslow v. Stevens*,
   632 FedAppx 721 (3d Cir 2015) ....................................................4

**Statutes**

28 USC §1257 ...............................................................................5

28 USC §1341 ...............................................................................6

42 USC §1983 ...............................................................................6

N.Y. Const., Art. IX, §2(c)(8) ...........................................................12

GBL § 349.............................................................................12, 13

N.Y. Mun. Home Rule Law § 10(1)(ii)(a)(9) ...........................................12

RPTL § 1104(2) ............................................................................12

RPTL § 1166................................................................................1

**Other Authorities**

Admin. Code § 11-401.1(a) ...............................................................8

Admin. Code § 11-401.1(b) ...............................................................8

Admin. Code § 11-404.....................................................................8

Admin. Code § 11-405(a) .............................................................8, 12

Admin. Code § 11-409(d) .................................................................9

Admin. Code § 11-409(g) ................................................................11

**Other Authorities**                                                         **Pages**

Admin. Code § 11-411 ...................................................................................................7

Admin. Code § 11-412.1(d) ...........................................................................................1

Admin. Code § 11-420 ...................................................................................................1

Admin. Code § 11-428 ...................................................................................................1

Admin. Code § 412.1(h) ................................................................................................7

Admin. Code § D17-12.0 ...............................................................................................9

Maguire & Hughes, Private Activity Bonds: An Introduction, Congressional
    Research Service https://fas.org/sgp/crs/misc/RL31457.pdf .....................................2

N.Y.C. Tax Lien Foreclosure, A.I.1481, Pr.l514,
    in N.Y. Leg. Serv., New York State Legislative Annual 179-82 (1948)................................12

NY Real Property Tax Law, Article 11, § 1166 ............................................................1

## PRELIMINARY STATEMENT

Central to the Complaint and to Plaintiffs' opposition to the City's motion is the erroneous notion that the City's third party transfer program ("TPT") does not serve any tax purpose. Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp.") p. 5. The City collects millions of dollars in delinquent taxes from properties that are included in TPT and redeemed following commencement of an *in rem* action, up to and beyond final judgment of foreclosure. Ad. Code § 11-412.1(d). "A majority of the 420 properties included in the last TPT Round successfully responded, and were removed from the foreclosure actions, resulting in the collection of approximately $40 million in outstanding arrears thus far." Testimony of the NYC Department of Housing Preservation and Development to the New York City Council Committee on Oversight and Investigations and Housing and Buildings, July 22, 2019, a copy of which is annexed to the Declaration of Andrea B. Feller in Further Support of Motion to Dismiss, sworn to September 20, 2019 ("Feller Reply Decl.") as Exhibit H, p. 3.[1]

Plainly, TPT, like the City's traditional *in rem* foreclosure process, as well as New York State's foreclosure law, involves the taxing authority gaining control of assets to satisfy outstanding tax debt. Proceeds into the City's coffers are not required by any provision of the State law; the City's traditional *in rem* procedure, employed prior to the enactment of TPT; or in TPT. *See* NY Real Property Tax Law, Article 11, esp. § 1166; the New York City Administrative Code ("Ad. Code"), Title 11, Ch. 4, esp. §§ 11-420, 11-428.  Rather, each of these bodies of law provide for the *foreclosure of tax liens*, followed by the disposition of property at the discretion of the taxing authority. *See Matter of Belardo v. Schenectady*, 28 AD3d 986, 988 (3rd Dept 2006) (The "broad language" of RPTL § 1166, mirrored in Ad. Code § 11-420, "places no

---

[1] https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=3968975&GUID=17B27FCE-9E66-4803-AB35-7792BA254245&Options=&Search= (at "3. Hearing Testimony)

limitation on the discretion of a city to dispose of property acquired through tax foreclosure proceedings . . .") *Downsville v. Atkin,* 183 Misc2d 425, 427 (Sup. Ct. Del. Co. 2000), *aff'd,* 279 AD2d 779 (3rd Dept 2001) (Pursuant to NY's *in rem* law, "[a] tax district may sell property that it has obtained through foreclosure at a public auction, but it is not required to do so.")[2]

The alleged "pretext" of tax enforcement to advance other goals is the foundation for many of Plaintiffs' claims, which of necessity must fail when this fallacy is rejected.

## STANDARD OF REVIEW

Though factual statements in a complaint must be accepted as true on a motion to dismiss, the axiom does not encompass legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 US 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, the allegations must meet a standard of plausibility. *Engstrom v. Elan Corp.*, 2011 USDistLEXIS 120167 (SDNY 2011), *13-14. The mere possibility of misconduct, based on implausible allegations, is insufficient to state a claim. *Id.* at 679. Further, judicial notice may be taken of documents issued by government agencies, *Simon v. Smith & Nephew, Inc.*, 990 FSupp2d 395, 399, n.1 (SDNY 2013), and testimony before a legislative body. *Muller-Paisner v. TIAA*, 289 FedAppx 461, 466 n.5 (2d Cir 2008).

## <u>ARGUMENT</u>

## <u>POINT I</u>

## PLAINTIFFS FAIL TO MEET THEIR BURDEN OF PROOF AS TO SUBJECT MATTER JURISDICTION

---

[2] Tax proceeds need not be used exclusively to fund government. Municipalities commonly use "private activity bonds" to support private infrastructure projects that serve public purposes, wherein bondholders may be repaid with tax proceeds. *See, e.g., City of NY v. Commissioner*, 70 F3d 142 (DC Cir 1995); *see generally* Maguire & Hughes, Private Activity Bonds: An Introduction, Congressional Research Service https://fas.org/sgp/crs/misc/RL31457.pdf

Plaintiffs, who bear the burden on a Rule 12(b)(1) motion of proving subject matter jurisdiction, *Krechmer v. Tantaros*, 747 FedAppx 6, 10 (2d Cir 2018), fail that burden.

As to *Rooker-Feldman*, the doctrine's applicability does not demand that plaintiffs literally seek to appeal a state court decision or literally seek its repudiation. The doctrine fully applies where one does not challenge the judgment[3] directly but "functionally" seeks its review and rejection *Adams v. Vermont Office of Child Support*, 717 FedAppx 33, 34 (2d Cir 2017); *Herbert v. Cattaraugus Co.*, 2017 USDistLEXIS 187263 at *8-9 (WDNY 2017), or seeks relief inconsistent with the outcome the judgment decrees, such as requesting damages for that outcome *Brodsky v. Carter*, 673 FedAppx 42, 43-44 (2d Cir 2016). Plaintiffs are also wrong in asserting that they cannot be deemed state-court losers since the judgment here was *in rem* and they were not individual parties. The doctrine fully applies to individuals not personally named as parties but deprived of a property interest by an *in rem* foreclosure judgment. *Wik v. City of Rochester*, 632 FedAppx 661, 662-63 (2d Cir 2015) (applying doctrine to *in rem* proceeding described in *Wik v. City of Rochester*, 2008 USDistLEXIS 92032 at *10-11 (WDNY 2008)); *Riley v. Comm'r of Finance,* 618 FedAppx 16, 17 (2d Cir 2015); *Raffino v. Weihe*, 2016 USDistLEXIS 60747 at *6 (DConn 2016). Nor does the fact that currently-asserted contentions were not raised in state court negate the doctrine. *Lewis v. Guardian Loan Co*., 2019 USDistLEXIS 140485 at *4 n3 (DConn 2019); *Dodd v. O'Sullivan,* 2019 USDistLEXIS 85996 at *9 (NDNY 2019); *Dekom v. Fannie Mae*, 2019 USDistLEXIS 53167 at *8-9 (EDNY 2019). As for the "injuries caused by" element, it is clear that where claimed injuries did not exist before judgment and damages demanded conflict with vitality of the judgment, the injuries are to be deemed caused by the judgment. *E.g., Sticesen v. Fay,* 2019 USAppLEXIS 24869 at *3 (2d

---

[3] Contrary to Plaintiffs' claim (Opp., fn.3), the state court judgment is in full effect as to these Plaintiffs. *In Rem Tax Foreclosure Action, Borough of Brooklyn, No. 53,* 63 Misc3d 1207(A), 2019 WL 1431423 (Sup. Ct. Kings Co. 2019) ("*Brooklyn 53"*) vacated the judgment only as to specified properties addressed therein.

Cir 2019); *Charles v. Levitt*, 716 FedAppx 18, 22 (2d Cir 2017); *Redmond v. Bank of NY Mellon Corp.,* 697 FedAppx 23, 24-25 (2d Cir 2017). Here, the essential claimed injuries – property loss – did not exist before judgment, would not have existed without judgment, and occurred only because of the judgment. As to the contention that the challenge is to the TPT program as such, notice problems, fraud, and compensation, two points are salient. First, these matters caused Plaintiffs no injuries by themselves; rather, only because of the culminating judgment and because that judgment did not decree compensation did supposed injuries result. Secondly, as the Second Circuit observed in *Redmond*, where a party asserts that fraud, deception, mistake, or the like culminated in a judgment inflicting injuries, such claims are certainly to be regarded as functional challenges to the judgment, implicating *Rooker-Feldman*.[4]

Nor do the forward-looking general constitutional claims evade the doctrine. Necessary standing is absent, since the complaint does not show likelihood that Plaintiffs themselves will again be affected by the program in the near future. *See Winslow v. Stevens*, 632 FedAppx 721, 723-24 (3d Cir 2015); *Mosby v. Ligon,* 418 F3d 927, 932-33 (8th Cir 2005).

Finally, Plaintiffs distort *Knick v. Township of Scott*, 139 SCt 2162 (2019), in claiming it vitiates Rooker-Feldman here.[5] As the *Knick* Court explained, at issue was validity of a judge-made rule, created in *Williamson Co. Reg. Planning Comm'n v. Hamilton Bank*, 473 US 172 (1985), that no federal taking occurs until one seeks compensation under state procedures. 139 SCt at 2169. *Knick* rejected that principle and overruled the precedent, explaining that takings plaintiffs should be treated no differently from other Bill of Rights plaintiffs as to obligation to pursue state court grievances. *Id.* at 2169-70. In contrast, *Rooker-Feldman*, advancing different

---

[4] To the limited extent that the suit includes a claim by plaintiff Dorce as to monies collected from him subsequent to judgment (Compl. ¶95), *Rooker-Feldman* might not apply. But resulting damages seem lacking, since the Complaint does not plead that Dorce suffered any related damages and the City indeed returned to him those monies.
[5] Even if one accepts Plaintiffs' point, it would salvage only the takings claim but not any other claim.

policy goals, does not derive from the 1985 *Williamson* case but rather long precedes it, founded upon the 1923 *Rooker* case and the 1983 *Feldman* case. Further, the doctrine is not one created out of thin air by a court, as was the *Williamson* doctrine, but rather represents a construction of a Federal statute – 28 USC §1257. *See ASARCO, Inc. v. Kadish,* 490 US 605, 622 (1989). *Rooker-Feldman* was not at issue in *Knick*, and nothing in the opinion suggests a desire to impugn it. Indeed, on the contrary, the expressly-stated intent to create an equivalence between takings and other Bill of Rights claims as to state court grievance presentation would be undermined by Plaintiffs' construction, which would leave Rooker-Feldman untouched as to non-takings claims but somehow kill it as to takings claims.

Also meritless is Plaintiffs' resistance to comity and the TIA. Comity's reach is state tax administration, not simply state tax collection, *Joseph v. Hyman*, 659 F3d 215, 218-19 (2d Cir 2011), and the former phrase includes whatever measures the taxing entity chooses to encourage payment. *Abuzaid v. Mattox*, 726 F3d 311, 315-16 (2d Cir 2013). Indeed, the doctrine would apply even if measures chosen were, as argued, not authorized by or in violation of state, local, or other law. *See Hoffer v. Ancel*, 32 FedAppx 593, 596-97 (2d Cir 2002); *Piedmont Gardens, LLC v. LeBlanc,* 168 FSupp3d 391, 399 (DConn 2016), *aff'd*, 733 FedAppx 576 (2d Cir 2018). Plainly, the TPT program is a chosen method to administer tax delinquencies and represents a measure the prospect of full execution of which will encourage many taxpayers to pay delinquencies. Similarly, as to the narrower TIA doctrine, the program undoubtedly advances tax collection goals if for no other reason than incentivizing payment of tax debt, and,  more technically, does involve the City gaining control – at least until it chooses to reconvey – of assets satisfying outstanding debts.

Contrary to Plaintiffs' claim that an adequate state court remedy is lacking since only federal courts have jurisdiction over federal constitutional claims, New York State courts have full jurisdiction over Section 1983 claims, *Rosenwasser v. Fordham Univ.,* 772 FedAppx 1, 3 (2d Cir 2019), and constitutional claims *Robinson v. Cusack*, 2007 USDistLEXIS 50073 at *23 (EDNY 2007)). Such jurisdiction would include forward-looking relief if standing were present. Finally, for reasons similar to those presented as to Plaintiffs' parallel *Rooker-Feldman* point, there is no basis to believe that *Knick* sought to erode comity, which long predates *Wiilliamson* (see historical discussion in *Fair Assessment v. McNary*, 545 US 100 (1981)) and the TIA, which involves a statute enacted in 1948 (28 USC §1341), where neither doctrine was at issue or discussed in the opinion and both involve different policy considerations.

## POINT II

### THE   COMPLAINT   FAILS   TO   STATE   A   CLAIM FOR RELIEF

Apart from the pleading deficiencies of the Complaint,[6] the Complaint fails to state a claim for relief.

### A.      Plaintiffs Fail to State a Claim for Violation of Due Process

Plaintiffs' claim that TPT's notice procedures violate due process is contravened by clear constitutional precedent. In *ISCA*, the New York Court of Appeals held the City's *in rem* notice procedures constitutional. *ISCA v. City of  New York*, 77 NY2d 688 (1991) (citing to the standards set forth in *Mullane v Central Hanover Trust Co*., 339 US 306 (1950) and *Mennonite Bd. v Adams*, 462 US 791 (1983)). *See also Weigner v. New York*, 852 F2d 646, 651 (2d Cir 1988) (the *in rem* law's "notice by ordinary mail supplemented by publication and posting was

---

[6] The first, second, third, fourth, fifth, sixth, tenth, eleventh and twelfth causes of action are insufficiently pled. *See* Municipal Defendants' Memorandum in Support of Motion to Dismiss Complaint ("MOL").

reasonably calculated to inform the parties affected");[7] *Nitchie Barrett Realty Corp. v. Biderman*, 704 FSupp 369, 374 (SDNY 1988) (the City's *in rem* notice procedures satisfy the due process requirements enunciated in the Supreme Court's *Mullane* and *Mennonite* decisions).

Plaintiffs' claims that they failed to receive notice are also unavailing because due process does not require actual receipt of notice.[8] *See, e.g., Jones v. Flowers*, 547 US 220, 226 (2006); *Weigner* at 651 ("[d]ue process does not require that notice sent by first-class mail be proven to have been received"). Since receipt of notice is not required, Plaintiffs' allegation that the City fraudulently accepted tax payments after transferring the properties and "tacitly remained silent so they could proceed with their illegal transfer" (Opp. p.18), even if accepted by the Court as true, would be irrelevant to their notice challenge. Moreover, the *in rem* law provides that a presumption of regularity of the City's compliance with notice requirements attaches upon the granting of an *in rem* Judgment of Foreclosure, which presumption becomes conclusive four months from entry of judgment.[9] Ad. Code §§ 11-411 and 412.1(h); *O'Bryan v. Stark*, 77 AD3d 494, 495 (1st Dept 2010) (the presumption of regularity "encompassing compliance by the City with all applicable notice, publication and filing requirements, including its mailing of a notice of foreclosure to plaintiffs, which could not be overcome by their mere denial of receipt of such notice … became conclusive four months after entry of the judgment of foreclosure").

---

[7] *Weigner* was not rejected by *Schroeder* (Opp. p.19). In *Schroeder*, the Supreme Court held that the City's notice requirements of a condemnation proceeding under the NY Water Supply Act – only publication and posting – failed to satisfy due process. *Schroeder v. New York*, 371 US 208, 213-14 (1962). *Schroeder* is clearly distinguishable from the present matter in which the City's *in rem* notice requirements under the Ad. Code – posting, publication and mailing – satisfy due process.

[8] The conclusion in *Brooklyn 53* that *Nelson* is inapplicable because the owner lacked "actual notice" (Opp. p.18) is incorrect because, as set forth, actual receipt of notice is immaterial. In *ISCA*, the phrase "actual notice" refers to the City's statutory mailing requirements that ensure notice is sent to an interested party (77 NY2d at 700-01). It does not refer to nor require a showing of actual receipt of notice (*id.* at 698) (the *ISCA* plaintiffs did not actually receive notice of foreclosure mailed to them).

[9] Contrary to Plaintiffs' assertions (Opp. p.17), the City alleged compliance with all the applicable provisions of the *in rem* law. *See* Devoe Aff., annexed to the Feller Decl. as Exhibit A, at ¶ 11 (incorporated by reference from the Complaint).

**B.**   **Plaintiffs Fail to State a Claim for Unconstitutional Taking**

      **i.**   **Properties included in *in rem* actions need not be "distressed"**

Contrary to the allegations of the Complaint and the arguments in Plaintiffs' opposition, statutory "distress" is not a criterion for TPT. MOL, pp. 14-15**.** Simply, property is eligible for tax foreclosure as a result of outstanding tax liens. Ad. Code §§ 11-404; 11-405(a); "distress" is not a requirement for inclusion in TPT.

On this point, Plaintiffs rely on *Brooklyn 53*, which the City respectfully avers was incorrectly decided and has been appealed. However, section 11-401.1(b) of the Ad. Code does not provide, as misstated in *Brooklyn 53, \*22,* that a property must be "distressed" to be included in TPT.[10] "Distressed" property may not be included in the City's bulk tax lien sale (Ad. Code § 11-401.1(a)), but the converse is not true -- no provision precludes non-"distressed" properties from TPT.

Supreme Court, Bronx County, rejected the argument of a former owner of foreclosed property that its non-"distressed" property was improperly included in TPT. *See In Rem Foreclosure Action No. 52, Borough of Bronx,* Index No. 40000/2015 ("*Bronx 52*") (Sup. Ct. Bx Co., May 31, 2019; Block 2876, Lot 1, 1600 Nelson Ave.), at p.3 ("tax delinquent properties of the same class on the same block must be included whether or not 'distressed'... . Therefore, pursuant to Ad. Code § 11-405(a) the Property [which was of the same class on the same block] was required to be included in the *Bronx 52* action."). A copy of the *Bronx 52* decision, together with other decisions in *Bronx 52* denying motions of other individual property owners to vacate judgment, is annexed to the Feller Reply Decl. as Exhibit I.

---

[10] Subdivision (b) relieves HPD of the obligation to monitor formerly "distressed" property, as such property, if tax delinquent, can be included in the City's bulk tax lien sale. MOL p.15

### ii.    TPT is not a taking

Plaintiffs' allegation that TPT amounts to an unconstitutional taking as former owners receive no "just compensation" in the form of surplus proceeds[11] has no application in New York City. In reliance on *Nelson v, City,* 352 US 103 (1956), both *In Rem Tax Foreclosure Action No. 47* (Sup. Ct. Richmond Co. 2006) (specifically addressing TPT),[12] and *In re In Rem Foreclosure Action*, 118 Misc2d 1081 (Sup. Ct. Queens Co. 1983), dismissed the same "takings" argument in light of the City's specific provisions affording owners the opportunity to claim "substantial equity."[13] Plaintiffs' attempt to distinguish *Nelson v. City* is unavailing: *Nelson* did, in fact, "decide the precise question presented here" (Opp., p. 22), holding "nothing in the Federal Constitution prevents [foreclosure of tax delinquent real property absent action to redeem or recover surplus] where the record shows adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings." 352 US at 110.

*Brooklyn 53*, the only case that supports Plaintiffs' "just compensation" argument was, here again, wrongly decided. The *Brooklyn 53* court found the City's foreclosure of certain properties improper on the ground that "taking a property far in excess of a tax lien ... without affording ... an opportunity to recover the excess value" violates the Constitution (*Brooklyn 53* at *13, *quoting Queens In Rem,* 1081 Misc2d at 1083), while entirely omitting the crucial succeeding language in *Queens In Rem*, that the provisions of the City's *in rem* tax law *prevents* such a deprivation. The *Queens* court specifically held that the Constitution does not mandate that the City sell property and recoup the surplus on behalf of the foreclosed owner, but rather

---

[11] Plaintiffs' additional claims of violation of the Fifth Amendment based on improper foreclosure for lack of due process and improper foreclosure of non-"distressed" property are addressed on pages 6-7, *supra*.
[12] A copy of the unpublished *In Rem Tax Foreclosure No. 47* is annexed as Exhibit J to the Feller Reply Decl.
[13] Ad. Code § 11-409(d) and former Ad. Code § D17-12.0, addressed in *Nelson,* provide for claims of substantial equity, as described in. MOL p.16.

requires only that a foreclosed owner not be deprived of the surplus *without an opportunity to recoup it. Queens In Rem*, 1081 Misc2d at 1083, *citing Nelson*, 352 US at 110.[14]

*Coleman v. D.C.*, 70 FSupp3d 58 (DC Cir. 2014) is instructive. In *Coleman* the District of Columbia District Court, upon reviewing in detail the "series of Supreme Court decisions applying the Takings Clause to tax sales," confirmed that *Nelson* "makes clear that a Takings Clause violation regarding the retention of equity will not arise when a tax-sale statute provides an avenue of recovery of the surplus equity," and also made clear, in *US v. Lawton*, 110 US 146 (1884), that such a violation *will* arise when state law grants a right to surplus and the government fails to provide it. 70 FSupp3d at 77, 80. The question left open, according to *Coleman,* is: "What if the tax-sale statute does not provide a right to surplus and the statute provides no avenue for recovery of surplus?" 70 FSupp3d at 80. That unresolved question is inapplicable to the City, which provides the opportunity to claim substantial equity.

Nor can "taking" be predicated on any of Plaintiffs' other charges of wrongdoing.[15] The allegation that the City improperly forecloses property for "some nominal" tax debt (Opp., pp. 4-5, 20) is meritless as neither the City nor the State foreclosure law provides a minimum lien amount,[16] though the City's imposes a minimum cut-off of $1000. Nor is there any lien-to-value ratio requirement for State or City *in rem* tax foreclosure. Compl. ¶ 69. Entry into an installment payment agreement to pay outstanding taxes (Compl. ¶¶ 52, 83; Opp., pp. 7-8) only exempts a property from judgment if the agreement is kept current and is not in default. Ad. Code § 11-

---

[14] Accepting as true that Plaintiff Dorce had substantial equity in his property (Compl. ¶ 81), he did not so allege as provided by the City's *in rem* law notwithstanding receiving the process due (*see supra* at pp. 6-7) nor was he thus deprived of any "equity of redemption." (Compl. ¶ 88).

[15] The conglomeration of laws Plaintiffs refer to as the "Judicial Foreclosure Protections" do not, as alleged (Compl. ¶ 35), contain any "foreclosure public auction provisions" for foreclosure of tax liens or a requirement that an owner of foreclosed property receive surplus proceeds or that the municipality receive consideration, nominal or otherwise. Plaintiffs' assertions would implicate the legality of the entire New York State in rem tax foreclosure procedure.

[16] Plaintiffs fail to name the Court of Appeals decision (Opp. p.6) that it alleges prohibits "takings" for *de minimis* amounts.

409(g). That Plaintiff Dorce's property might have been "free and clear of mortgage debt" (Compl. ¶ 81; Opp., p. 8) is irrelevant to tax foreclosure.

Finally, no "public use" (Opp., p. 22) is necessary for tax enforcement, which is not, as shown, a "taking." Similarly, *Knick v. Township of Scott*, *supra*, 139 SCt 2162, addresses "takings," and not tax foreclosure, and has no application here.**[17]**

## C.    Plaintiffs Fail to State a Claim for Lack of Equal Protection

Plaintiffs cannot maintain what appears to be an equal protection claim pursuant to the theory of selective treatment. Plaintiffs fail to offer any plausible scenario where the City included their properties in TPT actions not because of the qualifying tax arrears but rather because of an intention to discriminate based on their race. Plaintiffs merely use phrases such as "civil rights violation," "protected racial characteristics" and "rational basis review" without any context or plausible facts in support of their vague claim. Plaintiffs also fail to credibly allege that they were selectively treated compared with other similarly-situated property owners. *See Albert v. Carovano*, 851 F2d 561, 572 (2d Cir 1988) ("The naked allegation that [the defendants] selectively enforced the … rules … is too conclusory to survive a motion to dismiss.") (brackets and quotation marks omitted). Instead, Plaintiffs set forth a convoluted hypothetical (Opp., p.24) about properties which could be included in TPT based on their proximity to "distressed" properties that are more likely to be in a community of color, which hypothetical is immaterial because, as shown above, a property need not be "distressed" to be included in TPT.[18]

---

[17] *See also Industrial Bank of Washington v. Sheve*, 307 FSupp 98, 99 (D.DC 1969) (Tax foreclosure is "not a government taking for which just compensation must be paid after judicial proceedings."); *Golden v. Mercer County Tax Claim Bureau*, 190 BR 52, 57 (WD Pa 1995) (Foreclosure of tax liens is "nothing more than a step in the foreclosure of a lien imposed under the taxing power to collect the fair share from those who have failed to meet their [public] burden" and is not a taking); *Anderson v. US.*, 2019 WL 2552938 (Fed Cl 2019) (It is "well established that the government's lawful exercise of its taxing powers is not a taking.")

[18] Plaintiffs unsuccessfully attempt to distinguish the present action from *Nelson* by incorrectly using the statutory "distressed" criteria, in reliance on *Brooklyn 53*. In addition, Plaintiffs fail to persuasively distinguish the New York decisions denying claims alleging "intentional discrimination" (*Levy v. New York*, 726 FSupp 1446, 1453 (SDNY

Moreover, the very type of selective treatment that Plaintiffs allege is prevented by the *in rem* law's requirement that the City include every eligible property in the statutorily-prescribed geographic area. In support of its goal of preventing municipalities from picking-and-choosing properties, the New York Legislature, in a 1948 amendment to the *in rem* law, noted that "this provision requiring foreclosure on a section or ward basis and including all parcels therein would be the elimination of favoritism by the foreclosing official." *See* N.Y.C. Tax Lien Foreclosure, A.I.1481, Pr.l514, in N.Y. Leg. Serv., New York State Legislative Annual 179-82 (1948), a copy of which is annexed to the Feller Reply Decl. as Exhibit K. TPT similarly compels inclusion of all eligible properties of the same class on the selected blocks. Ad. Code § 11-405(a).

**D.      Plaintiffs Fail to State a Claim for Violation of the Municipal Home Rule Law**

Plaintiffs appear to cite *Baldwin Union Free Sch. Dist. v. Cty. of Nassau*, 22 NY3d 606 (2014) and *Kamhi v. Town of Yorktown*, 77 NY2d 423 (1989) for the broad proposition that a local law is invalid where a local government lacks the authority to pass such a law, which is not the case here. As illustrated previously, Local Law 37 was authorized by Real Prop. Tax Law § 1104(2), as well as by N.Y. Const., art. IX, §2(c)(8) and N.Y. Mun. Home Rule Law § 10(1)(ii)(a)(9). MOL, pp. 22-23.

**E.      Plaintiffs Fail to State a Claim for Violation of NY General Business Law § 349**

A claim pursuant to GBL § 349 "must be predicated on a deceptive act or practice that is 'consumer oriented.'" *Gaidon v. Guardian Life* Ins. *Co. of Am.*, 94 NY2d 330, 344 (1999)). "[A]

---

1989)) and "adverse treatment based on impermissible conditions" (*Miner v. Clinton County*, 541 F3d 464, 474 (2d Cir. 2008)) in the context of *in rem* actions. Instead, Plaintiffs cite wholly inapposite cases from which no reasonable analogy can be made, selectively quoting phrases from *Weissman v. Evans*, 438 NE2d 397 (NY 1982) (equal protection violations in judges' salary disparities between counties) and *Pyke v. Cuomo*, 567 F3d 74 (2d Cir 2009) (Mohawk Indians alleging equal protection violations by state officials' roadblocks outside their reservation) to somehow link "geographic distinctions" to equal protection claims, in support of their misguided "distressed" property hypothetical.

consumer, for § 349 purposes, is one 'who purchase[s] goods and services for personal, family or household use.'" *Exxonmobil Inter-America v. Advanced Info. Eng'g Servs.*, 328 FSupp2d 443, 448 (SDNY 2004) (*citing Sheth v. N.Y. Life Ins. Co.*, 273 AD2d 72 (1st Dept 2000)). As shown in the City's initial brief, tax collection, not a consumer-oriented transaction, is not subject to a § 349 claim. MOL, pp. 23-24.

Moreover, the statute, by its plain language, permits claims against only a "person, firm, corporation or association." GBL § 349(b). Accordingly, the statute cannot be used to sue government entities acting in their governmental capacities. "[S]ection 349…does not apply to a state administrative agency performing governmental functions." *Walton v. N.Y. State Dep't of Corr. Servs.*, 25 AD3d 999, 1002 (3d Dept 2006), *aff'd as modified*, 8 NY3d 186 (2007). *See also Sentlowitz v. Cardinal Development, LLC*, 63 AD3d 1137 (2d Dept 2009) (a public body acting in accordance with its governmental mandate cannot be held liable under § 349).

## <u>CONCLUSION</u>

Accordingly, the Municipal Defendants respectfully request that the Court grant their motion to dismiss the Complaint in its entirety and grant such other and further relief as the Court may deem just and proper.

Dated:     New York, New York
           September 20, 2019

                              GEORGIA PESTANA
                              Acting Corporation Counsel of the
                                City of New York
                              *Attorney for Municipal Defendants*
                              100 Church Street
                              New York, New York 10007


                              By:___/s/_____
                                   Andrea B. Feller
                                   Assistant Corporation Counsel

13