**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
─────────────────────────────────

**MCCONNELL DORCE, ET AL.,**

                             **Plaintiffs,**          **19-cv-2216 (JGK)**

            **- against -**                      **OPINION AND ORDER**

**CITY OF NEW YORK, ET AL.,**

                             **Defendants.**
─────────────────────────────────

**JOHN G. KOELTL, District Judge:**

The plaintiffs, McConnell Dorce, Cecilia Jones, and
Sherlivia Thomas-Murchison,[1] bring this putative class action
against the defendants, the City of New York and Maria Torres-
Springer, Commissioner of the New York City Department of
Housing Preservation and Development (the "City Defendants"),
the Neighborhood Restore Housing Development Fund Co. Inc.
("Neighborhood Restore"), and the BSDC Kings Covenant Housing
Development Fund Company, Inc. ("Bridge Street").[2] The plaintiffs
claim that the City Defendants used <u>in rem</u> proceedings to seize
buildings for the non-payment of taxes and transferred ownership
of the property to Neighborhood Restore or Bridge Street in
violation of the plaintiffs' rights under the United States

───────────────────
[1] The plaintiffs advise that Sherlivia Thomas-Murchison's name was
inadvertently spelled incorrectly, as "Sherlivia Thomas-Murchinson," in the
complaint. <u>See</u> Mem. Opp'n at 1.
[2] The complaint was also brought against Jacques Jiha, Commissioner of the New
York City Department of Finance, John Does #1-#10, and Jane Does #1-#10. The
docket sheet reflects that Jiha was never served with the complaint and the
John and Jane Does were never identified.

Constitution, the New York State Constitution, and various New York State statutes. Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the defendants move to dismiss the plaintiffs' claims for lack of subject matter jurisdiction and for failure to state a claim.[3] For the reasons explained below, the motions are **granted.**

## I.

When presented with motions under both Federal Rule of Civil Procedure 12(b)(1) to dismiss for lack of subject matter jurisdiction and Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the first issue is whether the Court has the subject matter jurisdiction necessary to consider the merits of the action. See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990); Abrahams v. App. Div. of the Sup. Ct., 473 F. Supp. 2d 550, 554 (S.D.N.Y. 2007), aff'd on other grounds, 311 F. App'x 474 (2d Cir. 2009); see also S.E.C. v. Rorech, 673 F. Supp. 2d 217, 220–21 (S.D.N.Y. 2009).

To prevail against a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence.

---

[3] The City Defendants moved to dismiss only under Rule 12(b)(6), but also argued that this Court lacks subject matter jurisdiction over the plaintiffs' claims. A motion that argues that the Court lacks subject matter jurisdiction to hear the claims is analyzed as a motion pursuant to Rule 12(b)(1).

Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inferences in the plaintiff's favor. Id.; Graubart v. Jazz Images, Inc., No. 02-CV-4645, 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006). Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. See APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). In so doing, the Court is guided by that body of decisional law that has developed under Federal Rule of Civil Procedure 56. Kamen, 791 F.2d at 1011; see also McKevitt v. Mueller, 689 F. Supp. 2d 661, 664-65 (S.D.N.Y. 2010); Rorech, 673 F. Supp. 2d at 220-21; Graham v. Select Portfolio Servicing, Inc., 156 F. Supp. 3d 491, 499-500 (S.D.N.Y. 2016).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to

weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

**II.**

The following facts are taken from the Complaint and are undisputed unless otherwise noted.

In New York State, after a certain period, unpaid property taxes become "tax liens," upon which "tax districts" may collect. Compl. ¶ 5.[4] In 1939, the New York State Legislature passed a law ("Tax Law § 165"), which granted tax districts the power to collect tax liens using in rem proceedings. Id. at ¶ 4. Tax Law § 165 is presently codified as Section 1120 of the Real Property Tax Law of New York Consolidated Laws. Id. In 1948, the City enacted its own in rem foreclosure provisions to collect on tax liens within New York City. Id. at ¶ 6. In 1996, the New York City Council enacted Local Law No. 37, which

---

[4] A "tax district," as described in the New York Real Property Tax Law includes "a county, city, town, village, school district or special district, having the power to levy, assess and enforce the collection of taxes, special ad valorem levies, special assessments or other charges imposed upon real property by or on behalf of a municipal corporation or special district." N.Y. Real Prop. Tax Law § 910.

created the Third Party Transfer Program ("TPT Program"). Id. at
¶ 7. The purposes of Local Law 37 were to improve tax collection
and to address more effectively the risk of abandonment of New
York City's housing stock. Id. at ¶ 25. Under the TPT Program,
when the City obtains a judgment of foreclosure and sale, the
City transfers ownership of the property to organizations that
are authorized by the New York City Housing, Preservation, and
Development Corporation to participate in the TPT Program. Id.
at ¶ 32. Under Section 11-412.1(c) of the Administrative Code,
these third parties may receive title of the property in fee
simple absolute after the expiration of a statutory four-month
redemption period following the award of judgment. Id. The
City's authority to use in rem foreclosure proceedings to
collect tax liens and to administer the TPT Program is currently
codified in Title 11, Chapter 4 of the Administrative Code of
the City of New York. Id. at ¶ 6; Admin. Code § 11-401 et seq.

The plaintiffs allege that in recent years, the City has
used its in rem powers and the TPT Program to deprive owners of
their property rights in order to advance the TPT Program. They
argue that the City has commenced in rem proceedings under
Administrative Code Section 11-404(a) against properties
targeted for seizure and sought judgments of foreclosure. Id. at
¶ 31. Upon obtaining a judgement of foreclosure, the City has
transferred ownership of the properties under the TPT Program,

to a TPT Program partner ("TPT partner") like the defendants Neighborhood Restore and Bridge Street. Id. at ¶ 32. In exchange for this transfer of ownership, the TPT partner paid the City a nominal amount and made no payment towards the underlying tax lien for which the City initiated the in rem proceeding. Id. at ¶ 33. Accordingly, the plaintiffs argue that the City Defendants use Title 11, Chapter 4 of the Administrative Code for purposes other than to collect tax liens.

The plaintiff, McConnell Dorce, was the owner of the property located at 373 Rockaway Boulevard, Brooklyn, New York (Kings County Block #4672, Lot #56). Id. at ¶ 79. Dorce had owned the property free and clear of any mortgage since 2012. Id. at ¶ 80. Sometime after 2012, Dorce incurred water and sewer charges for the property and entered into a written installment agreement with the City to pay the outstanding charges. Id. at ¶ 83. Dorce made each of the installment payments at the City's Department of Environmental Protection's office in Brooklyn. Id. Following the entry of a foreclosure judgment in the in rem proceeding the City brought against his property-a proceeding that Dorce was unaware of-Dorce tendered payments to the City and the City accepted those payments without notifying Dorce that his property had been foreclosed upon. Id. at ¶¶ 84, 95. On or about September 24, 2018, Dorce learned that his property had been transferred to one of the City's TPT partners as a result

of an in rem proceeding commenced by the City around July 2015. Id. at ¶ 84. The proceeding against Dorce's property, located at Block 4672, Lot 56, was entitled In Rem Tax Foreclosure No. 53, Borough of Brooklyn, Index No. 8700/2015 (Sup. Ct. Nov. 27, 2017). Feller Decl., Dkt. No 32-2. A final judgment was granted to the City of New York with respect to Dorce's property in December, 2017. Id.

The plaintiff, Cecilia Jones, owned shares in a housing development fund corporation (HDFC), located at 1197 Dean Street, Brooklyn, New York 11216, also known as 585 Nostrand Avenue (Kings County Block #1207, Lot #72). Id. at ¶ 96. An HDFC is a type of co-operative corporation organized under New York State Housing Finance Law to improve housing and homeownership and keep units affordable to working families. Id. at ¶ 20. Jones owned shares in the HDFC and lived in an apartment unit pursuant to a proprietary lease appurtenant to her shares in the HDFC. Id. at ¶ 96. Shareholders paid maintenance fees to the HDFC, which used those fees to pay real estate taxes and water and sewage charges assessed by the City. Id. at ¶ 98. Around October, 2017, Jones learned that the ownership of the property had been transferred from the HDFC to Bridge Street after the City had filed an in rem proceeding. Id. at ¶ 99. Jones was subsequently converted into a renter of her apartment. Id. at ¶ 100. The proceeding against Jones's property, located at Block

1207, Lot 72, was entitled <u>In Rem Tax Foreclosure No. 51,</u>
<u>Borough of Brooklyn</u>, Index No. 8700/2007 (Sup. Ct. Oct. 26,
2011). Feller Decl., Dkt. No 32-2. A final judgment was granted
to the City of New York with respect to Jones's property in
October, 2011. <u>Id.</u>

The plaintiff, Sherlivia Thomas-Murchison, owned shares in
a HDFC located at 248 Madison Dean Street, Brooklyn, New York
(Kings County Block #1823, Lot #29). <u>Id.</u> at ¶ 113. Her extended
family lived in an apartment unit pursuant to a proprietary
lease appurtenant to her shares in the HDFC. <u>Id.</u> Thomas-
Murchison's parents also owned shares in an HDFC that owned
property at 248 Madison Dean Street, and Thomas-Murchison lived
in an apartment unit pursuant to a proprietary lease appurtenant
to her parents' shares in the HDFC; Thomas-Murchison lived with
her parents in their apartment before they passed away. <u>Id.</u> at
¶ 115. Shareholders paid maintenance fees to the HDFC, which
used those fees to pay real estate taxes and water and sewage
charges assessed by the City. <u>Id.</u> at ¶ 116. Around April, 2016,
Thomas-Murchison learned that the ownership of the property had
been transferred from the HDFC to Bridge Street after the City
had initiated an <u>in rem</u> proceeding. <u>Id.</u> at ¶ 117. Thomas-
Murchison was subsequently converted into a renter of her
apartment. <u>Id.</u> at ¶ 118. The proceeding against Thomas-
Murchison's property, located at Block 1823, Lot 29, was

entitled In Rem Tax Foreclosure No. 51, Borough of Brooklyn,
Index No. 8700/2007 (Sup. Ct. Oct. 26, 2011). Feller Decl., Dkt.
No 32-2. A final judgment was granted to the City of New York
with respect to Thomas-Murchison's property in October, 2011.
Id.

All three plaintiffs allege that they did not receive
actual or constructive notice of the in rem proceedings against
their properties. Id. at ¶¶ 85, 102, 120. All plaintiffs also
allege that their properties were not "distressed," as defined
under the New York City Administrative Code, Compl. ¶¶ 86, 103,
121, and that they were deprived of an opportunity to redeem the
property by exercising their owner's right to the "equity of
redemption," id. at ¶¶ 88, 105, 123. Each plaintiff alleges that
his or her property was transferred for nominal consideration by
the City to a TPT partner, which include Neighborhood Restore
and Bridge Street, and that the property was taken for the
public purpose of preserving affordable housing. Id. at ¶¶ 89-
92, 106-10, 124-27. None of the plaintiffs received any
compensation for their property. Id. at ¶¶ 93, 110, 128.

The plaintiffs bring claims against the defendants under
the United States and New York State Constitutions. First, the
plaintiffs bring an as-applied constitutional challenge that the
defendants' actions (a) violated due process because the
plaintiffs did not have notice of the in rem proceedings against

the plaintiffs' property; (b) constituted unconstitutional takings without just compensation by depriving the plaintiffs of substantial equity in their property; and (c) violated equal protection, by disproportionately affecting property owners in communities of color.[5] Second, the plaintiffs allege that the notice provisions of the TPT Program, as codified in the Administrative Code, are facially unconstitutional because the Code falls short of what is required by constitutional due process. The plaintiffs also bring claims under New York State law on the ground that the City's use of in rem proceedings constitutes ultra vires activity in violation of Article II, Section 10-11 of the New York State Municipal Home Rule Law and that the defendants engaged in deceptive practices in violation of New York General Business Law Section 349.

The plaintiffs seek prospective equitable relief, in the form of (1) a declaratory judgment that the TPT Program and portions of the New York City Administrative Code are unconstitutional, that the defendants may no longer initiate in rem proceedings pursuant to the TPT Program, and that Section

---

[5] The plaintiffs also bring a separate cause of action under 28 U.S.C. § 1983. Section 1983 is not a separate cause of action, but rather, is the basis for the plaintiffs' federal constitutional claims. See Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) ("Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source.").

11-401 et seq. of the Administrative Code is unconstitutional;
and (2) an injunction permanently enjoining the defendants from
initiating future in rem proceedings pursuant to the TPT
program. They also seek various types of damages arising from
the defendants' conduct.

The defendants have moved to dismiss[6] for lack of subject
matter jurisdiction and failure to state a claim upon which
relief can be granted.

### III.

### A.

The defendants move to dismiss for lack of jurisdiction
under the Rooker-Feldman doctrine. The Rooker-Feldman doctrine
provides that "federal district courts lack jurisdiction over
suits that are, in substance, appeals from state-court
judgments." Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d
77, 84 (2d Cir. 2005). The doctrine has four requirements:

> (1) the federal-court plaintiff lost in state
> court; (2) the plaintiff complains of injuries
> caused by a state court judgment; (3) the
> plaintiff invites . . . review and rejection
> of that judgment; and (4) the state judgment
> was rendered before the district court
> proceedings commenced.

Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 426
(2d Cir. 2014) (per curiam) (internal quotation marks, citation,

---

[6] Two separate motions to dismiss were filed in this case—the first by the
City Defendants and the second by Neighborhood Restore and Bridge Street.

and alterations omitted). The Court of Appeals for the Second Circuit has classified the first and fourth requirements as procedural and the second and third as substantive. Hoblock, 422 F.3d at 85. The second requirement is the "core requirement" from which the other requirements derive. Id. at 87. "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." Id. at 88.

**1.**

In this case, the procedural requirements are met. The Rooker-Feldman doctrine can apply to federal court plaintiffs who were not personally named as parties in the state court action but who were deprived of a property interest by a judgment in state court. In Riley v. Comm'r of Fin. of City of New York, 618 F. App'x 16, 17 (2d Cir. 2015), the Court of Appeals affirmed the district court's dismissal of an action on Rooker-Feldman grounds, when the plaintiff sought to remove clouds on his claimed title to property and sought a declaratory judgment of free-and-clear ownership. The plaintiff's ownership of the property had already been adjudicated and rejected in a state court foreclosure proceeding, entitled In Rem Tax Foreclosure Action No. 51, Borough of Brooklyn, Index No.

8700/07 (Sup. Ct. Feb. 26, 2013). See also Wik v. City of Rochester, 632 F. App'x 661, 662 (2d Cir. 2015) (affirming district court's dismissal of claims under Rooker-Feldman when state court had adjudicated in rem proceeding described in Wik v. City of Rochester, No. 07-CV-6541, 2008 WL 4911805, at *4 (W.D.N.Y. Nov. 13, 2008)). The federal court plaintiffs-Dorce, Jones, and Thomas-Murchison-were not named in the state court actions, but had property interests in properties that were subject to the state court foreclosure proceedings in In Rem Tax Foreclosure Action No. 51, Borough of Brooklyn, Index No. 8700/2007 and In Rem Tax Foreclosure Action No. 53, Borough of Brooklyn, Index No. 8700/2015.[7] Accordingly, the plaintiffs can be said to have lost in state court for purposes of the first requirement of the Rooker-Feldman doctrine. The fourth factor is also met because the state judgments at issue were entered in or before 2017, before this district court proceeding was commenced in 2019.

---

[7] The foreclosure proceedings in this case resulted in default judgments against the plaintiffs. A party against whom a default judgment is entered is also considered a party that lost in state court. See In re Wilson, 410 F. App'x 409, 410 (2d Cir. 2011) (finding that default foreclosure judgment against the plaintiff satisfied the first prong of Rooker-Feldman).

**2.**

The substantive requirements are met for only some of the plaintiffs' claims.[8]

**a.**

The plaintiffs allege that the defendants violated their rights to procedural due process under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 6 of the New York State Constitution. "A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." Bryant v. New York State Educ. Dep't, 692 F.3d 202, 218 (2d Cir. 2012) (citation omitted). The plaintiffs allege that they lost their interests in their property and that the defendants violated due process by not providing notice of the in rem proceedings

---

[8] The plaintiffs bring claims under the Fifth and Fourteenth Amendments of the United States Constitution, as well as Article I, Sections 6 and 7 of the New York State Constitution. The Court's analysis applies equally to federal and state constitutional claims. The due process guarantees under both constitutions are coextensive. See Coakley v. Jaffe, 49 F. Supp. 2d 615, 628 (S.D.N.Y. 1999), abrogated on other grounds by Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268 (2d Cir. 1999); Febres v. City of New York, 238 F.R.D. 377, 392 (S.D.N.Y. 2006) (collecting cases). The New York Court of Appeals has considered federal and state takings claims together. See Seawall Assocs. v. City of New York, 74 N.Y.2d 92, 115-16 & n.15 (1989) (noting, however, that it was not necessary to decide "the extent to which, if at all, the protections of the 'Takings Clause' of the New York State Constitution differ from those under the Federal Constitution."); see also Singh v. Joshi, 201 F. Supp. 3d 245, 249 n.2 (E.D.N.Y. 2016) (federal takings jurisprudence applies to claims under the New York State Constitution). In any event, as discussed below, the Court declines to exercise supplemental jurisdiction over any state law claims.

against the plaintiffs' properties as required by the United
States and New York State Constitutions.

**i.**

To the extent that the plaintiffs seek relief in the form
of damages equal to their property values, the substantive
requirements of Rooker-Feldman are met.[9] While the plaintiffs
contend that they seek monetary damages only for violations of
their constitutional rights and seek prospective equitable
relief, this "artful pleading is insufficient to bypass Rooker-
Feldman," Roberts v. Perez, No. 13-CV-5612, 2014 WL 3883418, at
*3 (S.D.N.Y. Aug. 7, 2014) (citing Hoblock, 422 F.3d at 88),
because it is apparent that such alleged monetary damages derive
from the plaintiffs' loss of their property. Thus, the second
requirement, that the injuries complained of were caused by a
state court judgment, is satisfied. See Charles v. Levitt, 716
F. App'x. 18, 21-22 (2d Cir. 2017) (rejecting plaintiffs' claims
of fraud, perjury, and bribery when actual injury complained of
was tied to the alleged value of property lost from state court
judgment). Absent the state court judgment, the plaintiffs would
not have been deprived of their property and the injury-their

---

[9] The plaintiffs claim that the sixty-six properties that the City received
judgment for in rem foreclosure cases in 2017 were worth in excess of sixty
million dollars. Compl. ¶ 65. They allege that the City "had actual knowledge
that it was not providing notice reasonably calculated to inform property
owners of the proceeding" and that "Defendants' conduct has caused financial
harm to Plaintiffs," who have "accordingly been damaged in the minimal sum of
$66,000,000.00." Id. at ¶¶ 145, 148-49, 152, 155-56.

loss of property-for which they seek monetary relief, was caused
by the state court judgment of foreclosure. Further, the fact
that a plaintiff may seek prospective equitable relief does not
mean that a plaintiff's claims do not stem from the injury
caused by the state court judgment. See Rotering v. Amodeo, No.
07-4357-CV, 2009 WL 579138, at *2 (2d Cir. Mar. 6, 2009)
(summary order) (suit seeking declaratory and prospective
injunctive relief that state law was unconstitutional still
complained of injury caused by state court judgment).

Because the plaintiffs' injuries arise from the state
court's judgment of foreclosure, the plaintiffs' claims amount
to a request that this Court review and reject the state court's
judgment. In the procedural due process context, "actual damages
are based on the compensation for injuries that resulted from
the plaintiff's receipt of deficient process." Warren v. Pataki,
823 F.3d 125, 143 (2d Cir. 2016). When considering whether to
award compensatory damages, "courts must determine whether a
different outcome would have been obtained had adequate
procedural protections been given. If the outcome would not have
been different, the plaintiff is presumptively entitled to no
more than nominal damages." Id. If the plaintiffs sought
compensatory damages in the minimal amount of $66 million, this
Court would have to determine if the plaintiffs had been given
proper notice and whether the outcome of the proceeding would

16

have been different. This would require the Court to adjudicate "the validity of the foreclosure," which was "already fully adjudicated in the state-court proceeding." Gonzalez v. Deutsche Bank Nat. Tr. Co., 632 F. App'x 32, 33-34 (2d Cir. 2016).

### ii.

To the extent that the plaintiffs seek only nominal damages, and claim that their injury was the deprivation of process to which they were entitled, their procedural due process claims are not barred by Rooker-Feldman. The Supreme Court has recognized in the context of a Section 1983 claim that the right to procedural due process is "absolute" and that "the denial of procedural due process [is] actionable for nominal damages without proof of actual injury." Carey v. Piphus, 435 U.S. 247, 266 (1978).

The plaintiffs correctly argue that Rooker-Feldman does not bar their procedural due process claims for nominal damages because their injuries were caused by the City's failure to provide notice of the action when the City commenced the in rem proceedings, rather than by the state court judgments themselves. See Brody v. Vill. of Port Chester, No. 00-CV-7481, 2007 WL 704002, at *5 (S.D.N.Y. Mar. 7, 2007) (holding that due process claims alleging lack of notice of condemnation proceedings not barred by Rooker-Feldman).

**b.**

The plaintiffs allege that the defendants took their property without just compensation in violation of the Fifth Amendment and Article I, Section 7 of the New York State Constitution.

**i.**

To the extent that the plaintiffs claim that the taking is unconstitutional because the City proceeded against properties that were not distressed and against properties in parcels smaller than a "block" in violation of the Administrative Code, the plaintiffs' claims would be barred by Rooker-Feldman. The claims would require the Court to analyze whether the in rem proceeding was initiated properly under the Administrative Code's provisions and would invite the Court to determine whether the state court's entry of judgment was valid. Further, the plaintiffs' damages premised on these allegedly improper procedures ultimately arise from the loss of property resulting from the state court judgments of foreclosure. Although claims of damages directly caused by a defendant's alleged misconduct are not barred, claims of damages caused by a state court judgment that the misconduct allegedly produced are barred by Rooker-Feldman. See Charles v. Levitt, No. 15-CV-9334, 2016 WL 3982514, at *4 (S.D.N.Y. July 21, 2016), aff'd and remanded, 716 F. App'x 18 (2d Cir. 2017); see also Vossbrinck, 773 F.3d at 427

(<u>Rooker-Feldman</u> bars even plaintiff's claim that state court foreclosure judgment was obtained fraudulently).

**ii.**

On the other hand, to the extent that the plaintiffs claim constitutional violations based on not receiving compensation for their property that was allegedly taken for public use, the plaintiffs' claims would not be barred by <u>Rooker-Feldman</u>. The plaintiffs allege that the <u>in rem</u> foreclosure proceedings extinguished all rights that the plaintiffs had in their properties, including rights of redemption and methods to pursue surplus value, and thus the plaintiffs did not receive compensation for the substantial equity they had in their properties.

The parties disagree on whether the City's actions in this case constitute a taking.[10] It is not necessary to decide whether a taking occurred because the plaintiffs' claims that they were

---

[10] The defendants argue that the City's use of <u>in rem</u> proceedings to enforce taxes is not a taking for public use. <u>See</u> <u>Nelson v. City of New York</u>, 352 U.S. 103, 110 (1956) (not unconstitutional for City to foreclose on real property for delinquent taxes and retain entire proceeds in absence of timely action to redeem or recover surplus); <u>In re Murphy</u>, 331 B.R. 107, 128 (Bankr. S.D.N.Y. 2005) (state tax forfeiture statute did not violate Fifth Amendment when taxing authority took possession of property to satisfy tax lien) (collecting cases). However, New York state courts have held that "a taking of property of a value far in excess of a tax lien in satisfaction of the lien without affording the owner an opportunity to recover the excess value would constitute a violation of constitutional rights." <u>Matter of In Rem Tax Foreclosure Action No. 37</u>, 462 N.Y.S.2d 113, 114 (Sup. Ct. 1983). At least one New York State Supreme Court judge has found that the City's use of in rem proceedings may, in some factual circumstances, constitute a taking. <u>In Rem Tax Foreclosure Action No. 53 Borough of Brooklyn</u>, 114 N.Y.S.3d 581, 2019 WL 1431423, at *13, *23, *29 (Sup. Ct. 2019) (hereinafter "<u>Brooklyn 53</u>").

denied the right to receive compensation do not require the
Court to review and reject the state court judgment.

The City argues that under Administrative Code Section 11-
412.1(d), any person claiming to have an interest in the
property at issue has the right to have the foreclosure canceled
within four months after the entry of a foreclosure judgment by
repaying all delinquent taxes with interest and other legal
charges or by entering into an installment agreement. See Admin.
Code § 11-412.1. Furthermore, a defendant who timely serves a
verified answer alleging substantial equity over the city's lien
for taxes "may demand . . . to have the property sold with all
taxes and interest to be paid out of the proceeds of such sale."
Admin. Code § 11-409(d). After the four-month mandatory
redemption period, but not more than eight months after the date
of the final judgment, the commissioner may execute a deed, upon
which the city or third party "shall be seized of an estate in
fee simple absolute in such land and all persons . . . shall be
barred and forever foreclosed of all such right, title,
interest, claim, lien or equity of redemption[.]" Admin. Code
§ 11-412.1(c). The City argues that under these provisions, the
plaintiffs had ample opportunity to exercise their rights of
redemption or to request a surplus value sale, before the

commissioner could execute the deed transferring title.[11] In contrast, the plaintiffs argue that the Administrative Code provides no method by which a former owner of property may claim surplus value. Compl. ¶ 39.

Whether the provisions of the Administrative Code are constitutional and allow a prior owner to receive compensation after a state court has entered a judgment of foreclosure, either through any right of redemption or access to surplus value, does not require the Court to reject the state court judgment. See Nelson, 352 U.S. at 110 (analyzing the constitutionality of the Administrative Code's provisions to determine whether a plaintiff had available avenues of compensation, without reliance on the state court's entry of a foreclosure judgment); Feller Decl., Dkt. No. 52-3, In Rem Tax

---

[11] The plaintiffs argue that the Supreme Court's recent decision in Knick v. Township of Scott, PA, 139 S. Ct. 2162 (2019), does not require an individual to exhaust state court remedies before pursuing an action in federal court, and thus the plaintiffs were not required to seek compensation in state court before bringing claims in federal court. In Knick, the Supreme Court held that a property owner "has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." Id. at 2170. Knick overruled a prior Supreme Court decision in Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194-95 (1985), which had required that a property owner exhaust state remedies before pursuing a violation of the takings clause in federal court; Williamson's requirement had created a catch-22 for plaintiffs, who were required to exhaust state court remedies but had their subsequent Section 1983 claims barred from federal court by preclusion. Knick, 139 S. Ct. at 2167. In Knick, the township used its eminent domain authority to initiate proceedings to acquire title to property rather than the tax foreclosure proceedings at issue in this case. Knick is not directly relevant in this case because it concerned the issue of whether exhaustion was required before bringing a takings claim in federal court. It did not address the issues of Rooker-Feldman, the Tax Injunction Act, or comity.

Foreclosure No. 47, 2000/2002 (Sup. Ct. Dec. 7, 2006) (same).

Accordingly, the third requirement of Rooker-Feldman is not met

and the plaintiffs' takings claims are not barred by Rooker-

Feldman.

c.

The plaintiffs also allege that the defendants violated

their right to equal protection under the Fourteenth Amendment.

In their opposition, the plaintiffs clarify that the equal

protection violations they bring are premised on a selective

enforcement theory. To state an equal protection claim based on

the theory of selective enforcement, a plaintiff must

demonstrate:

> (1) the person, compared with others similarly
> situated, was selectively treated, and (2) the
> selective treatment was motivated by an
> intention to discriminate on the basis of
> impermissible considerations, such as race or
> religion, to punish or inhibit the exercise of
> constitutional rights, or by a malicious or
> bad faith intent to injure the person.

Hu v. City of New York, 927 F.3d 81, 91 (2d Cir. 2019)

(citations omitted). The plaintiffs' equal protection claims

premised on a theory of selective enforcement would not be

barred by Rooker-Feldman because the injuries allegedly stem

from the City's policy of initiating in rem proceedings

disproportionately against property owners in communities of

color; these claims would not be barred because they arise

before the state court judgments and are based on the initiation
of the foreclosure proceedings rather than the judgments of
foreclosure.

**d.**

The plaintiffs' facial challenge to the notice provisions
of the Administrative Code is not barred by Rooker-Feldman
because the plaintiffs seek prospective relief that would not
require this Court to overturn the state court judgments.
However, the plaintiffs have failed adequately to allege
standing. "To obtain prospective relief, such as a declaratory
judgment or an injunction, a plaintiff . . . must demonstrate a
certainly impending future injury. In establishing a certainly
impending future injury, a plaintiff cannot rely solely on past
injuries; rather, the plaintiff must establish how he or she
will be injured prospectively and that the injury would be
prevented by the equitable relief sought." Marcavage v. City of
N.Y., 689 F.3d 98, 103 (2d Cir. 2012) (internal quotation marks
and citations omitted). A plaintiff may not seek declaratory
relief aimed at past conduct. See H.B. v. Byram Hills Cent. Sch.
Dist., 648 F. App'x 122, 125 (2d Cir. 2016) (noting that past
conduct is an "impermissible target" of declaratory relief). The
plaintiffs argue that Mayor de Blasio has stated an intent to
expand the TPT Program to seize over forty additional buildings
each year. Compl. ¶ 49. However, the plaintiffs have not alleged

that they have other property interests that would be targeted by future _in rem_ proceedings. The prospect that their hypothetical property would be the subject of future _in rem_ proceedings pursuant to a program that the City aims to expand to seize an additional 40 properties out of all residential buildings in New York City, is too remote to show a certainly impending future injury. The plaintiffs have thus failed to show that the plaintiffs will face a "credible threat" of another _in rem_ proceeding under the TPT Program and do not have standing to seek prospective declaratory and injunctive relief.

**B.**

All claims, including those that are not barred by _Rooker-Feldman,_ are barred by the Tax Injunction Act ("TIA") and the doctrine of comity. The TIA provides that a district court "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA "may be best understood as but a partial codification of the federal reluctance to interfere with state taxation." _Levin v. Commerce Energy, Inc._, 560 U.S. 413, 424 (2010) (internal quotation marks and citation omitted). The TIA is "rooted in principles of federalism and in recognition of a state's need to administer its own fiscal operations, and was written primarily to limit federal-court interference with local

24

tax matters." Bernard v. Vill. of Spring Valley, N.Y., 30 F.3d 294, 297 (2d Cir. 1994).

The doctrine of comity "instructs federal courts to refrain from granting relief to taxpayer-plaintiffs in suits that contest taxpayer liability in a manner that interferes with a state's administration of its tax system." Abuzaid v. Mattox, 726 F.3d 311, 315 (2d Cir. 2013). "More embracive than the TIA, the comity doctrine applicable in state taxation cases restrains federal courts from entertaining claims for relief that risk disrupting state tax administration." Levin, 560 U.S. at 417.[12] "While it is the Tax Injunction Act that prevents federal courts from giving injunctive relief or declaratory relief as long as there is a plain, speedy and efficient remedy in state court, it is the principle of comity that prevents a taxpayer from seeking damages in a § 1983 action if a plain, adequate, and complete remedy may be had in state court." Long Island Lighting Co. v. Town of Brookhaven, 889 F.2d 428, 431 (2d Cir. 1989) (citations omitted). Under both the TIA and the comity doctrine, a state provides an adequate remedy if there is an avenue available for a full hearing and judicial determination at which a party may raise all constitutional objections to the tax. See id.

---

[12] The Court of Appeals for the Second Circuit has analyzed the TIA as a statute that bars subject matter jurisdiction. Andresakis v. Conn., 122 F.3d 1055 (2d Cir. 1997) (unpublished table opinion). In contrast, the comity doctrine "counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction." Levin, 560 U.S. at 421 (emphasis added).

A ruling from this Court enjoining the City's use of its discretion to initiate its foreclosure actions and to dispose of properties foreclosed on would violate the TIA, which "bars federal courts from interfering with state tax collection" and "applies equally to enforcement measures such as [a] foreclosure action." Saglioccolo v. New York City Mun. Corp. Dep't of Fin. Bureau of Tax Collection, 101 F.3d 108 (2d Cir. 1996) (unpublished table opinion); see also Andresakis, 122 F.3d 1055 ("The Tax Injunction Act precludes the district court from interfering in local tax matters such as the foreclosure action[s].").

The plaintiffs admit that the City's authority to use in rem foreclosure proceedings to collect tax liens is codified in Section 11-401 et seq. of the Administrative Code. Title 11 is entitled "Taxation and Finance" and chapter 4 concerns "Tax Lien Foreclosure by Action In Rem." However, the plaintiffs argue that the TIA and doctrine of comity do not apply because the method by which the City uses in rem proceedings does not result in the City collecting taxes; rather, the City transfers title of the property in fee simple absolute for nominal consideration to a TPT partner, who does not make any payment towards the underlying tax lien.

But regardless of whether the in rem proceeding that the City initiates to collect a tax lien always results in the

collection of taxes, the City's authority to initiate such
proceedings is a tool at its disposal to administer its tax
collection system and to attempt to collect upon its tax liens
that are owed. As the plaintiffs admit, the purposes of Local
Law 37 were to improve tax collection and to address more
effectively the risk of abandonment of New York City's housing
stock. The same chapter of the Administrative Code that
establishes the in rem procedure for collecting tax liens also
authorizes the establishment of the TPT Program, which "derives
its authority from the City's discretion to convey eligible tax-
foreclosed property to qualified third parties designated by the
Commissioner of Housing Preservation and Development, pursuant
to Administrative Code § 11-412.1(b)(1)." Brooklyn 53, 2019 WL
1431423 at *2.[13] "The fact that the scheme may also have
significant implications for housing policies does not remove it
from the scope of state actions that are insulated from
challenge in federal court." Kraebel v. New York City Dep't of
Hous. Pres. & Dev., 959 F.2d 395, 400 (2d Cir. 1992) (affirming
dismissal of claims under the TIA and comity when program

---

[13] Section 11-412.1(b)(1) of the Administrative Code provides that a court
"shall make a final judgment authorizing the award of possession of any
parcel of class one or class two real property described in the list of
delinquent taxes . . . and authorizing the commissioner of finance to
prepare, execute and cause to be recorded a deed conveying . . . to a third
party . . . full and complete title to such lands." Admin. Code. § 11-412.1.

provided property tax abatements to landowners who rehabilitated their buildings).

A ruling from this Court about the validity of the plaintiffs' claims would also disrupt the state tax administration process under the comity doctrine, which applies more broadly than the TIA and specifically counsels against providing relief in Section 1983 claims. See Long Island Lighting Co., 889 F.2d at 431. The Court of Appeals for the Second Circuit has held that the comity doctrine bars even claims about assessments brought under the New York Tax Law, regardless of whether such assessments were penalties to encourage payment of taxes rather than taxes themselves, because such assessments "are indisputably part of the state's tax system." Abuzaid, 726 F.3d at 315-16. "[C]omity precludes federal jurisdiction over § 1983 actions against the validity of state tax systems in federal courts." Bernard, 30 F.3d at 297; see also Hoffer v. Ancel, 32 F. App'x 593, 597 (2d Cir. 2002) ("[E]ven actions by state tax officials that have been held in state court to contravene state laws are not cognizable in federal court."). The City's right to use in rem foreclosure proceedings and discretion to choose what to do with properties for which it obtains judgments are necessarily part of the administration of its tax system.

Adjudicating the plaintiffs' claims is inappropriate because adequate state remedies exist for the plaintiffs to pursue their claims. The plaintiffs' contention that their federal constitutional claims can proceed only in this Court is simply incorrect. "[S]tate courts of general jurisdiction have the power to decide cases involving federal constitutional rights where . . . neither the Constitution nor statute withdraws such jurisdiction." Bos. Stock Exch. v. State Tax Comm'n, 429 U.S. 318, 320 n.3 (1977). "The competency of New York state courts to decide questions arising under the federal Constitution, by which we are all governed, is beyond question." Erdmann v. Stevens, 458 F.2d 1205, 1211 (2d Cir. 1972). In addition, "state courts as well as federal courts are entrusted with providing a forum for the vindication of federal rights violated by state or local officials acting under color of state law [pursuant to Section 1983]." Haywood v. Drown, 556 U.S. 729, 735 (2009); see also Rosenwasser v. Fordham Univ., 772 F. App'x 1, 3 (2d Cir. 2019) (noting that state courts have concurrent jurisdiction with federal courts over Section 1983 claims).

Indeed, New York Civil Practice Law and Rule 5015 provides bases upon which a court may give a party relief from a judgment. "In addition to the grounds set forth in CPLR 5015(a), a court has the inherent authority to vacate a default judgment granted by it for sufficient reason and in the interests of

29

substantial justice." Brooklyn 53, 2019 WL 1431423, at *9
(internal quotation marks and citations omitted); see also
Matter of Tax Foreclosure No. 35, 514 N.Y.S.2d 390, 395 (App.
Div. 1987) (discussing court's inherent power to vacate default
judgments of foreclosure). Further, under Administrative Code
Section 11-412.1, individuals may also bring an action to set
aside a deed transfer. See Matter of Tax Foreclosure No. 35, 514
N.Y.S.2d at 395. In these actions, the plaintiffs may raise
constitutional challenges to the foreclosure judgments. Two
recent Supreme Court decisions in New York, entertained motions
to vacate in rem foreclosure judgments and to vacate or enjoin
transfers of title to TPT partners. See Dkt. No. 52-2, In Rem
Tax Foreclosure Action No. 52, No. 40000/2015 (Sup. Ct. May 31,
2019); Brooklyn 53, 2019 WL 1431423. A Section 1983 suit brought
"in state court is a plain, adequate, and complete remedy."
Hoffer, 32 F. App'x at 597; see also Brooklyn 53, 2019 WL
1431423 at *13, *23, *29 (addressing Fifth Amendment Takings
claims under the United States and New York State
Constitutions).

    Accordingly, because adjudicating the plaintiffs' claims
would disrupt the state's system of tax collection and
administration, and because there exist adequate remedies in
state court for the plaintiffs to raise their claims, the Court
does not have subject matter jurisdiction under the TIA and

declines to entertain the plaintiffs' claims under the comity doctrine.

### C.

The Court may decline to exercise jurisdiction over non-federal claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Whether to exercise supplemental jurisdiction "is within the sound discretion of the district court." Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 117 (2d Cir. 2013). "In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998).

Having established that the Court does not have jurisdiction over some of the plaintiffs' claims under Rooker-Feldman and over all of the plaintiffs' claims for declaratory and injunctive relief under the TIA, and would decline to adjudicate the plaintiffs' claims under the comity doctrine if it did have jurisdiction, to the extent there are any state law claims remaining, the Court declines to exercise supplemental jurisdiction over the plaintiffs' state law claims. Accordingly, the plaintiffs' claims arising under the New York State Constitution, Section 10-11 of the New York State Municipal Home Rule Law, and New York General Business Law Section 349 are also dismissed.

**D.**

Because the Court does not have jurisdiction to hear the claims, it is unnecessary to address the defendants' motion to dismiss the claims under Rule 12(b)(6). "[T]he court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." Rhulen Agency, Inc., 896 F.2d at 678 (citations omitted); see also Brown v. Wells Fargo Bank, N.A., 605 F. App'x 58, 59 (2d Cir. 2015) (affirming district court's denial of motion based on 12(b)(1) grounds without considering parties' 12(b)(6) arguments).

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The defendants' motions to dismiss are **granted**. The Clerk is directed to enter Judgment dismissing this case without prejudice. The Clerk is directed to close all pending motions and to close this case.

**SO ORDERED.**


Dated:     **New York, New York**
           **May 16, 2020**

                                   /s/ John G. Koeltl
                               **John G. Koeltl**
                         **United States District Judge**