20-1809-cv
*Dorce v. City of New York*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

────────────────

August Term, 2020

Argued: January 27, 2021      Decided: June 23, 2021

Docket No. 20-1809-cv

────────────────

MCCONNELL DORCE, individually and on behalf of all others similarly situated, CECILIA JONES, individually and on behalf of all others similarly situated, SHERLIVIA THOMAS-MURCHISON, individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants,*

— v. —

CITY OF NEW YORK, NEIGHBORHOOD RESTORE HOUSING DEVELOPMENT FUND CO. INC., BSDC KINGS COVENANT HOUSING DEVELOPMENT FUND COMPANY, INC., MARIA TORRES-SPRINGER, COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT,

*Defendants-Appellees.*[*]

────────────────

────────────────

[*] The Clerk of the Court is respectfully directed to amend the caption as set forth above.

B e f o r e :

LIVINGSTON, *Chief Judge*, CABRANES AND LYNCH, *Circuit Judges*.

————————————

Plaintiffs-Appellants McConnell Dorce, Cecilia Jones and Sherlivia Thomas-Murchison brought this putative class action challenging New York City's Third Party Transfer ("TPT") Program, through which the City initiates in rem foreclosure proceedings against tax-delinquent properties and, following a foreclosure judgment, transfers ownership of the properties to third party partners who develop and manage the properties. Plaintiffs, whose properties were transferred through the program, allege federal constitutional and state law claims against Defendants-Appellees the City, the Commissioner of the Department of Housing and Preservation Development, and certain partners of the TPT Program. The District Court for the Southern District of New York (John G. Koeltl, *J*.) dismissed the complaint for lack of subject matter jurisdiction, concluding that a number of claims were barred by the *Rooker-Feldman* doctrine, that Plaintiffs lacked standing to seek declaratory and injunctive relief, and that all of the claims were barred by the Tax Injunction Act ("TIA") and the doctrine of comity.

On appeal, Plaintiffs argue that the district court erred in dismissing their claims. We agree in part, concluding that the district court has jurisdiction to entertain some, but not all, of their claims. We affirm the district court's conclusion that Plaintiffs lack standing to seek injunctive and declaratory relief. Because Plaintiffs cannot seek such relief, the TIA has no direct application to this case. We further conclude that the district court exceeded its discretion in holding that comity bars Plaintiffs' claims. Finally, we conclude that the *Rooker-Feldman* doctrine bars some, but not all, of Plaintiffs' claims. Accordingly, the judgment of the district court is REVERSED in part and AFFIRMED in part, and the case is REMANDED for further proceedings consistent with this opinion.

————————————

DOUGLAS HALLWARD-DRIEMEIER, Ropes & Gray LLP,
    Washington, DC (Keith H. Wofford, Gregg L. Weiner,
    Alexander B. Simkin, New York, NY, *on the brief*), *for
    Plaintiffs-Appellants McConnell Dorce and Sherlivia
    Thomas-Murchison.*

Robert J. Valli, Jr., Matthew Berman, Valli Kane & Vagnini,
    Garden City, NY, *for Plaintiffs-Appellants McConnell
    Dorce, Cecilia Jones, and Sherlivia Thomas-Murchison.*

MELANIE T. WEST, Assistant Corporation Counsel (Richard
    Dearing, Kate Fletcher, Kevin Osowski, Of Counsel, *on
    the brief*), for James E. Johnson, Corporation Counsel of
    New York, NY, *for Defendants-Appellees City of New York
    and Maria Torres-Springer, Commissioner of the New York
    City Department of Housing Preservation and Development.*

BRIAN J. MARKOWITZ, Goldstein Hall PLLC, New York, NY, *for
    Defendants-Appellees Neighborhood Restore Housing
    Development Fund Co. Inc. and BSDC Kings Covenant
    Housing Development Fund Company, Inc.*

MAHOGANE D. REED, NAACP Legal Defense and Educational
    Fund, Inc., Washington, DC (Coty Montag, Washington,
    DC, Samuel Spital, Rachel M. Kleinman, Kristen A.
    Johnson, New York, NY, *on the brief*), for Amicus Curiae
    *NAACP Legal Defense and Educational Fund, Inc.*

Christina M. Martin, Kathryn D. Valois, Pacific Legal
    Foundation, Palm Beach Gardens, FL, *for Amicus Curiae
    Pacific Legal Foundation.*

---

G ERARD  E. L YNCH , *Circuit Judge*:

New York City's Third Party Transfer ("TPT") Program authorizes the City to foreclose on properties with overdue taxes and transfer ownership of those properties free of charge to designated partners, who develop and manage the properties. The property rights of the original owners are extinguished, and there is no mechanism for them to receive compensation for any value of their property in excess of their tax liability once the transfer is complete.

Plaintiffs-Appellants McConnell Dorce, Cecilia Jones and Sherlivia Thomas-Murchison, former property-owners whose properties were transferred via the program, allege that under current practices the TPT Program operates to transfer properties to chosen partners to advance housing policy goals and to reward political allies, even when the properties are not distressed and owe relatively little in taxes compared to the value of the property. They further allege that the program violates their Fifth and Fourteenth Amendment rights because the program effects an unconstitutional taking without just compensation; the properties selected for the program are located primarily in communities of

color,[1] denying property owners in those communities equal protection; and
properties transferred through the program are foreclosed on without affording
the owners notice and due process. They assert claims against Defendants-
Appellees New York City and Maria Torres-Springer, Commissioner of the
Department of Housing Preservation and Development ("HPD") (collectively,
the "City Defendants"), who operate the program, and the third-party partners
who received title to their properties through the program, Neighborhood
Restore Housing Development Fund Co. Inc. ("Neighborhood Restore") and
BSDC Kings Covenant Housing Development Fund Company ("Bridge Street")
(collectively, "the Transferee Defendants," and collectively with the City
Defendants, "Defendants"). The District Court for the Southern District of New
York (John G. Koeltl, *J.*) dismissed the complaint for lack of subject matter
jurisdiction, concluding that a number of claims were barred by the *Rooker-
Feldman* doctrine, that Plaintiffs lacked standing to seek prospective injunctive
and declaratory relief, and that all of the claims were barred by the Tax Injunction
Act ("TIA"), 28 U.S.C. § 1341, and the doctrine of comity.

---

[1] Plaintiffs define a community of color as "a community predominantly
populated by African Americans, Caribbean Americans, Hispanic Americans and
Middle Eastern Americans." J.A. 38.

This appeal requires us to decide whether the district court has subject matter jurisdiction over any of Plaintiffs' claims. We conclude that, as to some of their claims, it does. While we affirm the district court's conclusion that Plaintiffs lack standing to seek prospective injunctive and declaratory relief, we reverse its conclusion that the TIA and comity bar their claims for monetary compensation. We further conclude that only some of Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine. As explained in detail below, we remand the case so that the surviving claims may proceed.

## BACKGROUND[2]

### I.    The City's Third Party Transfer Program

The TPT Program was enacted in 1996 by Local Law 37 and is based on state law granting the City in rem foreclosure authority over tax-delinquent properties. Under state law, unpaid property taxes become tax liens, on which tax districts – such as New York City – may collect via in rem foreclosure. *See* N.Y. Real Prop. Tax Law § 1120. New York City has exercised that authority by enacting in rem foreclosure provisions allowing the City to collect tax liens. Prior

---

[2] Except as noted, these facts are drawn from the complaint, the factual allegations of which we accept as true for purposes of the motion to dismiss. *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 186 (2d Cir. 2001).

to the passage of Local Law 37, the City often managed foreclosed buildings directly.[3] However, a rise in the number of distressed buildings in the 1970s and 1980s rendered direct management prohibitively expensive. The City developed the TPT Program to shift the costs and challenges of management and rehabilitation of the buildings to private parties. The intent of Local Law 37, according to testimony given by the then-Commissioner of HPD before the New York City Council at the time the law was passed, was to "improve tax collection and to more effectively address the risk of abandonment of New York City's housing stock." J.A. 21 (internal quotation marks and emphasis omitted).

Local Law 37 was implemented through the City's Administrative Code. Today, the City includes in the program both properties that meet the statutory definition of "distressed" – a property with a lien to value ratio of fifteen percent or more, and either an average of five serious housing violations per dwelling unit or $1000 or more in emergency repair liens[4] – and properties that are located

_____

[3] The City contends that some period of direct management and rehabilitation of the properties was necessary because properties sold by public auction soon after foreclosure typically deteriorated quickly and soon became re-eligible for foreclosure. City Appellees' Br. 6.

[4] *See* N.Y.C. Admin. Code § 11-401(4). This definition was in effect when the proceedings in this case occurred. A modified definition took effect May 1, 2019. *Id.*

near distressed properties and are tax-delinquent but not distressed. The City

contends that the Administrative Code requires it to identify a list of all tax-

delinquent properties in a geographic area when commencing an in rem

foreclosure proceeding pursuant to the TPT Program whether or not those

properties meet the statutory definition of distressed, and therefore that some

properties subject to the program are tax-delinquent but not distressed. City

Appellees' Br. 9, citing N.Y.C. Admin Code § 11-405(a).[5] Accordingly, the City

contends that it has the authority to foreclose on all (1) non-cooperative and

non-condominium residential properties with a tax lien outstanding for at least

one year, and (2) cooperative and condominium properties with a tax lien

outstanding for at least three years, regardless of whether those properties are

distressed. *Id.*, citing N.Y.C. Admin. Code § 11-404. According to Plaintiffs' brief,

more than half of the properties selected in the most recent round of TPT

Program foreclosures were not distressed and had an average tax lien to value

ratio of only three percent (as opposed to fifteen percent or more for distressed

properties).

---

[5] However, the Administrative Code also permits some properties to be omitted from the list for foreclosure, at the Commissioner of Finance's discretion, if they meet certain requirements. N.Y.C. Admin. Code § 11-405(c).

Plaintiffs argue that the City's practice of commencing in rem foreclosure proceedings against properties that do not meet the statutory definition of distressed is contrary to the requirements of the Administrative Code and exceeds the City's authority under state law. They argue that a property must meet the statutory definition of distressed, and that the City must follow the "[p]rocedures for distressed property" in § 11-404.1, before it can initiate a foreclosure action under § 11-404. Appellants' Br. 11-12; J.A. 27-28, citing N.Y.C. Admin. Code §§ 11-401(4), 11-401.1, and 11-404(a).

Once a list of properties has been identified for foreclosure, the Administrative Code requires that the City provide notice of the pending foreclosure to interested parties by: (1) publishing a notice of foreclosure in the City Record and two newspapers; (2) mailing notice to those owners and other interested parties who have requested notice and specified an address, or to the name and address, if any, listed on the latest annual record of assessed valuations; and (3) posting a notice at the Commissioner of Finance's office and in other locations. N.Y.C. Admin. Code § 11-406. Owners and interested parties then have an opportunity to redeem the property by paying delinquent taxes or establishing a payment plan, up until preparation of the judgment of foreclosure has commenced. *Id.* § 11-407(a)-(c).

Once the proceeding has commenced, the Administrative Code provides that an interested party can assert defenses to foreclosure, or assert that it has substantial equity in the property over the value of the lien and demand that the property be sold with any surplus value paid to the interested party. *Id.* § 11-409(a)-(b), (d). If the property is not redeemed and no answer is asserted, the court must enter a final judgment of foreclosure. *Id.* § 11-412. After judgment has been entered, a four-month period commences in which an interested party may redeem the property by paying the taxes owed or entering an installment plan. *Id.* § 11-412.1(d). After the four months have passed, and within eight months of entry of judgment, "the commissioner of finance [may] prepare[] and execute[] a deed conveying . . . to a third party full and complete title to such parcel. Upon the execution of such deed, . . . the third party shall be seized of an estate in fee simple absolute in such land." *Id.* § 11-412.1(b)-(c).[6] A third-party partner who takes title under this procedure is not required to satisfy the tax lien that rendered the property eligible for foreclosure. Once the transfer to a third party is

_____

[6] The Commissioner of Finance is also permitted to transfer title of the property to the City instead of to a third-party partner. *Id.* § 11-412.1(c). If title is transferred to the City, interested persons have at least a further sixteen months to attempt to redeem the property. *Id.* § 11-412.1(e)-(f).

complete, there is no process by which the original owner may regain title to the property or obtain compensation for the excess value of the property over the amount of the tax lien. According to the City, "[c]urrent residents do not lose their homes upon transfer, but become rent-stabilized tenants in a properly maintained building." J.A. 70.

According to Plaintiffs, the TPT Program is currently being used not to collect taxes but to "advance the City's (and its current Mayor's) affordable housing agenda." J.A. 30. Moreover, they contend that "Mayor DeBlasio has made it clear in public statements that he intends to expand the application and reach of the Third Party Transfer Program" to further this agenda. J.A. 31. They allege that the City "routinely and knowingly target[s] valuable properties within communities of color for seizure with little (or no) tax debt relative to their property value" in order to advance this agenda and to "reward political allies" (the third-party partners) who "receive these valuable properties for free." Appellants' Br. 8, 10.

## II. The Properties

Plaintiffs in this appeal each allege that he or she had an ownership interest in a property foreclosed on in rem and transferred to a third party via the TPT

11

Program. The properties were part of two foreclosure proceedings brought by the City in 2007 and 2015.

**A. The 2007 Proceeding**

Plaintiff Thomas-Murchison owned shares in a housing development fund corporation ("HDFC") cooperative[7] that owned property located at 248 Madison Street, Brooklyn.[8] According to Thomas-Murchison, her extended family lived in the apartment associated with her shares, and she lived in another apartment in the same HDFC cooperative associated with shares previously owned by her deceased parents. Thomas-Murchison alleges that the HDFC cooperative owned

---

[7] HDFC cooperatives are non-profit corporations organized under New York state law "exclusively to develop a housing project for persons of low income," in which "persons or families who are entitled to occupancy in such [a] housing project" own "shares in [the] corporation." N.Y. Priv. Hous. Fin. Law § 573(3)(a), (4). According to the complaint, HDFC cooperatives, like the TPT Program, have been used by the City as a response to distressed and abandoned apartment buildings."[T]itle to the distressed buildings [was] transferred to not-for-profit or charitable corporations organized . . . for the overall purpose of housing improvement and homeownership, and primarily to keep the apartment units owned thereby affordable over time to the working families residing therein." J.A. 19. "[T]enants became owners of their particular apartment units by virtue of their pro-rata share ownership in the cooperative corporation [and] . . . have an equity interest in the . . . HDFC-owned building and its related tangible and intangible assets." *Id.*

[8] The Transferee Defendants contest Thomas-Murchison's ownership of these shares.

substantial equity in the property. She further alleges that 248 Madison Street is located in a community of color.

In 2007 the City commenced a foreclosure proceeding against several properties in Brooklyn, including the building at 248 Madison Street. According to the City, arrears of $110,352.44 were owed on the property. No interested party filed an answer or attempted to redeem the property during the foreclosure. In October 2011, the Kings County Supreme Court entered a judgment of foreclosure, which noted that "all of the procedures and proceedings required by the provisions of Title 11, of Chapter 4 of the Administrative Code have been duly performed." *In Rem Tax Foreclosure No. 51, Borough of Brooklyn*, Index No. 8700/2007 (Sup. Ct. Oct. 26, 2011). Following entry of judgment, according to the Transferee Defendants, the property was transferred to Neighborhood Restore, which later conveyed title to Bridge Street.

In April 2016, Thomas-Murchison learned that the property at 248 Madison Street had been transferred to Bridge Street. In May 2016, Thomas-Murchison was informed that she was being converted to a renter, and her maintenance payments, which the HDFC cooperative had previously used to pay property taxes and water and sewer charges, would be converted to rent payments.

Thomas-Murchison alleges that she did not receive notice of the foreclosure proceeding, and that the property did not meet the statutory definition of distressed when the City commenced the proceeding.

### B. The 2015 Proceeding

Plaintiffs Dorce and Jones both allege that they owned properties transferred via the TPT Program through the 2015 foreclosure proceeding.[9] Dorce became the owner of 373 Rockaway Boulevard, Brooklyn in 1977 and paid off the mortgage in 2012. Sometime after 2012, Dorce accrued unpaid water and sewer charges. Dorce alleges that he entered into an agreement with New York City's Department of Environmental Protection to pay the water and sewer charges on an installment plan. Jones owned shares in an HDFC cooperative that owned property located at 1197 Dean Street, Brooklyn and lived in an apartment associated with her shares. Jones alleges that the cooperative owned substantial

---

[9] Plaintiffs allege that Jones's property at 1197 Dean Street was also foreclosed on in the 2007 proceeding, but because the City did not file a deed transferring the property to a third party partner within eight months of judgment as required by the Administrative Code, Jones and her fellow HDFC cooperative share owners retained title until the 2015 proceeding. Jones's claims are based on the 2015 proceeding, not the 2007 proceeding.

equity in the property. Both Jones and Dorce further allege that their respective

buildings were located in communities of color.

In 2015 the City commenced a foreclosure proceeding against several

properties in Brooklyn, including the properties at 373 Rockaway Boulevard and

1197 Dean Street. According to the City, municipal arrears of $45,132.73 were

owed on the property at 373 Rockaway Boulevard, and arrears of $160,760.20

were owed on the property at 1197 Dean Street. During the proceeding, no

interested party filed an answer or redeemed either of the properties. In

November 2017, the Kings County Supreme Court entered a judgment of

foreclosure, which again noted affidavits submitted by the City attesting to "the

performance of the acts required by the provisions of Title 11, Chapter 4 of the

Admin. Code." *See In Rem Tax Foreclosure Action No. 53, Borough of Brooklyn*, Index

No. 8700/2015 (Sup. Ct. Nov. 27, 2017). Following entry of the foreclosure

judgment, according to the Transferee Defendants, the properties were

transferred to Neighborhood Restore.

In September 2018, Dorce learned that 373 Rockaway Boulevard had been

transferred. According to Dorce, he did not receive notice of the proceeding and

his property did not meet the statutory definition of distressed at the time of the

15

proceeding. According to Dorce, following the proceeding, he continued making payments to the City in accordance with his agreement with the Department of Environmental Protection, because he was not aware that he was no longer the owner.[10]

At some point in either 2017 or 2018, Jones learned that ownership of 1197 Dean Street had been transferred to defendant Bridge Street, and in October 2018, Bridge Street's managing agent informed her that she had been converted into a renter, and her maintenance payments, which the HDFC cooperative had used to pay property taxes and water and sewer fees, would now be put toward rent payments.[11] According to Jones, she did not receive any notice of the foreclosure

---

[10] The City concedes that it accepted payments made by Dorce after it had already foreclosed on the property, but contends that those payments were eventually refunded to Dorce.

[11] It is unclear when Jones was first informed of the transfer. The complaint states that "on or about October 2017, Ms. Jones learned that ownership of the subject property had been transferred . . . to Bridge Street" and that "[o]n or about October, 2018, Bridge Street's managing agent informed Ms. Jones that she was being converted into a renter, and her maintenance payments converted into rental payments." J.A. 41. The reference to October 2017 may be a typographical error, as the judgment of foreclosure was not entered until November 2017. *See In Rem Tax Foreclosure Action No. 53, Borough of Brooklyn*, Index No. 8700/2015 (Sup. Ct. Nov. 27, 2017). It is also unclear whether Neighborhood Restore, which the Transferee Defendants allege took ownership of the property from the City, eventually conveyed the property to Bridge Street, which Plaintiffs allege is now the owner of the property.

proceeding and the property did not meet the statutory definition of distressed at the time of the proceeding.

## III.    Procedural Background

On March 11, 2019, Plaintiffs filed a putative class action against the City Defendants and the Transferee Defendants in the United States District Court for the Southern District of New York, seeking to represent a class of former property owners whose properties were transferred to a third party via the TPT Program.[12] They alleged that the City's TPT Program violated their rights under the United States and New York Constitutions, and specifically: (1) that they were not provided with constitutionally adequate notice of the in rem foreclosure proceedings in violation of their due process rights; (2) that the program effected an unconstitutional taking, both because the City proceeded against properties in violation of the Administrative Code and because their property was transferred to a third party without giving them the opportunity to redeem the excess value of the property less the taxes owed; and (3) that the program violates equal protection, by disproportionately targeting properties in communities of color for

_____

[12] The complaint also originally named as defendants Jacques Jiha, Commissioner of the New York City Department of Finance, John Does #1-#10, and Jane Does #1-#10. Jiha was never served, and the Jane and John Does were never identified.

foreclosure. They also brought claims under New York State law.[13] They sought

$66 million in damages, as well as declaratory and injunctive relief.

On May 15, 2019, both sets of defendants moved to dismiss the complaint

for lack of subject matter jurisdiction and failure to state a claim. They argued

that the court lacked subject matter jurisdiction (1) under *Rooker-Feldman*, (2)

under the TIA and the related doctrine of comity, and (3) because Plaintiffs

lacked standing to seek prospective equitable relief.

On May 17, 2020, the district court granted Defendants' motion to dismiss.

*Dorce v. City of New York*, 460 F. Supp. 3d 327 (S.D.N.Y. 2020). The court first

addressed *Rooker-Feldman*, and concluded that the earlier state court in rem

foreclosure proceedings barred some, but not all, of Plaintiffs' claims. Specifically

the court concluded that *Rooker-Feldman* barred Plaintiffs' due process claims for

"relief in the form of damages equal to their property values." *Id.* at 338.

However, the court ruled that *Rooker-Feldman* did not bar Plaintiffs from seeking

"nominal damages" based on the claim that they were "depriv[ed] of process to

---

[13] Specifically, they alleged that the City's use of in rem foreclosure proceedings
constitutes ultra vires activity in violation of Article II, Section 10-11 of the New
York State Municipal Home Rule Law and that Defendants engaged in deceptive
practices in violation of New York General Business Law Section 349.

which they were entitled" during the in rem proceedings. *Id.* at 339. Regarding Plaintiffs' takings claims, the court concluded that *Rooker-Feldman* barred the claim that "the City proceeded against properties that were not distressed and against properties in parcels smaller than a 'block' in violation of the Administrative Code." *Id.* at 340. However, the court concluded that "to the extent that the plaintiffs claim constitutional violations based on not receiving compensation for their property that was allegedly taken for public use, the plaintiffs' claims would not be barred by *Rooker-Feldman*." *Id.* Finally, the court concluded that *Rooker-Feldman* did not bar Plaintiffs' equal protection claim.

Turning to Defendants' second argument, the court concluded that Plaintiffs lacked standing to seek prospective equitable relief, because they could not show that they owned property that was likely to be transferred in the future under the TPT Program. The court further concluded that the TIA and the doctrine of comity barred all of Plaintiffs' claims, including those not otherwise barred by *Rooker-Feldman*, because adjudicating those claims would interfere with state tax administration.

Finally, the court declined to exercise supplemental jurisdiction over Plaintiffs' state law claims to the extent that those claims were not barred.

19

Because the court concluded that it lacked jurisdiction, it declined to reach

Defendants' argument that the complaint failed to state a claim upon which relief

could be granted. This appeal followed.

## DISCUSSION

On appeal, Plaintiffs argue that the district court erred in dismissing their

claims. They contend that their claims are not barred by *Rooker-Feldman*, the TIA,

or the doctrine of comity, and that they have standing to seek prospective

equitable relief. Defendants contest all of these points and argue that the district

court properly dismissed Plaintiffs' claims.

We review a district court's dismissal of a complaint for lack of subject

matter jurisdiction pursuant to Rule 12(b)(1) *de novo*. *APWU v. Potter*, 343 F.3d

619, 623-24 (2d Cir. 2003).[14] Where "a district court dismisses the action based on

comity, we review the decision for abuse of discretion." *Joseph v. Hyman*, 659 F.3d

215, 218 n.1 (2d Cir. 2011).[15] However, when we review a court's decision to

---

[14] Although the City Defendants cited only Rule 12(b)(6) in their motion to
dismiss, the district court correctly observed that their arguments that the district
court lacked subject matter jurisdiction are properly addressed under Rule
12(b)(1).

[15] Because "[t]he comity doctrine counsels lower federal courts to resist
engagement in certain cases *falling within their jurisdiction*," *Levin v. Com. Energy*,

20

abstain from exercising jurisdiction, the abuse of discretion standard of review is "more rigorous than that which is generally employed" such that there is "little practical distinction" from *de novo* review. *In re Picard*, 917 F.3d 85, 101-02 (2d Cir. 2019) (internal quotation marks omitted).

We conclude that the district court correctly dismissed some of Plaintiffs' claims, but erred in dismissing others. Specifically, we affirm the district court's holding that Plaintiffs lack standing to seek injunctive and declaratory relief. However, we disagree with the district court's decision to dismiss Plaintiffs' claims based on the TIA and the doctrine of comity. We conclude that the TIA is not directly implicated here because Plaintiffs cannot seek injunctive and declaratory relief, the only remedies to which the TIA applies. Moreover, we conclude that the district court exceeded its discretion in concluding that the doctrine of comity bars Plaintiffs' claims, because those claims do not risk disrupting the City's tax administration.

---

*Inc.*, 560 U.S. 413, 421 (2010) (emphasis added), the argument that Plaintiffs' claims are barred by comity does not strictly speaking challenge the court's subject-matter jurisdiction under Rule 12(b)(1). Nevertheless, because the request to abstain from exercising its jurisdiction on grounds of comity is closely linked to jurisdictional concerns, the district court properly considered the issue along with Defendants' jurisdictional challenges, separately from their arguments that the complaint failed to state a claim, as do we.

With respect to the difficult question of the application of *Rooker-Feldman* to this case, we conclude that some, but not all, of Plaintiffs' claims may proceed, and therefore affirm the district court's judgment in part and reverse it in part insofar as it rests on that doctrine. As to Plaintiffs' takings claims, we agree with the district court that *Rooker-Feldman* bars the claim that Plaintiffs' properties were transferred in violation of the administrative regulations governing the TPT Program but does not bar their claim to just compensation. We further conclude that *Rooker-Feldman* does not bar Plaintiffs' claim for damages for the excess value of the transferred properties above the amount owed in taxes. Because Plaintiffs at oral argument expressly limited their claims for compensation to that remedy, we need not decide whether that doctrine would bar claims for other forms of compensation. As to their equal protection claim, we agree with the district court's conclusion that *Rooker-Feldman* does not bar that claim, and conclude that Plaintiffs may seek damages equal to the excess value of their transferred properties. Finally, as to their due process claims based on lack of notice, we conclude that *Rooker-Feldman* does not bar those claims and that Plaintiffs may seek nominal damages, or, if they can show that their alleged injury was caused

22

by the lack of notice, damages equal to the excess value of their transferred property.

Finally, we vacate and remand the district court's decision not to exercise supplemental jurisdiction over Plaintiffs' state law claims, for the court to reconsider in light of the survival of some of their federal claims.

# I.   Plaintiffs Lack Standing to Seek Injunctive and Declaratory Relief.

"To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (internal quotation marks and alterations omitted). Where, as here, plaintiffs seek injunctive or declaratory relief, they "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [they] will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998), citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Such an allegation of future injury will be sufficient only if "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List*, 573 U.S. at 158 (internal quotation marks omitted).

Plaintiffs seek, among other things, a declaratory judgment that the TPT Program is unconstitutional and an injunction barring the City from continuing to foreclose on and transfer property under the program. Defendants argue that Plaintiffs lack standing to seek such relief, because they have not demonstrated that they will be subject to future harm caused by the program. We agree.

On appeal, Plaintiffs argue that they are likely to suffer future harm because (1) the TPT Program is an official policy of the City; (2) Plaintiffs are residents of neighborhoods targeted by the program; and (3) the City intends to expand the program. But as the district court correctly observed, none of these allegations show that Plaintiffs themselves – who do not allege any facts to show that they own, plan to purchase, or have been deterred from purchasing any additional property that is likely to be subject to the program – will be harmed in the future. Plaintiffs argue on appeal that "[t]he City has already implemented this policy in a manner that has harmed [them,]" Appellants' Br. 53-54, but that cannot support their standing to seek future-oriented equitable relief, because "plaintiff[s] cannot rely solely on past injuries" to have standing to pursue such remedies, but "must establish how [they] will be injured prospectively." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012). Plaintiffs also

24

attempt to rely on the fact that the TPT Program is an "officially endorsed City policy." Appellants' Br. 53. But it is clear that "the existence of an official policy, on its own, is [not] sufficient to confer standing to sue [for injunctive and declaratory relief] on any individual who had previously been subjected to that policy," unless the individual can also show a sufficient likelihood of future harm. *Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004).

Perhaps recognizing that flaw in their argument, Plaintiffs also assert that they are subject to ongoing harm, because they continue to be deprived of the property that was transferred through the TPT Program.[16] Although we appreciate that losing ownership of one's home can inflict a lingering trauma, that argument merely recasts a past harm as a continuing one. "[P]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy" with respect to potential future similar wrongs.

---

[16] Plaintiffs also contend that they suffer an ongoing harm because they "continue to face the risk that any property they own or plan to acquire in their neighborhoods might be taken without notice." Appellants' Br. 55. As with Plaintiffs' allegations of future harm, that claim cannot support standing because the complaint fails to allege any factual support, such as that Plaintiffs own or intended to purchase property in a targeted neighborhood that would likely be subject to the TPT Program.

25

*Lyons*, 461 U.S. at 103. That a past harm was severe or inflicts continuing damage does not change that rule: the remedy for continuing pain and suffering from a defendant's past damage is compensatory damages, as an injunction against future actions by a defendant does not remedy the harm done by that defendant's past acts.

Moreover, the cases Plaintiffs rely on to support their assertion of ongoing harm are easily distinguishable, because in those cases the plaintiffs adequately alleged a risk of *future* harm. *See Deshawn E.*, 156 F.3d at 344 ("Unlike *Lyons*, the plaintiffs in this case allege that they, as a certified class, are likely to suffer future interrogations by the Squad."); *Knight First Amend. Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 558 (S.D.N.Y. 2018) ("[Plaintiffs'] future harms are . . . virtually certain because the individual plaintiffs continue to be blocked."), aff'd, 928 F.3d 226 (2d Cir. 2019), *vacated on other grounds sub nom.*, *Biden v. Knight First Amend. Inst. at Columbia Univ.*, 141 S. Ct. 1220 (2021). As described above, Plaintiffs have failed to demonstrate a similar risk of future harm here. "The equitable remedy is unavailable . . .where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Lyons*, 461 U.S. at 111.

Finally, we note that Plaintiffs assert that any defect in their allegations related to standing to seek prospective relief could be cured on remand by amending the complaint to include additional plaintiffs. We leave it to the district court to decide in the first instance whether Plaintiffs should be permitted to amend their complaint to join additional plaintiffs, and whether any proposed added plaintiffs allege sufficient risk of future harm to confer standing. *See Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013).

## II. The Tax Injunction Act and the Doctrine of Comity Do Not Bar Plaintiffs' Claims.

"Federal courts generally abstain from cases that challenge state taxation schemes," *Joseph*, 659 F.3d at 218, due to "'a proper reluctance to interfere by prevention with the fiscal operations of the state governments,'" *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 422 (2010), quoting *Boise Artesian Hot & Cold Water Co. v. Boise City*, 213 U.S. 276, 282 (1909). In 1937, Congress partially codified that long-standing judicial principle in the TIA, which explicitly prohibits district courts from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. However, the TIA "may

be best understood as but a partial codification of the federal reluctance to interfere with state taxation." *Nat'l Priv. Truck Council, Inc. v. Okla. Tax Comm'n*, 515 U.S. 582, 590 (1995). The "more embracive" doctrine of comity, which "restrains federal courts from entertaining claims for relief that risk disrupting state tax administration," has "continuing sway . . . independent of the [TIA]" and bars some cases not barred by the TIA. *Levin*, 560 U.S. at 417, 423-24.

Here, the district court concluded that the TIA and comity bar all of Plaintiffs' claims. On appeal, Plaintiffs argue that none of their claims are barred by the TIA or the doctrine of comity, because they "do not challenge the validity or amount of any tax" and would not "interfere with state tax administration." Appellants' Br. 19-20. We conclude that the TIA is not directly applicable here, and we agree with Plaintiffs that comity does not bar their claims, reversing the conclusion of the district court.[17]

---

[17] Plaintiffs also argue that the Supreme Court's decision in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), "guarantees a takings plaintiff access to federal court notwithstanding potential state court remedies," and therefore, that their claims cannot be barred by the TIA or comity. Appellants' Br. 20. We are wholly unpersuaded by that argument. In *Knick*, the Supreme Court abolished the requirement, previously established in *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), that plaintiffs must exhaust state court remedies before seeking federal relief for an unconstitutional taking. Although *Knick* removed one obstacle to federal court litigation, it does

We begin with the TIA. On its face, the TIA bars district courts only from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection" of state taxes. 28 U.S.C. § 1341. The Supreme Court has concluded that the TIA "bar[s] federal courts from granting injunctive and declaratory relief in state tax cases," but has declined to explicitly address whether it also "bars federal courts from granting damages relief in such cases," because where damages are sought, comity often bars such a suit. *See Fair Assessment in Real Est. Ass'n, Inc. v. McNary*, 454 U.S. 100, 107 (1981) ("Because . . . the principle of comity bars federal courts from granting damages relief in such cases, we do not decide whether [the TIA], standing alone, would require such a result.").

Our court has interpreted those precedents to indicate a division between claims for injunctive and declaratory relief and those for damages, concluding that the TIA "prevents federal courts from giving injunctive relief, [whereas] . . . it is the principle of comity that prevents a taxpayer from seeking damages." *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 431 (2d Cir. 1989); *see also*

---

not "guarantee" a federal forum, and, as the district court correctly observed, it "is not directly relevant in this case because . . . [i]t did not address the issues of *Rooker-Feldman*, the Tax Injunction Act, or comity." *Dorce*, 460 F. Supp. 3d at 341 n.11.

29

*Bernard v. Vill. of Spring Valley*, 30 F.3d 294, 297 (2d Cir. 1994) ("As to damages, the principle of comity dictates a similar result to that suggested by the Tax Injunction Act.").[18] Accordingly, we conclude that the TIA has no direct application to Plaintiffs' remaining claims, because we have already concluded that they lack standing to seek injunctive and declaratory relief.[19] Instead, we focus primarily on comity, which can bar claims for damages, the only claims that Plaintiffs have standing to pursue.[20] Nevertheless, we consider precedents addressing the TIA to the extent that they can assist us in determining the scope of the related comity doctrine.

---

[18] However, the doctrine of comity is not limited to claims for damages. It is "more embracive" than the TIA and can bar claims for injunctive relief arguably not prohibited by the TIA. *See, e.g.*, *Levin*, 560 U.S. at 424, 432 ("Because we conclude that the comity doctrine justifies dismissal of respondents' federal-court action [seeking injunctive and declaratory relief], we need not decide whether the TIA would itself block the suit.").

[19] If Plaintiffs amend their complaint to include additional plaintiffs with standing to pursue injunctive relief, *see supra* p. 27, we leave it to the district court to determine the application of the TIA to their claims in the first instance, consistent with this opinion.

[20] At least one other circuit has concluded that the TIA does apply to at least some claims for damages. *See A Bonding Co. v. Sunnuck*, 629 F.2d 1127, 1132-33 (5th Cir. 1980) ("Without deciding whether section 1341 precludes all suits for damages against administrators of state and local taxes, we find that the statute does deprive the district court of jurisdiction in this case.").

We conclude that the district court exceeded its discretion in holding that comity bars Plaintiffs' claims. Comity bars claims that "'risk disrupting state tax administration'" if "an adequate, speedy, and efficient remedy exists in state court." *Joseph*, 659 F.3d at 219-20, quoting *Levin*, 560 U.S. at 417. The doctrine "instructs federal courts to refrain from granting relief" only "in suits that contest taxpayer liability in a manner that interferes with a state's administration of its tax system." *Abuzaid v. Mattox*, 726 F.3d 311, 315 (2d Cir. 2013). Comity does not bar Plaintiffs' claims here because their claims do not challenge their tax liability, and do not challenge or disrupt any aspect of the City's administration, calculation, or collection of any tax.[21]

---

[21] Plaintiffs also make several other arguments as to why the TIA and comity do not bar their claims. First, they argue that the TIA and comity are inapplicable because some of the debts owed by Plaintiffs were for water and sewer charges, not unpaid taxes. Second, they argue that the purpose of the TPT Program is to advance the City's affordable housing agenda, not to collect tax revenue, and that therefore claims related to the program cannot be barred by the TIA or comity. Finally, relying on *Wells v. Malloy*, 510 F.2d 74, 77 (2d Cir. 1975), Plaintiffs argue that the TPT Program is not subject to the TIA or comity, because it does not generate tax revenue except "indirectly through a more general use of coercive power." The City disputes all three points. We need not address those arguments because we conclude that Plaintiffs' claims are not barred by comity in any event.

We acknowledge that, as the district court correctly observed, Plaintiffs' claims challenge various aspects of the City's Administrative Code § 11-401 et seq., which is in the section of the Code labeled "Taxation and Finance." However, that alone is clearly not sufficient to demonstrate that adjudication of Plaintiffs' claims would disrupt the City's tax administration. *See, e.g., Mobil Oil Corp. v. Tully*, 639 F.2d 912, 918 (2d Cir. 1981) ("The mere fact that [a challenged provision] is contained in a tax law of the State should not lead to automatic sanctuary under [the TIA].").

Our conclusion turns instead on our analysis of the substance of Plaintiffs' claims. Contrary to the City's argument, we understand Plaintiffs *not* to challenge the use of in rem foreclosure based on tax liens as a general matter. Rather, they challenge individual aspects of the TPT Program, which applies unique procedures to in rem foreclosures, and uses those foreclosures for specific ends beyond the collection of taxes. Plaintiffs' equal protection claim challenges the manner in which properties are selected for the TPT Program, not the ability of the City to foreclose on those properties. Since that claim, if successful, would not prevent the City from foreclosing on tax-delinquent properties in the future, it is

32

difficult to see how it would disrupt the City's tax administration.[22]

Similarly, Plaintiffs' due process claims challenge the manner in which notice of an in rem foreclosure proceeding pursuant to the TPT Program is given to property owners, but Plaintiffs do not challenge the legitimacy of in rem foreclosure to collect taxes where sufficient notice is given. Our court has previously concluded that a "taxpayer's challenge that the notice of foreclosure provided by the taxing authority of a state [wa]s constitutionally inadequate" was not barred by the TIA because the claim did not "contest the government's authority to collect property taxes [or] . . . dispute the assessments or amounts owed." *Luessenhop v. Clinton Cty.*, 466 F.3d 259, 261, 268 (2d Cir. 2006).[23]

---

[22] The Supreme Court has explicitly left open "whether . . . comity . . . would also bar a claim under § 1983" – like this one – "which requires no scrutiny whatever of state tax assessment practices, such as a facial attack on tax laws colorably claimed to be discriminatory as to race." *Fair Assessment*, 454 U.S. at 107 n.4.

[23] The City argues that *Luessenhop* is no longer good law following the Supreme Court's decision in *Direct Marketing Ass'n v. Brohl*, 575 U.S. 1 (2015). That is incorrect. The City's brief cites dictum in *Direct Marketing* explaining the tax collection process at the time the TIA was passed, which began with the tax collector "giving notice to each person liable to pay any taxes." City Br. 52, quoting *Direct Marketing*, 575 U.S. at 10. But that statement tells us nothing at all about whether taxpayers can bring a claim alleging that they were denied constitutionally adequate notice in the *foreclosure* process. More fundamentally, *Direct Marketing* reaffirmed that the crux of suits barred by the TIA are those that challenge the "assessment, levy, and collection" of a tax. *Direct Marketing*, 575

Finally, Plaintiffs' takings claims challenge the City's authority to transfer foreclosed-on property, including any value in that property *in excess of* the amount owed and secured by the tax lien, to a third party without affording the homeowner a mechanism for seeking compensation for the excess value of the property. Such excess value, as Plaintiffs argue, "cannot, by definition, be a tax." Appellants' Br. 20. Although our court has yet to consider the question, other courts have determined that such a claim – limited to the excess value of the property – would not be barred by comity because it would not risk disruption of local tax administration. *See Freed v. Thomas*, 976 F.3d 729, 735-37 (6th Cir. 2020) (holding that TIA and comity did not bar taxpayers' suit challenging, as unconstitutional taking, the state's failure to reimburse him for excess proceeds from sale of his property); *Harrison v. Montgomery Cty.*, No. 20-4051, 2021 WL

---

U.S. at 12. That is consistent with *Luessenhop*, in which we concluded that the plaintiffs' claims that they had received insufficient notice were not barred by the TIA because the "taxpayers do not contest the government's authority to collect property taxes, nor do they dispute the assessments or amounts owed." 466 F.3d at 268. *Cf. CIC Services, LLC v. Internal Revenue Service*, 141 S. Ct. 1582, 1589 n.1, 1590 (2021) (concluding that the Anti-Injunction Act, on which the TIA is "modeled," did not bar a suit seeking to set aside a reporting requirement backed by civil tax penalties, because the suit "br[ought] no legal claim against the separate statutory tax" and "did not ask[] for injunctive relief from . . . any impending or eventual tax obligation.").

1881382 at *6 (6th Cir. May 11, 2021) (same); *Coleman v. District of Columbia*, 70 F. Supp. 3d 58, 64-67 (D.D.C. 2014) (same). We are persuaded by that reasoning.

Our conclusion that the comity doctrine does not control here is further bolstered by our consideration of three factors identified by the Supreme Court in a pair of seminal cases, which distinguish between cases where comity controls and those that may proceed in federal court. In the first, *Hibbs v. Winn*, the Court held that neither the TIA nor comity barred Arizona taxpayers from seeking to enjoin on Establishment Clause grounds an Arizona law authorizing income-tax credits for payments to organizations that award educational scholarships and tuition grants to children attending private schools, including religious schools. 542 U.S. 88, 92-93 (2004). In the second, *Levin v. Commerce Energy, Inc.*, in contrast, the Court held that comity barred a suit by Ohio natural gas sellers challenging the constitutionality of a state tax credit for public utilities that also sell natural gas. 560 U.S. at 417.

In comparing *Levin* and *Hibbs*, the Court identified three key distinctions. First, *Hibbs* raised an Establishment Clause claim while *Levin* presented an issue of economic discrimination that did not involve "classifications subject to heightened scrutiny or . . . fundamental rights." *Id.* at 426. Second, in *Levin* and

similar cases that challenge some inequality in the rate or amount of taxation, the court must decide whether the inequality should be fixed by "leveling up" – extending the benefit to all – or "leveling down" – withdrawing the benefit from all. *See id.* at 426-27; *see also Comptroller of Maryland v. Wynne*, 575 U.S. 542, 569 (2015). Federal courts cannot resolve that remedial question for states, and lower federal courts cannot remand the issue to the state court as the Supreme Court can. By contrast, in *Hibbs*, the only possible remedy was to declare the challenged tax credit unconstitutional, a task for which federal and state courts were equally well suited. *Levin*, 560 U.S. at 431. Third, while the *Levin* plaintiffs sought to alter an allegedly discriminatory tax scheme, "[t]he plaintiffs in *Hibbs* were outsiders to the tax expenditure, 'third parties' whose own tax liability was not a relevant factor." *Id.* at 430. Our court has identified the three factors present in *Hibbs* but not present in *Levin* as "counsel[ing] in favor of federal court adjudication despite the general rule of comity." *Joseph*, 659 F.3d at 219.

Here, those factors cut decidedly in favor of allowing Plaintiffs' claims to proceed in federal court. First, Plaintiffs allege that the City took their property for a public purpose without just compensation; that the TPT Program is selectively enforced and targets buildings in neighborhoods which are

predominantly communities of color, in violation of equal protection; and that

the City denied them due process in taking their property. All of these claims

implicate fundamental constitutional rights more similar to the Establishment

Clause claim in *Hibbs* than the economic discrimination claim in *Levin*. *See McCoy*

*v. Union Elevated R. Co.*, 247 U.S. 354, 364 (1918) (discussing property "owner's

fundamental right to just compensation" for government taking); *Yick Wo v.*

*Hopkins*, 118 U.S. 356, 370, 373-74 (1886) ("fundamental rights" are injured where

a "law itself . . . fair on its face, and impartial in appearance . . . is applied and

administered by public authority with . . . an unequal hand"); *United States v.*

*James Daniel Good Real Prop.*, 510 U.S. 43, 44, 53-54 (1993) (due process protects

"private interest of historic and continuing importance" in the "right to maintain

control over [one's] home, and to be free from governmental interference").

Second, unlike in *Levin*, Plaintiffs do not challenge an inequality in the tax

rate that can be fixed either by "leveling up" or by "leveling down," a task to

which the state courts are better suited because the decision directly affects the

incidence of taxes on different taxpayers. Instead, as in *Hibbs*, Plaintiffs argue that

various aspects of the TPT Program itself are unconstitutional as applied to them,

and, as discussed earlier in this Opinion, Plaintiffs have standing to seek only

monetary damages. Therefore, "state courts would have no greater leeway than federal courts to cure the alleged violation." *Levin*, 560 U.S. at 431.

Third, although Plaintiffs here are not true "third parties," *Hibbs*, 542 U.S. at 108, like the *Hibbs* plaintiffs they "neither seek to avoid the payment of state taxes nor dispute the amounts owed." Appellants' Br. 20. In other words, like "the *Hibbs* plaintiffs, [Plaintiffs here] do [not] object to their own tax situation." *Levin*, 560 U.S. at 430.

Accordingly, because Plaintiffs' claims do not "risk disrupting state tax administration" and because all three *Levin* factors "counsel[] in favor of federal court adjudication," we conclude that the district court exceeded its discretion in holding that comity bars federal adjudication of Plaintiffs' claims. *Joseph*, 659 F.3d at 219-20 (internal quotation marks omitted).

## III. *Rooker-Feldman* **Bars Some, But Not All, of Plaintiffs' Claims.**

The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases. 28 U.S.C. § 1257. The doctrine was first articulated in the two cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983),

from which it takes its name. In those cases, the Supreme Court held that federal district courts could not exercise jurisdiction over claims seeking to void the outcome of a state court judgment. *Rooker*, 263 U.S. at 414 (plaintiff sought to have Indiana judgment "declared null and void"); *Feldman*, 460 U.S. at 463 (plaintiffs sought reversal of state court's denial of requests for waivers of bar admission rule).

In a more recent case, *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, the Supreme Court observed that circuit courts had gone beyond these precedents, applying the doctrine too broadly. 544 U.S. 280, 283 (2005). Specifically, the Court noted that some lower federal courts, including ours, had erroneously taken *Rooker-Feldman* to "overrid[e] Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and supersed[e] the ordinary application of preclusion law under 28 U.S.C. § 1738." *Id.* at 283. The Court instructed that the doctrine "is confined to cases of the kind from which [it] acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

39

Following *Exxon Mobil*'s edict to confine applications of *Rooker-Feldman* to the types of cases from which it takes its name, our court has articulated four requirements that must be met for *Rooker-Feldman* to apply: (1) "the federal-court plaintiff must have lost in state court[;]" (2) "the plaintiff must complain of injuries caused by a state-court judgment[;]" (3) "the plaintiff must invite district court review and rejection of that judgment[;]" and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (internal quotation marks and alterations omitted). "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." *Id.* Although "all four requirements must be met in order for *Rooker-Feldman* to act as a jurisdictional bar . . . the second requirement – that the plaintiff complains of an injury caused by a state-court judgment – is the core requirement from which the other *Rooker-Feldman* requirements derive." *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018) (internal quotation marks and alterations omitted).

As we analyze whether Plaintiffs' claims satisfy *Rooker-Feldman*'s requirements, we note that Plaintiffs clarified at oral argument that they seek

damages "*only* for the surplus value [of the properties] after the taxes have been received by the City." Oral Argument at 30:23-38 (emphasis added). Plaintiffs' briefs on appeal were not clear on this point. *Compare* Appellants' Br. 37 n.19 ("[T]he District Court erred if the Order is interpreted to hold that each of Appellants' claims met the substantive requirements of *Rooker-Feldman* to the extent they seek damages equal to the value of the Subject Properties") *with id.* at 20 ("Appellants' claims neither seek to avoid the payment of state taxes nor dispute the amounts owed. . . . Appellants' challenge [is] to Municipal Defendants' seizure of the . . . excess value."). However, to the extent that certain statements in Plaintiffs' briefs here or in the district court are to the contrary, Plaintiffs are nevertheless bound by concessions made by their counsel at oral argument. *See U.S. Trust Co. of N.Y. v. Shapiro*, 835 F.2d 1007, 1009 (2d Cir. 1987) (holding plaintiff bound by concessions made by counsel at oral argument); *ICN Pharms., Inc. v. Khan*, 2 F.3d 484, 492 (2d Cir. 1993) (analyzing claim for injunctive relief as limited in scope by counsel's concession at oral argument). Accordingly, we consider Plaintiffs' claims, and the remedies they seek, as limited by their counsel's statements at oral argument that they seek compensation only for the excess value, and not the full value, of their transferred properties.

41

A. *Procedural Requirements*

Turning first to *Rooker-Feldman*'s procedural requirements, we conclude, as did the district court, that both are met here as to all of Plaintiffs' claims. It is clear that the fourth requirement is met because the state court foreclosure judgments were rendered in 2011 and 2017, before this proceeding was commenced in 2019. Though it is a closer question, we conclude that the first requirement is also met here because Plaintiffs lost in state court.

Plaintiffs argue that the first requirement is not met because they were not named parties to the earlier in rem foreclosure proceedings. Although that argument has some logical force, we disagree. Someone who loses an ownership interest in property through a state in rem foreclosure proceeding against the property has lost in state court. The mere fact that Plaintiffs were not named parties to the state action against the property does not abrogate the operation of *Rooker-Feldman*. Were we to conclude otherwise, state courts would be unable to exercise in rem jurisdiction without the risk of federal courts undoing their work, because parties with an interest in property who lost in state court could always proceed to federal court for a do-over. Under that approach, state court decisions based on in rem jurisdiction would have inferior force to state court decisions

42

based on other types of jurisdiction, which could be reviewed only by the

Supreme Court. We are unpersuaded that the *Rooker-Feldman* doctrine as clarified

in *Exxon Mobil* dictates that result, which is antithetical to the original purpose of

the doctrine.[24]

We have reached a similar conclusion in two previous cases, albeit cases

disposed of by summary order. *See Riley v. Comm'r of Fin. of N.Y.C.*, 618 F. App'x

16, 17 (2d Cir. 2015) (*Rooker-Feldman* barred federal action after state court in rem

proceeding); *Wik v. City of Rochester*, 632 F. App'x 661, 662-63 (2d Cir. 2015)

(same). Plaintiffs argue that these cases are distinguishable because in both, the

interested property owner actually participated in the underlying state court

proceedings, whereas Plaintiffs here did not. Although that is true, we are

unpersuaded that it is decisive. If the participation of the property owner were

critical, then property owners would be able to choose whether to contest the

proceeding in state court, or hang back in order to preserve their right to proceed

---

[24] Plaintiffs argue that the Supreme Court's decision in *Lance v. Dennis*, 546 U.S.
459 (2006), establishes that only *named* parties meet *Rooker-Feldman*'s first
requirement. Not so. The Court there explicitly stated that its decision did "not
address whether there are any circumstances . . . in which *Rooker-Feldman* may be
applied against a party not named in an earlier state proceeding." *Id.* at 466 n.2
(emphasis omitted).

in federal court. As we have explained, that result is not consistent with the doctrine of *Rooker-Feldman* as it has been applied by our court. Indeed, Plaintiffs' argument is, at bottom, merely an argument that state court default judgments cannot give rise to a *Rooker-Feldman* bar, a position our court has rejected. *See Ballyhighlands, Ltd. v. Bruns*, 182 F.3d 898 (2d Cir. 1999) (unpublished table decision) ("*Rooker-Feldman* applies to default judgments just as it does to other types of judgments."); *In re Wilson*, 410 F. App'x 409, 410 (2d Cir. 2011) (default foreclosure judgment against the plaintiff satisfied the first prong of *Rooker-Feldman*). Accordingly, we conclude that a property owner who loses his or her interest in the property through an in rem foreclosure proceeding in state court against the property has lost in state court for the purposes of *Rooker-Feldman*'s first requirement.[25]

---

[25] We note that two of the properties at issue here were owned by HDFC cooperatives. It could be contended, therefore, that unlike a fee simple owner of property, the "owner" of an apartment in a cooperative does not technically have an ownership interest in the property, but is really a shareholder in a corporation that owns the property. We have observed in other contexts, however, that under New York law, "[t]he interest in a cooperative apartment 'is represented by shares of stock, which are personal property, yet in reality what is owned is not an interest in an ongoing business enterprise, but instead a right to possess real property.'" *Alphonso v. Comm'r*, 708 F.3d 344, 352 (2d Cir. 2013) (emphasis omitted), quoting *In re Estate of Carmer*, 71 N.Y.2d 781, 784 (1988). Accordingly, there is a strong argument that the same *Rooker-Feldman* analysis applies to a

B. *Substantive Requirements*

We turn now to *Rooker-Feldman*'s two substantive requirements: that the plaintiff's injuries be caused by the state court judgment and that the asserted claims invite federal review and rejection of that judgment. We conclude that those requirements are met as to only some of Plaintiffs' claims. We begin by identifying several principles established by our previous interpretations of *Rooker-Feldman*'s second and third requirements, which aid our analysis.

First, it is clear that Plaintiffs cannot seek to void the state court foreclosure decisions transferring their property. That is the type of claim that *Rooker-Feldman* squarely forecloses, both because it addresses an injury caused by the state court judgment, and because it would require the district court to review that judgment. *See Exxon Mobil*, 544 U.S. at 293 (explaining that "the paradigm situation in which *Rooker-Feldman* precludes a federal district court from proceeding" is one in which the plaintiff asks the "federal court to undo the [state] judgment") (internal quotation marks omitted); *Vossbrinck v. Accredited*

_____

party who lost his or her interest in a residential cooperative through an in rem foreclosure proceeding against the property in state court as applies to the owner of a house or condominium. We need not definitively resolve this question, however, as Plaintiffs have not made, and therefore have forfeited, any argument based on the structure of cooperative ownership.

45

*Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) ("To the extent [the plaintiffs] ask[] the federal court to grant [them] title to [their] property because the foreclosure judgment was obtained fraudulently, *Rooker-Feldman* bars [their] claim.").

However, it is equally clear that federal courts do not lose jurisdiction merely because "a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Exxon Mobil*, 544 U.S. at 293 (internal quotation marks and alterations omitted). In *Feldman*, for example, the Court concluded that although the plaintiffs there could not seek federal court review of state court judgments denying their requests for waiver of a rule prohibiting them from taking the bar exam because they had not graduated from an accredited law school, they *could* "mount[] a general challenge to the constitutionality of" the rule in federal court. 460 U.S. at 483.

Our court has further determined that *Rooker-Feldman* does not bar claims based on an opponent's misconduct that *precedes* the state court proceeding, if the "plaintiffs' alleged injuries were merely *ratified* by the state-court judgments rather than *caused* by them." *Sung Cho,* 910 F.3d at 641. In *Sung Cho*, the plaintiffs

46

claimed that their rights were violated when they were coerced by operation of a

city ordinance into signing settlement agreements waiving various constitutional

rights to avoid eviction. *Id.* at 643. We concluded that those claims were not

barred by *Rooker-Feldman*, even though the settlement agreements were ratified

by state court judges. *Id.* at 649; *see also Hoblock*, 422 F.3d at 88 (*Rooker-Feldman*

acts to bar a claim only when "[a] third party's actions are produced by a

state-court judgment and not simply ratified, acquiesced in, or left unpunished

by it.").

Finally, as to remedies, although plaintiffs may not seek to have a state

court judgment voided, our court has concluded that *Rooker-Feldman* does not bar

plaintiffs from seeking compensatory damages for misconduct "that defendants

pursued in obtaining" state court judgments. *Sykes v. Mel S. Harris & Assocs., LLC*,

780 F.3d 70, 95 (2d Cir. 2015); *see also Vossbrinck*, 773 F.3d at 427 (plaintiffs not

barred from "seek[ing] damages from [their opponent] for injuries [they] suffered

from their [opponent's] alleged [misconduct]"). In other words, plaintiffs are

permitted to seek damages for injuries caused by a defendant's misconduct in

procuring a state court judgment, but not for injuries directly caused by that

judgment.

Applying these principles, we conclude that *Rooker-Feldman* does not bar Plaintiffs' equal protection and due process claims, or their second takings claim – that their property was taken for a public purpose without just compensation – to the extent that for each of those claims, they seek only the value of their lost property in excess of the amount owed in taxes.[26]

### 1. Takings Claims

Plaintiffs allege two separate takings claims. First, they allege that their properties were taken in violation of the administrative regulations governing the TPT program, including because their properties did not meet the statutory definition of distressed. Second, they argue that their properties were taken for a public purpose, and that they did not receive just compensation for the excess value of their properties beyond the amount they owed in taxes.

As to the first claim, we conclude, as did the district court, that it is barred by *Rooker-Feldman*. The second requirement, that the injury be caused by the state court judgment, is met because the injury Plaintiffs complain of is the loss of their property, which was caused by the state court judgments that divested them of

---

[26] Plaintiffs also argue that the Supreme Court's decision in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), guarantees them a federal forum, at least for their takings claims, notwithstanding *Rooker-Feldman*. We disagree. *See supra* note 17.

that property. By effecting the divestiture of Plaintiffs' interest in their property, the state court judgments thus directly inflicted the injury complained of. Moreover, the state court imposed that judgment after concluding that the City *had* complied with the administrative regulations of the TPT program. To conclude otherwise, the district court would be required to review that state court's decision and determine, impermissibly, whether the state court judgment was valid. That satisfies the third *Rooker-Feldman* requirement, because in order to prevail, Plaintiffs would need to persuade the district court that the state court had erred. *See Vossbrinck*, 773 F.3d at 427 (*Rooker-Feldman* bars claim seeking to undo foreclosure judgment on the basis that it was obtained fraudulently).

We conclude, however, as did the district court, that Plaintiffs' second takings claim – that their property was taken without just compensation because they were not compensated for the excess value of the property – is not barred by *Rooker-Feldman*. First, the City's failure to provide just compensation was not caused by the state court foreclosure judgment, but by the City's decision to include the properties in the TPT Program and transfer them to a third party, and by the TPT Program's allegedly inadequate mechanism for seeking compensation for the excess value of the property following foreclosure. Moreover, Plaintiffs do

49

not seek to void that state court foreclosure judgment; rather, they seek compensation only for the excess value of their property above the taxes and fees that they owed, not the return of their property or the full value of their property. *See* Oral Argument at 30:23-30:38; *supra* pp. 40-41. That injury was caused not by the judgment of forfeiture, but by the City's actions following upon the forfeiture, by transferring the foreclosed-on property to the Transferee Defendants while failing to provide a mechanism for limiting Plaintiffs' losses to the amount owed in taxes.

Finally, adjudicating that claim would not require the district court to review the state court judgment, as that judgment did not address whether the City's actions constituted a taking, or whether Plaintiffs were justly compensated (and indeed, compensation was not necessary prior to the transfer, which occurred *after* the foreclosure judgment was entered). *See Feldman*, 460 U.S. at 483 (*Rooker-Feldman* would not bar "a general challenge to the constitutionality of" the rule that was applied to plaintiffs). Accordingly, the third *Rooker-Feldman* requirement is also unmet as to that claim.[27]

---

[27] The parties also contest whether a taking occurred here. That is an issue regarding the merits of Plaintiffs' claims that is beyond the scope of this appeal, and we express no view on it.

*2. Equal Protection Claim*

Plaintiffs allege that they were denied equal protection because the City, through the TPT Program, disproportionately targets properties in communities of color for foreclosure. We conclude, consistent with the district court, that that claim is not barred by *Rooker-Feldman*. As to the second *Rooker-Feldman* requirement, Plaintiffs' alleged injury was not caused by the state court judgment, because it is the City that decides which properties to target for inclusion in the TPT Program, *prior* to any state court proceeding. The state court merely adjudicates the merits of the foreclosure action; the court was not implicated in the allegedly wrongful discriminatory decision to target these properties, rather than others, for foreclosure. The state court foreclosure judgment thus at most " ratified" the City's pre-existing alleged misconduct. *Sung Cho*, 910 F.3d at 641. Moreover, because Plaintiffs do not seek return of their property, but only the value in excess of the taxes owed, they do not seek to void or undo the state court foreclosure judgment, nor does their claim require the district court to review that judgment. The state court did not consider whether the City had violated equal protection in targeting specific properties for foreclosure when it issued the foreclosure judgments.

51

### 3. Due Process Claims

Finally, we turn to Plaintiffs' due process claims. Plaintiffs raise two separate due process claims, both based on lack of notice of the in rem foreclosure proceeding. First, they allege that the City "instituted its in rem proceedings against property owners without issuing them notice reasonably calculated to inform them of the proceeding," and with "actual knowledge that it was not providing [such] notice." J.A. 47. Second, they allege that "the notice provisions of the City's Third Party Transfer Program fall short of those required under the Due Process Clause of the 14th Amendment to the United States Constitution." *Id.*

We conclude that *Rooker-Feldman* does not bar the first claim. The second requirement is not met because the complained of injury was produced by the City's alleged failure to provide adequate notice. Although the state court judgment "ratified" the injury, *Rooker-Feldman* does "not bar jurisdiction where, as here, plaintiffs' alleged injuries were merely *ratified* by the state-court judgments rather than *caused* by them." *Sung Cho*, 910 F.3d at 643.

As to the third requirement, the first claim would require the district court to, in some sense, review the state court judgment, because that judgment

concluded that notice *was* provided. *See In Rem Tax Foreclosure No. 51, Borough of Brooklyn*, Index No. 8700/2007 (Sup. Ct. Oct. 26, 2011) (concluding that notice was provided in compliance with the provisions of Title 11, Chapter 4 of the N.Y.C. Administrative Code); *In Rem Tax Foreclosure Action No. 53, Borough of Brooklyn*, Index No. 8700/2015 (Sup. Ct. Nov. 27, 2017) (same). But this is not the sort of review *Rooker-Feldman* forbids. *Rooker-Feldman*, as a "construction" of 28 U.S.C. § 1257, *ASARCO Inc. v. Kadish*, 490 U.S. 605, 622-23 (1989), prohibits lower federal courts only from taking appeals from state courts, *Lance v. Dennis*, 546 U.S. 459, 463 (2006). As such, they may not "overturn," *Exxon Mobil*, 544 U.S. at 291-92, "declare[] null and void," *Rooker*, 263 U.S. at 413, or "reverse or modify," *id.* at 416, state court decisions. It does not prevent them, as part of adjudicating an "independent claim," from "den[ying] a legal conclusion that a state court has reached[.]" *Exxon Mobil*, 544 U.S. at 293. But that is all Plaintiffs ask of the district court. If it rules in their favor, the foreclosure judgments will not lose their legal force. Nor would an award of damages amount to a reversal in substance by imposing an obligation on Defendants that is incompatible with the dictates of a state court judgment. *See Hoblock*, 422 F.3d at 87. And even assuming *arguendo* that compensatory damages in the amount of Plaintiffs' loss would effectively

reverse the state court, we note that Plaintiffs are not seeking that amount. *Infra* p. 56 & n.29.

The district court also drew a distinction between Plaintiffs' claim seeking nominal damages, which it concluded *Rooker-Feldman* permitted, and their claim seeking compensatory damages, which it concluded was prohibited. We conclude that neither claim, as limited by Plaintiffs' statements at oral argument, is barred by *Rooker-Feldman*. First, as the district court properly concluded, Plaintiffs will be entitled to, at minimum, nominal damages, if they can show that they were deprived of due process. *Warren v. Pataki*, 823 F.3d 125, 141 (2d Cir. 2016).

Second, to obtain compensatory damages, Plaintiffs will be required to show that their alleged injuries were caused by the City's failure to provide them with adequate notice. *Id.* Defendants argue, and the district court agreed, that a claim for compensatory damages would meet *Rooker-Feldman*'s second and third requirements and should be barred, because (1) Plaintiffs' injury, the loss of their property, was caused by the state court judgment and (2) determining whether compensatory damages are warranted would require the district court to entertain the counterfactual of what would have occurred in the state court

54

proceeding if Plaintiffs had received adequate notice, which would be an impermissible review of the state court judgment. We disagree on both points, and conclude that compensatory damages are not barred.

As to the second requirement, causation, our court has concluded that *Rooker-Feldman* does not bar a claim for compensatory damages where the injury – here, the failure to provide for remission to Plaintiffs of the value of their property in excess of what was owed in taxes – was caused by an opponent's alleged misconduct, rather than a state court judgment ratifying that conduct. *Sykes*, 780 F.3d at 94-95.[28]

As to the third requirement, we have already explained that entertaining the counterfactual of what would have occurred had notice been given merely requires the district court to "den[y] a legal conclusion that a state court has reached," *Exxon Mobil*, 544 U.S. at 293, which *Rooker-Feldman* permits so long as the district court does not engage in review and rejection of the state court judgment. *See also Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159. 172-73 (3d Cir. 2010) (concluding *Rooker-Feldman* did not bar plaintiff's

---

[28] To the extent that *Brodsky v. Carter*, 673 F. App'x 42, 44 (2d Cir. 2016), is to the contrary, we do not find the reasoning in that decision persuasive, and decline to follow it. *See* 2d Cir. R. 32.1.1(a).

claim for compensatory damages for an alleged due process violation); *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995) (same). We conclude that Plaintiffs may seek compensatory damages equal to the excess value of their lost property, over and above the amount owed in taxes. That is an appropriate measure of Plaintiffs' damages because, even had they been given adequate notice, their properties would still be tax-delinquent.[29]

---

[29] Because Plaintiffs' counsel limited their claim for damages at oral argument, we need not address, as the district court was required to, whether *Rooker-Feldman* would bar a claim for damages equal to the full value of Plaintiffs' property on the theory that such a claim would be, in essence, a request to "undo" the state court judgment. We note that in a previous case, we have concluded that *Rooker-Feldman* barred a plaintiff's claim for compensatory damages based on a state court foreclosure proceeding where the complaint estimated those damages to be the full value of the foreclosed-on property, which was akin to asking the federal court to "review and reject" the state court judgment. *See Charles v. Levitt*, 716 F. App'x 18, 22 (2d Cir. 2017) (our conclusion that *Rooker-Feldman* barred the plaintiff's claims was "further buttressed by our observation that the damages demanded in the amended complaint are tied to the alleged value of the Property"). This case is different, however, because Plaintiffs made clear at oral argument that they were not seeking compensation equal to the full value of their lost property and were not seeking to undo the foreclosure judgment, and because the complaint makes clear that the amount it seeks in damages is merely an imprecise estimate of the putative class's total damages. *Compare* J.A. 35 ("By way of example, in 2017 alone, the City Defendants were awarded *in rem* title to sixty-six (66) properties in Kings County believed to be worth, in the aggregate, in excess of sixty million dollars ($60,000,000.00).") *with* J.A. 48 ("Plaintiffs, and those similarly situated, have accordingly been damaged in the minimal sum of $66,000,000.00."). For obvious reasons, it would be difficult at this stage for Plaintiffs to precisely estimate damages equal to the excess value of the

We turn at last to Plaintiffs' second due process claim, that the notice provisions of the TPT Program are facially unconstitutional. As discussed earlier in this Opinion, Plaintiffs lack standing to seek prospective injunctive relief for that claim, and therefore, we need not consider whether such relief would be barred by *Rooker-Feldman*. *Supra* pp. 23-27. To the extent that they seek monetary relief for the past injury of being subjected to the allegedly unconstitutional provisions, that claim overlaps with their first claim that they were not given adequate notice, and the earlier *Rooker-Feldman* analysis applies.

## CONCLUSION

For the forgoing reasons, we conclude: (1) that Plaintiffs lack standing to seek injunctive and declaratory relief; (2) that the TIA is not directly applicable to Plaintiffs' claims and that the district court exceeded its discretion in concluding that comity bars their claims; and (3) that the *Rooker-Feldman* doctrine does not bar Plaintiffs' equal protection and due process claims, or their second takings claim – that their property was taken for a public purpose without just

_____

properties owned by putative class members and taken through the TPT Program.

57

compensation – to the extent that for each of those claims, they seek only the value of their lost property in excess of the amount owed in taxes. Accordingly, we AFFIRM in part and REVERSE in part the district court's judgment, and REMAND for further proceedings consistent with this opinion. We also VACATE and REMAND the district court's decision not to exercise supplemental jurisdiction over Plaintiffs' state law claims, so that the court may reconsider that decision in light of this opinion.