UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MCCONNELL DORCE, et al.,

Plaintiffs,

-against-

CITY OF NEW YORK, et al.,

Defendants.

## MUNICIPAL DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

*GEORGIA M. PESTANA*

*Corporation Counsel of the City of New York*
*Attorney for Municipal Defendants*
*100 Church Street*
*New York, N.Y.  10007*
*Tel:  (212) 356-2565*


*Of Counsel: Andrea B. Feller*
*Michael S. Adler*
*Rachel B. Kane*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................................... 1

STANDARD OF REVIEW .............................................................................................................. 1

THE CITY'S *IN REM* LAW ............................................................................................................ 2

PROCEDURAL HISTORY ............................................................................................................... 6

ARGUMENT

      POINT I

           CERTAIN COUNTS, AND SOME COMPONENTS OF OTHERS, ARE BARRED BY THE MANDATE RULE AND/OR THE ROOKER-FELDMAN DOCTRINE .......................................................................7

      POINT II

           THE MANDATE RULE AND THE DOCTRINES OF JUDICIAL ADMISSION AND WAIVER REQUIRE DISMISSAL OF CERTAIN ELEMENTS OF PLAINTIFFS' DAMAGES CLAIMS ..............................................................................9

      POINT III

           THE AMENDED COMPLAINT FAILS TO STATE A CLAIM ..............................................................................11

           A.    Counts One and Six: Taking Without Just Compensation ...............................................................11

           B.    Counts Two and Seven: Equal Protection ........................................14

           C.    Counts Three and Eight: Due Process .............................................16

           D.    Counts Four and Nine: Excessive Fines .........................................19

           E.    Counts Five and Fourteen: Civil Conspiracy...................................20

           F.    Count Ten: Conversion .................................................................22

G.    Count Eleven: Unjust Enrichment .......................................................22

H.    Count Twelve: Deceptive Consumer Practices.................................22

I.    Count Thirteen: Municipal Home Rule ...........................................23

CONCLUSION................................................................................................... 24

Attorney Certification ........................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Pages**

*244 Lenox Ave. LLC v. Bazelais,*
    126 A.D. 3d 604 (1st Dept. 2015)..........................................................................3

*303 West 42nd Street Corp. v. Klein,*
    46 N.Y.2d 686 (1979) ..........................................................................................14

*41 Kew Gardens Road Associates v. Tyburski,*
    70 N.Y.2d 325 (1987) ..........................................................................................24

*Abacus Fed. Sav. Bank v Lim,*
    75 A.D.3d 472 (1st Dept. 2010)...........................................................................21

*Achtman v. Kirby, McInerney & Squire, LLP,*
    464 F.3d 328 (2d Cir. 2006)...................................................................................1

*Akey v. Clinton County,*
    375 F.3d 231 (2d Cir. 2004)..................................................................................18

*Alpha Painting & Constr. Co. v Delaware Riv. Port Auth.,*
    822 Fed. Appx. 61 (3d Cir. 2020) .........................................................................10

*Amberhill Props. v Berkeley,*
    814 F.2d 1340 (9th Cir.1987) ...............................................................................10

*Arace v. Quicken Loans, Inc.,*
    2016 US. Dist. LEXIS 11510 (S.D.N.Y. Feb. 1, 2016)..........................................1

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................................1

*Austin v. United States,*
    509 U.S. 602 (1993)..............................................................................................19

*Baldwin Union Free School Dist. v. Cty. of Nassau,*
    22 N.Y.3d 606 (2014)...........................................................................................24

*Baron v. Pfizer,*
    42 A.D.3d 627 (3d Dept. 2007) ...........................................................................22

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................................1

*Blecher v. Dep't of Hous. Preservation & Dev.,*
    1994 U.S. Dist. LEXIS 4969 (S.D.N.Y. Apr. 19, 1994)......................................15

**Cases**                                                                                                      **Pages**

*Bower Assocs. v. Town of Pleasant Valley*,
    2 N.Y.3d 617 (2004) ...................................................................................15

*Bowling v Dahlheimer*,
    2020 U.S. Dist. LEXIS 163132 (E.D. Tex. Aug. 12, 2020) ......................................8

*Browning-Ferris Indus. v. Kelco Disposal*,
    492 U.S. 257 (1989)......................................................................................19

*Buon v. Spindler*,
    2021 U.S. Dist. LEXIS 51087 (S.D.N.Y. Mar. 18, 2021) .....................................15

*C & B Enters. USA, LLC v Koegel*,
    136 A.D.3d 957 (2d Dept. 2016) .........................................................................22

*City v. Melamed*,
    19 A.D.3d 547 (2d Dept. 2005) ...........................................................................3

*Colavito v. New York Organ Donor Network, Inc.*,
    8 N.Y.3d 43 (2006) ............................................................................................22

*County of Nassau v. Canavan*,
    1 N.Y.3d 134 (2003) .........................................................................................19

*Dept. of Hous. Preserv. & Dev. of the City of N.Y. v. Deutsche Bank Natl. Trust Co.*,
    41 Misc. 3d 1202 (Civ. Ct, Richmond Co. 2013) .................................................13

*Donnelly v Glickman*,
    159 F.3d 405 (9th Cir. 1998) .............................................................................10

*Dorce v. City of New York*,
    2 F.4th 82 (2d. Cir. 2021) ........................................................................7, 8, 9, 10

*Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*,
    755 F.2d 239 (2d Cir. 1985).............................................................................21

*Dusenbery v. United States*,
    534 U.S. 161 (2002)........................................................................................17

*Echols v Russell*,
    2016 U.S. Dist. LEXIS 8166 (E.D.N.C. Jan. 25, 2016).........................................9

*Economic Opportunity Comm'n of Nassau County, Inc. v. County of Nassau*,
    106 F. Supp. 2d 433 (E.D.N.Y. 2000) ................................................................16

**Cases**                                                                  **Pages**

*EEOC v Bashas' Inc.*,
   585 Fed. Appx. 325 (9th Cir. 2014) ...................................................................10

*Feibleman v. Trs. of Columbia Univ.*,
   2020 U.S. Dist. LEXIS 31499 (S.D.N.Y. Feb. 24, 2020) .......................................2

*Gaidon v. Guardian Life Ins. Co. of Am.*,
   94 N.Y.2d 330 (1999) .......................................................................................22

*Genesco Entertainment, Inc. v. Koch*,
   593 F. Supp. 743 (S.D.N.Y. 1984) ..................................................................23

*Hall v Meisner*,
   2021 U.S. Dist LEXIS 192587 (E.D. Mich. Oct. 4, 2021) ...................................11

*Hilao v Estate of Marcos*,
   393 F.3d 987 (9th Cir. 2004) .............................................................................10

*In re In Rem Foreclosure Action*,
   118 Misc.2d 1081 (Sup. Ct. Queens Co. 1983) ...........................................11, 12

*In Rem Foreclosure Action No. 51, Borough of Brooklyn*,
   Index No. 8700/20 ............................................................................................18

*In Rem Foreclosure Action No. 52, Borough of Bronx*,
   Index No. 40000/2015 .....................................................................................5, 6

*In Rem Tax Foreclosure Action No. 53 Borough of Brooklyn*,
   63 Misc.3d 1207(A) (Sup. Ct. Kings Co., 2019) .....................5, 6, 12, 16, 18, 21

*In Rem Tax Foreclosure Action No. 47, Borough of Staten Island*
   (Sup. Ct. Richmond Co. 2006) ("*Woodbridge*")...................................................11

*Inlow v. Inlow*,
   797 N.E.2d 810 (Ind. Ct. App. 2003)..................................................................9

*In re Tax Foreclosure No. 35*,
   127 A.D.2d 220 (2d Dep't 1987) .......................................................................17

*ISCA v. City of New York*,
   77 N.Y.2d 688 (1991) .......................................................................................17

*Jones v. Flowers*,
   547 U.S. 220 (2006)..........................................................................................17

**Cases**                                                                                      **Pages**

*Kashi v. Gratsos,*
    790 F.2d 1050 (2d Cir. 1986)........................................................................20

*Kerman v City of NY,*
    374 F.3d 93 (2d. Cir 2004)............................................................................7

*Key Bank of Cent. New York v. County of Broome,*
    116 A.D.2d 90 (3d Dept. 1986) ...................................................................22

*Kirsh v. City of New York,*
    1995 U.S. Dist. LEXIS 8896 (S.D.N.Y. Jun. 27, 1995) .............................19

*Ladeairous v. AG of N.Y.,*
    592 Fed. Appx. 47 (2d Cir. 2015)..................................................................1

*Land & Bay Gauging, L.L.C. v. Shor,*
    623 Fed. Appx. 674 (5th Cir. 2015) ..............................................................8

*Levy v. New York,*
    726 F. Supp. 1446 (S.D.N.Y. 1989)............................................................17

*Matter of In Rem Tax Foreclosure Action No. 47 v. Simmonds,*
    29 A.D.3d 955 (2d Dept. 2006) .....................................................................3

*Marom v. City of New York,*
    2016 U.S. Dist. LEXIS 28466 (S.D.N.Y. Mar. 7, 2016) ............................14

*Martine's Serv. Ctr. v. Town of Wallkill,*
    2013 U.S. Dist. LEXIS 46396 (S.D.N.Y. Mar. 26, 2013),
    *aff'd*, 554 Fed. Appx. 32 (2d Cir. 2014) ....................................................15

*Mason v Midland Funding LLC,*
    2017 U.S. Dist. LEXIS 216825 (N.D. Ga. July 27, 2017)............................9

*Matter of In Rem Tax Foreclosure Action* No. 52, 189 A.D.3d 731, 732 (1st Dept.
    2020) ..............................................................................................................6

*Matter of In Rem Tax Foreclosure Action No. 47 v. Simmonds,*
    29 A.D.3d 955 (2d Dept. 2006) .....................................................................3

*Miner v. Clinton County,*
    541 F.3d 464 (2d Cir 2008)................................................................ 10-11, 17

*Missigman v. USI Northeast, Inc.,*
    131 F. Supp. 2d 495 (S.D.N.Y. 2001)..........................................................21

**Cases**                                                                 **Pages**

*Nelson v. City of New York*,
   352 U.S. 103 (1956) .................................................................................11, 12

*O'Bryan v. Stark*,
   77 A.D. 494 (1st Dept. 2010) .........................................................................3

*OTR Media Group, Inc. v City of New York*,
   83 A.D.3d 451 (1st Dept. 2011) ....................................................................19

*Patterson Collection v Sullivan*,
   2010 U.S. Dist. LEXIS 41131 (D. Conn. Apr. 21, 2010) ...........................8

*Petrone v. Davidoff Hutcher & Citron, LLP*,
   150 A.D.3d 776 (2d Dept. 2017) ..................................................................22

*Pope v Rice*,
   2005 U.S. Dist. LEXIS 4011 (S.D.N.Y. Mar. 14, 2005) .............................20

*Posr v. Court Officer Shield # 207*,
   180 F.3d 409 (2d Cir. 1999) .........................................................................16

*Preferred Group of Manhattan, Inc. v. City of Poughkeepsie*,
   166 A.D.3d 916 (2d Dept. 2018) ..................................................................23

*Pysa Realty Corp. v. City*,
   23 A.D.3d 290 (1st Dept. 2005) ...............................................................3, 18

*Roffman v. City of New York*,
   2002 U.S. Dist. LEXIS 23665 (S.D.N.Y. Dec. 9, 2002) ............................16

*Rose v. Oakland Cty. Treasurer*,
   2020 U.S. Dist. LEXIS 30450 (E.D. Mich. Feb. 21, 2020) ........................20

*Ruston v. Town Bd. for the Town of Skaneateles*,
   610 F.3d 55 (2d Cir. 2010) ......................................................................14, 15

*Sheehan v. County of Suffolk*,
   67 N.Y.2d 52 (1986) ................................................................................11, 12

*Shred-It USA, Inc. v. Mobile Data Shred, Inc.*,
   228 F.Supp. 2d 455 (S.D.N.Y. 2002),
   *aff'd*, 92 Fed. Appx. 812 (2d Cir. 2004) .....................................................23

*Singh v. NYCTL 2009-A Trust*,
   2016 U.S. Dist. LEXIS 94738 (S.D.N.Y. Jul. 20, 2016) ............................23

**Cases**                                                                   **Pages**

*Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry.*,
   762 F.3d 165 (2d Cir. 2014).................................................................7

*Sonmax, Inc. v. New York*,
   43 N.Y.2d 253 (1977) ...................................................................24

*Tulsa Professional Collection Services, Inc. v. Pope*,
   485 U.S. 478 (1988)......................................................................17

*Tupaz v. Clinton County*,
   499 F. Supp.2d 182 (N.D.N.Y. 2007),
   *aff'd sub nom, Miner v. Clinton County*, 541 F.2d 464 ......................15

*United Bhd. of Carpenters & Joiners, Local 610 v. Scott*,
   463 U.S. 825 (1983).....................................................................16

*United States v. An Antique Platter of Gold*,
   184 F.3d 131 (2d Cir. 1999)......................................................19, 20

*United States v. Bajakajian*,
   524 U.S. 321 (1998).....................................................................19

*United States v Cary*,
   775 F.3d 919 (7th Cir. 2015) ........................................................10

*United States v Cunningham*,
   405 F.3d 497 (7th Cir. 2005) ........................................................10

*United States v. Davis*,
   648 F.3d 84 (2d Cir. 2011)............................................................19

*United States v. Idowu*,
   74 F.3d 387 (2d Cir. 1996)............................................................20

*United States v Young*,
   932 F.2d 1035 (2d Cir. 1991).........................................................10

*Von Hofe v. United States*,
   492 F.3d 175 (2d Cir. 2007)..........................................................19

*Weigner v. New York*,
   668 F. Supp 135 (E.D.N.Y. 1987), *aff'd*, 852 F.2d 646 (2d Cir. 1988)................12

*Weigner v. New York*,
   852 F.2d 646 (2d. Cir. 1988)..........................................................17

**<u>Cases</u>**                                                                                      **<u>Pages</u>**

*Zaccaro v. Cahill*,
    100 N.Y.2d 884 (2003) ...........................................................................17

*Zachary v. Clinton Cty.*,
    2003 U.S. Dist. LEXIS 26596 (N.D.N.Y. Jan. 10, 2003) .....................................11

*Zahra v. Town of Southold*,
    48 F.3d 674 (2d Cir. 1995)........................................................................14

**<u>Statutes</u>**

42 U.S.C. § 1985 ........................................................................................16

Fed. R. Civ. P. 12(b)(6) ...................................................................................1

General Business Law § 349................................................................................22

General Business Law article 23-A, §§352–353 ..........................................................22

NY Mun. Home Rule Law §10(1)(ii)(a)(9) ................................................................23

NY Real Property Tax Law Article 11 ................................................................2, 23

NY RPTL §1104(2) ......................................................................................23

NY Private Housing Finance Law §573(5) ...............................................................22

NYC Admin. Code §11-301 *et seq* ....................................................................2, 12

NYC Admin. Code §11-401 *et seq*. ................................................................*ibid*.

NYC Local Law no. 37 §5 (May 14, 1996) .................................................................2

NYC Local Law no. 69 §1 (Aug. 26, 1997) ...............................................................2

RCNY §8-03 ...............................................................................................4

**<u>Other Authorities</u>**

N.Y. Const., art. IX, §2(c)(8)..............................................................................23

Restatement (Second) of Torts §266.......................................................................8

*Breaking the Cycle of Abandonment: Using a Tax Enforcement Tool to Return*
    *Distressed Properties to Sound Private Ownership*, PIONEER INSTITUTE 1-3
    (2000) .................................................................................................3

| Cases | Pages |
|---|---|

*Comment: The Warranty of Habitability as Applied to New York City In rem
   Housing: A Premature Promise:,*
   50 BROOKLYN L. REV. 1103 (Summer 1984) .......................................................................3

MCCONNELL DORCE, et al.,

19 Civ. 02216 (JGK)

Plaintiffs,

-against-

CITY OF NEW YORK, et al.,

Defendants.

## PRELIMINARY STATEMENT

Plaintiffs challenge tax foreclosure of properties in which they allege to have had an interest, claiming New York City's ("City") *in rem* tax foreclosure process is unconstitutional. Plaintiffs have not plausibly alleged the City's foreclosure violated their rights. The conclusory, result-oriented accusations of conspiracy fail for lack of underlying wrongdoing and as wholly unsupported.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief . . . that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (*quoting* in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals" do not suffice (*id.*), nor will conclusions "masquerading as factual." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006).

"[T]he Court may consider documents that are incorporated by reference in the complaint [and] documents that the plaintiff relied on" (*Arace v. Quicken Loans, Inc.,* 2016 US. Dist. LEXIS 11510, *7 (S.D.N.Y. Feb. 1, 2016)), as well as documents relating to other court proceedings (*Ladeairous v. AG of N.Y.*, 592 Fed. Appx. 47, 48 (2d Cir. 2015)). The Court need not credit

allegations that are contradicted by documentary evidence. *Feibleman v. Trs. of Columbia Univ.*, 2020 U.S. Dist. LEXIS 31499, *22 (S.D.N.Y. Feb. 24, 2020).

<u>**THE CITY'S *IN REM* LAW**</u>

*In rem* tax foreclosure is a procedure by which a taxing authority obtains a multi-property judgment authorizing foreclosure of properties subject to delinquent real property and other charges ("tax liens"). Typically, the taxing authority takes title pursuant to the judgment. *See* New York Real Property Tax Law ("RPTL") Article 11; NYC Administrative Code ("Ad. Code") §11-412(b).

By amendments to the City's *in rem* law in 1996 (NYC, NY, Local Law no. 37 §5 (May 14, 1996) ("Local Law 37") and 1997 (NYC, NY, Local Law no. 69 §1 (Aug. 26, 1997), the City added to its traditional *in rem* tax foreclosure process an alternative authorizing the City to dispose of class one and class two (*i.e.*, residential) properties subject to foreclosure judgment by deed either to the City or to a qualified third-party affordable housing developer. This "modified" *in rem* process, the Third Party Transfer Program ("TPT"), was "part of a comprehensive reform[1] of the City's tax collection procedures." Testimony of Lilliam Barrios-Paoli, NYC HPD Commissioner, April 22, 1996 at p.7 (*see* Amended Complaint ("AC") ¶¶43, 45).[2] The award-

---

[1] The City added its bulk tax lien sale procedure by Local Law no. 26 (Mar. 18, 1996). *See* Ad. Code, Title 11, chapter 3.

[2] https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=2506428&GUID=28382A28-26F2-4C11-BB4F-79B9AAD9BFF7&Options=ID|Text|&Searvh= (at "274. <u>Housing & Buildings - April 22</u>").

winning TPT[3] enabled the City to mitigate a problem: due to widespread tax- delinquency and abandonment of private property, the City had through *in rem* foreclosure become the landlord with the largest holdings in the City, most in serious disrepair. *See Comment: The Warranty of Habitability as Applied to New York City In rem Housing: A Premature Promise: City of New York v. Rodriguez,* 50 BROOKLYN L. REV. 1103, 1105-06 (Summer 1984). Since its inception, TPT rehabilitated 6000 units in 520 formerly tax-delinquent properties for the benefit of 15,000 residents. Testimony of HPD Commissioner Louise Carroll to New York City Council, July 22, 2019 ("HPD Testimony 2019"), p. 2. a copy annexed as Exhibit B to Feller Decl.

There is nothing revolutionary about *in rem* tax foreclosure; moreover, legions of decisions over more than two decades have upheld TPT and the City's compliance with its requirements. *Matter of In Rem Tax Foreclosure Action No. 47 v. Simmonds*, 29 A.D.3d 955 (2d Dept. 2006); *City v. Melamed*, 19 A.D.3d 547 (2d Dept. 2005); *244 Lenox Ave. LLC v. Bazelais*, 126 A.D. 3d 604 (1st Dept. 2015); *O'Bryan v. Stark,* 77 A.D. 494 (1st Dept. 2010); *Pysa Realty Corp. v. City*, 23 A.D.3d 290, (1st Dept. 2005)**.** Copies of a sample of seven unreported cases from New York State Supreme Court are annexed as Exhibit C to Feller Decl.

The City's *in rem* foreclosure actions, traditional or modified, are commenced by filing a List of Delinquent Taxes in the relevant County Clerk's office. Ad. Code §11-406(a). For either type of action, the List is prepared by the Commissioner of the Department of Finance, *Id.* §11-

---

[3] *Breaking the Cycle of Abandonment: Using a Tax Enforcement Tool to Return Distressed Properties to Sound Private Ownership*, PIONEER INSTITUTE 1-3 (2000), copy annexed as Exhibit A to the accompanying Declaration of Andrea B. Feller, dated November 15, 2021 ("Feller Decl.").

405(a), and may include properties with tax liens delinquent for at least one year or three years, depending on the category of property (*id.* §11-404), and must include all tax-delinquent properties within a specific geographical area, which may not be smaller than a block. *Id.* §11-405(a).

Upon commencement of any *in rem* action, the City must give notice to owners and other interested parties. *Id.* §11-406. Interested parties may serve an answer (*id*. §11-409), and have many opportunities to redeem (*e.g.*, *id.* §11-406(b)), up until four months following foreclosure judgment in modified *in rem* foreclosure (*id.* §11-412.1(d)), and may redeem by full payment or by installment agreement, either of which excludes property from judgment and transfer. (*id.* §§11-407, 409, 412, 412.1).[4]

In TPT the City must transfer foreclosed property within eight months of entry of judgment (*id.* §§ 11-412.1 and 412.2) to the City or to a qualified third party, chosen pursuant to criteria set forth in Ad. Code §11-412.1(b)(2), including residential management experience, financial ability, rehabilitation experience, and ability to work with governmental and community organizations. *See also* RCNY §8-03 and HPD's Request for Qualifications for Third Party Transfer Program, copy annexed as Exhibit D to Feller Decl. Upon execution of a deed, the City or third-party is seized of an estate in fee simple absolute, barring forever "any right, title, interest, claim, lien or equity of redemption . . . ." Ad. Code §11-412.1(c). TPT is a non-eviction foreclosure in which, upon transfer, lawful tenants are entitled to leases at affordable rents. *See* Affirmation of Margaret DeVoe submitted in opposition to motion to vacate *in rem* judgment as to Block 2876, Lot 1

---

[4] Interested parties are entitled to agreements prior to judgment; the City's discretion is needed only following entry of foreclosure judgment. Ad. Code §§11-409(g); 11-412.1(d). Only payment agreements kept current exempt property from judgment. *Id*. §11-409(g).

(respecting 1600 Nelson Ave.) in *In Rem Foreclosure Action No. 52, Borough of Bronx,* Index No. 40000/2015 ("*Bronx 52*") (AC ¶62), copy annexed as Exhibit E to Feller Decl.

Plaintiffs allege the City may only foreclose properties "distressed" pursuant to the statutory definition (Ad. Code §11-401.4) and that the City contravenes that requirement (AC ¶57). However, Plaintiffs misread the statute and misapprehend the purpose of inclusion of the statutory definition.[5] TPT foreclosure is *not* addressed specifically to "distressed" properties, but rather to *residential* properties. *Compare* Ad. Code §11-412.1(b)(1) enacted in 1996 ("final judgment authorizing the award of possession of *any parcel of class one and class two [residential] real property*" otherwise eligible for foreclosure) (emphasis added), to the pre-existing Ad. Code §11-412 (final *in rem* judgment without the limiting language).

Section 11-404 of the Ad. Code, applicable to both traditional and modified *in rem* actions, provides that unpaid tax liens may be foreclosed, without reference to whether or not property is distressed. Similarly, §11-405(a) provides that the List of Delinquent Taxes shall include "*all* parcels within a particular class, that are within a particular borough or section of a tax map . . ." (emphasis added), again with no mention of "distress."

_____

[5] "Procedures for distressed properties," Ad. Code §401.1, precludes "distressed" properties from the City's bulk tax lien sales (subsec. (a)); obligates HPD to monitor for "distress" to ensure exclusion from the lien sale and for possible inclusion in other rehabilitation programs (subsec. (c)); and relieves HPD from monitoring properties no longer "distressed" (subsec. (b)). The holding in *In Rem Tax Foreclosure Action No. 53 Borough of Brooklyn*, 63 Misc.3d 1207(A), *66 (Sup. Ct. Kings Co., 2019) (*"Brooklyn 53"*) that only "distressed" property is subject to TPT, in reliance on Ad. Code §11-401.1(b), was simply incorrect.

Supreme Court, Bronx County, rejected the then-novel argument that non-"distressed" property was improperly included in *Bronx 52* (Sup. Ct. Bx Co., May 31, 2019, respecting Block 2876, Lot 1, 1600 Nelson Ave.), at p.3 ("tax delinquent properties of the same class on the same block must be included whether or not 'distressed'. . . ). *See* decision in *Bronx 52/1600 Nelson Ave.*, annexed as Exhibit F to Feller Decl.

The definition of "distressed" was not broadened in 1996 (AC ¶¶43, 44, 65) -- the prior *in rem* law contained no such definition. Nor was there any expansion, in 2015 or 2018, of TPT or the type of properties foreclosed (AC ¶¶50, 64).

Nor is TPT "a pretext" for foreclosure (AC ¶¶ 4, 53). The City's *secondary* goal of creating and preserving affordable housing does not negate TPT's indisputable tax enforcement purpose. The City collects significant revenue from TPT ("approximately $40 million in outstanding arrears" in the last round, which affected two of the properties at issue here, HPD Testimony 2019, Exh. A, p. 3), notwithstanding that taxes are extinguished on *transferred* properties.

Plaintiffs allege "widespread abuse" of TPT relying on *Brooklyn 53,* which vacated judgment against six properties. However, Supreme Court, Bronx County, considered ten such motions in *Bronx 52* and denied all (including *1600 Nelson Ave.*, Exh. F.). Copies of the other nine decisions are annexed as Exhibit G to Feller Decl. Six of the ten were appealed: four were affirmed in *Matter of In Rem Tax Foreclosure Action* No. 52, 189 A.D.3d 731, 732 (1st Dept. 2020) (finding "inadequate support in the record for appellants' claims that the City engaged in misconduct . . . under the City's third-party transfer program"); two are pending. Copies of Notices of Appeal respecting the pending matters are annexed as Exhibit H to Feller Decl.

## PROCEDURAL HISTORY

This Court dismissed Plaintiffs' original complaint by decision and order dated May 16, 2020, holding some claims barred by the Rooker-Feldman doctrine and all barred by the Tax

Injunction Act and comity. The Second Circuit affirmed in part and reversed in part. *Dorce v. City of New York*, 2 F.4th 82 (2d. Cir. 2021), holding the claims, other than for injunctive relief and declaratory judgment, not barred by the TIA or comity. The Circuit found some claims (Municipal Home Rule and unjust taking of properties not statutorily "distressed") barred by Rooker-Feldman, but others, not. Additionally, it found Plaintiffs' damages, if any, limited to surplus value of foreclosed property.

Plaintiffs filed the AC on September 15, 2021, realleging claims for equal protection, due process, unjust taking, violation of Municipal Home Rule, and consumer fraud and adding new federal and state claims for conspiracy, conversion, unjust enrichment, and imposition of excessive fines.

## ARGUMENT

### POINT I

**CERTAIN COUNTS, AND SOME COMPONENTS OF OTHERS, ARE BARRED BY THE MANDATE RULE AND/OR THE ROOKER-FELDMAN DOCTRINE**

District courts must follow guidance of the circuit court that decided an appeal in a case as to matters that the circuit court explicitly or implicitly addressed, under the mandate rule of the law of the case doctrine. *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry.*, 762 F.3d 165, 175 (2d Cir. 2014); *Kerman v City of NY*, 374 F.3d 93, 109-10 (2d. Cir 2004). This principle, along with the Rooker-Feldman doctrine, negates several pieces of the amended complaint.

In Count 13, alleging a Municipal Home Rule violation, Plaintiffs assert harm resulting from the City's supposed non-adherence to state statutory constraints. The Circuit, treating allegations of violation of statutory and **other** governing regulations asserted as part of a takings theory, held them barred by Rooker-Feldman, since the two procedural prongs of the doctrine are

met as to all Plaintiffs' claims and the "caused by" and "invitation to review and reject judgment" prong are met as to the non-adherence claims. 2 F.4th at 105. The Count 13 claim is similarly prohibited because the Circuit implicitly so held and because review would offend Rooker-Feldman.

Dismissal is likewise required of portions of Counts 3 and 8 (Federal and State constitutional due process). One component of Count 3 claims that the codified notice provisions violate due process (AC ¶316). However, the Circuit held the identical claim fails, since Plaintiffs lack standing to seek prospective injunctive relief and, to the extent Plaintiffs predicate monetary relief on this claim, the claim overlaps the other claim of lack of proper notice and is otherwise subject to the Circuit's Rooker-Feldman analysis. *Dorce*, 2 F.4th at 106. The preceding defect also undersuts Count 8, which, by adopting the contentions of Count 3 (AC ¶351), partakes of the same problem. Hence, this component of the two counts warrants dismissal.

Barred by Rooker-Feldman as well is Count 10 for conversion, asserting that "Defendants intentionally exercised control over Plaintiffs' properties …" (AC ¶359). A claim for conversion does not lie where the complained-of interference was pursuant to a court order that is at least valid on its face. Restatement (Second) of Torts §266; *see Patterson Collection v Sullivan*, 2010 U.S. Dist. LEXIS 41131, *12 (D. Conn. Apr. 21, 2010). The City control over Plaintiffs' properties; was authorized by a State Supreme Court judgment, so that the harm complained of was "caused by the judgment" within the meaning of Rooker-Feldman. Similarly, review and rejection of that judgment would be necessary for this claim, hence satisfying the "invitation to review and reject judgment" prong. Accordingly, Rooker-Feldman bars this claim. *See Land & Bay Gauging, L.L.C. v. Shor*, 623 Fed. Appx. 674, 679 (5th Cir. 2015); *Bowling v Dahlheimer*, 2020 U.S. Dist. LEXIS

163132, *22-24 (E.D. Tex. Aug. 12, 2020); *Echols v Russell*, 2016 U.S. Dist. LEXIS 8166, *5-6 (E.D.N.C. Jan. 25, 2016).

For essentially the same reasons, Rooker-Feldman also bars <u>Count 11</u>, asserting an unjust enrichment theory. *See, e.g., Mason v Midland Funding LLC*, 2017 U.S. Dist. LEXIS 216825, *99-101 (N.D. Ga. July 27, 2017); *Inlow v. Inlow*, 797 N.E.2d 810, 814-15 (Ind. Ct. App. 2003) (action taken under court order is exempt from an unjust enrichment claim).

**POINT II**

**THE MANDATE RULE AND THE DOCTRINES OF JUDICIAL ADMISSION AND WAIVER REQUIRE DISMISSAL OF CERTAIN ELEMENTS OF PLAINTIFFS' DAMAGES CLAIMS**

Notwithstanding the Circuit's holding, based upon an appellate oral argument concession by Plaintiffs, that available damages for Plaintiffs are confined to surplus value and nominal damages (*Dorce*, 2 F.4th at 94, 102 107, 107 n29), Plaintiffs set their sights higher. *See, e.g.*, AC pp. 76-77 (seeking award of "all damages which Plaintiffs and all Class Members have sustained as a result of Defendants' conduct, including compensatory damages—e.g., the value of the seized properties less the amount of any outstanding Tax Liens—consequential damages, punitive damages, penalties, and general and special damages caused by Defendants' unlawful practices"); AC ¶¶297, 309, 319, 330, 340, 344, 348, 352, 356, 373, 384 (seeking, as to 11 counts, "an amount to be proven at trial, including the Surplus Equity" or slightly-altered formulations; and AC ¶¶362, 377 (seeking, as to Counts 10 and 13, "an amount to be proven at trial"). Indeed, of the fourteen counts, only Count 11 limits claimed damages to surplus value. AC ¶366.

A verbal concession or admission by a party's attorney at appellate oral argument binds the party on theories of waiver or judicial admission. *United States v Cary*, 775 F.3d 919, 924 (7th

Cir. 2015); *United States v Cunningham*, 405 F.3d 497, 504 (7th Cir. 2005); *Hilao v Estate of Marcos*, 393 F.3d 987, 993 (9th Cir. 2004). Further, such a concession is binding as to any other proceedings in the same case. *E.g., EEOC v Bashas' Inc.*, 585 Fed. Appx. 325, 326 (9th Cir. 2014); *Amberhill Props. v Berkeley*, 814 F.2d 1340, 1341 (9th Cir.1987). Moreover, the permanent relinquishment resulting from such a concession fully applies where the concession is that only certain remedies will be sought or only certain damages will be requested. *Alpha Painting & Constr. Co. v Delaware Riv. Port Auth.*, 822 Fed. Appx. 61, 68-69 (3d Cir. 2020); *Donnelly v Glickman*, 159 F.3d 405, 410 (9th Cir. 1998); *United States v Young*, 932 F.2d 1035, 1037 (2d Cir. 1991).

As the Circuit noted in its opinion, Plaintiffs' counsel conceded at oral argument that damages sought will be limited to surplus value, to the exclusion of other possible forms of compensation[6] and "Plaintiffs are ... bound by that concession." *Dorce*, 2 F.4th at 102. In addition, the Circuit stated that available damages would be restricted to surplus value and nominal damages. *Id.* at 94, 102, 107, 107 n29. Both the mandate rule and judicial admission and waiver doctrines hence require dismissal of damages claims extending beyond these bounds.

---

[6] The Circuit stated: "We further conclude that *Rooker-Feldman* does not bar Plaintiffs' claim for damages for the excess value of the transferred properties above the amount owed in taxes. Because Plaintiffs at oral argument expressly limited their claims for compensation to that remedy, we need not decide whether that doctrine would bar claims for other forms of compensation." 2 F.4th at 94.

## POINT III

## THE AMENDED COMPLAINT FAILS TO STATE A CLAIM

### A.    Counts One and Six: Taking Without Just Compensation

The City's *in rem* law and process do not violate the US or State Constitutions. It is well-settled that "nothing in the Federal Constitution" requires a former owner to receive surplus funds following *in rem* tax foreclosure. *Nelson v. City of New York*, 352 U.S. 103, 110 (1956) (the City's foreclosure statute afforded an opportunity to obtain surplus); *Miner v. Clinton County*, 541 F.3d 464, 475 (2d Cir. 2008) (*citing Nelson*, 352 U.S. at 110) (affirming dismissal of claims for surplus, holding retention of surplus did not violate right to due process)*; Hall v Meisner*, 2021 U.S. Dist. LEXIS 192587, at *40-43 (E.D. Mich. Oct. 4, 2021); *Zachary v. Clinton Cty.,* 2003 U.S. Dist. LEXIS 26596, *25-26 (N.D.N.Y. Jan. 10, 2003); *Sheehan v. County of Suffolk*, 67 N.Y.2d 52, 59-60 (1986) ("no constitutional prohibition against . . . a full forfeiture" if opportunity for surplus provided.)

Plaintiffs complain there is no method to recover surplus in TPT. (AC¶ 55) Statutory and case law is contrary. New York's successor provision to that addressed in *Nelson* provides that upon a timely allegation of substantial equity, an owner may demand additional time to sell property and pay the liens from proceeds, retaining surplus, if any. Ad. Code. §11-409(d); *In Rem Tax Foreclosure Action No. 47, Borough of Staten Island* (Sup. Ct. Richmond Co. 2006) ("*Woodbridge*") (dismissing the same unlawful taking argument made here);[7] *In re In Rem Foreclosure Action*, 118 Misc.2d 1081 (Sup. Ct. Queens Co. 1983) ("*Queens In Rem*"). The *Woodbridge* court, which addressed TPT specifically, held "[a] careful reading of the [relevant]

---

[7] A copy of the unreported *Woodbridge* decision is annexed as Exhibit I to Feller Decl.

statutes and case law show that the Constitution does not mandate that the City sell the property and recoup the surplus on behalf of the [former owner]; it merely mandates that [she] not be deprived of surplus without an opportunity to recoup it." *Woodbridge* at p.11. *Brooklyn 53,* 63 Misc. 3d 1207(A) at *36, which alone held the City's foreclosure improper as an unconstitutional taking inexplicably relied on *Queens In Rem*, while ignoring its crucial holding that the City's *in rem* law "does not violate [a] constitutional right" (*Queens In Rem,* 118 Misc.2d at 1083-1084), and that *Nelson's* analysis applied equally to New York's current provision.

Consistent with long-held precedent, no version of the City's *in rem* law has required surplus funds to be paid to foreclosed owners nor has any version of New York State's uniform *in rem* law. To the contrary, the City's *in rem* law, before and after the enactment of TPT, provides for the extinguishment of all interests in foreclosed properties, including any equity of redemption. Ad. Code §§11-412 and 412.1. The City has broad discretion  to auction foreclosed property *id.* §11-428), put it to an existing use (*id.* §11-412.1(b)(1)), or do nothing, s*ee Weigner v. New York*, 668 F. Supp 135, 136 (E.D.N.Y. 1987), *aff'd*, 852 F.2d 646 (2d Cir. 1988).

In support of the 1993 amendment of the State's *in rem* law, which established a uniform system of tax foreclosure with an opt-out provision for large tax districts, the State Board of Equalization and Assessment opposed receipt of surplus, if any, upon foreclosure, noting that the Court of Appeals specifically upheld surplus retention by taxing authorities in *Sheehan v. County of Suffolk,* 67 N.Y.2d 52. Further, the Board observed that government relies on tax revenue to fund essential services for all and that foreclosure is on behalf of remaining taxpayers, who have shouldered the burden of unpaid tax, and that sale proceeds to a private party could be a "gift" in violation of the State Constitution and "effectively compel government to act as an uncompensated

real estate broker" while providing no incentive for the government to pursue the highest bid on the debtor's behalf.[8]

Plaintiffs allege that owners can obtain surplus from the tax lien sale. (AC¶¶ 70-72) The City sells liens for dollar for dollar recovery to a trust, which then forecloses properties individually. Ad. Code §11-301 *et seq*. Former owners may receive surplus resulting from auction by the non-governmental lienholder. However, two categories of property are not permitted in the lien sale --properties that are statutorily distressed (Ad. Code §11-401.1(a)) and, like the two properties Plaintiffs Jones and Thomas-Murchison are associated with, HDFC cooperatives (Ad. Code §11-319(b)(10)). Moreover, the availability of a lien sale does not undermine *in rem* tax foreclosure.

Plaintiffs allege that the "true market value" of their properties is higher than the City's assessed value (AC ¶¶9, 15, 21). Deference is given to the City's market value of property used for taxation purposes, unless proven wrong, even in the face of differing private appraisal valuation. *Dept. of Hous. Preserv. & Dev. of the City of N.Y. v. Deutsche Bank Natl. Trust Co.*, 41 Misc. 3d 1202 (Civ. Ct, Richmond Co. 2013). To the extent the City's assessed value is artificially low, taxes assessed referring to that value are lower than if assessed against property of higher assessed value.

---

[8] State Board of Equalization and Assessment, Real Property Tax Enforcement in New York State: A System in Need of Reform at pp. 38-40 (Feb. 28, 1989) ("Bd of Equalization Report") **(**part of Bill Jacket, chapter 602, Laws of 1993, NYS Assembly**).** A copy of the Report is annexed as Exhibit J to Feller Decl.

**B.      Counts Two and Seven: Equal Protection**

Plaintiffs' federal and state equal protection violation claims must be dismissed for failure to state a claim. To state a claim based on selective enforcement, a plaintiff must show different treatment than others similarly situated, motivated by intent to discriminate based on impermissible considerations such as race or punish or inhibit exercise of constitutional rights, or by a malicious or bad faith intent to injure. *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995). Alternatively, a plaintiff can state a "class-of-one" claim by plausibly alleging that she was intentionally treated differently from others similarly situated and that there is no rational basis for the differing treatment. *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 58 (2d Cir. 2010); *303 West 42nd Street Corp. v. Klein*, 46 N.Y.2d 686, 693 (1979).

It is not clear which type of equal protection claim Plaintiffs pursue; the complaint presents a mix-and-match of contradictory and conclusory allegations. Plaintiffs allege both that they represent a class of "[a]ll current or former owners of property" whose properties have been foreclosed (AC ¶253) and that they comprise a "suspect class because of their race" (*id.* ¶304). Plaintiffs also allege defendants "discriminate against elderly and minority homeowners" by "select[ing]" properties for foreclosure based on the race and age of individual property owners (*id.* ¶¶305-6; *see* ¶51) and that properties are selected "based on whether the properties happen to be on the same tax lot block as statutorily depressed property" (*id.* ¶307).

To the extent Plaintiffs assert a selective enforcement claim based on property owners' race and/or age, this claim fails because Plaintiffs have not identified individuals whose "facts and circumstances" were reasonably close to Plaintiffs' but who were treated differently—*i.e.*, individuals of different races or ages whose properties were also eligible for foreclosure through TPT but were not foreclosed. *See Marom v. City of New York*, 2016 U.S. Dist. LEXIS 28466, *42

14

(S.D.N.Y. Mar. 7, 2016). Nor have Plaintiffs set forth specific, non-conclusory "factual content that leads to a reasonable inference" that any such differing treatment resulted from intentional discrimination. *Id*. Conclusory allegations that "[d]efendants discriminate" by "intentionally" selecting properties owned by "elderly minority homeowner[s]" (AC ¶¶305, 306) are not sufficient to state a claim (*Buon v. Spindler*, 2021 U.S. Dist. LEXIS 51087 (S.D.N.Y. Mar. 18, 2021)).

To the extent Plaintiffs allege a "class-of-one" claim based on differing treatment of properties whether or not on the "same tax lot block as statutorily depressed property" (AC ¶307) — or on any other distinction that does not involve a constitutionally impermissible classification—Plaintiffs' claim fails because they do not identify others treated differently, let alone demonstrate that "no rational person could regard the circumstances of the plaintiff[s] to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy." (*Ruston,* 610 F.3d at 60). *See Martine's Serv. Ctr. v. Town of Wallkill,* 2013 U.S. Dist. LEXIS 46396 (S.D.N.Y. Mar. 26, 2013), *aff'd,* 554 Fed. Appx. 32 (2d Cir. 2014); *Tupaz v. Clinton County*, 499 F. Supp.2d 182, 191 (N.D.N.Y. 2007), *aff'd sub nom, Miner v. Clinton County*, 541 F.2d 464; *Blecher v. Dep't of Hous. Preservation & Dev.*, 1994 U.S. Dist. LEXIS 4969, *9-*11 (S.D.N.Y. Apr. 19, 1994); *Bower Assocs. v. Town of Pleasant Valley*, 2 N.Y.3d 617, 632 (2004).

Further, the distinction that Plaintiffs reference—location on the same block as statutorily depressed property—is based on a misunderstanding of the statute. *See supra,* at 5. But more importantly, the selection process is supported by a rational basis, specifically, the "elimination of

favoritism," the purpose of amendment of NY's *in rem* law in 1948 requiring the including of all tax-delinquent properties in a geographical area.[9]

Since Plaintiffs state no equal protection claim, their claim for conspiracy to violate equal protection (Count 5) necessarily fails as well. *Roffman v. City of New York*, 2002 U.S. Dist. LEXIS 23665, *19 (S.D.N.Y. Dec. 9, 2002). For a Section 1985 conspiracy claim, Plaintiffs must allege: a conspiracy "for the purpose of depriving [them . . . ] of the equal protection of the laws," an act "in furtherance of" the conspiracy, and a resulting deprivation of their rights or privileges as U.S. citizens. *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828-829 (1983). Allegations must include specific facts giving rise to an inference of conspiracy motivated by "invidious discriminatory animus." *Economic Opportunity Comm'n of Nassau County, Inc. v. County of Nassau*, 106 F. Supp. 2d 433, 442 (E.D.N.Y. 2000). Conclusory, vague, or general allegations are insufficient. *Roffman*, 2002 U.S. Dist. LEXIS 23665 at *18; *see Posr v. Court Officer Shield # 207*, 180 F.3d 409, 419 (2d Cir. 1999) ("mere assertion of racial motivation" is not sufficient to state conspiracy claim). The AC contains nothing more than conclusory allegations (AC, e.g., ¶339 (alleging "plan . . . to expropriate Surplus Equity, primarily from minority homeowners with properties in communities of color").

## C.    Counts Three and Eight: Due Process

Plaintiffs allege that as codified and as implemented TPT notice provisions violate Federal and State due process clauses. Neither proposition states a claim.

---

[9] N.Y.C. Tax Lien Foreclosure, A.I.1481, Pr.l514, in N.Y. Leg. Serv., New York State Legislative Annual 179-82 (1948), copy annexed to Feller Decl. as Exhibit K.

Upon **commencement** of an *in rem* action the City must publish and post notice of foreclosure and mail notice to owners at a specific address requested by the owner or, if an owner has not made such a request, to the name and address, if any, in the latest annual record of assessed valuations, i.e., the property address. Ad. Code §11-406.

Although the AC makes no specific allegations as to why the City's code is unconstitutional, the assertion must fail. In *ISCA v. City of New York*, 77 N.Y.2d 688, 699 (1991), the Court of Appeals held that the City's "notice by request" procedure for *in rem* tax foreclosure actions affords due process because the notice required is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." [10] *See Weigner v. New York*, 852 F.2d 646, 650 (2d. Cir. 1988), *citing Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 490 (1988) (upholding New York's notice procedures); *Levy v. New York*, 726 F. Supp. 1446, 1452 (S.D.N.Y. 1989) (regarding the City's *in rem* program, "the exact foreclosure procedure . . . has been upheld by courts in this Circuit").

Allegations that Plaintiffs never received "actual or constructive notice" of the *in rem* proceedings (AC ¶¶85, 111, 143), cannot state a claim, as "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (citing *Dusenbery v. United States,* 534 U.S. 161, 170 (2002)); *Zaccaro v. Cahill*, 100 N.Y.2d 884, 889-90 (2003). "Where the [government] provides evidence

---

[10] The 'back-up' provision of the City's "notice-by-request" provides the "additional procedures by which property owners actually receive notice – by mail to the name and address on the latest annual record of assessed valuations [assessment roll], the key record for the tax billing purposes." *Id*. at 701.

that the notices of foreclosure were properly addressed and mailed in accordance with regular post office procedures, it is entitled to a presumption that the notices were received." *Miner*, 541 F.3d at 472 (citing *Akey v. Clinton County*, 375 F.3d 231, 235 (2d Cir. 2004)).

Since none of the Plaintiffs allege having requested individual notice, nor do the HDFC Plaintiffs allege requesting notice at a particular address, including specific persons or unit numbers (AC ¶¶86, 112, 144), notices were sent to owners[11] at the property addresses. *See* Ad. Code §11-406(c)*; In re Tax Foreclosure No. 35*, 127 A.D.2d 220, 227 (2d Dep't 1987) (failing to request notice at a preferred address "waive[s] . . . right to personal notice"); *Brooklyn 51* and *Brooklyn 53* Foreclosure Judgments (all procedures and proceedings required by law duly performed) Copies of the Judgments are annexed as Exhibit M to Feller Decl.

Mere denial of receipt of notice cannot overcome the presumption of regularity provided in Ad. Code §11-411; *Pysa Realty Corp. v. City*, 23 A.D.3d 290, 291 (1st Dept. 2005). Moreover, US Postal Service records show certified mail delivery of two foreclosure notices to Plaintiff Dorce. Copies of delivery receipt and Notices are annexed collectively as Exhibit N to Feller Decl.

---

[11] Notices were mailed to the HDFCs, then owners of the properties, copies annexed as Exhibit L to Feller Decl.

**D.     Counts Four and Nine:  Excessive Fines**

Plaintiffs' claims for violation of Federal and State Constitutional prohibitions against excessive fines fail to state a claim. Both provisions "limit[s] the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" *Austin v. United States,* 509 U.S. 602, 609-10 (1993) (quoting *Browning-Ferris Indus. v. Kelco Disposal*, 492 U.S. 257, 264 (1989)); *County of Nassau v. Canavan*, 1 N.Y.3d 134, 139 (2003). Thus, only a consequence that "'may be characterized, at least in part, as punitive will . . . be considered a fine for purposes of the [Eighth Amendment].'" *United States v. Davis*, 648 F.3d 84, 96 (2d Cir. 2011) (*quoting Von Hofe v. United States*, 492 F.3d 175, 182 (2d Cir. 2007)).

In determining whether a challenged consequence is punitive, courts look to both the purpose of the authorizing statute and the findings required to impose the consequence. A consequence imposed at the culmination of a criminal proceeding that requires a finding of culpable conduct or that is imposed under a statute enacted to punish or deter illegal conduct is generally construed as punitive. *See United States v. Bajakajian*, 524 U.S. 321, 328 (1998); *Austin v. United States*, 501 U.S. 602 (1993); *County of Nassau*, 1 N.Y.3d at 139-140.

By contrast, consequences designed to "secure compliance," to provide compensation for a loss, or for other remedial or administrative purposes, and which do not require any culpable conduct finding, are not considered punishment and are therefore beyond the scope of the excessive fines clauses. *E.g., United States v. An Antique Platter of Gold*, 184 F.3d 131, 139-40 (2d Cir. 1999); *Kirsh v. City of New York*, 1995 U.S. Dist. LEXIS 8896, *22-*24 (S.D.N.Y. Jun. 27, 1995); *OTR Media Group, Inc. v City of New York*, 83 A.D.3d 451, 454 (1st Dept. 2011). *See Bajakajian*, 524 U.S. at 329 (distinguishing deterrence from "remedial purpose" such as compensating government for loss).

Courts have held that customs and other civil *in rem* forfeitures and foreclosures are not punishment. *See An Antique Platter of Gold*, 184 F.3d at 139-140; *United States v. Idowu*, 74 F.3d 387, 393-94 (2d Cir. 1996) (administrative forfeiture was not "punishment" for purposes of prohibition against double jeopardy); *Rose v. Oakland Cty. Treasurer*, 2020 U.S. Dist. LEXIS 30450, (E.D. Mich. Feb. 21, 2020) (Eighth Amendment would not impact case that "relates to a tax foreclosure of real property").

Plaintiffs' conclusory allegation that TPT is "punitive . . . because it punishes homeowners for owing Tax Liens" (AC ¶327) is not sufficient to invoke the excessive fines provisions when Plaintiffs' own allegations demonstrate tax foreclosure is a mechanism "for the collection of tax liens" (AC ¶35, *see* ¶¶36-37). Properties are selected for inclusion in TPT based on the tax lien status and the location of the property (AC ¶¶ 50, 51), not on a finding of culpable conduct.

## E.     Counts Five and Fourteen: Civil Conspiracy

The  AC does not sufficiently plead an agreement among the defendants, nor overt acts or intentional participation in furtherance of any plan. *See Kashi v. Gratsos,* 790 F.2d 1050, 1055 (2d Cir. 1986); *Pope v Rice*, 2005 U.S. Dist. LEXIS 4011, *42 (S.D.N.Y. Mar. 14, 2005); *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2nd Cir. 1986). That the City is "incentivized" to foreclose valuable properties with small liens (AC ¶¶169-173) is mere result-oriented speculation, as are allegations that the City "wants" to target certain properties and other defendants "want" to obtain certain properties (*id.* ¶¶170-171).

Many might agree that historical exploitation of communities of color and inability of such communities nation-wide to create generational wealth is a shameful reality, but it is certainly not evidence that TPT is based on such motivation.[12]

The foreclosures themselves cannot "effectively prove[ ]" lack of notice (AC¶ 235). Nearly 70% (290 of 420) of the properties included in the 2015 TPT actions "successfully responded" and were not transferred. *See* HPD testimony 2019, Exh. A to Feller Decl., p. 3. Several other included properties obtained temporary restraining orders against transfer. *See* Orders to Show Cause in *Brooklyn 53* respecting 423 Classon Ave., Block 1985, Lot 5, and 315 Harman Street, Block 3279, Lot 41 (appeals pending in Appellate Division, Second Dept.), and in *Bronx, No. 52*, respecting 3175 Villa Ave., Block 3322, Lot 37 (denial of motion affirmed, 189 A.D.3d 731, *supra*), copies annexed as Exhibit O to Feller Decl.

New York law does not recognize a substantive tort of civil conspiracy. *Pope v Rice*, 2005 U.S. Dist. LEXIS 4011, at *41-42; *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank,* 755 F.2d 239, 251 (2d Cir. 1985). A civil conspiracy claim is only tenable where there is "evidence of an underlying actionable tort." *Missigman v. USI Northeast, Inc.,* 131 F. Supp. 2d 495, 517 (S.D.N.Y. 2001); *Abacus Fed. Sav. Bank v Lim*, 75 A.D.3d 472 (1st Dept. 2010). As none of Plaintiffs' allegations make out an independent claim, there may be no claim for conspiracy.

---

[12] *Unconscionable: Tax Delinquency Sales as a Form of Dignity Taking*, 92 CHICAGO-KENT L. REV. 905, 933-934 (2017) (AC ¶ 227), addresses predatory practice, outside of NY, of auctioning tax liens to private investors, "creat[ing] a for-profit industry out of the most basic duties of government (tax enforcement and collection)," a practice vastly different from both *in rem* foreclosure and the City's bulk lien sale.

State Attorney General approval is not required for *in rem* foreclosure (AC ¶236). Voluntary dissolution of an HDFC requires approval of the supervising agency, that is, HPD. NY Private Housing Finance Law §573(5). No provision of the Martin Act, General Business Law article 23-A, §§352–353, which authorizes the Attorney General to review the formation of cooperative ownership of property, nor of NY Not-for-Profit Corporation Law, requires approval upon transfer of property.

## F.      Count Ten: Conversion

Conversion occurs when a party intentionally and *without authority*, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession. *Petrone v. Davidoff Hutcher & Citron, LLP*, 150 A.D.3d 776, 777 (2d Dept. 2017) (*quoting C & B Enters. USA, LLC v Koegel*, 136 A.D.3d 957, 958 (2d Dept. 2016)). Two "key elements" of conversion are (1) "plaintiff's possessory right or interest in the property" and (2) "defendant's dominion over the property or interference with it, in derogation of plaintiff's right." *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50 (2006). A claim for conversion may not lie here as the City's foreclosures were in full compliance with law.

## G.      Count Eleven: Unjust Enrichment

Unjust enrichment requires an *unjust* gain. *Baron v. Pfizer*, 42 A.D.3d 627 (3d Dept. 2007). As the City's foreclosures were in full compliance with statutory provisions that are legally and constitutionally sound, the AC fails to state a claim for unjust enrichment. *See Key Bank of Cent. New York v. County of Broome*, 116 A.D.2d 90, 92 (3d Dept. 1986) (no unjust enrichment when notice of foreclosure is "reasonably calculated" to apprise owner).

## H.      Count Twelve: Deceptive Consumer Practices.

A claim pursuant to GBL § 349 "must be predicated on a deceptive act or practice that is 'consumer oriented.'" *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999); *see*

*Shred-It USA, Inc. v. Mobile Data Shred, Inc.*, 228 F. Supp. 2d 455, 465 (S.D.N.Y. 2002), *aff'd*, 92 Fed. Appx. 812 (2d Cir. 2004) (citing *Genesco Entertainment, Inc. v. Koch,* 593 F. Supp. 743, 751 (S.D.N.Y. 1984)); *see also Singh v. NYCTL 2009-A Trust*, 2016 U.S. Dist. LEXIS 94738, *33 (S.D.N.Y. Jul. 20, 2016) ("collection of mandatory water, sewer and tax charges likewise is not a consumer oriented transaction").

## I.      Count Thirteen: Municipal Home Rule

Enactment of TPT by Local Law 37 was within the authority granted the City by the state legislature. Article 11 of New York's Real Property Tax Law established a uniform system of *in rem* tax foreclosure for local governments in the state. An amendment to state law in 1993 (Act of Aug. 4, 1993, ch. 602, §5, 1993 N.Y. Laws 3677, 3679) gave tax districts in the state already authorized to enforce delinquent taxes pursuant to special or local law, New York City among them, "the option to retain the autonomy which the Legislature has granted them." Bd of Equalization Report at p. 30. Importantly, the state "opt-out" provision, RPTL §1104(2), not only authorizes local governments like the City to enforce collection of delinquent taxes, but also provides that such procedures "may from time to time be amended." *See also Preferred Group of Manhattan, Inc. v. City of Poughkeepsie,* 166 A.D.3d 916, 918 (2d Dept. 2018). By this authority, New York City's *in rem* procedures, first granted by the state in 1948 by a special law (Act. of Mar. 23, 1948, ch. 411, 1948 NY Laws 745) was repeatedly revised by the State and local legislatures, including by establishment of TPT in 1996.

Passage of Local Law 37, creating TPT, was consistent with the City's authority under the State Constitution and the Municipal Home Rule Law, which authorize local laws relating to tax collection that are not inconsistent with a provision of a general law. *See* N.Y. Const., art. IX, §2(c)(8); N.Y. Mun. Home Rule Law §10(1)(ii)(a)(9). Further, the Court of Appeals has specifically recognized that where an *in rem* foreclosure statute of general applicability

contemplates that a local government may opt-out of such a state-wide framework, a local law amending its local *in rem* framework is not inconsistent with a general state law, but rather "illustrative of an anticipated and planned consistency." *Sonmax, Inc. v. New York,* 43 N.Y.2d 253, 258 (1977).

The State's taxation power may be delegated to political subdivisions provided delegation is express. *Baldwin Union Free School Dist. v. Cty. of Nassau*, 22 N.Y.3d 606, 619-20 (2014); *41 Kew Gardens Road Associates v. Tyburski*, 70 N.Y.2d 325, 332 (1987). *See Sonmax*, 43 N.Y.2d at 258 ("a special, localized *in rem* tax foreclosure procedure, whether its detailed provisions deviate from those of the State statute in little or greater degree, is entirely consistent with the design and pattern of the statute establishing the State-wide foreclosure procedure."

## **CONCLUSION**

The motion to dismiss should be granted.

Dated:  New York, New York
     November 15, 2021

          GEORGIA M. PESTANA
          Corporation Counsel of the
           City of New York
          *Attorney for Municipal Defendants*
          100 Church Street
          New York, New York 10007
          (212) 356-2565


          By:___/s/_____
           Andrea B. Feller
           Assistant Corporation Counsel

**Attorney Certification**

I, Andrea B. Feller, an attorney duly admitted to practice law before this Court, hereby certify that this memorandum of law complies with the word count limit and because it contains 6938 words, excluding the cover page, certification of compliance, table of contents, and table of authorities. This memorandum of law also complies with the applicable formatting rules because it has been prepared in 12-point font and all text is double-spaced. In preparing this certification, I have relied on the word count of the word processing system used to prepare this memorandum of law.

Dated:       November 15, 2021
             New York, New York

                              _____/s/_____
                              Andrea B. Feller
                              Assistant Corporation Counsel