Docket No.  19 Civ. 02216 (JGK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MCCONNELL DORCE, et al.,

                 Plaintiffs,

-against-

CITY OF NEW YORK, et al.,

                 Defendants.

**MUNICIPAL DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT**

***GEORGIA M. PESTANA***
*Corporation Counsel of the City of New York*
*Attorney for Municipal Defendants*
*100 Church Street*
*New York, N.Y.  10007*
*Tel:  (212) 356-2565*

*Of Counsel: Andrea B. Feller*
*Rachel B. Kane*
*Michael S. Adler*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT

    POINT I

        CERTAIN COUNT COMPONENTS WARRANT DISMISSAL. ......................................................................................... 1

    POINT II

        CERTAIN ELEMENTS OF THE DAMAGES CLAIMS WARRANT DISMISSAL. ........................................................... 2

    POINT III

        THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF. ........................................................................................... 3

        A.   Counts One and Six: Taking Without Just Compensation ................................................................................. 3

        B.   Counts Two and Seven: Equal Protection ........................................ 4

        C.   Counts Three and Eight: Due Process ............................................. 5

        D.   Counts Four and Nine: Excessive Fines .......................................... 7

        E.   Counts Five and Fourteen: Civil Conspiracy ................................... 8

        F.   Counts Ten and Eleven: Conversion and Unjust Enrichment ...................................................................................... 9

        G.   Count Twelve: Deceptive Consumer Practices ................................ 9

        H.   Count Thirteen: Municipal Home Rule ........................................... 9

CONCLUSION ......................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Pages**

*Austin v. United States*,
    509 U.S. 602 (1993)..................................................................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................................8

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
    3 N.Y.3d 200 (2004).................................................................................................................9

*City v. Chapman Docks Co.*,
    1 A.D.2d 895 (1956)................................................................................................................4

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
    187 F.3d 229 (2d Cir. 1999)....................................................................................................8

*Coleman v. D.C.*,
    70 F.Supp.3d 58 (D.C. Cir. 2014)..........................................................................................3

*Congregation Yetev Lev D'Satmar v. Cty of Sullivan*,
    59 N.Y.2d 418 (1983).............................................................................................................6

*Demaitre v. City of New York*,
    2020 U.S. Dist. LEXIS 189206 (S.D.N.Y. Oct. 11, 2020).......................................................5

*Elias Indus. v Kissler & Co.*,
    2021 U.S. Dist. LEXIS 99449 (W.D. Pa. May 26, 2021).........................................................3

*Exxonmobil Inter-America v. Advanced Info. Eng'g Servs.*,
    328 F. Supp. 2d 443 (S.D.N.Y. 2004).....................................................................................9

*FCC v. Beach Commc'ns*,
    508 U.S. 307 (1993).................................................................................................................5

*Freed v. Thomas*,
    2021 U.S. Dist. LEXIS 48524 (E.D. Mich., Feb. 26, 2021).....................................................4

*Gaddy v. Ports Am.*,
    2015 U.S. Dist. LEXIS 82086 (S.D.N.Y. Jun. 15, 2015).........................................................5

*Hall v. Meisner*,
    2021 U.S. Dist. LEXIS 96753 (E.D. Mich. May 21, 2021).................................................7-8

*ISCA Enterprises v. City*,
    77 N.Y.2d 688 (1991).............................................................................................................6

**Cases**                                                       **Pages**

*Jones v. Flowers*,
   547 U.S. 220 (2006).................................................................................................7

*Kennedy v. Mossafa*,
   100 N.Y. 2d 1 (2003) ...............................................................................................6

*In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.*,
   383 F.Supp. 3d 187 (S.D.N.Y. 2019).......................................................................9

*In Re Tax Foreclosure No. 35 (Wilson)*,
   127 AD.2d 220 (2nd Dep't, 1987),
   *aff'd,* 71 N.Y.2d 863 (1988)....................................................................................6

*In Rem Tax Foreclosure Action No. 47, Borough of Staten Island*
   (Sup. Ct. Richmond Co. 2006) (*Woodbridge)* ........................................................4

*In Rem Tax Foreclosure Action No. 52,*
   Borough of Bronx, Index No. 40000/2015 [1600 Nelson Ave.] ..............................1

*In Rem Tax Foreclosure Action No. 52,*
   Borough of Bronx, Index No. 40000/2015 [Horelick.] ............................................1

*Knick v. Township of Scott*,
   139 S.Ct. 2162 (2019)..............................................................................................3

*Land & Bay Gauging, L.L.C. v. Shor*,
   623 Fed. Appx. 674 (5th Cir. 2015).........................................................................2

*Lopresti v. Terwilliger*,
   126 F.3d 34 (2d. Cir. 1997)......................................................................................9

*Matthew v. Thompson,*
   65 A.D.3d 1095 (2d Dep't. 2009)............................................................................4

*Nelson v. City,*
   352 U.S. 103 (1956).............................................................................................3, 4

*In re Meyhoefer*,
   459 B.R. 167 (Bankr. N.D.N.Y. 2011) ..................................................................10

*Preferred Grp. of Manhattan, Inc. v. City of Poughkeepsie*,
   166 A.D.3d 916 (2d Dep't 2018) ...........................................................................10

*Rafaeli, LLC v. Oakland Cty.*,
   505 Mich. 429 (2020) ..............................................................................................4

**Cases**                                                                                                                          **Pages**

*Ruston v. Town Bd. for Town of Skaneateles*,
    610 F.3d 55 (2d Cir. 2010)......................................................................................................5

*Rusyniak v. Gensini*,
    629 F. Supp. 2d 203 (N.D.N.Y. 2009)....................................................................................8

*Securitron Magnalock Corp. v. Schnabolk*,
    65 F.3d 256 (2d Cr. 1995)......................................................................................................9

*Sonmax v. City of New York*,
    43 N.Y.2d 253 (1977) ..........................................................................................................10

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2014)....................................................................................................9

*United States v. An Antique Platter of Gold*,
    184 F.3d 131 (2d Cir. 1999)..................................................................................................8

*United States v. Bajakajian*,
    524 U.S. 321 (1998)..........................................................................................................7, 8

*United States v. Viloski*,
    814 F.3d 104 (2d Cir. 2016)..................................................................................................7

*Walsh v. City of New York*,
    2021 U.S. Dist. LEXIS 62982 (S.D.N.Y. Mar. 31, 2021) ......................................................5

*Watson v City of Kingston*,
    2016 U.S. Dist. LEXIS 200764 (N.D.N.Y. Dec. 27, 2016)....................................................3

*Wilson Realty, LLC. v. NYC HPD*,
    25 Misc. 3d 1221(Sup. Ct. NY Cty. 2009) ......................................................................... 5-6

*Zaccaro v. Cahill*,
    100 NY2d 884 (2003) ...........................................................................................................5

**Statutes**

GBL § 349..................................................................................................................................9

-

| **Statutes** | **Pages** |
| --- | --- |
| NYC Admin. Code § 11-406(c) | 6 |
| NYC Admin. Code § 11-409(d) | 3 |
| NYC Admin. Code § 11-409(g) | 4 |
| NYC Admin. Code § 11-411 | 7 |
| NYC Admin. Code § 11-412.1 | 4 |
| RPTL § 1104(2) | 10 |

**PRELIMINARY STATEMENT**

Plaintiffs' opposition to Municipal Defendants' ("MDs") Motion to Dismiss repeats the conclusory allegations and misunderstandings of law in the Amended Complaint ("AC"), which fails to state a claim.[1]

**ARGUMENT**

**POINT I**

**CERTAIN COUNT COMPONENTS WARRANT DISMISSAL.**

Dismissal of Count 13, alleging Municipal Home Rule ("MHR") violation, follows from fully-analogous Circuit reasoning -- unaddressed by Plaintiffs -- that Rooker-Feldman bars Plaintiffs' taking claim insofar as predicated on asserted statutory/regulatory violation. *Dorce*, 2 F.4th 82, 105 (2d Cir. 2021). Equal protection analysis is hardly comparable, among other reasons, because the Circuit there accentuated *ad hoc* decisions not genuinely implicated in the judgments, in contrast with this claim that the entire TPT program -- the judgments' foundation -- is *ultra vires*. *Id.* at 106.

---

[1] New York's appellate division, second department, issued two decisions affirmed lower courts' denial of two motions to vacate *in rem* judgments on grounds including belated challenge, City compliance with statutory requirements and rejection of the argument that non-"distressed" property was ineligible for TPT. " *In Rem Tax Foreclosure Action No. 52,* Borough of Bronx, Index No. 40000/2015 [1600 Nelson Ave.] and [Horelick] (Jan. 18, 2022) (attached as Ex. 1 to Declaration of Rachel B. Kane, dated January 21, 2022). The Court found all arguments lacking merit, including constitutional grounds such as equal protection.

Similar analysis applies to Count 3/8 components asserting that TPT violates due process. The Circuit opinion is fairly construed as prohibiting separately asserting these components apart from actual impact components the Circuit branded overlapping. *Id.* at 108.

Also barred are Counts 9 (conversion) and 11 (unjust enrichment) because a finding of liability on the part of the City would be inconsistent with the state court judgments that authorized the City to exercise control over the properties. *See Land & Bay Gauging, L.L.C. v. Shor*, 623 Fed. Appx. 674, 679 (5th Cir. 2015).

**POINT II**

**CERTAIN ELEMENTS OF THE DAMAGES CLAIMS WARRANT DISMISSAL.**

Plaintiffs' opposition is cryptic as to now-claimed damages. The *ad damnum* clause G is all encompassing, seeking "all damages ... sustained ..., including compensatory, ...consequential, punitive damages, penalties, and general and special damages." Now, Plaintiffs say they claim "amounts in excess of the tax liens," which they label "the Excess Value." P.Mem. 33. Permitted by the Second Circuit, per Plaintiffs' oral argument concession, are damages "*only* for the surplus value [of the properties] after the taxes have been received by the City." *Dorce*, 2 F.4th at 102. Thus, if Plaintiffs' current verbiage means they desire all damages beyond tax liens, including consequential, general, and special damages, their request flounders.

As examples of "other forms of damages . . . in excess of tax liens," Plaintiffs recite "punitive or exemplary damages." P.Mem. 33. Plaintiffs apparently contemplate more than just these two, since they preface this "other" list with "such as." *Id.* However, Plaintiffs' appellate concession excludes them. *See* 2 F.4th at 102 ("that they seek damages '*only* for the surplus value [of the properties] after the taxes have been received by the City'"); *id.* at 107n29 ("Plaintiffs' counsel limited their claim for damages at oral argument"). Additionally, these damages fail at

2

least as to defendant City. For 1983, punitive and exemplary damages are synonymous. *See, e.g., Elias Indus. v Kissler & Co.,* 2021 U.S. Dist. LEXIS 99449, *26n2 (W.D. Pa. May 26, 2021). The City is immune from such damages, and, insofar as Plaintiffs apparently lodge official-capacity claims against individual defendants, immunity covers them, too. *E.g., Watson v City of Kingston*, 2016 U.S. Dist. LEXIS 200764, *14-15 (N.D.N.Y. Dec. 27, 2016).

## POINT III

### THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF.

**A.     Counts One and Six: Taking Without Just Compensation**

*Knick v. Township of Scott*, 139 S.Ct. 2162, 2170 (2019), is irrelevance to Plaintiffs' takings claim, as *Knick* espoused a procedural principle only: takings claims against local governments may proceed directly to federal court, without being litigated in state court. *See Dorce,* 460 F. Supp. 3d 327, 341, fn. 11 (S.D.N.Y. 2020) (*Knick* irrelevant as, unlike this case, it addressed exhaustion issue only).

A takings claim can arise from tax collection without opportunity to obtain surplus prior to *Knick. See Coleman v. D.C.*, 70 F.Supp.3d 58 (D.C. Cir. 2014). The open question in *Coleman*, "[w]hat if the tax-sale statute . . . provides no avenue for recovery of any surplus?" (*id*. at 79) is not relevant here because the City expressly provides opportunity for surplus.

The "precise question presented here" (P.Mem. 13) was decided by *Nelson v. City,* 352 U.S. 103 (1956), and reaffirmed by state case law. MD.Mem. 11-12. The relevant provision of the City's *in rem* law, both as it existed in *Nelson* and currently,[2] requires pleading substantial

---

[2] Former sections D17-12.0 and § 11-409(d) (sale by City after judgment/by owner prior to judgment, respectively).

3

equity in answer to a foreclosure action to recoup surplus. *See City v. Chapman Docks Co.*, 1 A.D.2d 895 (1956), *quoting Nelson*.

The difference between this case and *In Rem Tax Foreclosure Action No. 47, Borough of Staten Island* (Sup. Ct. Richmond Co. 2006) (*Woodbridge*)[3] is a distinction without a difference. The *Woodbridge* court soundly rejected the takings argument but fashioned a novel approach where the former owner answered the foreclosure action, but was later incapacitated.

Neither *Freed v. Thomas,* 2021 U.S. Dist. LEXIS 48524 (E.D. Mich., Feb. 26, 2021) nor *Rafaeli*, *LLC v. Oakland Cty.,* 505 Mich. 429 (2020) has any precedential value. *Rafaeli'*s holding, that retention of surplus was an unconstitutional taking, invoked Michigan common law and its State Constitution Takings Clause, which is more broadly interpreted than federal law. *Id*. at 470, 477-478. *Freed* addressed exclusively calculation of surplus under Michigan law. *9. *Cf. Matthew v. Thompson,* 65 A.D.3d 1095, 1097 (2d Dep't. 2009) (In New York, compensation not required for owner who failed to redeem or answer foreclosure).

Plaintiffs' allegation that there is no procedure to recover surplus in TPT (P.Mem. 12) misstates the law.[4] There are indeed "many opportunities" to redeem: payment may be made up until the mandatory redemption period (and beyond, upon the City's discretion). Ad. Code § 11-412.1. Installment payment agreements exempt property from foreclosure judgment only if kept current. Ad. Code § 11-409(g).

**B.     Counts Two and Seven: Equal Protection**

Plaintiffs first contend that they need not identify any comparators because their claim asserts discriminatory application of a facially neutral program. P.Mem.15. Even under this

---

[3] *Woodbridge* is annexed as Exhibit 2 to the Kane Decl.

[4] Nor is the opportunity "illusory." *See* Point IC.

4

theory, Plaintiffs must "substantiate" their claim that the City's implementation of TPT is motivated by discrimination. *Walsh v. City of New York*, 2021 U.S. Dist. LEXIS 62982, *34 (S.D.N.Y. Mar. 31, 2021). Plaintiffs' conclusory allegations that the City "targe[ts] elderly property owners in communities of color," based on nothing more than personal opinions of a Supreme Court Justice and a City Council member, are insufficient to "support a plausible inference of intentional discrimination." *Gaddy v. Ports Am.*, 2015 U.S. Dist. LEXIS 82086, *21 (S.D.N.Y. Jun. 15, 2015); *see Demaitre v. City of New York*, 2020 U.S. Dist. LEXIS 189206 (S.D.N.Y. Oct. 11, 2020).

Plaintiffs next contend that they have identified comparators, but identify a "hypothetical" involving two properties that are not differentiated according to the alleged discriminatory animus (the property owners' age and/or race). P.Mem.15. Even if a hypothetical not included in the AC could suffice as a comparator (it cannot, (*see Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010)), Plaintiffs' hypothetical is deficient because it is based on the unsupported assumption that someone who "lives in a community of color" is "more likely to have a neighbor who owns a "distressed' property" than someone who doesn't live in such a community. P.Mem. 15. (Plaintiffs nowhere define "community of color.").

Finally, Plaintiffs cannot meet their burden of proving that TPT's classifications lack a rational basis. *See, e.g., FCC v. Beach Commc'ns*, 508 U.S. 307, 313-16 (1993).

C.   **Counts Three and Eight: Due Process**

Plaintiffs assert that notices of foreclosure did not provide due process as they were not "reasonably calculated under all the circumstances" to apprise them of the foreclosures. But due process is a flexible concept, requiring balancing interests of owners and government (*Zaccaro v. Cahill*, 100 NY2d 884, 890 (2003)), specifically, the private interest affected, risk of erroneous deprivation, and government function, including burdens of additional procedures. *Wilson Realty,*

*LLC. v. NYC HPD*, 25 Misc. 3d 1221(Sup. Ct. NY Cty. 2009); *see Kennedy v. Mossafa*, 100 N.Y. 2d 1 (2003) (a "reasonable search" for owner's address did not include every possible source); *Congregation Yetev Lev D'Satmar v. Cty of Sullivan*, 59 N.Y.2d 418 (1983) (no deprivation where adverse possessor not readily identifiable).

Nor does due process require government to save an owner from failure to protect its interest. *In Re Tax Foreclosure No. 35 (Wilson)*, 127 AD.2d 220, 226 (2nd Dep't, 1987), *aff'd,* 71 N.Y.2d 863 (1988). Government may avoid the costly and "time-consuming burden of . . . title search for each delinquent parcel." *Id.* at 227. The City has no obligation to send notice to an owner "where [he] lives" unless the owner so requests, nor to provide individual names or apartment numbers neither requested nor on the assessment roll, nor is the City responsible to furnish a complete corporate name. Ad. Code § 11-406(c); *ISCA Enterprises v. City,* 77 N.Y.2d 688 (1991).

No case law requires notice to shareholders or specifically discusses notification to dysfunctional corporations. Shareholders, like any interested party, may receive notice at their chosen address.[5] No title search would have revealed alleged ownership interests of Plaintiffs Jones and Thomas-Murchison. The City satisfied its obligation to provide notice by mailing notice to the HDFCs in compliance with the statute.[6]

As support for alleging that MDs "intentionally failed to provide adequate (or. . . any) notice" Plaintiffs assert only it "make[s] no sense" for an owner to allow foreclosure, and that foreclosure of numerous tax-delinquent properties amounts to "proof" of lack of notice. P.Mem.

---

[5] HPD does not owe a "fiduciary duty" to HDFCs or shareholders.

[6] Imposing additional notice requirements would leave the City without recourse respecting dysfunctional tax-delinquent corporate owners.

6

17. MDs did not claim they don't need to give notice of foreclosure (P.Mem. 1), but, rather, explained that due process requires only *sending* notice, which the City did (*see Brooklyn 51* and *Brooklyn 53* judgments, attached as Ex. 3 to Kane Decl.), and not actual *receipt* of notice (*see, e.g., Jones v. Flowers*, 547 U.S. 220, 226 (2006)).[7]

Plaintiffs' argument that consideration of the *in rem* law presumption of regularity is "premature" (P.Mem. 19) fails, as the presumption is already conclusive (Ad. Code §11-411) and no longer rebuttable. Since actual receipt of notice is not required, any rebuttal attempt based on non-receipt of notice would be futile.

### D.    Counts Four and Nine: Excessive Fines

Municipal Defendants have not conceded, and do not concede, that in rem foreclosure of tax-delinquent properties is "grossly disproportionate." P.Mem. 20. MDs did not address proportionality because the Court need not reach it here. *See United States v. Viloski*, 814 F.3d 104, 109 (2d Cir. 2016) (explaining, that, before reaching question of proportionality, court must "[f]irst . . . determine whether the forfeiture at issue constitutes 'a fine within the meaning of the Excessive Fines Clause'") (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). Nor have MDs described *in rem* tax foreclosure as a penalty or a deterrent.[8] P.Mem. 21. To the contrary, MDs have consistently explained that *in rem* foreclosure serves as an incentive to encourage prompt payment of taxes. P.Mem. 21 (collecting quotations from prior briefs). *See Hall*

---

[7] Plaintiffs' allegation that MDs did not assert compliance with publication requirements (P.Mem. 18) is a red-herring. *See* judgments.

[8] In the appellate brief cited, MDs responded to Plaintiffs' argument that retention of excess value constituted a penalty: "*Even if* the retention of 'excess value' could fairly be deemed to constitute a segregable penalty for nonpayment (*and it cannot*) . . ." Kane Decl. Ex. 4 p.62 (emphasis added).

7

*v. Meisner*, 2021 U.S. Dist. LEXIS 96753, *40-41 (E.D. Mich. May 21, 2021) (statute designed to encourage timely payment of property taxes was not punitive for Eighth Amendment purposes).

Finally, *Austin v. United States*, 509 U.S. 602 (1993) did not hold that all civil *in rem* forfeitures are punitive; it merely rejected the argument that such forfeitures could never be punitive. *Id*. at 610 (". . . the question is not . . . whether forfeiture . . . is civil or criminal, but rather whether it is punishment."). In concluding that the forfeiture at issue in *Austin* was punitive, the Court relied on the facts that the authorizing statutes at issue—unlike "traditional forfeiture statutes"—provided for an "innocent owner' defense," the forfeiture was "tie[d] . . . directly" to criminal offenses, and the legislative history characterized the statutes as deterrents. *Id.* at 619, 620; *see also United States v. Bajakajian*, 524 U.S. 321, 331-32 (1998).

The foreclosures here, by contrast, "bea[r] all the 'hallmarks of the traditional civil in rem forfeitures'" that courts have held are beyond the scope of the Eighth Amendment (*United States v. An Antique Platter of Gold*, 184 F.3d 131, 139 (2d Cir. 1999)) and none of the characteristics on which the Court relied in *Austin* and *Bajakajian* in concluding that the forfeiture statutes at issue were punitive.

**E.     Counts Five and Fourteen: Civil Conspiracy**

*Rusyniak v. Gensini*, 629 F. Supp. 2d 203 (N.D.N.Y. 2009) and *Cofacredit, S.A. v. Windsor Plumbing Supply Co*., 187 F.3d 229 (2d Cir. 1999) are distinguishable because the allegations there were supported by faxes, emails, telephone conversations, and meeting minutes. Here, Plaintiffs' allegations of agreement and overt acts rely on speculation and unsupported conclusions. Pleadings must contain "at least some factual allegations" in order to state a claim of conspiracy. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 *(*2007).

8

F.      **Counts Ten and Eleven: Conversion and Unjust Enrichment**

As to conversion and unjust enrichment, MDs did not "exercise dominion or control over property in a manner inconsistent with rights of another" (*Lopresti v. Terwilliger*, 126 F.3d 34 (2d. Cir. 1997) (claim for conversion survives where employer used union dues deducted from salaries in to pay its own creditors)) or "inequitably receive benefit" from tax foreclosure (*In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.*, 383 F.Supp. 3d 187 (S.D.N.Y. 2019) (unjust enrichment claim based on overcharge for purchases by anti-trust defendants)).

G.      **Count Twelve: Deceptive Consumer Practices**

Plaintiffs have not shown that TPT is "consumer-oriented" within the scope of GBL 349 by citation to cases that do not involve government action or conduct remotely similar to tax foreclosure. *See Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2014) (consumer debt collection); *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cr. 1995)(business may sue competitor for conduct in "business, trade or commerce"). *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200 (2004) (sale of cigarettes). A "consumer, for § 349 purposes, is one 'who purchase[s] goods and services for personal, family or household use.'" *Exxonmobil Inter-America v. Advanced Info. Eng'g Servs.*, 328 F. Supp. 2d 443, 448 (S.D.N.Y. 2004).

H.      **Count Thirteen: Municipal Home Rule**

Whether Plaintiffs can state a viable MHR claim is a matter of state law interpretation. The Second Circuit here addressed a different issue about different claims: whether this Court had subject matter jurisdiction over Plaintiffs' federal claims.

In insisting that the City lacked authority to enact TPT (P.Mem., 26), Plaintiffs ignore controlling law and Court of Appeals precedent. MD Mem. 23. The Legislature in 1993 permitted municipalities like the City to continue their own in rem tax foreclosure programs and

9

granted municipalities latitude to modify them. *See* RPTL § 1104(2); *Sonmax v. City of New York*, 43 N.Y.2d 253, 258 (1977) (explaining that where state law allows municipalities to establish their own local in rem foreclosure programs, those programs, even when further amended by local law, "is illustrative of an anticipated and planned consistency"); *Preferred Grp. of Manhattan, Inc. v. City of Poughkeepsie*, 166 A.D.3d 916, 917 (2d Dep't 2018); *In re Meyhoefer*, 459 B.R. 167, 170 (Bankr. N.D.N.Y. 2011). To require state approval of every subsequent change to a local in rem tax foreclosure program—when the Legislature has already welcomed "the lack of uniformity" in this area on a local level—would frustrate state law under the guise of saving it from alleged local inconsistencies. *Sonmax*, 43 N.Y.2d at 258.

## CONCLUSION

The motion to dismiss should be granted.

Dated:    New York, New York
          January 21, 2022

                                          GEORGIA M. PESTANA
                                          Corporation Counsel of the
                                             City of New York
                                          *Attorney for Municipal Defendants*
                                          100 Church Street
                                          New York, New York 10007

                                          By:   /s/_____
                                                Andrea B. Feller
                                                Assistant Corporation Counsel

**Attorney Certification**

    I, Andrea B. Feller, an attorney duly admitted to practice law before this Court, hereby certify that this memorandum of law complies with the word count limit because it contains 2800 words, excluding the cover page, certification of compliance, table of contents, and table of authorities. This memorandum of law also complies with the applicable formatting rules because it has been prepared in 12-point font and all text is double-spaced. In preparing this certification, I have relied on the word count of the word processing system used to prepare this memorandum of law.

Dated:  January 21, 2022
     New York, New York

                  _____/s/_____
                  Andrea B. Feller
                  Assistant Corporation Counsel