UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MCCONNELL DORCE *et al.*,

                                Plaintiffs,

        against

CITY OF NEW YORK *et al.*,

                                Defendants.

---

CIVIL ACTION NO. 1:19-cv 02216(JGK)(SLC)

JOINT ELECTRONIC DISCOVERY
SUBMISSION AND ~~PROPOSED~~ ORDER

One or more of the parties to this litigation have indicated that they believe that relevant information may exist or be stored in electronic format, and that this content is potentially responsive to current or anticipated discovery requests.  This Model Joint Submission and Proposed Order (and any subsequent to this) shall be the governing document(s) by which the parties and the Court manage the electronic discovery process in this action. The parties and the Court recognize that this Model Joint Submission and Proposed Order is based on facts and circumstances as they are currently known to each party, that the electronic discovery process is iterative, and that additions and modifications to this Submission may become necessary as more information becomes known to the parties.

1.      **Brief Joint Statement Describing the Action**:

Plaintiffs:

This lawsuit concerns the City's Third Party Transfer program ("TPT Program") whereby Defendants use an unconstitutional, discriminatory, and unfair process to seize private property owned largely by elderly persons of color based on asserted tax debts and, regardless of how much their home is worth in excess of any tax liens (the "Excess Value"), keep it for themselves. Defendants contend that the TPT Program allows them to take a $2 million home with $3,000 in tax debt and give the property owner *nothing* for his or her significant Excess Value.  Defendants

also contend that they need not provide property owners with actual notice that they are taking their homes and keeping their Excess Value. Pursuant to the TPT Program, the City seizes dozens or hundreds of private properties at a time through mass *in rem* foreclosure proceedings, forgoes collection on the tax liens that formed the basis of the proceeding, and conveys those properties *for free* to its real estate developer partners such as BSDC and Neighborhood Restore. The Amended Complaint states constitutional and common law claims for the harms Plaintiffs have suffered by virtue of the TPT Program, including that the refusal to pay homeowners their Excess Value constitutes an unconstitutional taking and excessive fine, the selection of properties in communities of color for this disparate treatment violates equal protection, and the process by which Defendants obtain these properties lacks constitutionally sufficient notice and violates due process. *See, e.g., Knick v. Township of Scott*, 139 S. Ct. 2162 (2019) ("If a local government takes private property without paying for it, that government has violated the Fifth Amendment.").

<u>Municipal Defendants</u>

The City's *in rem* tax foreclosure process, by which the City obtains a multi-property judgment authorizing foreclosure of properties subject to delinquent real property and other municipal charges, does not violate the US or State Constitutions nor any other laws. The City's "modified" in rem process, known as Third Party Transfer ("TPT"), authorizes the City to dispose of class one and class two (*i.e.*, residential) properties subject to foreclosure judgment by deed either to the City or to a qualified third-party affordable housing developer. TPT, enacted in 1996, as an alternative to traditional *in rem* foreclosure, in which the City takes title to foreclosed properties and may only dispose of them by auction, enabled the City to mitigate a problem: due

to widespread tax- delinquency and abandonment of private property, the City had, through *in rem* foreclosure, become the landlord with the largest holdings in the City, most in serious disrepair.

None of Plaintiffs counts states a cause of action. Surplus (excess funds) are not required upon tax foreclosure, provided there is an opportunity to obtain surplus, which opportunity is provided by the City's law.  Plaintiffs have not stated a claim for violation of equal protection, having failed to allege treatment different than others similarly situated, motivated by intent to discriminate based on impermissible considerations such as race or to punish or inhibit exercise of constitutional rights, or by a malicious or bad faith intent to injure. As to claimed due process violations resulting from alleged lack of notice, the New York Court of Appeals upheld the City's statutory notice procedure as affording due process, and legions of cases have affirmed the City's process under the law.  TPT does not impose unconstitutional excessive fines because tax foreclosure is not punitive.  Nor have plaintiffs sufficiently plead conspiracy or any other civil torts, such as conversion or unjust enrichment, as TPT was conducted in full compliance with law.  No violation of municipal home rule is stated, as enactment of TPT by Local Law 37 was within the authority granted the City by the state legislature. Finally, the statutes at issue and the City's compliance with the statutes have been approved by the Appellate Division, First Department as recently as January 2022.

<u>Non-Municipal Defendants</u>

Neighborhood Restore Housing Development Fund Corporation ("Neighborhood Restore") and BSDC Kings Covenant Housing Development Fund Company, Inc. ("Bridge Street") (collectively, "Non-Municipal Defendants"), adopt the Municipal Defendants summary

and respectfully add that the Amended Complaint fails to actually allege any wrongdoing on behalf of Non-Municipal Defendants. Indeed, the sole claims against Non-Municipal Defendants are based on an alleged "conspiracy" claim, wherein Plaintiffs allege that Non-Municipal Defendants have engaged with Municipal Defendants in some unspecified fashion to such an extent that Non-Municipal Defendants allegedly became state actors. As was specified in Non-Municipal Defendants' Motion to Dismiss, Plaintiffs' claims stem from a fundamental incorrect understanding of the TPT Program.  Non-Municipal Defendants have not undertaken any state functions and therefore the alleged conspiracy claims must fail.

Further, Plaintiffs' tort claims must fail as they are commenced beyond the applicable period of limitations and cannot be saved by the doctrine of relation back.  Likewise, Plaintiffs' GBL 349 claim must fail, as the claims are not consumer oriented.

    A.    Estimated amount of Plaintiff(s)' Claim(s):

    __ Less than $100,000
    __ Between $100,000 and $999,999
    __ Between $1,000,000 and $49,999,999
     X  More than $50,000,000
    __ Equitable Relief
    __ Other (if so, specify)_____

    B.    Estimated amount of Defendant(s)' Counterclaim(s)/Cross-Claim(s):

    __ Less than $100,000
    __ Between $100,000 and $999,999
    __ Between $1,000,000 and $49,999,999
    __ More than $50,000,000
    __ Equitable Relief
     X  Other (if so, specify)    None

2.      **Competence**:

Counsel certify that they are sufficiently knowledgeable in matters relating to their client(s)' technological systems to competently discuss issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.

3.      **Meet and Confer**:

Pursuant to Fed. R. Civ. P. 26(f), counsel **must** meet and confer regarding matters relating to electronic discovery before the Initial Pretrial Conference (the Rule 16 Conference). Counsel now certify that they met and conferred to discuss these issues on April 11, 2022.

4.      **Unresolved Issues**:

After the meet-and-confer conference(s) taking place on the date(s) listed above, the following issues remain outstanding and/or require court intervention: ___ Preservation; ___ Search and Review; ___ Source(s) of Production; Form(s) of Production; ___ Identification or Logging of Privileged Material; ___ Inadvertent Production of Privileged Material; ___ Cost Allocation; and/or ___ Other. Please briefly describe any specific issues below:

_____

_____

_____

_____

_____

To date, the parties have addressed the following issues:

5.      **Preservation**:

A.      The parties have discussed the obligation to preserve potentially relevant electronically stored information and agree to the following scope and methods for preservation, including but not limited to: retention of electronic data and implementation of a data preservation

plan; identification of potentially relevant data; disclosure of the programs and manner in which the data is maintained; identification of computer system(s) utilized; and identification of the individual(s) responsible for data preservation, etc. To the extent that the parties have reached agreement as to preservation methods, provide details below:

Plaintiffs:

Plaintiffs' counsel have notified Plaintiffs, and they have confirmed that they understand, their ongoing obligation to maintain any and all documents or evidence that may be relevant to the case including electronically stored information, such as emails.

_____

_____

_____

_____

_____

Defendants:

Municipal defendants confirm that they understand their ongoing obligation to maintain any and all documents or evidence that may be relevant to the case including electronically stored information, such as emails.

_____

_____

_____

_____

_____

B.      State the extent to which the parties have disclosed or have agreed to disclose the dates, contents, and/or recipients of "litigation hold" communications:

Parties acknowledge their duty to conduct a reasonable inquiry to identify and preserve documents and information in their possession, custody, and control that they know, or should know, is relevant to this litigation; and agree that this protocol does not alter such duty_____

_____

Plaintiffs:

<u>Plaintiffs believe the parties should disclose the dates and recipients of "litigation hold"</u>
<u>communications.</u>

Defendants:

To the extent Plaintiffs have a particularized concern about the preservation by defendants of specific custodians or data sources, Plaintiffs should advise defendants. However, at this time, without any such concern articulated, defendants do not think this disclosure is necessary or appropriate.

C.     The parties anticipate the need for judicial intervention concerning the duty to preserve, the scope, or the method(s) of preserving electronically stored Information:

<u>Parties do not anticipate the need for judicial intervention at this time.</u>

6.     **<u>Search and Review</u>**:

A.     The parties have discussed methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used. Some of the approaches that may be considered include: the use and exchange between the parties of keyword search lists, "hit reports," and/or responsiveness rates. Parties may also use methodologies that include: concept search; machine learning, or other advanced analytical tools; limitations on the fields or file types to be searched; date restrictions; limitations on whether back-up, archival, legacy, or deleted electronically stored information will be searched; testing; sampling; etc. The parties agree that, regardless of whatever search and review methodology they apply, they remain bound by the terms set forth in Fed. R. Civ. P. 26(g), and that nothing in this Order alleviates the

obligations set forth therein. To the extent the parties have reached agreement as to search and

review methods, provide details below:

Plaintiff(s):

Plaintiffs anticipate custodians of documents to be produced by Plaintiffs to be limited to the three Plaintiffs. Document collection will consist of reasonable inquiry into any documents the Plaintiffs have in their possession that relate to the TPT Program and their properties.

Defendant(s):

At this time, Municipal defendants anticipate that they will utilize the following methodologies in connection with their email collection, search, and review: search criteria (e.g., custodians, date range, search terms), email threading, and technology assisted review (e.g., continuous or simple active learning).  As for non-email documents, Municipal defendants anticipate that they will work with custodians and other knowledgeable agency personnel to identify responsive non-email documents for collection and review without the use of search terms.

B.      State if the parties anticipate the need for judicial intervention concerning the search

and review of electronically stored information:

Parties do not anticipate the need for judicial intervention at this time.

C.      <u>Collection and Review of Documents</u>

    i.      Custodians. Within 30 days of receipt of a written discovery request or from Entry of an Order consistent with this Stipulation, the responding Party shall identify and provide to all other Parties a reasonable list of ESI custodians that are likely to have ESI responsive to those written discovery requests. That Party shall offer to meet and confer with regard to the custodians. If the Parties disagree on the custodians after good faith attempts to resolve the dispute, any Party may file an appropriate motion for determination by the Court.

    ii.     Sources. The Parties shall make reasonable efforts to identify and collect responsive ESI and hard copy documents (together, "Documents") from sources such as servers, network drives, and shared drives, consistent with the list of custodians agreed upon in accordance with paragraph 6.C.i and without need to collect and produce redundant information.

    iii.    Search of ESI. The Parties may use keyword searching to identify ESI that is reasonably likely to have discoverable information regarding the subject matter of this Action. If any Party chooses to use keyword searching to identify potentially relevant ESI, that Party shall offer to meet and confer with regard to the search terms to be used and the sources of ESI to be searched. If the Parties disagree on the applicable keywords to be used or sources of ESI to be searched after good faith attempts to resolve the dispute, any Party may file an appropriate motion for determination by the Court.

    iv.     Collection of ESI. The Parties shall use best efforts to collect ESI in a manner that does not alter potentially relevant metadata.

    v.     Review of Documents.  A Party has the right to review its Documents for responsiveness, privilege, confidentiality, and PII prior to production of responsive, non-privileged documents.  A Party may use any appropriate tool or technology to conduct their review, including technology assisted review, as long as the review is conducted in a defensible manner. The Parties must reasonably disclose any process used to review Documents and should, upon reasonable request, identify any tool or technology used and provide a general description of the process of such review.

7.    **Production**:

A.    Source(s) of Electronically Stored Information: The parties anticipate that discovery may occur from one or more of the following potential source(s) of electronically stored information: email, word processing documents, spreadsheets, presentations, databases, instant messages, web sites, blogs, social media, ephemeral data, etc.

Plaintiff(s):

Plaintiffs anticipate ESI from the Plaintiffs to be limited, and any such ESI is unlikely to be responsive to document requests, or relevant to the claims in this case.

Defendant(s):

Municipal defendants anticipate that discovery may occur from the following ESI sources: agency email accounts, share drives, and network drives.

_____

_____

_____

B.     Limitations on Production: The parties have discussed factors relating to the scope of production, including but not limited to: (i) number of custodians; (ii) identity of custodians; (iii) date ranges for which potentially relevant data will be drawn; (iv) locations of data; (v) timing of productions (including phased discovery or rolling productions); and (vi) electronically stored information in the custody or control of non-parties. To the extent the parties have reached agreements related to any of these factors, describe below:

Plaintiff(s):

Plaintiffs anticipate custodians of documents to be produced by Plaintiffs to be limited to the three Plaintiffs.

_____

_____

_____

_____

_____

Defendant(s):

Municipal defendants anticipate that the scope of collection, review, and production will be limited to specific custodians and data sources within the following agencies: the New York City Department of Housing Preservation and Development (HPD) and New York City Department of Finance.

_____

_____

_____

_____

C.     Form of Production:

i.     The Parties shall produce Documents in accordance with the attached production specifications.

ii.   Hard-Copy Documents.  Except as otherwise set forth in this paragraph, the Parties agree that responsive paper documents shall be scanned and produced electronically in accordance with the attached production specifications.  In scanning all Hard-Copy Documents, Hard-Copy Documents should be logically unitized. Accordingly, distinct documents should not be merged into a single record, and single documents should not be split into multiple records. In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), each of the Hard-Copy Documents should be separately scanned, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending documents and attachment fields. The Parties will make their best efforts to unitize the documents correctly. Producing Hard-Copy Documents as provided herein does not change their character from Hard-Copy Documents into ESI. For Hard-Copy Documents, the Parties need only populate the following metadata fields: Production Begin, Production End, All Custodians, Privilege Type, Text Link, Designation, Contains Slip Sheet, Slip Sheet Language, and Redaction Type, as well as Production Begin Family and Production End Family fields where applicable.

iii.  Extracted Text and OCR.  For Documents that do not contain redactions, the producing Party will produce an extracted text file for each Document where text can be extracted, and an Optical Character Recognition ("OCR") text file for Documents for which text cannot be extracted. For Documents

that contain redactions, the producing Party will provide an OCR text file for the unredacted portions of such Documents. Said extracted text and OCR files shall be produced in accordance with the attached production specifications.

iv.     Color Copies.  A receiving Party may request that specific Documents be produced in color and the Producing Party will honor such requests in accordance with the attached production specifications.

v.      Family Groups.  The Parties shall maintain family groups together in one production volume and shall not break family groups apart in separate production volumes.

vi.     Attachments.  Parent-child relationships (*e.g.*, the association between emails and attachments) will be preserved.  Because full families, parents and children (*e.g.*, emails and corresponding attachments), should be produced together, if a document within a responsive family is fully withheld for privilege or on the basis that the document is wholly non-responsive, a Bates-stamped, single page .TIF placeholder indicating "Document Withheld for Privilege" or "Document Withheld for Non-Responsiveness" should be included as the corresponding image for the withheld file.  This information should also be reflected in the Contains Slip Sheet and Slip Sheet Language fields in the .DAT file.  The following metadata fields should be provided for withheld attachments: Production Begin, Production End, Production Begin Family, Production End Family,

All Custodians, Contains Slip Sheet, Slip Sheet Language, and Privilege Type if applicable.[1]

vii.   Scan Size.  Reasonable efforts will be used to scan hard copy documents at or near their original size, so that the print or image on the hard copy document appears straight, and not skewed. Reducing image size may be necessary to display production numbers and confidentiality designations without obscuring text. Physically oversized originals will appear reduced. A receiving Party may request that specific oversized Documents be produced in their original size.

viii.   Notes and Attachments.  If any hard copy document has notes or attachments affixed thereto, the Parties will produce copies of hard copy documents with the accompanying notes and attachments unless privileged or exceptioned during processing.

ix.   Native Files.  Microsoft PowerPoint and Excel files shall be produced as native files in accordance with the attached production specifications.

x.   Production Format for Databases and Audio Visual Files.  The Parties agree to meet and confer regarding the production format for Microsoft Access or other similar databases, as well as any audio visual files.

---

[1] The Parties disagree as to the propriety of withholding family members of responsive documents on the basis that the individual family member is not responsive.  The Parties also disagree whether any such withheld document(s) should be identified on an appropriate log. The Parties expressly reserve all rights to challenge any such withholding and/or to seek the production of an appropriate log of such documents.

xi.   The Parties will take reasonable steps to preserve relevant metadata associated with ESI even if such metadata is not specified above for production.

xii.   Authenticity.  No Party shall object that Documents produced pursuant to this Stipulation are not authentic based upon the file naming convention described in the attached production specifications. The Parties otherwise reserve all rights regarding their ability to object to the authenticity of Documents.

xiii.   Redactions.  If the producing Party is redacting information from a page, the producing Party shall use a redaction box label that provides the specific basis for the redaction (*e.g*, "Attorney Client Communication" or "PII"). Redactions do not need to be included on a privilege log as long as (i) the specific basis for the redaction is provided in the redaction box label and the unredacted portion of the document provides the receiving Party with sufficient context to evaluate the basis for the redaction, and (ii) the producing party provides a list of documents that contain redactions or metadata sufficient to identify documents that contain redactions.  The receiving Party may request additional information about any redactions as appropriate.  If the producing Party redacts a Document, the following metadata fields must nonetheless be produced to the extent the fields are already populated in the ordinary course: Production Begin, Production End, Production Begin Family, Production End Family, All Custodians, Date Sent, Time Sent, Date Modified, Time Modified, File Type, File

Extension, Text Link, and Privilege Type if applicable. Recognizing that native files cannot be redacted, producing Parties shall undertake reasonable efforts to produce documents in redacted form consistent with the principles contained in this Stipulation.

D.   Privileged Material:

   i.   Identification: The parties have agreed to the following method(s) for the identification (including the logging, if any, or alternatively, the disclosure of the number of documents withheld), and the redaction of privileged documents:

   Parties hereby incorporate and agree to the terms in SDNY Local Rule 26.2 concerning the identification and logging of documents and ESI withheld on the basis of privilege. In addition, redactions do not need to be included on the privilege log as discussed above.

   ii.   Inadvertent Production/Claw-Back Agreements: Pursuant to Fed R. Civ. Proc. 26(b)(5) and Fed. R. Evid. 502(e), the parties have agreed to the following concerning the inadvertent production of privileged documents (e.g. "quick-peek" agreements, on-site examinations, non-waiver agreements or orders pursuant to Fed. R. Evid. 502(d), etc.):

   Parties address inadvertent production/claw-back in separate claw-back agreement, "Clawback Stipulation and Proposed Order" (ECF No. 140, filed April 1, 2022)

_____

_____

_____

iii.　The parties have discussed a 502(d) Order: Yes　X　; No ___

*The provisions of any such proposed Order shall be set forth in a separate document and presented to the Court for its consideration.*

E.　Cost of Production: The parties have analyzed their client's data repositories and have estimated the costs associated with the production of electronically stored information. The factors and components underlying these costs are estimated as follows:

i.　Costs:

Plaintiff(s):

Based on the information currently available, Plaintiffs expect their costs of production to be relatively limited.

_____

_____

_____

_____

_____

Defendant(s):

Municipal defendants are unable to estimate their ESI production costs at this time.  The cost will depend on the nature and volume of ESI collected, reviewed, and produced._____

_____

_____

_____

_____

_____

ii.　Cost Allocation: The parties have considered cost-shifting or cost-sharing and have reached the following agreements, if any:

Each party shall presumptively bear its own costs for preserving, collecting, and producing ESI; however, the Parties reserve the right to seek cost-shifting if appropriate.

_____

_____

_____

_____

_____

iii. Cost Savings: The parties have considered cost-saving measures, such as the use of a common electronic discovery vendor or a shared document repository, and have reached the following agreements, if any:

_____

_____

_____

_____

_____

_____

F. State if the parties anticipate the need for judicial intervention concerning the production of electronically stored information:

Parties do not anticipate the need for judicial intervention concerning the production of electronically stored information at this time.

_____

_____

_____

_____

_____

**8.** **Other Issues**:

Parties do not identify any other issues at this time.

_____

_____

_____

_____

_____

The preceding constitutes the agreement(s) reached, and disputes existing, (if any) between the parties to certain matters concerning electronic discovery as of this date. To the extent additional agreements are reached, modifications are necessary, or disputes are identified, they will be outlined in subsequent submissions or agreements and promptly presented to the Court.

**STIPULATED TO:**

**OFFICE OF THE
CORPORATION COUNSEL**

By: */s/ Andrea B. Feller*
    Andrea B. Feller
    Rachel B. Kane
    100 Church Street
    New York, New York 10007

*Attorneys for the Municipal Defendants*

Dated: New York, New York
       April 14, 2022

**GOLDSTEIN HALL PLLC**

By: */s/ Brian Markowitz*
    Brian Markowitz
    80 Broad Street, Suite 303
    New York, NY 10004

*Attorneys for Defendants Neighborhood
Restore Housing Development Fund and
BSDC Kings Covenant Housing Development
Fund Co.*

Dated: New York, New York
       April 14, 2022

By: */s/Matthew L. Berman*
    Matthew L. Berman
    Robert J. Valli, Jr.
    Yolande I. Nicholson, Esq. *Co-Counsel*
    VALLI KANE & VAGNINI LLP
    600 Old Country Road
    Garden City, NY 11530
    (516) 203-7180

*Attorneys for Plaintiffs*

Dated: New York, New York
       April 14, 2022

**ROPES & GRAY LLP**

By: */s/Alexander B. Simkin*
    Gregg L. Weiner
    Alexander B. Simkin
    Phillip Kraft
    ROPES & GRAY LLP
    1211 Avenue of the Americas
    New York, NY 10036
    (212) 596-9000

    Daniel A. Yanofsky (admitted *pro hac vice*)
    ROPES & GRAY LLP
    Prudential Tower, 800 Boylston Street
    Boston, MA 02199-3600
    (617) 508-4600

*Attorneys for Plaintiffs McConnell Dorce and
Sherlivia Thomas-Murchison*

Dated: New York, New York
       April 14, 2022

By: */s/ Keith H. Wofford*
    Keith H. Wofford
    WHITE & CASE LLP
    1221 Avenue of the Americas
    New York, NY 10020-1095
    (212) 819-7595

*Attorneys for Plaintiffs McConnell Dorce and
Sherlivia Thomas-Murchison*

Dated: New York, New York
       April 14, 2022

The next scheduled meet-and-confer conference between the parties to address electronic discovery issues, including the status of electronic discovery and any issues or disputes that have arisen since the last conference or Order, shall take place on: _____. The next scheduled conference with the Court for purposes of updating the Court on electronic discovery issues has been scheduled for May 3, 2022. Additional conferences, or written status reports, shall be set every four (4) weeks, as determined by the parties and the Court, based on the complexity of the issues at hand. An agenda should be submitted to the Court four (4) days before such conference indicating the issues to be raised by the parties. The parties may jointly seek to adjourn the conference with the Court by Letter-Motion at least 48 hours in advance of a scheduled conference, if the parties agree that there are no issues requiring Court intervention.

Additional Instructions or Orders, if any:

_____
_____
_____
_____
_____
_____

Dated:     New York, New York
           April 15, 2022

SO ORDERED.

_____
SARAH L. CAVE
**United States Magistrate Judge**



**THE CITY OF NEW YORK**

**LAW DEPARTMENT**

100 CHURCH STREET
NEW YORK, NY 10007

## ESI Production Specifications as of 3/30/2022

**If compliance with these specifications is not possible or would cause undue burden, the parties should meet and confer to discuss and confirm the format of production *prior to* collection, review, and production.**[1]

### General Specifications

Unless otherwise specified, documents should be converted and produced as single-page, black and white .TIF images with a corresponding image load file provided in Opticon (Concordance Image) format. A unique production number ("Bates stamp") should be branded on each .TIF image along with its appropriate confidentiality designation, if any. Upon reasonable request, the producing party will produce documents in color on an as-needed basis to assist with readability.

Any file that is specifically requested in native format or that cannot be converted to .TIF should be produced in its original native format with a link to the native file included in the **Native Link** field within the .DAT file. A Bates-stamped, single-page .TIF placeholder indicating that the file was produced natively should be included as the corresponding image for the file that cannot be converted. The native file should be renamed to reflect the Bates number assigned to the corresponding .TIF placeholder. Some examples of files that should be provided in their native format are spreadsheets, multimedia files, and technical drawings.

All associated metadata should be produced in a .DAT load file with standard Concordance delimiters. The included chart ("Requested Metadata Fields for ESI") contains the fields that should be provided in the .DAT file.

For each produced document, all associated text (extracted or OCR) should be provided in a text file named after the starting Bates number of the document. There should be one text file per document, and a link to the text file should be included in the **Text Link** field within the .DAT file.

The folder structure of the deliverable should follow the below format:

- NYCPROD001 – top-level directory, which should be unique for every deliverable
  - DATA – subdirectory containing load files (.DAT & .OPT)
  - NATIVES – subdirectory containing files provided in native format
  - IMAGES – subdirectory containing single-page .TIF images
  - TEXT – subdirectory containing .TXT files (extracted or OCR)

Files with hidden content, tracked changes, revisions, comments, or notes should be imaged with such content viewable.

---

[1] **For any social media, messages (*e.g.*, SMS, MMS, iMessage, etc.), collaboration tools (*e.g.*, MS Teams, Slack, GroupMe), mobile phone data, cloud environments (*e.g.*, Dropbox, Google Drive, One Drive, etc.), databases, or proprietary systems, the parties should meet and confer regarding the production format prior to collection, review, and production.**

**Format for Placeholder Documents**

Because full families (parents and children — *e.g.*, emails and corresponding attachments) should be produced together, if a document within a responsive family is fully withheld for privilege or non-responsiveness, a Bates-stamped, single-page .TIF placeholder indicating "Document Withheld for Privilege" or "Document Withheld for Non-Responsiveness" should be included as the corresponding image for the withheld file.  This information should also be reflected in the **Contains Slip Sheet** and **Slip Sheet Language** fields in the .DAT file.

**Email Threading**

For email documents, to the extent feasible, produce only the most-inclusive emails in a thread, plus any emails within that thread that contain an attachment or only the emails within that thread that contain a unique attachment.

**Format for Redacted Documents**

Files requiring redactions should be converted and produced as redacted Bates-stamped, single-page .TIF images with associated text and metadata.  For each document produced with redactions, the basis for the redactions should appear in the redaction box on the as-redacted image.  In addition, the appropriate metadata fields should be populated in the .DAT file.  If it is not technically feasible to produce a redacted image for a particular file that requires redactions (*e.g.*, for an Excel file that must be redacted), a copy of the native file with the appropriate portions replaced with "[*the basis for the redaction*]" should be produced.  If that is not feasible, the parties should meet and confer as to the best way to produce the file.

**Confidential Documents**

Unless the parties agree otherwise, confidential documents must be produced in the following manner:

(i)    Stamping, branding, or otherwise clearly marking documents with the appropriate confidentiality designation in a manner that will not interfere with legibility or, if applicable, audibility;

(ii)   Including the appropriate confidentiality designation in the **Designation** field in the .DAT load file; and

(iii)  Providing confidential documents, along with their full families, in a separate production volume with "Confidential" in the volume name.

**Document De-Duplication**

A producing party should, prior to review and production, globally de-duplicate its email population using hash values (such as MD5 or SHA-1) as long as the **All Custodians** field is provided.  Loose files may also be globally de-duplicated using hash values (such as MD5 or SHA-1) as long as the **All File Paths** field is provided.

# REQUESTED METADATA FIELDS FOR ESI ON NEXT PAGE

**Requested Metadata Fields for ESI***

| FIELD NAME | DESCRIPTION | EXAMPLE |
|---|---|---|
| Production Begin | Starting Bates number of the file | NYCE00000001 |
| Production End | Ending Bates number of the file | NYCE00000005 |
| Production Begin Family | Starting Bates number of the family | NYCE00000001 |
| Production End Family | Ending Bates number of the family | NYCE00000010 |
| Page Count | Number of pages in the file | 6 |
| Native Link | Hyperlink to the native file | Z:\VOL001\NATIVES\00\NYCE00000001.doc |
| All Custodians | All custodians of the record, if global deduplication was applied during processing<br><br>A revised ALLCUSTODIANS field must be provided in the form of an overlay for any documents affected by new custodians added to the database post-production. | Doe, John; Smith, Mary; Robinson, Jane |
| All File Paths | Original path of the file<br><br>All original file paths of the record, if global deduplication was applied during processing<br><br>A revised All File Paths field must be provided in the form of an overlay for any documents affected by new documents added to the database post-production. | Path\Folder2\My Documents; Path\Folder3\SmithDocuments |
| File Name | Name of the file | My Meeting.doc |
| File Extension | Extension of the file | DOC |
| File Type | Classification assigned by the processing software | Microsoft Word Document |
| Title | Data stored in the title metadata field | Agenda for Weekly Meeting |
| Author | Data stored in the author metadata field | jdoe |
| Subject | Subject of the email or the data stored in the subject metadata field | Meeting Agenda |
| From | Email address and display name of the sender of the email | John Doe <jdoe@company.com> |
| To | Email address(es) and display name(s) of the TO field recipient(s) of the email | Frank Smith <frank.smith@mycompany.com>; Jane Doe <jane.doe@mycompany.com> |
| CC | Email address(es) and display name(s) of the CC field recipient(s) of the email | Joseph Roberts <jroberts@company.com>; Mark Smith <msmith@company.com> |
| BCC | Email address(es) and display name(s) of the BCC field recipient(s) of the email | Joseph Roberts <jroberts@company.com>; Mark Smith <msmith@company.com> |
| Attachment Names | List of files attached to the email | File 1.xls; File 3.zip |
| Date Sent | Sent date of the email | 09/15/2012 |
| Time Sent | Sent time of the email (12-hr. format) | 3:30:25 PM |
| Date Modified | Last modified date of the file, as captured by the original application or the file system | 09/09/2012 |

| Time Modified | Last modified time of the file, as captured by the original application or the file system (12-hr. format) | 9:30:30 AM |
|---|---|---|
| Importance | Importance property of the email | High |
| Sensitivity | Sensitivity property of the email | Confidential |
| MD5 hash | MD5 hash value of the file | D41D8CD98F00B204E9800998ECF8427E |
| Family Date | Sent date of the email or last modified date of the parent document | 09/15/2012 |
| Family Time | Sent time of the email or last modified time of the parent document (12-hr. format) | 3:30:25 PM |
| Privilege Type | Privilege associated with the document | ACC; AWP |
| Redaction Type | Reason(s) for document redaction(s), if any | Privilege; PII; NR; Confidentiality |
| Contains Slip Sheet | Information as to whether the document has been slip-sheeted | Yes |
| Slip Sheet Language | Language that appears on the document slip-sheet, if any | DOCUMENT WITHHELD FOR PRIVILEGE |
| Designation | Confidentiality level of the produced document | CONFIDENTIAL; HIGHLY CONFIDENTIAL |
| Text Link | Hyperlink to the text file | Z:\VOL001\TEXT\00\NYCE00000001.txt |

***\* Fields for paper documents should be determined and agreed upon separately.***