

ROPES & GRAY LLP
PRUDENTIAL TOWER
800 BOYLSTON STREET
BOSTON, MA 02199-3600
WWW.ROPESGRAY.COM

September 8, 2023

Daniel A. Yanofsky
T +1 617 951 7571
daniel.yanofsky@ropesgray.com

**ECF**

Hon. Sarah L. Cave
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:     *Dorce, et al. v. City of New York, et al.*, No. 1:19-cv-02216 (JLR) (SLC)

Dear Judge Cave:

Plaintiffs write, pursuant to Your Honor's Individual Practice II.C.2 and the Court's August 30, 2023 Order (ECF No. 290) to request an order compelling Defendants to (i) remove any assertion of a deliberative process privilege ("DPP") from their privilege log, and (ii) produce any information withheld or redacted on that basis. Defendants' assertion of DPP should be rejected for several reasons. *First*, DPP does not apply here because Defendants' deliberations are among the central issues in the case. *Second,* DPP does not apply to the non-"deliberative" documents Defendants are withholding. *Third*, Defendants cannot satisfy the requirement that documents be "predecisional" for DPP to apply. *Finally*, even were DPP to apply, Defendants' interest in nondisclosure is outweighed by Plaintiffs' need for the information as well as the public's interest in open government.

## I.     Background

Plaintiffs challenge New York City's Third Party Transfer Program (the "TPT Program"), through which Municipal Defendants ("MDs")[1] seize property owned largely by persons of color and transfer the property for free to third-party developers like Transferee Defendants ("TDs").[2] The former property owner receives nothing in return. Defendants often seize property based on tax

---

[1] "Municipal Defendants" refers to Defendants the City of New York (the "City"), Louise Carroll, Commissioner of the City's Department of Housing Preservation and Development ("HPD"), and Sherif Soliman, Commissioner of the City's Department of Finance ("DOF").

[2] "Transferee Defendants" refers to Defendants BSDC Kings Covenant Housing Development Fund Company, Inc. and Neighborhood Restore Housing Development Fund Corp.

ROPES & GRAY LLP

                                        - 2 -                            September 8, 2023

arears that constitute a fraction of the property's value, and then fail to compensate the former owner for the excess value in the property. Plaintiffs assert numerous claims challenging this unconstitutional and fundamentally unfair process, including, as particularly relevant here, that the Defendants violated property owners' rights to (i) equal protection by discriminating against minority homeowners through their implementation of the TPT Program, and (ii) due process by failing to provide adequate notice to homeowners that they faced such a taking.

MDs are withholding or redacting at least 219 documents based on DPP, including 89 documents solely on that basis. TDs withheld at least 3 documents based on DPP, including 1 document solely on that basis.[3] As discussed below, based on Defendants' privilege logs, many of these documents appear to be highly relevant to Plaintiffs' Equal Protection and Due Process claims.[4]

## II.    DPP Does Not Apply Here

DPP does not apply in this case for at least three reasons. *First*, DPP does not apply where, as here, "the agency's deliberations are among the central issues in the case." *Greater New York Taxi Ass'n v. City of New York*, 2017 WL 4012051, at *9 (S.D.N.Y. Sept. 11, 2017).[5] *Second*, DPP does not apply to non-"deliberative" communications. *MacNamara v. City of New York*, 2007 WL 1169204, at *3-*5 (S.D.N.Y. Apr. 20, 2007). *Third*, this privilege does not apply to post-"decisional" communications. *Greater New York Taxi Ass'n*, 2017 WL 4012051, at *8.

### A.    DPP Does Not Apply Because Defendants' Deliberative Process is at Issue

The "historical and overwhelming consensus and body of law within the Second Circuit is that when the decision-making process itself is the subject of the litigation, the [DPP] cannot be a bar to discovery" and "evaporates." *Ciaramella*, 2021 WL 4219501, at *3-4. This is especially true

---

[3] Late this afternoon, counsel for TDs emailed to say that TDs are now (i) categorically withdrawing their assertion of DPP, (ii) withholding the same documents on newly-asserted grounds that they are non-responsive, and (iii) declining to submit any documents to the Court for *in camera* review. Plaintiffs respectfully request that the Court either (i) review an exemplar document *in camera* to assess responsiveness, or (ii) hold TDs' newly-asserted relevance objection to be untimely. *See Ciaramella v. Zucker*, 2021 WL 4219501, at *5 (S.D.N.Y. Sept. 16, 2021) ("Having listed the Remaining Withheld Documents on his Updated Privilege Log, Zucker effectively admitted that they are relevant and responsive to Plaintiffs' discovery demands.").

[4] Plaintiffs submitted Defendants' complete privilege logs in their native excel format at the link provided by the Court. Exhibit A submitted with this Motion reflects the privilege log entries for Municipal Defendants' exemplar documents, and Exhibit B reflects the privilege log entries for all documents for which Transferee Defendants have asserted DPP.

[5] Unless otherwise noted, all emphasis herein has been added, and all subsequent history, internal citations, and internal quotation marks have been omitted.

ROPES & GRAY LLP

- 3 -                                                                                    September 8, 2023

in the context of civil rights litigation like this case, where assertions of DPP "must yield to the overriding public interest in challenging discrimination." *Id*. at *3.  This action, and in particular the Equal Protection and Due Process claims, are directed at Defendants' decision-making process, including potential discrimination in selecting properties for TPT foreclosure and Defendants' failure to provide constitutionally sufficient notice.  *See, e.g.*, May 24, 2022 Order on Defendants' Motions to Dismiss (ECF No. 166) at 36 (finding that Plaintiffs have "carried their burden of demonstrating that the defendants' unequal application of the TPT Program was motivated by racial discrimination"); *id.* at 39 (due process claims adequately pled based on allegations that MDs sent notices addressed solely to HDFCs when it "knew that the HDFC had no functioning officers or board").

The fact that these documents were created after the inception of the TPT Program is irrelevant.  Even documents created after properties are selected for foreclosure remain highly relevant because Defendants do not dispute that they can, and do, "remove" properties selected for the TPT Program from seizure.  *See, e.g.,* Ex. C at 1 (HPD removing property from seizure because "it wouldn't . . . be a good look . . . from a PR perspective"); Ex. D at 2 (HPD senior executive, in preparing for upcoming City Council meeting, stating that Defendants "have not transferred particular properties in the past when there was a last minute reason," but cautioning that "I don't think we want to say most of this"); Ex. E at 1 (reflecting city council members intentions to disallow transfers of particular properties).  There is also strong circumstantial evidence that properties are selected in a racially discriminatory way.  *See* Ex. F (City Council Report) at 13-14 (TPT Round 10 focused primarily on 11 neighborhoods, all of which are communities of color, in the Bronx and Brooklyn).

Moreover, many of these documents purportedly reflect deliberations concerning "reform and foreclosure of HDFC cooperatives."  *See, e.g.*, Ex. A (MDs' Excerpted Privilege Log) entries 4, 6-7, 9-16, 18.  The decision to target HDFC cooperatives for seizure is itself racially suspect because, as HPD itself has acknowledged, such HDFCs are "typical[ly]" owned by "ethnic minorit[ies]."  *See* Ex. G (TPT Working Group Discussion Notes) at 9.  Defendants' decision not to notify individual HDFC shareholders that their homes would be seized, even while knowing that many HDFCs had no functioning officers or board, is also squarely at issue in this case.  In short, these HDFC-related documents go directly to Plaintiffs' Equal Protection and Due Process claims. *See Torres v. City Univ. of New York*, 1992 WL 380561, at *8 (S.D.N.Y. Dec. 3, 1992) (DPP "may not be raised as a bar against disclosure of relevant information; it must yield to the overriding public interest in challenging discrimination" when "the decision making process is itself at issue, particularly in a civil rights action").

### B. **DPP Does Not Apply to Non-"Deliberative" Documents**

To be protected by DPP, a document must be "deliberative."  *Greater New York Taxi Ass'n*, 2017 WL 4012051, at *8.  DPP can be "invoked only in the context of communications designed to directly contribute to the formulation of important public policy" and not for "routine operating

ROPES & GRAY LLP

- 4 -                                                                September 8, 2023

decision[s]." *See MacNamara*, 2007 WL 1169204, at *5. Defendants do not carry their burden of establishing that the withheld documents concern the formulation of public policy. *See Pane v. Town of Greenburgh*, 2009 WL 10740041, at *4 (S.D.N.Y., 2009) (agency asserting DPP "must offer ***precise reasons*** for asserting confidentiality").

In an effort to escape the "decision-making process" exception to DPP discussed in Section II.A above, Defendants may attempt to argue, as MDs have in the past, that there was not "any expansion, in 2015 or 2018, of TPT or the type of properties foreclosed." *See* MDs' Memo ISO Motion to Dismiss (ECF No. 110) at 6. Defendants, of course, cannot have it both ways. If the documents do not pertain to Defendants' "decision-making process," then they cannot qualify as "deliberative" under DPP to begin with. *See MacNamara*, 2007 WL 1169204, at *5.

For example, documents MDs have withheld as DPP appear to relate to Defendants' application of TPT standards to particular properties, and they include talking points for the Mayor to handle media/political issues. *See, e.g.,* Ex. A, entry 8 (email purporting to relate to "reform and foreclosure" of a particular "HDFC cooperative" with subject line: "FW: Blasio—:'…So I can give you my personal commitment that this week I will talk with the key people in administration and say that I want to avoid any foreclosures...'"). These are not the types of communications that are "designed to directly contribute to the formulation of important public policy," as required to invoke DPP, but instead reflect "routine operating decision[s]" for which DPP is inapplicable. *See MacNamara*, 2007 WL 1169204, at *5; *see also Haus v. City of New York*, 2004 WL 3019762, at *3 (S.D.N.Y. Dec. 29, 2004) (logistical issues "are not matters of policy, for which the deliberative process privilege was designed"); *Mitchell v. Fishbein*, 227 F.R.D. 239, 251 (S.D.N.Y. 2005) ("decisions whether to certify or decertify an attorney are best characterized as 'routine' decisions" and "thus cannot qualify for [DPP]").

## C. DPP Does Not Apply to Post-"Decisional" Documents

Only documents that are temporally "predecisional" can be protected by DPP. Defendants' privilege logs do not identify what putative "decision" the withheld documents pertain to, which itself is a basis to reject the asserted privilege. *See Pane*, 2009 WL 10740041, at *4 (agency asserting DPP "must offer ***precise reasons*** for asserting confidentiality"). Moreover, many of the documents withheld by Defendants are from so late in the process that they can't possibly be "predecisional." For example, Ms. Jones' and Mr. Dorce's properties were transferred on February 7, 2018 and September 21, 2018, respectively, but MDs seek to withhold multiple documents from as late as November 2018 that purportedly reflect "deliberative process" regarding "particular properties." *See* Ex. A, entries 19-20. Such documents, which at most "explain[] or interpret[] an existing policy or measur[e] compliance with existing procedures [are] not predecisional." *See E.B. v. N.Y.C. Bd. of Educ.*, 233 F.R.D. 289, 292 (E.D.N.Y. 2005).

ROPES & GRAY LLP

- 5 -                                                            September 8, 2023

**III.     Even if DPP Otherwise Applied Here, Defendants' Interest in Nondisclosure is Outweighed by Plaintiffs' Need for the Information**

DPP is a qualified privilege.  *Greater New York Taxi Ass'n*, 2017 WL 4012051, at \*9.  In deciding whether to uphold DPP, courts must "balance an agency's interest in nondisclosure against a litigant's need for the information," as well as "the public's interest in open government" and in "challenging discrimination."  *Id.* at \*9.  Courts consider five discretionary factors in assessing whether to override an otherwise proper assertion of DPP:  "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence...; (iii) the 'seriousness' of the litigation and the issues involved...; (iv) the role of government in the litigation...; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable."  *Ciaramella*, 2021 WL 4219501, at \*3.  All five factors clearly favor disclosure here:

- *Highly Relevant Evidence*.  As discussed above, the documents at issue here—apparently discussing the reasons ***why*** and ***how*** Defendants implemented the TPT seizures—go to the heart of Plaintiffs' Equal Protection and Due Process claims.

- *No Other Source*.  The only source of Defendants' contemporaneous decision-making process in implementing the TPT seizures is from Defendants' files.  If the requested documents are not produced, Defendants' decision-making process on the key issues in this case will remain shrouded in secrecy.

- *"Serious" Litigation*.  This litigation seeks to vindicate the civil rights of hundreds of former property owners who have lost their homes.  *See id.* at \*5 (DPP inapplicable due to "the overriding public interest in challenging discrimination," where plaintiffs alleged that "thousands of low-income New Yorkers [were] being denied medically necessary dental care" by the government); *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 102 (S.D.N.Y. 2003) (alleged violations of Voting Rights Act and Equal Protections "raise[d] serious charges about the fairness and impartiality of some of the central institutions of our state government," and thus the "deliberative process privilege should be accorded only limited deference"); Ex. F (City Council Report) at 11 (TPT foreclosure "is significant because owners of properties selected for TPT face the possibility of losing the equity . . . without receiving any compensation in return").

- *Government Role*.  Like in *Ciaramella*, the government is a defendant in this case and the case is about the government's conduct in implementing the TPT Program seizures.

- *No Chilling Effect*.  There is no basis to conclude that producing the documents withheld here would have a chilling effect on the government.  Indeed, MDs have chosen to participate, albeit selectively, in a public dialogue about their TPT Program seizure decision-making.  *See* Ex. G (TPT Working Group Discussion Notes); *Ciaramella*, 2021 WL 4219501, at \*5 ("small possibility that government employees could be chilled in their internal deliberations [is] outweighed by [] other factors.").

Respectfully submitted,

*/s/ Gregg L. Weiner*
Gregg L. Weiner
Alexander B. Simkin
Leon Kotlyar
Phillip G. Kraft
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000

Daniel A. Yanofsky (admitted *pro hac vice*)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
(617) 508-4600
*Attorneys for Plaintiffs McConnell Dorce and*
*Sherlivia Thomas-Murchison*

*/s/ Matthew L. Berman*
Matthew L. Berman
Robert J. Valli, Jr.
Yolande I. Nicholson, Esq. (Of Counsel)
VALLI KANE & VAGNINI LLP
600 Old Country Road
Garden City, NY 11530
(516) 203-7180
*Attorneys for Plaintiffs*

*/s/ Keith H. Wofford*
Keith H. Wofford
WHITE & CASE LLP
200 South Biscayne Blvd
Suite 4900
Miami, FL 33131-2352
(305) 371-2700
*Attorneys for Plaintiffs McConnell Dorce and*
*Sherlivia Thomas-Murchison*

cc:    Counsel of Record (via ECF)

Enclosures

## <u>CERTIFICATE</u>

I hereby certify that, in an effort to obtain discovery without court action in accordance with Rule 37(a)(1), Plaintiffs conferred in good faith with Municipal Defendants on August 24, 2023 and with Transferee Defendants on August 29, 2023.

*/s/ Daniel A. Yanofsky*
Daniel A. Yanofsky
