UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

McCONNELL DORCE, et al.,

                        Plaintiffs,

   -v-

                                                     CIVIL ACTION NO.: 19 Civ. 2216 (JLR) (SLC)

CITY OF NEW YORK, et al.,                              **OPINION & ORDER**

                        Defendants.

**SARAH L. CAVE,** United States Magistrate Judge.

**I. INTRODUCTION**

Plaintiffs McConnell Dorce, Cecilia Jones, and Sherlivia Thomas-Muchison (together, "Plaintiffs"), brought this putative class action alleging that Defendants[1] used and conspired to use in rem proceedings to seize Plaintiffs' properties based on asserted tax debts, and have failed to compensate Plaintiffs for the excess value of their properties, in violation of the United States Constitution, New York State Constitution, and New York State law.  (See generally ECF No. 91). The City Defendants have asserted the deliberative process privilege (the "Privilege") as grounds to withhold from production certain documents that they contend reflect the City's policy decision-making processes (the "Withheld Documents").  (ECF Nos. 290 at 1; 291 at 9–11; 298 at 1–2).[2]  Now before the Court is Plaintiffs' letter-motion to compel production of the Withheld

---

[1] Defendants are the City of New York (the "City"), Louise Carroll ("Carroll"), Commissioner of the New York City Department of Housing Preservation and Development ("HPD"), Sherif Soliman, Commissioner of the New York City Department of Finance ("DOF", with the City and Carroll, the "City Defendants"), Neighborhood Restore Housing and Development Fund Co. Inc. ("Neighborhood Restore"), and Bridge Street Kings Covenant Housing Development Fund Company Inc. ("Bridge Street", with Neighborhood Restore, the "TPT Defendants").

[2] Although the TPT Defendants initially asserted the Privilege as to three documents (the "TPT Withheld Documents"), they subsequently informed Plaintiffs that they withdrew their assertion of the Privilege but continued to withhold them as not relevant.  (ECF No. 296 at 2 n.3).  Having listed the TPT Withheld

1

Documents (ECF No. 296 (the "Motion")), which the City Defendants have opposed (ECF No. 298 (the "Opposition")).[3]  For the reasons set forth below, Plaintiffs' Motion is GRANTED.

## II. BACKGROUND

### A. Factual Background

The factual background of Plaintiffs' claims is set forth in detail in prior decisions of the Honorable John G. Koeltl and the United States Court of Appeals for the Second Circuit, and is incorporated by reference.[4]  See Dorce v. City of New York, 2 F.4th 82, 88–92 (2d Cir. 2021) ("Dorce II") (affirming in part and reversing in part decision granting motion to dismiss and remanding);[5] Dorce v. City of New York, 608 F. Supp. 3d 118, 127–31 (S.D.N.Y. 2022) ("Dorce III") (following remand, granting in part and denying in part motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim); Dorce v. City of New York, 460 F. Supp. 3d 327, 334-37 (S.D.N.Y. 2020) ("Dorce I") (granting motion to dismiss for lack of subject matter

---

Documents on their privilege log, however, the TPT Defendants "effectively admitted that they are relevant and responsive to Plaintiffs' discovery requests."  Ciaramella v. Zucker, No. 18 Civ. 6945 (MKV) (SLC), 2021 WL 4219501, at *5 (S.D.N.Y. Sept. 16, 2021).  Accordingly, the TPT Defendants must produce to Plaintiffs the TPT Withheld Documents.

[3] In their Opposition, the City Defendants note that "Plaintiffs attached to their Motion as Exhibit D a document that . . . [the City Defendants] inadvertently produced notwithstanding that it contains privileged material[,]" and that the City Defendants have "demand[ed] that the document be clawed back."  (ECF No. 298 at 1 n.1).  During a discovery conference on November 3, 2023, the parties advised the Court that Exhibit D is not integral to the resolution of the Motion.  Accordingly, the Court has not considered Exhibit D.  To the extent that Exhibit D remains in dispute, the parties may raise the issue during the telephone conference scheduled for November 22, 2023.  (ECF No. 303 ¶ 3).

[4] On September 19, 2022, this action was reassigned to the Honorable Jennifer L. Rochon.  (ECF min. entry Sept. 19, 2022).

[5] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

jurisdiction), aff'd in part, rev'd in part, and remanded by, Dorce II, 2 F.4th at 82.[6]  The Court sets forth only the factual background necessary to decide the Motion.

### 1. Plaintiffs' Allegations

Briefly, Plaintiffs challenge the City's Third Party Transfer Program (the "TPT Program"), which was enacted in 1996 and through which the City Defendants seized and transferred to the TPT Defendants distressed or tax delinquent properties largely owned by elderly persons of color without compensation to the owners.  (ECF Nos. 296 at 1–2; 91 ¶ 1).  See Dorce III, 608 F. Supp. 3d at 127–28 (describing the TPT Program).  Plaintiffs allege that the City Defendants "in recent years" have used the TPT Program to "reward political allies" and have "systematically targeted properties with little tax debt relative to their property value within communities of color[.]" Dorce III, 608 F. Supp. 3d at 128 (citing ECF No. 91 ¶¶ 1, 26, 61, 169–71, 217, 306).  The most recent "round" of "mass foreclosure proceedings [] under the TPT Program . . . ended in 2018." (ECF No. 91 ¶ 68).  As Judge Koeltl recognized in Dorce III, Plaintiffs contend that Defendants targeted homeowners of color in the TPT Program "because, among other reasons, the [D]efendants believe that such homeowners are 'less likely to have the resources to mount legal challenges' and to have the abilities to fight the [D]efendants' tactics."  608 F. Supp. 3d at 128 (quoting ECF No. 91 ¶ 217).  Plaintiffs allege "that there is no real mechanism for a former owner to seek or regain their surplus equity after the property has been transferred under the TPT Program."  Id. at *129 (citing ECF No. 91 ¶ 193).  Plaintiffs contend that the "misuse of the TPT

---

[6] In addition to these decisions, on July 18, 2022, Judge Koeltl denied the TPT Defendants' request for certification of an interlocutory appeal from Dorce III.  See Dorce v. City of New York, No. 19 Civ. 2216 (JGK) (SLC), 2022 WL 3133063 (S.D.N.Y. July 18, 2022) ("Dorce IV").

Program has stripped away 'intergenerational black and brown wealth' and has contributed to steep racial disparities in homeownership." Id. (quoting ECF No. 91 ¶¶ 178, 227–28)).

### 2. The Withheld Documents

The Withheld Documents consist of "at least 219 documents" that the City Defendants have withheld or redacted based on the Privilege, including 89 documents on that basis alone. (ECF No. 296 at 2). The Withheld Documents fall into one of three categories: (i) drafts of and communications concerning a memorandum (the "Memo") for the Mayor of the City concerning the TPT Program (the "Memo Documents"); (ii) DOF documents "concerning late tax payments made by former owners" of the seized properties (the "DOF Documents"); and (iii) documents concerning a "possible reform to the handling of water liens held by the Department of Environmental Preservation ('DEP') in future TPT actions" (the "DEP Documents"). (ECF No. 298 at 1–2).

As to the Memo Documents, the City Defendants assert in the Opposition—but have not submitted any sworn attestation from a City decision-maker—that the Memo "was drafted for the purpose of providing the Mayor with necessary information to make a decision concerning the then-pending in rem foreclosure actions" as part of the TPT Program. (ECF No. 298 at 2). The City Defendants contend—without citation to any evidentiary support—that the Memo Documents "represent a collection of background information, facts, expected and proposed timelines for the pending in rem foreclosure actions, agency and Administration goals, and proposals concerning the continued prosecution of the actions." (Id.) They argue—again, without support—that:

> [a] decision by the Mayor was sought because of the formation of a coalition of HDFCs, and the coalition's demands, including that the City forbear from

4

foreclosing properties owned by HDFCs. The thematically related topic of City policy reforms respecting HDFCs was also addressed, albeit minimally. Although later versions of the [] Memo were called "HDFC Cooperatives: Reform and Foreclosure," the proposed reforms were addressed as a tangential issue for future consideration.

(Id.) The Memo Documents consist of drafts of or communications regarding versions of memoranda from HPD that are dated between June 2017 and September 2018 and contain recommendations to the Mayor about how to proceed with foreclosures under the TPT Program. (Exemplars 1, 2, 4–7, 9). Those recommendations include the timing and selection of properties to be targeted for foreclosure under the TPT Program, and communications with the public about the foreclosures. (See, e.g., Exemplars 1, 4).

As to the DOF and DEP Documents, the City Defendants provide no additional background or context other than that set forth above. (ECF No. 298 at 2). From the Court's in camera review of these documents, however, the DOF Documents appear to pertain to a November 2018 analysis of properties that were transferred as part of the TPT Program but as to which DOF had "suspended payment." (Exemplar 3). The DEP Documents appear to pertain to a March 2010 presentation about collecting arrearages that certain HDFC properties owed to the DEP. (Exemplar 9).

### B. Procedural Background

In a joint letter dated June 30, 2023, the parties raised their dispute about the application of the Privilege to the Withheld Documents. (ECF No. 277 at 3–4). Following a discussion during a discovery conference on August 29, 2023, the Court set a briefing schedule for the Motion and directed the parties to select ten (10) exemplars as to which Defendants had asserted the Privilege. (ECF No. 290 at 1–2 (the "Aug. 29 Order"); see ECF No. 291 at 10–11). Pursuant to the

5

Aug. 29 Order, on September 8, 2023, Plaintiffs filed the Motion (ECF No. 296), and on September 11, 2023, the City Defendants submitted nine exemplars (the "Exemplars") for the Court's in camera review.[7] (See ECF No. 295). On September 29, 2023, the City Defendants filed the Opposition, and on October 13, 2023, Plaintiffs filed a reply. (ECF Nos. 298; 301).

### III. DISCUSSION

#### A. Legal Standard

The Privilege "is a 'sub-species' of the work-product doctrine designed to protect the 'process by which governmental decisions and policies are formulated.'" New York v. Wolf, Nos. 20 Civ. 1127 & 20 Civ. 1142 (JMF), 2020 WL 3073294, at *1 (S.D.N.Y. June 10, 2020) (quoting Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 76 (2d Cir. 2002)). The Privilege protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Grand Cent. P'ship v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999); accord, Dipace v. Goord, 218 F.R.D. 399, 403 (S.D.N.Y. 2003) (quoting Grand Cent. P'ship, 166 F.3d at 482). The purpose of the Privilege is to "preserv[e] and encourag[e] candid discussion between officials." Nat'l Council of La Raza v. Dep't of Just., 411 F.3d 350, 356 (2d Cir. 2005).

The Privilege allows a governmental agency or official to withhold "an inter- or intra-agency document . . . if it is: (1) 'predecisional,' i.e., 'prepared in order to assist an agency decisionmaker in arriving at his [or her] decision,' and (2) 'deliberative,' i.e., 'actually . . . related to the process by which policies are formulated.'" La Raza, 411 F.3d at 356 (quoting Grand Cent.

---

[7] The City Defendants assert that two of the Exemplars, Nos. 3 and 6, are also protected by the work product privilege, the applicability of which Plaintiffs do not dispute in the Motion.

6

P'ship, 166 F.3d at 482). "Predecisional communications are those communications generated in order to assist the agency decisionmaker in making a decision. Deliberative communications are those relating to the process by which policies are formulated." MacNamara v. City of New York, No. 04 Civ. 9612 (KMK) (JCF), 2007 WL 755401, at *9 (S.D.N.Y. Mar. 14, 2007).

"The party asserting the [P]rivilege bears the burden of proof." In re Grand Jury Subpoena dated Aug. 9, 2000, 218 F. Supp. 2d 544, 553 (S.D.N.Y. 2002). The governmental agency "must actually identify and explain the role that a given document has played in the decisionmaking process." Fox News Network, LLC v. U.S. Dep't of Treas., 739 F. Supp. 2d 515, 541 (S.D.N.Y. 2010). The agency "must be able to demonstrate that . . . the document for which . . . privilege is claimed related to a specific decision facing the agency[,]" as distinguished from an agency's "routine and ongoing process of agency self-evaluation," to which the Privilege does not apply. Tigue, 312 F.3d at 80; accord Haus v. City of New York, No. 03 Civ. 4915 (RWS) (MHD), 2004 WL 3019762, at *3 (S.D.N.Y. Dec. 29, 2004) ("[C]ourts require a showing that pinpoints the specific agency decision to which the document correlates, and that demonstrates that the document in question is not merely peripheral to actual policy formation[.]") (alterations omitted). The Privilege does not protect factual material, and "[p]urely factual material that is severable 'without compromising the private remainder of the documents' consequently must be released." Fox News, 739 F. Supp. 2d at 541 (quoting Env. Prot. Agency v. Mink, 410 U.S. 73, 91 (1973)). Courts construe the Privilege "strictly" and "within the narrowest possible limits consistent with the logic of its principle." United States v. Int'l Broth. of Teamsters, 119 F.3d 210, 214 (2d Cir. 1997) (quoting In re Horowitz, 482 F.2d 71, 81 (2d Cir. 1973)).

"[W]here the deliberations [about a government policy] are among the central issues in the case[,]" the Privilege may be inapplicable altogether. Burbar v. Inc. Vill. of Garden City, 303 F.R.D. 9, 13 (E.D.N.Y. 2014); see Ciaramella, 2021 WL 4219501, at *4 (finding Privilege inapplicable where whether agency "had 'good reasons' for the policy decisions" was at issue); ACORN v. Cnty. of Nassau, No. 05 Civ. 2301 (JFB) (WDW), 2008 WL 708551, at *4 (E.D.N.Y. Mar. 14, 2008) ("When the decision-making process is itself at issue, particularly in [a] civil rights action, the [P]rivilege and other privileges designed to shield that process from public scrutiny may not be raised as a bar against disclosure of relevant information; it must yield to the overriding public interest in challenging discrimination."); Child. First Found., Inc. v. Martinez, No. 04 Civ. 0927 (NPM) (RFT), 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007) (noting that the "historical and overwhelming consensus and body of law within the Second Circuit is that when the decision-making process itself is the subject of the litigation, the [P]rivilege cannot be a bar to discovery" and "evaporates"); Azon v. LIRR, No. 00 Civ. 6031 (HB), 2001 WL 1658219, at *3 (S.D.N.Y. Dec. 26, 2001) ("[W]hen the subject of the litigation . . . is the very nature of the decision-making process, the privilege should not foreclose the production of critical information."). Thus, when the information "sought may shed light on alleged government malfeasance, the privilege is denied." In re Franklin Nat'l Bank Sec. Litig., 478 F. Supp. 577, 582 (E.D.N.Y. 1979).

"Notably, . . . the [Privilege] is only a 'qualified' privilege, and, thus, must be balanced 'against the need of the particular litigant for access to the privileged information.'" Wolf, 2020 WL 3073294, at *1 (quoting MacNamara v. City of New York, 249 F.R.D. 70, 79 (S.D.N.Y. 2008)); see In re Grand Jury Subpoena, 218 F. Supp. 2d at 553 (explaining that, even where applicable,

the Privilege "may be overcome by a showing of need, which is determined on a case by case basis"). "Once the privilege is established, the court must balance the interests supporting and opposing the disclosure." Burbar, 303 F.R.D. at 13. The Court has discretion "to determine whether to apply it in the first instance, not just whether it has been overcome." In re Grand Jury Subpoena, 218 F. Supp. 2d at 553. Courts balance the following factors in assessing whether to apply the Privilege:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence. . .; (iii) the 'seriousness' of the litigation and the issues involved . . . ; (iv) the role of government in the litigation . . . ; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

Mr. & Mrs. "B", 35 F. Supp. 2d at 229. Courts have explained that, "[i]n balancing these interests, foremost is the interest of the litigants, and ultimately of society, in accurate judicial fact finding." Id.

### B. Application

The Court finds that the Privilege does not shield the Withheld Documents from disclosure to Plaintiffs for three reasons. First, as noted above, the City Defendants bear the burden to show that the Withheld Documents are predecisional and deliberative. (See § III.A, supra). As to the Memo Documents, however, the City Defendants, in the Opposition, simply assert in a conclusory fashion that they were part of the Mayor's "decision concerning the then-pending in rem foreclosure actions" in the TPT Program. (ECF No. 298 at 1–2). Aside from a selection of the Memo Documents themselves, the City Defendants do not provide any affidavit or declaration from "the head of the governmental agency or an appropriately qualified designee of high authority after personal consideration of the documents[,]" which is a well-settled

9

requirement imposed by courts in this District. City of New York v. FedEx Ground Package Sys. Inc., No. 13 Civ. 9173 (ER), 2017 WL 4155410, at *5 (S.D.N.Y. Sept. 18, 2017) (collecting cases); see Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J., No. 11 Civ. 6746 (RKE) (HBP), 2014 WL 2518959, at *4 (S.D.N.Y. June 4, 2014) (explaining that Privilege must be invoked "by the head of the governmental agency . . . after personal review of the documents in question or by a subordinate designee of high authority" who must provide an "affidavit contemporaneous with the assertion of such privilege"). The City Defendants offer no explanation for their failure to submit a declaration from anyone in a position of authority in the Mayor's Office or elsewhere in the City government who personally reviewed the Memo Documents—let alone any detail about the decisions that supposedly underlie the DOF and DEP Documents—which is inexcusable given the widely recognized requirement of such an attestation to support application of the Privilege. See, e.g., City of New York v. Rep. of Phillipines, No. 03 Civ. 6085 (RCC) (FSM), 2004 WL 2710026, at *9–10 (S.D.N.Y. Nov. 23, 2004) (finding that agency representative's declaration "adequately establishe[d]" applicability of Privilege to all but one document); Dipace, 218 F.R.D. at 404-405 (citing agency representative's declaration in finding that Privilege applied); see also MacNamara v. City of New York, No. 04 Civ. 9216 (KMK) (JCF), 2007 WL 1169204, at *2 (S.D.N.Y. Apr. 20, 2007) (noting that City submitted declaration of Police Commissioner to support application of Privilege); E.B. v. N.Y.C. Bd. of Educ., 233 F.R.D. 289, 293 (E.D.N.Y. 2005) (noting that City submitted agency representative declaration in support of application of Privilege). In short, the City Defendants' "general allegations" and "cursory description" in the Opposition fail satisfy their burden to substantiate the application of the Privilege to the Withheld Documents. United States v. Constr. Prods. Res., Inc., 73 F.3d 464, 473-74 (2d Cir. 1996); see Montrevil v. Decker, No.

20 Civ. 264 (WFK) (LB), 2021 WL 11690690, at *5 (E.D.N.Y. July 19, 2021) (even where agency submitted declaration, finding that assertions were "far too general and vague to uphold their claim of privilege"); Haus, 2004 WL 3019762, at *3 (although agency submitted declaration, finding that assertions "in conclusory fashion" were insufficient to establish applicability of Privilege).[8]

Second, even if the City Defendants had met their burden to show that the Withheld Documents were both predecisional and deliberative, the Privilege does not bar disclosure because the City Defendants' decision-making as part of the TPT Program is at issue in this action. As Judge Koeltl recognized in finding that Plaintiffs adequately pled Equal Protection claims under the U.S. and New York Constitutions, Plaintiffs "carried their burden of demonstrating that [D]efendants' unequal application of the TPT Program was motivated by racial discrimination" by alleging that Defendants "specifically targeted homeowners of color because of racial biases, including perceptions that people of color are 'less likely to have the resources to mount legal challenges' and to have the ability to fight the [D]efendants' tactics." Dorce III, 608 F. Supp. 3d at 141 (quoting ECF No. 91 ¶ 217)). The Withheld Documents pertain directly to the questions of when, how, and why properties were selected for seizure and foreclosure under the TPT Program. (See § II.A.2, supra). Accordingly, because the question whether Defendants possessed "discriminatory motivation" in adopting and implementing the TPT Program is central to at least one of Plaintiffs' claims, "the agency deliberations are central to the case" and the Privilege is

---

[8] The City Defendants' submission of the Exemplars is not an adequate substitute for a declaration, without which the Court lacks a timeline of, context for, and resolution of the decision-making process for the TPT Program. Cf. Davis v. City of New York, No. 10 Civ. 699 (SAS) (HBP), 2012 WL 612794, at *6 n.9 (S.D.N.Y. Feb. 27, 2012) (finding that in camera review, which "is the exception rather than the rule," was inadequate to remedy deficient assertion of privilege in privilege log).

inapplicable to the Withheld Documents, which speak to that key question.  Davis, 2012 WL 612794, at *8 (collecting cases rejecting Privilege where the "government's deliberations, motivations, or thought processes themselves [were] genuinely in issue"); see Ciaramella, 2021 WL 4219501, at *5 (finding Privilege inapplicable where withheld documents were relevant to whether agency had "good reasons" for policy decisions); Montrevil, 2021 WL 11690690, at *5 (finding Privilege inapplicable where agency's "decision-making process about [the] petitioner's case and his removal [were] central to [the] petitioner's claims"); New York v. Salazar, 701 F. Supp. 2d 224, 237-38 (S.D.N.Y. 2010) (finding Privilege inapplicable where "several of [the] plaintiffs'] claims squarely challenge[d] the process by which the [agency] made its decision"); see also Ebbert v. Nassau Cnty., No. 05 Civ. 5445 (FB) (AKT), 2007 WL 674725, at *11 (E.D.N.Y. Mar. 5, 2007) (finding that the defendant agency was "afforded no refuge under the [Privilege] to decline production of the documents at issue" where the plaintiffs "established a sufficient basis to connect the [documents] to the [challenged] decision-making process")).

Third, even if the Privilege were otherwise applicable, the Court finds that the balance of the five discretionary factors weighs in favor of disclosure of the Withheld Documents.  As to the first factor, having been listed on the City Defendants' privilege log, the Withheld Documents are indisputably relevant to Plaintiffs' claims.  See Ciaramella, 2021 WL 4219501, at *5.  As to the second factor, the City Defendants have not meaningfully rebutted Plaintiffs' showing that the Withheld Documents are "[t]he only source of Defendants' contemporaneous decision-making process in implementing the TPT seizures[.]"  (ECF No. 296 at 5).  As to the third factor, Plaintiffs' federal and state constitutional claims "seek[] to vindicate the civil rights of hundreds of former property owners who have lost their homes."  (Id.)  Thus, their claims "raise[] serious charges

about the fairness and impartiality" of the operations of the City's governmental functions. Rodriguez v. Pataki, 280 F. Supp. 2d 89, 102 (S.D.N.Y. 2003) (explaining that Privilege "should be accorded only limited deference" in action involving claims under Voting Rights Act and Equal Protection Clause). As to the fourth factor, the City Defendants' actions are at the heart of Plaintiffs' claims, as explained above. Finally, as to the fifth factor, the "small possibility that government employees could be chilled in their internal deliberations is outweighed by the other factors, which balance in favor of disclosure of" the Withheld Documents. Ciaramella, 2021 WL 4219501, at *5.

## IV. CONCLUSION

For the reasons set forth above, the Court holds that the Privilege is inapplicable to the Withheld Documents. In addition, because the TPT Defendants have withdrawn their assertion of the Privilege as to the TPT Withheld Documents, which are relevant and must be produced. By **November 27, 2023**, the City Defendants shall produce the Withheld Documents—other than Exemplars 3 and 6, the applicability of the work product protection to which Plaintiffs do not dispute (see n.7, supra)—to the extent they are not otherwise privileged, and the TPT Defendants shall produce the TPT Withheld Documents. By **November 28, 2023**, the parties shall file a joint letter confirming Defendants' compliance with this Opinion and Order.

Dated:   New York, New York
         November 14, 2023

SO ORDERED.

_____
**SARAH L. CAVE**
**United States Magistrate Judge**

13