UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

McCONNELL DORCE, et al.,

                      Plaintiffs,

   -v-

CITY OF NEW YORK, et al.,

                      Defendants.

CIVIL ACTION NO. 19 Civ. 2216 (JLR) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Plaintiffs McConnell Dorce, Cecilia Jones, and Sherlivia Thomas-Murchison (together, "Plaintiffs"), brought this putative class action alleging that Defendants[1] used and conspired to use in rem proceedings to seize Plaintiffs' properties based on asserted tax debts and failed to compensate Plaintiffs for the excess value of their properties, in violation of the United States Constitution, New York State Constitution, and New York State law. (See generally ECF No. 91). Before the Court is Plaintiffs' letter-motion seeking an order rejecting the City Defendants' attempt to claw back a document that they previously produced to Plaintiffs (ECF No. 296-4 (the "Document")), and now claim is protected by the attorney-client privilege (the "Privilege"), and the City Defendants' cross-motion to seal the Document. (ECF Nos. 311 ("Plaintiffs' Motion"); 314 (the "City Defendants' Motion," and together, the "Motions")). For the

---

[1] Defendants are the City of New York (the "City"), Louise Carroll ("Carroll"), Commissioner of the New York City Department of Housing Preservation and Development ("HPD"), Sherif Soliman ("Soliman," with the City and Carroll, the "City Defendants"), Commissioner of the New York City Department of Finance, Neighborhood Restore Housing and Development Fund Co. Inc. ("Neighborhood Restore"), and Bridge Street Kings Covenant Housing Development Fund Company Inc. ("Bridge Street", with Neighborhood Restore, the "TPT Defendants").

reasons set forth below, Plaintiffs' Motion is DENIED and the City Defendants' Motion is GRANTED.

## II. BACKGROUND

### A. Factual Background

The factual background of Plaintiffs' claims is set forth in detail in prior decisions of the Honorable John G. Koeltl[2] and the United States Court of Appeals for the Second Circuit and is incorporated by reference. See Dorce v. City of New York, 2 F.4th 82, 88–92 (2d Cir. 2021) ("Dorce II") (affirming in part and reversing in part decision granting motion to dismiss and remanding);[3] Dorce v. City of New York, 608 F. Supp. 3d 118, 127–31 (S.D.N.Y. 2022) ("Dorce III") (following remand, granting in part and denying in part motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim); Dorce v. City of New York, 460 F. Supp. 3d 327, 334-37 (S.D.N.Y. 2020) ("Dorce I") (granting motion to dismiss for lack of subject matter jurisdiction), aff'd in part, rev'd in part, and remanded by, Dorce II, 2 F.4th at 82.[4] The Court sets forth only the factual background necessary to decide the Motions.

---

[2] On September 19, 2022, this action was reassigned to the Honorable Jennifer L. Rochon. (See ECF No. 209; ECF min. entry Sept. 19, 2022).

[3] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

[4] In addition to these decisions, on July 18, 2022, Judge Koeltl denied the TPT Defendants' request for certification of an interlocutory appeal from Dorce III. See Dorce v. City of New York, No. 19 Civ. 2216 (JGK) (SLC), 2022 WL 3133063 (S.D.N.Y. July 18, 2022) ("Dorce IV"). Judge Rochon and the undersigned have issued several additional decisions that are not pertinent to the Motions. See Dorce v. City of New York, No. 19 Civ. 2216 (JLR) (SLC), 2023 WL 7545345 (S.D.N.Y. Nov. 14, 2023) ("Dorce VIII") (granting Plaintiffs' motion to compel production of documents that City Defendants withheld on grounds of deliberative process privilege); Dorce v. City of New York, No. 19 Civ. 2216 (JLR) (SLC), 2022 WL 16639141 (S.D.N.Y. Oct. 14, 2022) ("Dorce VI") (recommending granting and part and denying in part Plaintiffs' motion to strike Defendants' Eighth and Eleventh Affirmative Defenses), adopted by, 2022 WL 16637746 (S.D.N.Y. Nov. 2, 2022) ("Dorce VII"); Dorce v. City of New York, No. 19 Civ. 2216 (JGK) (SLC), 2022 WL 4093145 (S.D.N.Y. Sept. 7, 2022) ("Dorce V") (denying Plaintiffs' request to compel TPT Defendants' production of discovery).

1. **Plaintiffs' Allegations**

Briefly, Plaintiffs challenge the City's Third Party Transfer Program (the "TPT Program"), which was enacted in 1996 and through which the City Defendants seized and transferred to the TPT Defendants distressed or tax delinquent properties largely owned by elderly persons of color without compensation to the owners. (ECF Nos. 296 at 1–2; 91 ¶ 1). See Dorce III, 608 F. Supp. 3d at 127–28 (describing the TPT Program). Plaintiffs allege that the City Defendants "in recent years" have used the TPT Program to "reward political allies" and have "systematically targeted properties with little tax debt relative to their property value within communities of color[.]" Dorce III, 608 F. Supp. 3d at 128 (citing ECF No. 91 ¶¶ 1, 26, 61, 169–71, 217, 306). The most recent "round" of "mass foreclosure proceedings [] under the TPT Program . . . ended in 2018." (ECF No. 91 ¶ 68). As Judge Koeltl recognized in Dorce III, Plaintiffs contend that Defendants targeted homeowners of color in the TPT Program "because, among other reasons, the [D]efendants believe that such homeowners are 'less likely to have the resources to mount legal challenges' and to have the abilities to fight the [D]efendants' tactics." 608 F. Supp. 3d at 128 (quoting ECF No. 91 ¶ 217). Plaintiffs allege "that there is no real mechanism for a former owner to seek or regain their surplus equity after the property has been transferred under the TPT Program." Id. at *129 (citing ECF No. 91 ¶ 193). Plaintiffs contend that the "misuse of the TPT Program has stripped away 'intergenerational black and brown wealth' and has contributed to steep racial disparities in homeownership." Id. (quoting ECF No. 91 ¶¶ 178, 227–28)).

2. **The Document**

The Document, which the City Defendants produced to Plaintiffs on November 30, 2022 (ECF No. 311 at 1), contains three emails, the middle of which the City Defendants claim is

privileged: an April 12, 2018 email from Mary-Lynne Rifenburgh, then-Deputy General Counsel for HPD, to HPD personnel and an attorney at the City's Law Department, Kent Langloss ("Langloss"). (ECF Nos. 296-4 at 2–3 (the "Apr. 12 Email"); 314-1 ¶ 1 (Affirmation of Mary-Lynne Rifenburgh, dated Dec. 11, 2023 (the "Affirmation")). At the beginning of the Apr. 12 Email, Ms. Rifenburgh states that she is "adding [Langloss] because [her] comments are on legal aspects of" "an internal HPD document being prepared for an upcoming Council hearing." (ECF No. 296-4 at 2). In the remainder of the Apr. 12 Email, Ms. Rifenburgh provides her "thoughts" on several "questions" about the internal HPD document, including providing suggested revisions, providing legal citations and quotations, and legal advice about possible courses of action. (Id. at 2–3). Ms. Rifenburgh attests that "[t]he purpose of the [Apr. 12] Email was to provide confidential legal advice to affected HPD personnel concerning a draft document in preparation for a City Council hearing regarding the [TPT] Program." (ECF No. 314-1 ¶ 3).

**B. Procedural Background**

Discovery in this action has been protracted and involved numerous disputes the Court has addressed with the parties in no fewer than nine conferences. (ECF min. entries Mar. 15, 2022, May 3, 2022, June 16, 2022, July 12, 2023, July 18, 2023, Aug. 29, 2023, Nov. 3, 2023, Nov. 22, 2023, Jan. 3, 2024). The case management plan has been amended three times, with fact discovery currently due to be completed by June 28, 2024. (See ECF Nos. 138; 232; 238; 317). The parties have yet to begin depositions. (ECF No. 312 at 10–11, 13–14).

In a Stipulation and Order dated April 4, 2022, the Court adopted the parties' proposed restrictions and procedures for designating confidential information produced during discovery. (ECF No. 141 (the "Confidentiality Order")). In another Stipulation and Order dated the same

4

day, the Court adopted the parties' agreed procedures "for the clawback of information and/or material that is protected by the attorney-client privilege, work-product protection, or any other privilege or protection recognized by law, and personally identifiable information." (ECF No. 142 at 1 (the "Clawback Order")). As is relevant to the Motions, the Clawback Order provides:

> Any party that produces or discloses Protected Material (the "Producing Party") . . . may (i) notify in writing the party receiving Protected Material (the "Receiving Party") that Protected Material was produced or disclosed and that it does not intend to waive the applicable privilege, protection, or interest against disclosure; and (ii) demand that the Receiving Party return or destroy the Protected Material (the "Clawback Demand"). Such demand shall be made within fourteen (14) days of discovering the production of the Protected Material, and the demand shall identify the Protected Material to be returned or destroyed . . . and the basis for the claim of privilege, protection, and/or personally identifiable information.

(Id. ¶ 3). The Clawback Order requires the Receiving Party—here, Plaintiffs—to notify the Producing Party—the City Defendants—within fourteen days of any objection to the Clawback Demand, meet and confer, and, absent a consensual resolution, file a motion to compel within 21 days of receiving the Clawback Demand. (Id. ¶¶ 7–8). The Clawback Order provides that its procedures "specifically preclude the application of [Federal Rule of Evidence] 502(b) to any Clawback Demand and/or Protected Material, as defined herein, requested under this Stipulation and Order." (Id. at 1).

Following a discovery conference on August 29, 2023, the Court set a briefing schedule for the parties' dispute concerning the City Defendants' invocation of the deliberative process privilege (the "DPP"). (ECF No. 290 at 1–2 (the "Aug. 29 Order"); see ECF No. 291 at 10–11). Pursuant to the Aug. 29 Order, on September 8, 2023, Plaintiffs filed a motion to compel production of the documents the City Defendants had withheld as protected by the DPP

5

(ECF No. 296 (the "DPP Motion")), to which Plaintiffs attached, inter alia, the Document. (ECF No. 296-4).

On September 14, 2023—less than fourteen days after Plaintiffs filed the DPP Motion—the City Defendants notified Plaintiffs in writing that the Document was "inadvertently produced;" that in the DPP Motion, Plaintiffs quoted a section of the Document that was protected by the Privilege; and that the City Defendants "did not intend to waive the [] [P]rivilege." (ECF No. 311-1 at 2 (the "Sept. 14 Letter")). Pursuant to the Clawback Order, the City Defendants demanded the return or destruction of the Document and the cessation of "any inspection, use, or disclosure of the [D]ocument[.]" (Id.) On September 28, 2023, Plaintiffs objected to the clawback request in the Sept. 14 Letter, arguing that: (1) the City Defendants did not mark the Document as "Confidential" pursuant to the Confidentiality Order, so the Document had "been publicly filed for all to review," and the Clawback Order did not apply to non-privileged documents; (2) the City Defendants failed to identify the "section" of the Document they were claiming was protected by the Privilege and therefore their clawback request failed to comply with the Clawback Order; and (3) the Document did not contain any material protected by the Privilege. (ECF No. 311-3 at 2–3).

In their opposition to the DPP Motion dated September 29, 2023, the City Defendants alerted the Court that the Document had been "inadvertently produced notwithstanding that it contains privileged material," and that the parties would meet and confer regarding the City Defendants' clawback request. (ECF No. 298 at 1 n.1). During a discovery conference on November 3, 2023, the parties advised the Court that the Document was "not integral to the

6

resolution of the [DPP] Motion[,]" and, accordingly, the Court did not consider the document in ruling on the DPP Motion. Dorce VIII, 2023 WL 7545345, at *1 n.3. (See ECF No. 305 at 33–35).

At a discovery conference on November 22, 2023, the parties advised the Court that, despite meeting and conferring, they had not resolved the dispute about the Document. (ECF No. 312 at 7–8). In a post-conference order, the Court set a briefing schedule for Plaintiffs' Motion. (ECF No. 308). On December 1, 2023, Plaintiffs filed their Motion, which notes that the City Defendants produced thirteen documents containing the Apr. 12 Email without redaction (the "Unredacted Documents"). (ECF No. 311 at 3). On December 15, 2023, the City Defendants filed their Motion, accompanied by the Affirmation. (ECF Nos. 314; 314-1). The City Defendants assert that they discovered "for the first time" in reviewing Plaintiffs' Motion that they had "inadvertently produced" the Unredacted Documents, which they also sought to claw back. (ECF No. 314 at 5 n.3). The City Defendants also note that they had produced fourteen other documents from which they had redacted the Apr. 12 Email (the "Redacted Documents"). (Id.)

At the Court's request (ECF No. 316), Plaintiffs submitted copies of the Unredacted Documents for the Court's in camera review, and the City Defendants filed copies of the Redacted Documents. (ECF Nos. 318 – 318-14).

### III. DISCUSSION

#### A. Legal Standards

##### 1. The Privilege

The Privilege "is the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. U.S., 449 U.S. 383, 389 (1981). Under federal law, the attorney-client privilege applies only if all the following are met:

7

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 441 (S.D.N.Y. 1995) (quoting United States v. United Shoe Mach. Corp., 89 F. Supp. 357, 358–59 (D. Mass. 1950)). Under New York law, for the privilege to apply, the communication must have been made "for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship." Spectrum Sys. Int'l Corp. v. Chem. Bank, 78 N.Y.2d 371, 377–78 (1991). The communication must also "be primarily or predominantly of a legal character." Id. at 378. In evaluating whether the privilege applies, the "critical inquiry" is "whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client." Id. at 379.

The party invoking the attorney-client privilege bears the burden of demonstrating that the privilege applies. See United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011); In re Grand Jury Proc., 219 F.3d 175, 182 (2d Cir. 2000) ("In re Grand Jury I"); United States v. Adlman, 68 F.3d 1495, 1500 (2d Cir. 1995) ("Adlman I"); Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 470–71 (S.D.N.Y. 1993); Spectrum, 78 N.Y.2d at 377. To meet this burden, the party asserting the attorney-client privilege must show that the communications were "(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." Brennan Ctr. for Just. at N.Y. Univ.

Sch. of L. v. U.S. Dep't of Just., 697 F.3d 184, 207 (2d Cir. 2012).  This burden "is not discharged by mere conclusory or ipse dixit assertions."  In re Grand Jury Subpoenas dated Jan. 4, 1984, 750 F.2d 223, 225 (2d Cir. 1984).  "Any ambiguities as to whether the essential elements have been met are construed against the party asserting the privilege."  Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 295 F.R.D. 28, 38 (E.D.N.Y. 2013), aff'd, 29 F. Supp. 3d 142 (E.D.N.Y. 2014).  As this Court has explained, "the privilege attaches not only to communications by the client to the attorney, but also to advice rendered by the attorney to the client, at least to the extent that such advice may reflect confidential information conveyed by the client."  In re Keurig Green Mt. Single-Serve Coffee Antitrust Litig., No. 14 MD. 2542 (VSB) (SLC), 2020 WL 8465433, at *2 (S.D.N.Y. Oct. 30, 2020) (quoting Bank Brussels, 160 F.R.D. at 441–42).  The mere fact, however, that a document was transmitted between an attorney and a client does not render the document privileged.  See Dep't of Econ. Dev. v. Arthur Anderson & Co. (U.S.A.), 139 F.R.D. 295, 300 (S.D.N.Y. 1991).  Rather, it "must contain confidential communication relating to legal advice."  Id.; see Renner v. Chase Manhattan Bank, No. 98 Civ. 926 (CSH), 2001 WL 1356192, at *1 (S.D.N.Y. Nov. 2, 2001) (rejecting argument that "any reference to any communication between [a client] and one of his attorneys on any document shields that entire document from disclosure, whether or not the document reveals communications made by [the client] to his attorneys in confidence and for the purpose of obtaining legal advice").  Conversely, "the mere fact that a document contains some public or nonconfidential information does not necessarily make the document discoverable."  Astra Aktiebolag v. Andrx Pharm., Inc., 208 F.R.D. 92, 103 (S.D.N.Y. 2002).

"The attorney-client privilege was designed 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the

N/A
N/A

observance of law and [the] administration of justice.'" TVT Recs. v. Island Def Jam Music Grp., 214 F.R.D. 143, 144 (S.D.N.Y. 2003) (quoting Upjohn, 449 U.S. at 389). "Because the privilege 'stands in derogation of the public's right to every [person]'s evidence . . . it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'" Id. (quoting In re Grand Jury I, 219 F.3d at 182); see Brown v. Barnes & Noble, Inc., 474 F. Supp. 3d 637, 648 ("The privilege is narrowly construed because it renders relevant information undiscoverable."); accord Coventry Cap. US LLC v. EEA Life Settlements Inc., No. 17 Civ. 7417 (VM) (SLC), 2021 WL 4312026, at *3 (S.D.N.Y. Sept. 22, 2021).

Finally, "[t]he party invoking the privilege also has the burden to show that the privilege has not been waived." Wultz v. Bank of China Ltd., 304 F.R.D. 384, 391 (S.D.N.Y. 2015). "It is well-established that the attorney-client privilege is waived if the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the communication to a third party or stranger to the attorney-client relationship." Denney v. Jenkens & Gilchrist, 362 F. Supp. 2d 407, 412 (S.D.N.Y. 2004). Thus, the party invoking the attorney-client privilege must also show "'that the communications between client and attorney were made in confidence <u>and have been maintained in confidence</u>.'" Id. (quoting In re Horowitz, 482 F.2d 72, 81–82 (2d Cir. 1973)).

### 2. Clawback Requests

Federal Rule of Evidence 502(b) provides:

> (b) Inadvertent Disclosure. When made in a federal proceeding or to a federal office or agency, the disclosure [of privileged material] does not operate as a waiver in a federal or state proceeding if:
>    (1) the disclosure is inadvertent;
>    (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and

> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b). Where a party asserts that it has inadvertently disclosed privileged material, some courts in this District apply "the multi-factor [Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103 (S.D.N.Y. 1985)] test to determine whether the alleged inadvertent disclosure should result in waiver." BNP Paribas Mortg. Corp. v. Bank of Am., N.A., Nos. 09 Civ. 9783 (RWS), 09 Civ. 9784 (RWS), 2013 WL 2322678, at *5 (S.D.N.Y. May 21, 2013). The Lois Sportswear factors "include (1) 'the reasonableness of the precautions to prevent inadvertent disclosure'; (2) 'the time taken to rectify the error'; (3) 'the scope of discovery'; (4) 'the extent of the disclosure'; and (5) 'an overreaching issue of fairness.'" Id. (quoting Lois Sportswear, 104 F.R.D. at 105).

Where the parties have executed a clawback order, however, "courts have held that . . . waiver is appropriate only if production of the privileged material was 'completely reckless.'" HSH Nordbank AG N.Y. Branch v. Swedlow, 259 F.R.D. 64, 75 (S.D.N.Y. 2009) (quoting U.S. Fid. & Guar. Co. v. Braspetro Oil Servs., Co., Nos. 97 Civ. 6124 (JGK) (THK), 98 Civ. 3099 (JGK) (THK), 2000 WL 744369, at *4 (S.D.N.Y. June 8, 2000); see Sure Fit Home Prods., LLC v. Maytex Mills, Inc., No. 21 Civ. 2169 (LGS) (GWG), 2022 WL 1597000, at *2 (S.D.N.Y. May 20, 2022) (applying "completely reckless" standard where parties had clawback order in place); United States v. Wells Fargo Bank, N.A., No. 12 Civ. 7527 (JMF), 2015 WL 5051679, at *2 (S.D.N.Y. Aug. 26, 2015) (noting that "[c]ourts in this Circuit [] have held that 'inadvert[e]nt disclosure provisions in stipulated protective orders are generally construed to provide heightened protection to producing parties'") (quoting U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc., No. 11 Civ. 3543 (WHP), 2014 WL 2116147, at *4–5 (S.D.N.Y. May 14, 2014)). This heightened standard for finding waiver "fosters" the goal of "encourag[ing] free communication between attorney and

client . . . by assuring the client that its confidences will not be publicly disclosed because of a minor mistake by otherwise competent counsel[, which] are, of course, inevitable in complex litigation involving the production of tens of thousands of documents." Bank Brussels, 160 F.R.D. at 443.  "For a production to be 'completely reckless,' the producing party must have shown no regard for preserving the confidentiality of the privileged documents." Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., No. 96 Civ. 7590 (DAB) (JCF), 1997 WL 736726, at *4 (S.D.N.Y. Nov. 26, 1997).

### B. Application

The Court first addresses whether the Apr. 12 Email is protected by the Privilege, before turning to whether the City Defendants waived the Privilege.

#### 1. The Apr. 12 Email is Protected by the Privilege.

Plaintiffs argue that the Apr. 12 Email contains only "[f]actual statements" that are not protected by the Privilege.  (ECF No. 311 at 3).  The City Defendants respond that the Apr. 12 Email "reflects legal advice that Ms. Rifenburgh provided to HPD in her capacity as 'a professional legal advisor,' as well as a request for legal advice from the Law Department."  (ECF No. 314 at 2 (quoting In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1036 (2d Cir. 1984))).

The Court concludes that the Apr. 12 Email is protected by the Privilege.  First, Ms. Rifenburgh introduces her remarks with the notation that her "comments are on legal aspects of" the HPD document.  (ECF No. 296-4 at 2).  Her introduction signals that what follows are her opinions and legal advice.  See Nat'l Day Laborer Org. Network v. U.S. Customs & Imm. Enf., 811 F. Supp. 2d 713, 750 (S.D.N.Y. 2011) (finding attorney comments on draft document were privileged and noting that "[i]n evaluating the legal sufficiency of the proposed language, the []

attorneys performed an essential legal task"); TVT Records, Inc. v. The Island Def Jam Music Grp., No. 02 Civ. 6644 (VM) (DF), 2003 WL 749801, at *3 (S.D.N.Y. Mar. 5, 2003) (finding that communication that "expresse[d] the attorney's views" was privileged), aff'd in part, rev'd in part on other grounds by 214 F.R.D. 143 (S.D.N.Y. 2003).

Second, Ms. Rifenburgh adds Langloss, an attorney with the City's Law Department. (ECF No. 296-4 at 2). While the mere act of copying an attorney on correspondence does not automatically render a document privileged, see Valassis Commc'ns, Inc. v. News Corp., No. 17 Civ. 7378 (PKC), 2018 WL 4489285, at *3 (S.D.N.Y. Sept. 19, 2018), from context the Court reasonably infers that Ms. Rifenburgh was soliciting Langloss' additional legal advice regarding her comments. See J.L. v. N.Y.C. Dep't of Educ., No. 17 Civ. 7150 (PAC) (KHP), 2023 WL 4421716, at *2 (S.D.N.Y. July 8, 2023) (finding that email to which "counsel was added . . . so that she could respond in her legal capacity and so that she could be prepared to provide legal advice and services in connection with the issue" was privileged); Astra Aktiebolag, 208 F.R.D. at 105 (finding that communications "soliciting legal advice" among attorneys were privileged).

Third, Ms. Rifenburgh's comments throughout the Apr. 12 Email reflect her legal advice to the HPD personnel on the distribution list. For example, in two comments she provides sources of legal authority for HPD's actions; in others, her comments are phrased as "I think" or "I don't think," suggesting that they are her informed legal opinions on the document under discussion. (ECF No. 296-4 at 2–3). See Uni-Sys., LLC v. U.S. Tennis Ass'n, No. 17 Civ. 147 (KAM) (CLP), 2019 WL 11663799, at *6 (E.D.N.Y. Oct. 28, 2019) (finding that statements referencing "attorney's thoughts about this case, describing what they attorneys 'feel,' 'believe,' and 'recommend'" were privileged). Elsewhere, she offers strategic advice about actions the HPD

might take and the potential legal consequences.  (ECF No. 296-4 at 3 (". . . the best way for this to happen is . . . .")).  See Astra Aktiebolag, 208 F.R.D. at 105 (finding that attorneys' "discussions of strategy" were privileged); Int'l Cards Co. v. Mastercard Int'l Inc., No. 13 Civ. 2576 (LGS) (SN), 2014 WL 4357450, at *8 (S.D.N.Y. Aug. 27, 2014) (finding that "communications with counsel soliciting or rendering legal advice and strategy" were privileged).

The cases on which Plaintiffs rely are distinguishable and instead support the conclusion that the Apr. 12 Email contains Ms. Rifenburgh's privileged legal advice, not unprivileged facts.  (ECF No. 311 at 3).  In Urban Box Off. Network, Inc. v. Interfase Mgrs., L.P., the court concluded that communications in which the attorney relayed to client information from a financial consultant and from opposing counsel, but "no substantive information," did "not contain legal advice" and were not privileged.  No. 01 Civ. 8854 (LTS) (THK), 2006 WL 1004472, at *8 (S.D.N.Y. Apr. 17, 2006).  Communications between client representatives, financial advisors, and attorneys seeking "the advice and suggestions of counsel," however, were privileged.  Id. at *9.  Similarly, communications in which an attorney "was simply reporting the positions taken by the negotiating parties on various business issues" in a manner that was "divorced from legal advice" were not privileged in Note Funding Corp v. Bobian Investment Co., No. 93 Civ. 7427 (DAB), 1995 WL 662402, at *4 (S.D.N.Y. Nov. 9, 1995); see also ECDC Env., L.C. v. N.Y. Marine & Gen'l Ins. Co., No. 96 Civ. 6033 (BSJ) (HBP), 1998 WL 614478, at *9–10 (S.D.N.Y. June 4, 1998) (finding that attorney's communications "reporting facts learned by the attorney from a third party" and "without any legal analysis or legal advice" were not privileged).  In Yrityspankki Skop Oyj v. Delta Funding Corp., the court found that the Privilege did not protect an attorney's statements that were "simply reporting what the public record of [a] Florida court discloses, and [were] not

revealing an attorney's legal advice or the substance of confidential disclosures by the client to the attorney," unlike Ms. Rifenburgh's comments throughout the Apr. 12 Email. No. 98 Civ. 7888 (BSJ) (MHD), 1999 WL 1018048, at *3 (S.D.N.Y. Nov. 9, 1999). Accordingly, none of Plaintiffs' cases calls into question the Court's conclusion that the Apr. 12 Email is protected by the Privilege.

### 2. The City Defendants Have Not Waived the Privilege.

Given the Clawback Order, the Court appropriately applies the "completely reckless" standard in assessing whether the City Defendants have waived the Privilege as to the Document. See Wells Fargo, 2015 WL 5051679, at *2–3 (applying "completely reckless" standard where parties had clawback order); accord Parnon Energy, 2014 WL 2116147, at *4. The record does not support a finding that the City Defendants were "completely reckless" as to the Apr. 12 Email.

As an initial matter, Plaintiffs—not the City Defendants—filed the Document as an exhibit to the DPP Motion. (ECF No. 296-4). The Privilege was not Plaintiffs' to waive, and thus, the appearance of the Document on the docket did not effect a waiver, particularly given the City Defendants' clawback request in the Sept. 14 Letter and subsequent requests to seal. (ECF Nos. 305 at 35; 311-1; 314). See Chartwell Therapeutics Licensing LLC v. Citron Pharma LLC, No. 16 Civ. 3181 (MKB) (CLP), 2018 WL 3442542, at *2–3 (E.D.N.Y. July 17, 2018) (finding that disclosure of contents of privileged document "publicly in a court filing" did not constitute waiver). Thus, Plaintiffs' citation to instances where public disclosure by the client or its attorney effected a waiver are inapposite. (ECF No. 311 at 2).

Plaintiffs' contention that the City Defendants "did not take any steps to have the Document sealed from the public docket for nearly eight weeks since they knew it was publicly

filed" on September 8, 2023 is belied by the record. (ECF No. 311 at 2). In the Sept. 14 Letter—within the period required by the Clawback Order—the City Defendants requested to claw back the Document. (ECF No. 311-1). The parties' ensuing negotiations about the Document—also required by the Clawback Order (ECF No. 142 ¶¶ 7–8)—were unsuccessful (ECF No. 312 at 7–8), and at the next conference with the Court, the City Defendants requested to seal the Document. (ECF No. 305 at 35). The Court agreed not to consider the Document in ruling on the DPP Motion (id.), and deferred setting a schedule for the Motions until the November 22, 2023 conference, when it was clear the parties had not resolved the issue. (ECF Nos. 308; 312 at 7–8). In continuing to meet and confer with Plaintiffs—as required by the Court and the Clawback Order—and avoiding motion practice until authorized by the Court, the City Defendants were complying with the Court's Orders and acting reasonably, not recklessly, with respect to the Document. Cf. Sure Fit Home Prods., 2022 WL 1597000, at *2–3 (finding that party acted completely recklessly, waiving privilege, when it "never objected to the use of the documents," never asserted privilege, and produced the documents to their adversaries in two other matters); Parnon Energy, 2014 WL 2116147, at *4 (finding that agency was "reckless" where it did "not appear to have conducted any privilege review" before production).

Similarly, Plaintiffs' Motion was the first indication to the City Defendants that the Apr. 12 Email was incorporated in the Unredacted Documents (ECF No. 311 at 3), which the City Defendants also promptly sought to claw back as privileged. (ECF No. 314 at 5 n.3). As noted above, document production in this action has been ongoing for over a year. (See § II.B, supra). "Given the scale of discovery in this case," and the length of time over which it has occurred, "the Court cannot say that the [City Defendants'] approach was unreasonable, let alone completely

reckless." Wells Fargo, 2015 WL 5051679, at *2 (finding no waiver where the last in a series of clawback requests was not unreasonable); see also Parnon Energy, 2014 WL 2116147, at *4 (noting that where "errors occur despite careful document review procedures, courts have upheld claims of privilege without even the stricter standard for inadvertent waiver provisions in stipulated protective orders").

Finally, the fact that the City Defendants redacted the Apr. 12 Email elsewhere in their production (ECF Nos. 318-1 – 318-14) further supports that they were not completely reckless in seeking to protect the Privilege as to the Apr. 12 Email. As another court in this District has recognized, "[g]iven the scale of document production in contemporary litigation, errors—even those involving multiple documents—are inevitable." Parnon Energy, 2014 WL 2116147, at *4. The fact that the City Defendants' privilege review failed to catch a dozen or so copies of the Apr. 12 Email—as evidenced by the Unredacted Documents—in a voluminous, rolling document production was at most a negligent oversight, and does not reflect the complete recklessness required for a finding of waiver. Cf. id. (finding waiver where agency was "reckless" in "hand[ing] over hundreds of thousands of documents without first scanning them for privileged information"); S.E.C. v. Cassano, 189 F.R.D. 83, 86 (S.D.N.Y. 1999) (finding waiver as to document that "was brought to the attention of the attorney in charge of the case," who "authorized production of [the] document, sight unseen[,]" evidencing "[a] deliberate decision [] to produce it without looking at it").

Accordingly, because the City Defendants followed the procedures in the Clawback Order and the Court's other Orders, they did not acted completely recklessly with respect to the Apr. 12 Email and have not waived the Privilege as to the Document and the Unredacted Documents.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion is DENIED and the City Defendants' Motion is GRANTED.  Plaintiffs shall handle the Document and the Unredacted Documents consistent with paragraph 7 of the Clawback Order.  (ECF No. 142).

The Clerk of the Court is respectfully directed to seal ECF No. 296-4 to be visible only to the case participants, and to close ECF No. 311.

Dated:    New York, New York
          January 12, 2024

SO ORDERED.

_____
**SARAH L. CAVE**
**United States Magistrate Judge**