

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

> The Court construes Plaintiffs' motion to compel as a pre-motion request for a discovery conference pursuant to Local Rule 37.2. Since a telephone conference is currently set in this matter for September 3, 2024, at 2:30 p.m., Plaintiffs' motion at ECF No. 368 is **DENIED as moot** and the issue will be discussed at the telephone conference.
>
> The Clerk of Court is respectfully directed to close ECF No. 368.
>
> SO ORDERED.    August 28, 2024
>
> _Sarah Cave_
> SARAH L. CAVE
> United States Magistrate Judge

August 27, 2024

Gregg L. Weiner
T +1 212 596 9396
gregg.weiner@ropesgray.com

**BY ECF**

Hon. Sarah L. Cave
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:     *Dorce, et al. v. City of New York, et al.*, No. 1:19-cv-02216 (JLR) (SLC)

Dear Judge Cave:

Plaintiffs write pursuant to Your Honor's Individual Practice Rule II.C.2 to request an order compelling Municipal Defendants ("MDs")[1] to make available for a four-hour deposition the former New York City Mayor Bill de Blasio ("de Blasio"). The documents and testimony to date confirm that de Blasio has unique personal knowledge directly related to Plaintiffs' claims that Plaintiffs have been unable to obtain from another source. Specifically, the existing evidence confirms that, in 2017, de Blasio promised stakeholders that the City would avoid any avoidable foreclosures and considered various TPT Program reforms, including stopping the foreclosure process on the then-remaining properties under Round Ten of the Program. These considerations were based on vocal opposition, on which de Blasio was briefed, from stakeholders including the HDFC Coalition. De Blasio, who had promised a moratorium on foreclosures to the HDFC Coalition during a March 2017 meeting on broader HDFC reforms, was briefed that the HDFC Coalition was alarmed that the TPT foreclosure process would take away homeownership and "sweat equity" from residents of cooperatives facing foreclosure. No witness has been able to testify as to why de Blasio decided to continue the seizures, though MD's corporate representative testified that de Blasio had a personal role in "whether or not [HPD] should continue or discontinue the [Round Ten foreclosure] action." *See* Ex. 1 (Excerpted Transcript of July 23, 2024 Deposition of MDs' 30(b)(6) Designee) at 51–53.

---

[1] "Municipal Defendants" and "MDs" refer to defendants the City of New York (the "City"), Louise Carroll, Commissioner of the City's Department of Housing Preservation and Development ("HPD"), and Sherif Soliman, Commissioner of the City's Department of Finance ("DOF").

ROPES & GRAY LLP

Hon. Sarah L. Cave                        - 2 -                      August 27, 2024

## I.      De Blasio Has Personal Knowledge Directly Relevant to Plaintiffs' Claims

As the Court may recall, MDs previously attempted to withhold scores of documents concerning de Blasio based on an asserted "deliberative process privilege."  *See* ECF Nos. 296 (Plaintiffs' Motion to Compel Production), 298 (MDs' Opposition), 304 (Opinion & Order).  In trying to hide this information from Plaintiffs, MDs argued to this Court that the documents reflect de Blasio's "policy decisions about the City's *in rem* foreclosure program." ECF No. 298 at 3.  The Court rejected MDs' deliberative process privilege assertion on the grounds that MDs "fail[ed] to submit a declaration from anyone in a position of authority in de Blasio's Office" and because "the City Defendants' decision-making as part of the TPT Program is at issue in this action." ECF No. 304 at 10–11.   These documents included various drafts of and communications concerning a memorandum (the "Memo") prepared for de Blasio providing him with information concerning then-pending *in rem* foreclosure actions.  In asserting deliberative process privilege over these documents, MDs asserted that a "decision by the Mayor was sought" on TPT Program policy reforms, including in response to the HDFC Coalition's demands that the City stop foreclosing on properties owned by HDFCs.  *Id.*  In rejecting MDs' assertion of deliberative process privilege over the Memo and related documents, this Court noted that the documents did not fall under the privilege because they "***pertain directly to the questions of when, how, and why properties were selected for seizure and foreclosure*** under the TPT Program."  ECF No. 304 at 11 (emphasis added).  The Court further stated that "because the question whether Defendants possessed 'discriminatory motivation' in adopting and implementing the TPT Program is central to at least one of Plaintiffs' claims, the agency deliberations are central to the case'" and that the Memo and related documents "speak to that key question."  *Id.* at 12.

Additionally, multiple deponents thus far have testified that de Blasio had an ultimate decision-making role in the TPT Program, including in deciding whether the program should be discontinued.  For example, in her deposition as the MDs' 30(b)(6) designee, current HPD Deputy Commissioner Kimberly Darga testified that de Blasio decided "whether or not we should continue or discontinue the action" and that he personally "ma[d]e the decision to continue the action."  *See* Ex. 1 at 51–53.  Similarly, current DOF First Deputy Commissioner Jeffrey Shear testified that he understood de Blasio to have personally made "a decision whether to proceed with finishing the enforcement action of round ten."  *See* Ex. 2 (Excerpted Transcript of July 18, 2024 Deposition of Jeffrey Shear) at 238–39.

## II.     Plaintiffs Are Unable to Obtain the Information from Another Source

As the Court previously noted, a central question in this case is whether MDs possessed "'discriminatory motivation' in . . . implementing the TPT Program." ECF No. 304 at 12.  The evidence is clear that de Blasio (i) knew about (at least) significant concerns as to the fairness of which neighborhoods and properties the TPT Program targeted, and (ii) decided to proceed with the TPT seizures anyway.  Apparently, only de Blasio himself knows why he made that decision.  While deposition testimony has corroborated de Blasio's role in deciding the fate of the TPT Program in Round Ten, none of the deponents MDs have provided thus far have had sufficient knowledge to

ROPES & GRAY LLP

Hon. Sarah L. Cave                                    - 3 -                                    August 27, 2024

speak to de Blasio's decision-making process or the intent behind his decision to continue seizures under the TPT Program in the specific neighborhoods at issue. For example, Shear testified that he "[doesn't] know what [de Blasio] was considering in 2017" and stated that he did not want to "speculate . . . what [de Blasio] was or wasn't considering." *See* Ex. 2 at 239. Other senior executives claimed not to recall the Memo at all, even where emails showed their personal involvement. *See e.g.*, Ex. 3 (Excerpted Transcript of June 25, 2024 Deposition of Pamela Parker-Cortijo) at 146–47.

**III.    The Burden for a Short Deposition Is Proportionate to the Needs of the Case**

De Blasio no longer has any responsibility for running the City or any other governmental agency. While a person's status as a *former* official "is a factor," the key question is "whether the information can be obtained through less burdensome means and whether the deposition will interfere with the official's government duties." *See Moriah v. Bank of China Ltd.*, 72 F. Supp. 3d 437, 440 (S.D.N.Y. 2014); *Herrera v. New York City Dep't of Educ.*, No. 1:21-cv-7555, 2022 WL 2719186, *4 (S.D.N.Y. June 15, 2022) (noting that "requiring former Mayor de Blasio to sit for a single deposition would not interfere with any 'greater duties' or otherwise unduly burden him," in part because he is "not a current high-ranking official"). As discussed in Section II, there is no other way to obtain the information about *why* de Blasio made the decision he made (and what he knew when making that decision). Because de Blasio no longer has any "governmental duties," there is no possibility that a deposition could interfere with such non-existent duties. Additionally, Plaintiffs request only a four-hour deposition, which is in line with depositions this Court and other courts in the Second Circuit have previously ordered of both current and former high-ranking government officials. *See, e.g.*, *Herrera*, 2022 WL 2719186, at *4 (granting three-hour deposition of former Mayor de Blasio where plaintiffs challenged allegedly unconstitutional race-based employment policies at City's Department of Education); *United States v. City of New York*, No. 07–cv–2067, 2009 WL 2423307, *3 (E.D.N.Y. Aug. 5, 2009) (granting three-hour deposition of then-Mayor Michael Bloomberg in disparate impact case concerning City's discriminatory hiring of entry-level firefighters).

As this Court has recognized, Plaintiffs' constitutional claims "'seek[] to vindicate the civil rights of hundreds of former property owners who have lost their homes' . . . Thus, their claims 'raise[] serious charges about the fairness and impartiality' of the operations of the City's governmental functions." ECF No. 304 at 12–13. Surely, the minimal burden imposed by requiring a former official with no current governmental role to sit for a four-hour deposition does not outweigh Plaintiffs' need to understand the ultimate decision-making at the heart of these constitutional claims.

Accordingly, the Court should compel MDs to make de Blasio available for a four-hour deposition concerning his decision-making with respect to the TPT Program.

Respectfully submitted,

/s/ Gregg L. Weiner
Gregg L. Weiner
Alexander B. Simkin
Leon Kotlyar
Phillip G. Kraft
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000

Daniel A. Yanofsky (admitted *pro hac vice*)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
(617) 508-4600

*Attorneys for Plaintiffs McConnell Dorce and Sherlivia Thomas-Murchison*

/s/ Matthew L. Berman
Matthew L. Berman
Robert J. Valli, Jr.
Yolande I. Nicholson, Esq. (Of Counsel)
VALLI KANE & VAGNINI LLP
600 Old Country Road
Garden City, NY 11530
(516) 203-7180

*Attorneys for Plaintiffs McConnell Dorce, Cecelia Jones, and Sherlivia Thomas-Murchison*

/s/ Keith H. Wofford
Keith H. Wofford
WHITE & CASE LLP
200 South Biscayne Blvd, Suite 4900
Miami, FL 33131-2352
(305) 371-2700

*Attorneys for Plaintiffs McConnell Dorce and Sherlivia Thomas-Murchison*

cc:    Counsel of Record (via ECF)

Enclosures