UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| McCONNELL DORCE, CECILIA JONES, and SHERLIVIA THOMAS-MURCHINSON, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiff,<br><br>                    -against-<br><br>CITY OF NEW YORK, LOUISE CARROLL (Commissioner of the New York City Department of Housing Preservation and Development), SHERIF SOLIMAN (Commissioner of the New York City Department of Finance), NEIGHBORHOOD RESTORE HOUSING DEVELOPMENT FUND CORP., and BSDC KINGS COVENANT HOUSING DEVELOPMENT FUND COMPANY, INC.,<br><br>                                        Defendants,<br><br>                    -And-<br><br>585 NOSTRAND AVENUE HOUSING DEVELOPMENT FUND CORPORATION and 248 MADISON STREET HOUSING DEVELOPMENT FUND CORPORATION,<br><br>                                        Nominal Defendants. | Civil Action No.<br><br>1:19-cv-02216-JLR-SLC |

## NON-MUNICIPAL DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**TARTER KRINSKY & DROGIN LLP**
1350 Broadway
New York, New York 10018
(212) 216-8029
Attorneys for Neighborhood Restore Housing Development
Fund Corp., and BSDC Kings Covenant Housing
Development Fund Company, Inc.

Of Counsel:    Brian J. Markowitz

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ................................................................................................. 1

ARGUMENT ........................................................................................................ 1

I. Plaintiffs' Proposed Classes are not ascertainable ............................................ 1

II. Each Proposed Class contains a mixture of materially dissimilar persons and entities, each of which would require its own "mini trial," rendering this class action unworkable ............... 3

  A.   Not even the three Named Plaintiffs are "similarly situated" with each other ................ 3

    1.   Dorce (PC10) was an individual fee-simple building owner. ........................................ 3

    2.   Jones (PC10) was an alleged HDFC Shareholder. ..................................................... 4

    3.   Thomas (PC1-9) was an alleged HDFC Shareholder and an alleged heir to an alleged HDFC Shareholder; and her claims are time-barred. ....................................................... 6

  B.   There are at least Six Types of putative class members in both Proposed Classes, and each Type would require its own type of "mini trial." ............................................................ 8

III. Both of Plaintiffs' Proposed Classes fail to meet several Rule 23 requirements. ............... 14

  A.   Numerosity under Rule 23(a)(1). ................................................................... 14

    1.   PC1-9: Due to the statute of limitations, the number of putative class members is zero.

    2.   PC1-9 and PC10: Without the HDFCs, neither Proposed Class is presumptively numerous. ................................................................................................................ 17

  B.   Commonality under Rule 23(a)(2). ................................................................. 18

  C.   Typicality under Rule 23(a)(3). ..................................................................... 20

    1.   PC1-9: Thomas is atypical of the members of PC1-9. ............................................. 21

    2.   PC10: Dorce and Jones are atypical members of PC10. ......................................... 21

  D.   Adequacy under Rule 23(a)(4). ..................................................................... 22

    1.   PC1-9: Thomas is an inadequate class representative. ............................................ 23

    2.   PC10: Dorce and Jones are inadequate class representatives. ................................... 23

    3.   Counsel's failure to retain an expert to provide a workable damages model suggests inadequacy of legal representation. ................................................................................ 23

  E.   Predominance and Superiority under Rule 23(b)(3). ........................................... 24

    1.   Predominance. ........................................................................................... 24

a.    PC1-9: The statue of limitations issue will predominate over all other issues relating to this proposed class action. ........................................................................ 25

b.    PC1-9 and PC10: Forensic Appraisals, Proof Problems, HDFC Agreements and Bylaws.................................................................................................................... 25

c.    PC1-9 and PC-10: Total Absence of a Workable Damages Model....................... 26

2.    Superiority............................................................................................................ 28

CONCLUSION ................................................................................................................. 29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52, 59 (2d Cir.2000) ................................................................................................20

*Barrows v. Becerra*,
    24 F.4th 116 (2d Cir. 2022) ...............................................................................................18

*Brecher v. Republic of Argentina*,
    806 F.3d 22 (2d Cir. 2015) ...................................................................................................2

*Califano v. Yamasaki*,
    442 U.S. 682, 700-701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) .....................................17, 28

*Cohen v. Beneficial Indus. Loan Corp.*,
    337 U.S. 541, 549 (1949) ...................................................................................................22

*Coleman through Bunn v. D.C.*,
    306 F.R.D. 68 (D.D.C. 2015) .............................................................................................18

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ................................................................................................26, 27, 28

*Emilio v. Sprint Spectrum L.P.*,
    No. 11-CV-3041 (JPO), 2017 WL 3208535 (S.D.N.Y. July 27, 2017) .................................21

*Fishon v. Peloton Interactive, Inc.*,
    No. 19-CV-11711 (LJL), 2022 WL 179771 (S.D.N.Y. Jan. 19, 2022) ................................22

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29, 35 (2d Cir. 2009) ...........................................................................................22

*Garcia De Leon v. New York Univ.*,
    No. 21 CIV 05005 (CM), 2022 WL 2237452, at *14 (S.D.N.Y. June 22, 2022) ..................22

*Godson v. Eltman, Eltman, & Cooper, P.C.*,
    328 F.R.D. 35 (W.D.N.Y. 2018) ..........................................................................................2

*Gordon v. Sonar Capital Mgmt. LLC*,
    92 F. Supp. 3d 193, 198 (S.D.N.Y. 2015) ...........................................................................22

*Hardgers-Powell v. Angels in Your Home LLC*,
    330 F.R.D. 89 (W.D.N.Y. 2019) ..........................................................................................1

*Holick v. Cellular Sales of New York, LLC*,
 No. 112CV584NAMDJS, 2019 WL 1877176 (N.D.N.Y. Apr. 26, 2019),
 appeal dismissed and remanded, No. 20-2037, 2022 WL 2277557 (2d Cir.
 June 9, 2022) ............................................................................................................18, 19, 20

*Johnson v. Nextel Commc'ns Inc.*,
 780 F.3d 128 (2d Cir. 2015) ...............................................................................................24, 25

*Kline v. Wolf*,
 702 F.2d 400, 402-03 (2d Cir. 1983) .........................................................................................22

*Knick v. Township of Scott*,
 588 U.S. 180 (2019) ...............................................................................................15, 16, 17

*Melchner v. Town of Carmel*,
 No. 13 CV 8164 VB, 2014 WL 6665755 (S.D.N.Y. Nov. 21, 2014) .......................................15

*Myers v. Hertz Corp.*,
 624 F.3d 537 (2d Cir. 2010) .......................................................................................................24

*Pearl v. City of Long Beach*,
 296 F.3d 76, 79 (2d Cir. 2002) ...................................................................................................15

*Rapcinsky v. Skinnygirl Cocktails, L.L.C.*,
 No. 11 CIV. 6546 JPO, 2013 WL 93636 (S.D.N.Y. Jan. 9, 2013) ...........................................20

*Savino v. Computer Credit, Inc.*,
 164 F.3d 81, 87 (2d Cir. 1998) ...................................................................................................22

*Shayler v. Midtown Investigations, Ltd.*,
 No. 12 CIV. 4685 KBF, 2013 WL 772818 (S.D.N.Y. Feb. 27, 2013) ......................................14

*Stinson v. City of New York*,
 282 F.R.D. 360 (S.D.N.Y. 2012) .........................................................................................14, 17

*Van Wormer v. City of Rensselaer*,
 293 Fed App'x 783, 783 (2d Cir.2008). .....................................................................................15

*Wal-Mart Stores, Inc. v Dukes*,
 564 US 338 (2011) ......................................................................................................................18

*Weissman v. ABC Fin. Servs., Inc.*,
 203 F.R.D. 81 (E.D.N.Y. 2001) .................................................................................................14

*Williamson County Regional Planning Commission v. Hamilton Bank of Johnson
 City*,
 473 U.S. 172 (1985) ...................................................................................................................16

iv

**Statutes**

28 U.S.C. Section 1983 ................................................................................................14, 15, 25

New York Private Housing Finance Law Sections 570 *et seq.* .....................................................10

Rule 23 ................................................................................................................. *passim*

**Other Authorities**

87 N.Y. Jur. 2d § 36 .................................................................................................10

NYC Housing Preservation & Development, HDFC Cooperatives,
     https://www.nyc.gov/site/hpd/services-and-information/hdfc.page (last visited
     January 8, 2025) ...............................................................................................10, 12

090174\1\171035669.v1

## INTRODUCTION

Non-Municipal Defendants, Neighborhood Restore Housing Development Fund Corp. ("Neighborhood Restore") and BSDC Kings Covenant Housing Development Fund Corp. ("BSDC"), by and through their attorneys, Tarter Krinsky & Drogin LLP, respectfully submit this Memorandum in opposition to Plaintiffs' motion, pursuant to Rule 23, to certify two proposed classes (collectively, the "Proposed Classes").  As demonstrated herein, Plaintiffs' Proposed Classes cannot be certified because they fail to meet both the Second Circuit's requirement of ascertainability and the explicit requirements of Rule 23.  Plaintiffs' definitions of both Proposed Classes are fallaciously circular and administratively unfeasible, rendering them unascertainable. The Proposed Class for Rounds 1-9 ("PC1-9") fails for lack of numerosity, as all of the putative class members' claims are barred by Section 1983's three-year statute of limitations. Both PC1-9 and the Proposed Class for Round 10 ("PC10") fail for several additional reasons, including: lack of numerosity, lack of commonality, lack of typicality, inadequate representation, and lack of predominance and superiority. Indeed, the striking differences amongst the three Named Plaintiffs and their respective buildings alone, not to mention the differences amongst all putative class members and their respective buildings, demonstrate that this legal action simply cannot function as a class action; therefore, Plaintiffs' motion to certify PC1-9 and PC10 must be denied.

## ARGUMENT

### I. Plaintiffs' Proposed Classes are not ascertainable.

In the Second Circuit, before evaluating whether a proposed class meets the explicit requirements of Rule 23, a Court must first evaluate the definition of the proposed class. *Hardgers-Powell v. Angels in Your Home LLC*, 330 F.R.D. 89, 101 (W.D.N.Y. 2019). The Second Circuit recognizes an "implied requirement of ascertainability." *Id.* The "touchstone of ascertainability"

is "whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (internal quotation marks omitted). "A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Id.* at 24-25. A Court must be able to identify class members "without having to answer numerous fact-intensive questions." *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 47 (W.D.N.Y. 2018).

Accordingly, it must be noted at the outset that Plaintiffs' class definitions are fatally circular, administratively unfeasible, and, therefore, unascertainable. Plaintiffs define PC1-9 and PC10 as persons "that had Surplus Equity" or "that had value in excess of the tax liens," respectively. Plaintiffs' Brief at p. 1, ECF 392. However, it is currently unknown who, if anyone, had "surplus equity"; and we will not know until the trial of this class action is complete. Because Plaintiffs have put the cart before the horse by including a presumption of "surplus equity" (the ultimate question in this lawsuit) within the very definitions of their Proposed Classes, the Court would have to conduct hundreds of evidentiary hearings, or "mini trials"—not just at the end of this action, to calculate each class member's unique damages—but now, at the very beginning of this action, just to determine who belongs in each Proposed Class in the first place.

Plaintiffs' fallacious definitions of both PC1-9 and PC10 lead to one conclusion: that this proposed class action is not sufficiently "administratively feasible for the court to determine whether a particular individual is a member." *Brecher*, 806 F.3d at 24 (2d Cir. 2015). For this reason, and as further illustrated in Section II below, this action simply cannot function as a class action, and Plaintiffs' motion to certify PC1-9 and PC10 must be denied.

**II. Each Proposed Class contains a mixture of materially dissimilar persons and entities, each of which would require its own "mini trial," rendering this class action unworkable.**

For purposes of this Opposition, the key facts are those relating to the differences between the Named Plaintiffs themselves, the differences amongst all putative class members, and the differences between all of the implicated properties. These differences are not merely incidental or superficial. On the contrary, these differences are fundamental and material to the question of whether this legal action is feasible as a class action. As illustrated below, when one attempts to work out how exactly this class action would function, one sees rather quickly that Plaintiffs' Proposed Classes are so heterogenous and ill-defined as to be, ultimately, unworkable.

**A. Not even the three Named Plaintiffs are "similarly situated" with each other.**

There are three Named Plaintiffs involved in this proposed class action, namely, McConnell Dorce ("Dorce"), Cecilia Jones ("Jones"), and Sherlivia Thomas-Murchison ("Thomas") (collectively, the "Named Plaintiffs"). Two of the Named Plaintiffs purport to represent PC10, namely, Dorce and Jones. The third Named Plaintiff, Thomas, purports to represent PC1-9. Setting aside, for the moment, all other putative class members, the differences amongst the three Named Plaintiffs and their buildings alone demonstrate that not even the Named Plaintiffs are similarly situated enough to belong in the same class action together. Indeed, each Named Plaintiff's unique situation would require the Court's specific attention, necessitating the very sort of "mini trials" that are antithetical to the class action format.

*1. Dorce (PC10) was an individual fee-simple building owner.*

Named Plaintiff Dorce is an individual natural person who was the sole fee-simple owner of 373 Rockaway Parkway, a 3,200 square foot multi-family property in Brooklyn. Amended Complaint at ¶¶ 7-8, ECF 91. Dorce's status as an individual fee-simple building owner is one of

his distinguishing features (as PC10 would be comprised overwhelmingly of some unknown number of Shareholders of twenty-three HDFCs). Plaintiffs' Brief at p. 11, ECF 392. However, Dorce's unique portrait does not end there. His property had an illegal basement, in which he resided, in addition to a host of other Building Code violations. Dorce Dep. 116:24-121:5, Markowitz Dec. at Ex. 1. These features would negatively impact the property's true appraisal value. Further, Dorce alleges that he made installment payments toward the tax debt on his property following the foreclosure. Amended Complaint at ¶¶ 77-78 & 199-202, ECF 91. Such installment payments would be part of Dorce's damages, distinguishing him from all those putative class members who do not claim to have made post-foreclosure installment payments.

Thus, Dorce's unique "mini trial" would involve an examination of his deed and any other relevant, publicly available property records relating to 373 Rockaway Parkway; a forensic appraisal of 373 Rockaway Parkway, taking into account the condition of the property, which affects the market rate price (a factor not taken into account in the appraisals relied upon by Plaintiffs); confirmation that there was no mortgage on 373 Rockaway Parkway; confirmation of the amount of the property tax debt, water/sewer debt, and emergency repair debt; and a determination whether Dorce made installment payments following the foreclosure and, if so, in what amount. All of this factual and legal information would need to be assessed at the outset in order to determine (1) whether, in the first place, Dorce fits Plaintiffs' definition of a PC10 class member and (2) the unique amount of Dorce's damages.

### 2. Jones (PC10) was an alleged HDFC Shareholder.

Named Plaintiff Jones is an individual natural person who was, allegedly, the holder of 250 shares in 585 Nostrand Avenue HDFC, which owned a four-story multi-unit building located at 1197 Dean Street (also known as 585 Nostrand Avenue) in Brooklyn. Amended Complaint at ¶¶

12-13, ECF 91. As alleged in Plaintiffs' Amended Complaint, "Ms. Jones had the right to reside in her apartment unit 2A—which right is appurtenant to her right as a cooperative shareholder." *Id.* Like any alleged HDFC Shareholder, Jones would need to prove her status as a Shareholder by producing an HDFC Shareholder's Stock Certificate with her name on it. However, Jones has failed to produce her Certificate; she produced only a small piece of the lower right corner of a Certificate, which does not show her name or any other identifying information. Jones Dep. 42:14-43:14, Markowitz Dec. at Exs. 2 & 4. This calls Jones's very standing into question. (It is quite possible that Jones lost her right to her shares, and that her Certificate was shredded by the then managing agent of 585 Nostrand Avenue.  It is equally possible the shares were transferred to a third party, and that the shredded Certificate was indicative her shares being cancelled.  Plaintiffs have ignored, and hope this Court will ignore, these pertinent issues.)  Further, 585 Nostrand was plagued by problems with the floors, leaks, and unrepaired fire damage. *Id.* at 58:11-60:13. These issues would negatively impact the property's true appraisal value.

Thus, Jones's unique "mini trial"— to determine (1) whether, in the first place, Jones fits Plaintiffs' definition of a PC10 class member and (2) the unique amount of Jones's damages, if any—would begin with the threshold determination of whether she has a redressable injury and, therefore, standing to sue. If Jones is able to prove her standing by producing a Stock Certificate or other documentary evidence proving her status as a Shareholder as of the *In Rem* Foreclosure Judgment, the next step would be to review the applicable Regulatory Agreement and bylaws for 585 Nostrand Avenue HDFC. (As explained more thoroughly in Sections II(B)(4)-(5) below, the Court would have to review each HDFC's unique Regulatory Agreement and bylaws in order to determine whether any HDFC Shareholder had the right to sell her unit at any given time, or whether such sale was barred for a period of 15, 30, 45, or more years, pending the repayment of

the HDFC's original mortgage, second mortgage, etc). If Jones had a right to sell her unit prior to the foreclosure, the Court would need to review a forensic appraisal of 585 Nostrand Avenue and her unit 2A to determine their market value (as a one-bedroom unit is presumably less valuable than a two- or three-bedroom unit). Finally, the Court would need to determine whether, had Jones sold her unit, there would have been any profit remaining following the deduction of the significant HDFC "flip tax." (Like the HDFC Regulatory Agreements, HDFC flip taxes will be discussed more thoroughly in Sections II(B)(4)-(5) below.)

Clearly, the differences between Jones and Dorce alone show that their claims cannot be adjudicated together in PC10, as the claims, proofs, and damages are unique to each Named Plaintiff, and each would require their own evidentiary hearing, or "mini trial."

### 3. Thomas (PC1-9) was an alleged HDFC Shareholder and an alleged heir to an alleged HDFC Shareholder; and her claims are time-barred.

Named Plaintiff Thomas is the sole Named Plaintiff of PC1-9. As such, and as thoroughly explained in Section III(A)(1) below, Thomas's claims—like the claims of all of PC1-9's putative members—are time-barred by Section 1983's statute of limitations.

Setting aside the threshold issue of the statute of limitations, Thomas was an alleged former Shareholder in 248 Madison Street HDFC, which owned the property located at 248 Madison Street, a four-story multi-unit building in Brooklyn. Amended Complaint at ¶ 17, ECF 91. As stated in Plaintiffs' Amended Complaint, "Thomas-Murchison had the right to reside in her apartment unit 4L as a cooperative shareholder." *Id.* However, like Jones, Thomas's standing is also in question. Initially, Thomas was unable to produce her Stock Certificate, testifying that the Certificate was in her car when it was allegedly towed away. Thomas Dep. 256:22-257:13, Markowitz Dec. at Ex. 3. The Certificate she ultimately produced (Markowitz Dec. at Ex. 5) bears

Stock Certificate Number "5," when there should have been no more than four certificates issued by 248 Madison Street HDFC—a four-unit building—at the time her Certificate was issued.

In addition to her claim relating to unit 4L, Thomas alleges that she "and her family inherited an equitable estate interest in unit 4R which was owned and occupied by her mother before her mother's death." Amended Complaint at ¶ 18, ECF 91. At her deposition, Thomas testified that she should share ownership of the unit 4R Shares with her six siblings. Thomas Dep. 258:14-20, Markowitz Dec. at Ex. 3. However, Thomas's mother died intestate, and the 'shared ownership amongst six siblings' is but an unproven theory. Thus, Thomas has shown no proof that she owns shares in any unit or has inherited any shares at all.

Two additional issues call Thomas's very standing into question. First, UCC-1 documents, publicly available on ACRIS, suggest that other natural persons actually owned both unit 4L and unit 4R in September of 1995, four months after the date of her alleged Stock Certificate. Markowitz Dec. at Exs. 5 & 6. Additionally, Thomas testified that 248 Madison Street HDFC had a functioning Board, that she and her mother were at certain times members of the Board, and that she is presently a member of the Board. Thomas Dep. 57:19, 79:16-81:4, Markowitz Dec. at Ex. 3. If Thomas's testimony about her current Board membership is true, then she is ineligible to bring a Shareholder's derivative suit, as she should have instead brought the suit as a board member of the HDFC itself.[1]

Thus, in terms of the "mini trial" the Court would need to conduct in order to determine (1) whether, in the first place, Thomas fits Plaintiffs' definition of PC1-9 and (2) the unique amount of Thomas's damages, if any—the Court would first need to determine Thomas's standing and

---

[1] Such testimony also directly contradicts the allegations contained in the Amended Complaint, which raises significant Rule 11 issues regarding Thomas's allegations.

090174\1\171035669.v1

eligibility to sue derivatively, if she is a current Board member. Next, as with any alleged HDFC Shareholder, the Court would need to review the HDFC's Regulatory Agreement and bylaws in order to determine whether Thomas had the right to sell her unit. If so, the Court would need to review a forensic appraisal of 248 Madison Street and units 4L and 4R to determine their market value, taking into account the condition of the property. Finally, the Court would need to determine whether there would have been any profit remaining following the deduction of the "flip tax."

As explained in Section II(B) immediately below—like Thomas, Dorce, and Jones—each and every putative class member would require their own unique "mini trial" to both (1) initially determine whether they fit Plaintiffs' definition of a PC1-9 or PC10 class member, i.e., a person with "surplus equity," and (2) ultimately award an appropriate amount of damages.

**B.    There are at least Six Types of putative class members in both Proposed Classes, and each Type would require its own type of "mini trial."**

Moving from the specific Named Plaintiffs to the general Proposed Classes at large, it appears probable that each Proposed Class contains a mixture of at least six distinct types of putative class members (the "Six Types"): **(1)** the individual natural person who owned a property in fee simple (e.g., Dorce); **(2)** a pair or group of natural persons (e.g., married couples, or sets of siblings) and/or non-HDFC entities who co-owned a property as tenants in common, joint tenants, or tenants in the entirety; **(3)** a partnership or non-HDFC business entity that owned a building in fee simple; **(4)** a Housing Development Fund Company ("HDFC"); **(5)** an individual alleged HDFC Shareholder (e.g., Jones and Thomas); and **(6)** alleged former co-owners of HDFC shares (e.g., Thomas). The format of the "mini trial" necessitated by the unique factual and legal situation of each and every putative class member would be dictated, to some extent, by a given putative member's "Type," which Types are described in greater detail immediately below.

090174\1\171035669.v1

**(1)** The First Type of putative class member is the individual natural person who owned one of the subject buildings in fee simple. A Type One "mini trial" would involve an examination of the deed and any other relevant, publicly available property records; a forensic appraisal of the property; a determination whether there was an outstanding mortgage on the property; confirmation of the amount of the property tax debt, water/sewer debt, and emergency repair debt; a determination whether installment payments were made following the foreclosure; along with an assessment of any other idiosyncratic feature(s) that would materially affect the putative member's belonging in the class and/or damages amount.

**(2)** The Second Type of putative class member is one natural person in a pair or group of people (and/or non-HDFC entities) who, one way or another, shared fee-simple ownership of a property (i.e., as joint tenants, tenants in common, tenants in the entirety, etc.). A Type Two "Mini trial" would be like a Type One "mini trial" with the addition of a necessary legal determination by the Court regarding what percentage of surplus equity—if any—each co-owner should be awarded, depending on the type of co-ownership, which may necessitate reviews of wills or other probate documents, or the application of New York's rules of intestate succession.

**(3)** The Third Type of putative class member is the non-HDFC business-entity fee-simple owner. A Type Three "mini trial" would be like a Type One "mini trial" with the additional examination of the applicable partnership or operating agreement, which may (or may not) dictate to whom surplus equity, if any, should be awarded. Further, if such an entity is dissolved or defunct, it is an open question how damages, if any, can be or should be awarded.

**(4)** The Fourth Type of putative class member is the Housing Development Fund Company ("HDFC"). (Note: Per Plaintiffs' framing of the case, Type Four is an alternative to Type 5, in the event the Court determines individual HDFC Shareholders are improper class members.) There

would be twenty-three HDFCs in PC10 and some unknown number more than twenty-nine HDFCs in PC1-9. Plaintiffs' Brief at pp. 11 & 22, ECF 392.

Generally speaking, an HDFC is a very unique variety of incorporated entity. More specifically, an HDFC is a "limited-equity cooperative" organized pursuant to New York Private Housing Finance Law Sections 570 *et seq.* ("HDFC Law"). NYC Housing Preservation & Development, HDFC Cooperatives, https://www.nyc.gov/site/hpd/services-and-information/hdfc.page (last visited January 8, 2025); N.Y. Priv. Hous. Fin. Law §§ 570 *et seq.* The HDFC Law was enacted to provide assistance to nonprofit sponsors of housing projects to participate more effectively in existing assistance programs and to coordinate activities aided under such programs "in order to provide the most effective and economical concentration of public and private efforts to increase the supply of housing for persons of low income." 87 N.Y. Jur. 2d § 36, "Public Housing and Urban Renewal" (paraphrasing the legislative purpose of the HDFC Law, N.Y. Priv. Hous. Fin. Law § 571). (Notably, the 'development of of equity' is nowhere mentioned in the "Statement of legislative findings and purposes." *See id.*) "Today, there are over 1,100 HDFC coops that make up a significant part of the fabric of New York City's affordable housing stock. HDFC coops benefit from reduced real estate taxes in exchange for following income and resale restrictions, among other governance restrictions." NYC Housing Preservation & Development, HDFC Cooperatives, https://www.nyc.gov/site/hpd/services-and-information/hdfc.page (last visited January 8, 2025).

An HDFC may be incorporated as either a business corporation or a not-for-profit corporation. *Id.* at §573. By law, each HDFC must enter into a Regulatory Agreement which must provide that "[t]he property or franchises of the corporation may not be disposed of without the consent of the commissioner or the supervising agency, as the case may be…". *Id.* at 576(e).

Thus—unlike a typical New York co-op—an HDFC cannot transfer ownership of its building without governmental approval. Additionally, each HDFC's unique Regulatory Agreement and/or bylaws may contain additional restrictions on building (and unit) transferability. In other words, an HDFC's right to control and dispose of its building are strictly limited by statute and its unique governing documents. This strict limitation necessarily negatively impacts the market value of an HDFC building.

Thus, an HDFC "mini trial" would bear hardly any resemblance to the first four types of "mini trials" described above. In order to determine an HDFC's (1) class eligibility and (2) damages, if any, the Court would have to examine: the HDFC's deed and any related publicly available documents; the HDFC's Regulatory Agreement and bylaws; any outstanding mortgages; a forensic appraisal of the HDFC's building, including its physical condition; the amount of property tax debt, water/sewer debt, and emergency repair debt owed at the time of foreclosure; and the "flip tax" on the building. Further, if a defunct HDFC were awarded damages, it is an open question how such damages should be divided and to whom they should be sent.

**(5)** The Fifth Type of putative class member, the alleged former HDFC Shareholder, is perhaps even more unique than the HDFC itself when compared against all other Types of putative class members. First, a former HDFC Shareholder originally became a shareholder by paying either $250 or $2,500 (depending on the purchase year) for her shares in the HDFC co-op, no matter the location of the building, the size or quality of the unit in which she was to reside, etc. Notably, an HDFC Shareholder may lose her shares, or her rights as a shareholder, through failure to care for and maintain her unit during the regulatory period set forth in the applicable Regulatory Agreement, or through failure to maintain the unit as a primary residence, as set forth in the Regulatory Agreement and/or bylaws.

Unlike a fee-simple owner of a building, or the owner of a traditional co-op unit, an HDFC Shareholder does not have the right to sell her unit freely on the open market. "HDFC coops are different from market rate coops in that a shareholder's ability to gain a profit from selling a unit is limited to ensure the continued affordability of the unit to future low-income purchasers." NYC Housing Preservation & Development, HDFC Cooperatives, https://www.nyc.gov/site/hpd/services-and-information/hdfc.page (last visited January 8, 2025).

Indeed, an HDFC Shareholder desiring to sell her unit must ensure that (1) the sale price is such that the purchaser/purchasing household would not be spending more than a certain percentage of its income on housing costs (including mortgage, maintenance, and utilities), and (2) the purchaser/purchasing household has a "low income," meaning the income does not exceed a certain percentage of Area Median Income (depending on the year) *Id.* Transferability may be even more strictly limited—or prohibited entirely—by an HDFC's Regulatory Agreement. *Id.* Additionally, a Shareholder's sold unit is generally subject to a "flip tax," meaning any profits are divided between the Shareholder and the HDFC as set forth in the HDFC's bylaws. *Id.* ("A flip tax is very important for the ongoing successful operation of an HDFC coop. The HDFC coop re-invests the flip taxes it collects into capital repairs and other building needs.")

In other words, in stark contrast with a fee-simple building owner, a former HDFC Shareholder never had the "full bundle of sticks" or "full bundle of property rights" with regard to their HDFC unit. Though they may have possessed and enjoyed their unit, and excluded others from it, their rights to control and dispose of the unit were always severely curtailed by statute and/or HDFC governing documents. These limitations necessarily negatively impact the market value of a given HDFC unit.

Thus, the "mini trial" of an HDFC Shareholder would be like a Type 5 HDFC "mini trial" plus several additional determinations. First, the Shareholder must produce a Stock Certificate or other reliable documentary evidence of share ownership. Further, the alleged Shareholder would need to prove that she did not lose her shares at any time as a result of HDFC Regulatory Agreement and/or bylaw violations, property abandonment, etc. The alleged Shareholder would also need to prove that, at the precise time of the foreclosure, she was legally permitted to sell her unit. To make this determination, the Court would need to review the Regulatory Agreement, the bylaws, and the alleged Shareholder's proprietary lease. If the HDFC Shareholder purchased her unit from an original Shareholder, did she have a mortgage? Should a Shareholder's damages, if any, be based on overall building value, or on individual unit value—either of which would require a forensic appraisal? These are open questions which have gone unanswered by Plaintiffs.

**(6)** The Sixth Type of putative class member is a variation of "Type Five" above. As in the case of Named Plaintiff Thomas, some HDFC shares may be allegedly co-owned by pairs or groups of natural persons (and/or non-HDFC entities). A Type 6 "mini trial" would be a more complicated version of a Type 5 "mini trial," likely requiring the Court to consider estate documents and New York's rules of intestate succession.

In conclusion, the purpose of the above descriptions of three Named Plaintiffs and the Six Types of putative class members is to lay the groundwork for the arguments below, all of which lead to the conclusions that Plaintiffs' Proposed Classes do not meet Rule 23 standards, rendering this legal action so unwieldy as to be unworkable as a class action.

### III. Both of Plaintiffs' Proposed Classes fail to meet several Rule 23 requirements.

Generally, in order for a proposed class to merit certification, the proposed class must meet Rule 23's explicit requirements, commonly referred to as: numerosity, commonality, typicality, adequacy, predominance, and superiority. As demonstrated below, Proposed Classes PC1-9 and PC10 fail to meet these requirements and, therefore, the Proposed Classes must not be certified.

### A. Numerosity under Rule 23(a)(1).

Plaintiffs bear the burden of showing that their two Proposed Classes, PC1-9 and PC10, each meet the requirement of numerosity. *Shayler v. Midtown Investigations, Ltd.*, No. 12 CIV. 4685 KBF, 2013 WL 772818, at *5 (S.D.N.Y. Feb. 27, 2013). "For class certification to be appropriate, the proposed class must be so numerous that joinder of all of its individual members would be impracticable." *Stinson v. City of New York*, 282 F.R.D. 360, 368 (S.D.N.Y. 2012) (paraphrasing Rule 23(a)(1)). "Where the plaintiff's assertion of numerosity is pure speculation or bare allegations, the motion for class certification fails." *Weissman v. ABC Fin. Servs., Inc.*, 203 F.R.D. 81, 84 (E.D.N.Y. 2001). Individuals who lack standing or who are ineligible due to a statute of limitations should not be counted. *See Shayler*, 12 CIV. 4685 KBF, 2013 WL 772818, at *7 (S.D.N.Y. Feb. 27, 2013). Numerosity is presumed when a class consists of forty members or more. *Stinson*, 282 FRD at 369 (S.D.N.Y. 2012). The Court "is required to undertake a rigorous analysis of whether there is sufficient and appropriate numerosity." *Shayler*, 12 CIV. 4685 KBF, 2013 WL 772818, at *5 (S.D.N.Y. Feb. 27, 2013).

#### 1. *PC1-9: Due to the statute of limitations, the number of putative class members is zero.*

Plaintiffs propose that PC1-9 should be permitted to bring its claims under 28 U.S.C. Section 1983. Indeed, Plaintiffs' theory of jurisdiction is dependent upon their Section 1983

framework. However, PC1-9's Section 1983 claims are all barred by the applicable three-year statute of limitations:

> The statute of limitations applicable to a Section 1983 claim accruing in New York is three years. *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). "While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues. The claim accrues when the plaintiff knows or has reason to know of the harm." *Van Wormer v. City of Rensselaer*, 293 Fed App'x 783, 783 (2d Cir.2008).

*Melchner v. Town of Carmel*, No. 13 CV 8164 VB, 2014 WL 6665755, at *2 (S.D.N.Y. Nov. 21, 2014). Here, PC1-9's claims accrued when the former property owners knew or had reason to know of the alleged harm.  At minimum, the putative class members knew or should have known when the individual *In Rem* Foreclosure Proceedings were commenced against them.  With respect to the Round 9 properties, the *In Rem* Foreclosure Proceeding commenced in Manhattan on January 4, 2008; in Brooklyn on January 8, 2008; in the Bronx on January 11, 2008; in Queens on January 25, 2008; and in Staten Island on February 1, 2008—approximately twelve years before the instant action commenced, with each preceding round commencing years before that.  Giving Plaintiffs the benefit of the doubt, the Round 9 *In Rem* Foreclosure judgment was entered for the Bronx on September 28, 2010; for Staten Island on December 16, 2010; for Manhattan on February 23, 2011; and for Kings on October 26, 2011—approximately eight years prior to the commencement of this action, with each preceding round having a judgment entered years before the City commenced the Round 9 *In Rem* proceedings.

Plaintiffs seek to convince the Court that PC1-9's claims were equitably tolled until "the disparate impact… became publicly known" and/or when the Supreme Court of the United States issued its Decision in *Knick v. Township of Scott*, 588 U.S. 180 (2019). Plaintiffs' Brief at pp. 10-

15

11, ECF 392. This argument derives from a strained reading of *Knick* and cannot be sustained here. *Knick* involved eminent domain claims. In *Knick*, the Supreme Court overruled *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), in which the Supreme Court had held, "if a [s]tate provides an adequate procedure for seeking just compensation [for an alleged taking], [a] property owner cannot claim a violation of the [Takings] Clause until it has used the procedure and been denied just compensation." *Knick*, 139 S. Ct. at 2169. In other words, prior to *Knick*, eminent domain plaintiffs were required to pursue state procedures for obtaining compensation before bringing a federal takings suit. Indeed, *Knick* explicitly limited its holding to "federal court takings claims that otherwise would have been brought as inverse condemnation suits in state court." *Id.* at 2179. This is not the case in the case at bar.

Furthermore, *Knick*'s inapplicability is evident here, where there was no state procedure to follow to seek just compensation, as is the case in an eminent domain proceeding. No such prohibition for proceeding with federal litigation existed regarding challenging other takings claims, or *in rem* foreclosure proceedings. Unlike in *Knick*, there was never a bar to proceed in federal court to challenge the *In Rem* Foreclosure proceeding on constitutional grounds. The Plaintiffs are not awaiting a "decision" by the government (i.e., the City) to make a final determination that it could challenge. There was no procedure to seek compensation that had to be exhausted.

The reason for this is simple. There was no administrative decision to appeal and no procedure to exhaust before challenging the *In Rem* Judgment. The Court entered a Judgment. That Judgment was final and challengeable when it was entered. As such, prior to *Knick*, there was no prohibition against challenging that *In Rem* Proceeding in Federal Court, as the Plaintiffs

16

did here.  Such claims were ripe years ago, before the expiration of the statute of limitations, and Plaintiffs have given no reason to extend the application of *Knick* to this case.

In short: class certification cannot revive claims that are barred by the statute of limitations. Allowing PC1-9 to proceed as a class would be tantamount to facilitating an end-run around the statute of limitations. Further, there is no need for the Court to certify PC1-9 prior to deciding the statute of limitations question. Therefore, the Court should decline to certify PC1-9 because all such claims are barred by the applicable statute of limitations.

### 2. PC1-9 and PC10: Without the HDFCs, neither Proposed Class is presumptively numerous.

The District Court has discretion to lessen the scope of a proposed class. *Califano v Yamasaki*, 442 US 682, 703 (1979).  In this case, the Court should categorically decline to certify the HDFCs and/or their Shareholders because they are so fundamentally different in nature, and not similarly situated to, fee-simple building owners—as thoroughly illustrated in Sections II(A)&(B) above. In short, the HDFCs/HDFC Shareholders and traditional fee-simple building owners simply do not belong in the same class together. Because the claims of the HDFCs/HDFC Shareholders are tenuous and irredressable in comparison with the claims of at least some fee-simple owners, the HDFCs/HDFC Shareholders should not be certified.

If the Court indeed determines that HDFCs/HDFC Shareholders are not germane to either PC1-9 or PC10, this action ceases to resemble a class action, as neither Proposed Class meets the threshold for presumptive numerosity. As stated above, numerosity is presumed when a class consists of forty members or more. *Stinson*, 282 FRD at 369 (S.D.N.Y. 2012). According to Plaintiffs' calculations, PC1-9 consists of only eighteen non-HDFC properties, presumably owned by approximately eighteen natural persons or entities. PC10 consists of only thirty-three non-HDFC properties, presumably owned by approximately thirty-three natural persons or entities.

090174\1\171035669.v1

Where there is no presumption of numerosity, the Court is free to determine that joinder may in fact be practicable, and that the proposed class fails for lack of numerosity.

In sum, the Court has discretion to reduce the scope of both PC1-9 and PC10 by categorically declining to certify all HDFCs/HDFC Shareholders, leaving only fee-simple owners in the Proposed Classes. Because the remaining fee-simple owners in PC1-9 and PC10 do not meet the threshold for presumptive numerosity, the Court should decline to certify PC1-9 and PC10 altogether.

## B. Commonality under Rule 23(a)(2).

Rule 23(a)(2) obligates the Plaintiffs to demonstrate that "there are questions of law or fact common to the class." However, simply "[r]eciting these questions is not sufficient to obtain class certification." *Wal-Mart Stores, Inc. v Dukes*, 564 US 338, 349 (2011). As clarified by the Supreme Court of the United States in *Dukes*:

> What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* at 350 (quoting Nagareda, *The Preexistence Principle and the Structure of the Class Action*, 103 Colum. L. Rev. 149, 176, n. 110 (2003)); *see also Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022). The questions must be "susceptible to class-wide answers," and their "resolution [cannot] depend upon the particular circumstances of any individual's loss." *Coleman through Bunn v. D.C.*, 306 F.R.D. 68 (D.D.C. 2015). Furthermore, the questions must be answer-able by "common proof." *See Holick v. Cellular Sales of New York, LLC*, No. 112CV584NAMDJS, 2019

WL 1877176, at *1 (N.D.N.Y. Apr. 26, 2019), appeal dismissed and remanded, No. 20-2037, 2022

WL 2277557 (2d Cir. June 9, 2022).

In Plaintiffs' instant Brief, Plaintiffs repeatedly rattle off a litany of common questions and

generally emphasize the sameness of the TPT Program over time. Plaintiffs' Brief at pp. 2-3, 12-

14, 18-20, ECF 392. In doing so, Plaintiffs seek to emphasize the sameness of the TPT Program

in hopes of de-emphasizing the differences in putative class members' injuries. In other words,

Plaintiffs seek to emphasize common *questions* in hopes of de-emphasizing the differences in the

proof required to answer the questions—and the differences in the *answers* themselves.

The *Holick* case is instructive. In *Holick*, an FLSA dispute, plaintiffs argued that Rule

23(a)(2) commonality was satisfied by the "unifying thread" of the "common scheme":

> As to commonality, Plaintiffs first argue that "[t]he
> propriety of [CSNY's] policy [of] classifying Sales
> Representatives as independent contractor is a
> unifying thread among the claims alleged by the
> members of the class." … They further contend that
> "[w]ith regard to the critical inquiry of control, the
> Plaintiffs will demonstrate that all Sales
> Representatives were subject to a common scheme
> of control through their work duties, common
> policies, guidelines and requirements imposed on
> their working conditions[.]" … Plaintiffs add that
> Sales Representatives were all subject to the same
> essential duties, disciplinary policies, opportunity for
> profit and loss, and that Defendants controlled the
> "tools of the trade" necessary to make a sale.

*Holick v. Cellular Sales of New York, LLC*, No. 112CV584NAMDJS, 2019 WL 1877176, at *11

(N.D.N.Y. Apr. 26, 2019), appeal dismissed and remanded, No. 20-2037, 2022 WL 2277557 (2d

Cir. June 9, 2022). In response to this argument, the Court reiterated that, "Critically, what matters

for commonality, is not the raising of common questions—even in droves—but, rather, the

capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.*

Here, Plaintiffs' Rule 23(a)(2) commonality argument is strikingly similar to the *Holick* plaintiffs' argument, which the Court rejected. Plaintiffs state that there was only one TPT Program and that its implementation did not change much over time. Plaintiffs' Brief at pp. 2-3, 12-14, 18-20, ECF 392. This "common scheme" argument is woefully insufficient. It fails to show that the putative class members are in fact "similarly situated," and that their injuries are common throughout the class.

As demonstrated in Sections II(A)&(B) above, common questions would not drive this class action. On the contrary, individualized "mini trials" would be required for each and every putative class member in order to ascertain the classes and, ultimately, award damages in a well reasoned manner. Because the proof and the answers vary so widely amongst the Named Plaintiffs, as well as the putative class members, Rule 23(a)(2) commonality does not lie, and both PC1-9 and PC10 must not be certified.

## C. Typicality under Rule 23(a)(3).

Typicality under Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Rapcinsky v. Skinnygirl Cocktails, L.L.C.*, No. 11 CIV 6546 JPO, 2013 WL 93636, at *4 (S.D.N.Y. Jan. 9, 2013) (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir.2000)). "While the factual background of each named plaintiff need not be identical to that of all class members, the court must be particularly mindful of legal arguments or other unique defenses to which the representative may

be subject and that threaten to become the focus of the litigation." *Emilio v. Sprint Spectrum L.P.*, No. 11-CV-3041 (JPO), 2017 WL 3208535, at *8 (S.D.N.Y. July 27, 2017) (internal quotations omitted).

### 1. *PC1-9: Thomas is atypical of the members of PC1-9.*

PC1-9 cannot be certified because Named Plaintiff Thomas is not typical of the Proposed Class. PC1-9 would presumably contain all Six Types of putative members, including both HDFC Shareholders and fee-simple property owners. As an alleged HDFC Shareholder, Thomas's case is not typical of a fee-simple putative member's case, leaving them virtually unrepresented. Furthermore, Thomas is atypical even as compared against other HDFC Shareholders because she lacks documentary evidence to prove standing, and because—as an HDFC Board member—she is ineligible to bring a derivative suit. Thomas's need to prove, as a threshold matter, her own standing and eligibility to sue will be detrimental to the cases of class members who have no such threshold issues.

### 2. *PC10: Dorce and Jones are atypical members of PC10.*

Like PC1-9, PC10 cannot be certified because Named Plaintiffs Dorce and Jones are atypical of the Proposed Class. As more thoroughly discussed in Section II(A) above, Dorce's situation is unique because his property had significant Building Code violations, and because his damages calculation would include an assessment of his allegedly mis-applied tax installment payments. These issues would distract from the cases of putative members who do not share these issues. Like Thomas, Jones cannot prove standing, and her need to prove, as a threshold matter, her own ownership status will be detrimental to the cases of other putative class members who

have no such proof problems. Additionally, given Jones' lack of standing, HDFC Shareholders in PC10 would be left with no class representative.

### D. Adequacy under Rule 23(a)(4).

Rule 23(a)(4) demands that a named plaintiff must fairly and adequately represent the interests of the proposed class. Fed. R. Civ. P. 23(a)(4). "To do so, Plaintiff must show the court that (1) the proposed class counsel is 'qualified, experienced and able to conduct the litigation;' and (2) Plaintiff, as the proposed class representative, has no interests that are 'antagonistic to the interest of other members of the class.' *Garcia De Leon v. New York Univ.*, No. 21 CIV 05005 (CM), 2022 WL 2237452, at *14 (S.D.N.Y. June 22, 2022) (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)). "The adequacy of the proposed class representative ... directly implicates the due process rights of absent class members who will be bound by the judgment." *Fishon v. Peloton Interactive, Inc.*, No. 19-CV-11711 (LJL), 2022 WL 179771, at *10 (S.D.N.Y. Jan. 19, 2022) (quoting *Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 198 (S.D.N.Y. 2015)). As further explained by the *Fishon* Court:

> "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *AmChem Prods., Inc.*, 521 U.S. at 625. "To judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff." *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (citing *Kline v. Wolf*, 702 F.2d 400, 402–03 (2d Cir. 1983)); cf. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949) (explaining that, when a representative sues on behalf "of a class comprising all who are similarly situated[,] [t]he interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity").

*Fishon*, No. 19-CV-11711 (LJL), 2022 WL 179771, at *10.

### 1. PC1-9: Thomas is an inadequate class representative.

Thomas's atypicality as a class member renders her inadequate. As stated above, as an HDFC shareholder, her case is not representative of the cases of fee-simple owners, nor of owners who are more easily able to show eligibility and standing. Because Thomas's motivation will center around proving her unique case, she will fail to represent and pursue the rights of those putative class members who are not similarly situated with her. As such, she is an inadequate representative of PC1-9.

### 2. PC10: Dorce and Jones are inadequate class representatives.

Dorce's and Jones's atypicality as class members renders them inadequate class representatives. As described above, Dorce does not adequately represent alleged fee-simple owners, and Jones does not adequately represent HDFC Shareholders. Furthermore, the unique features of each of their cases render them deeply problematic as proposed class representatives. Dorce will be keen to prove his damages from alleged post-foreclosure tax payments, which is not a common feature of all class members. Jones will be interested in proving her status as an owner, which status is rendered questionable by her unique proof problems. Because Dorce and Jones are highly motivated to prove their unique cases, they will fail to represent and pursue the rights of those class members not similarly situated. As such, they are inadequate representatives of PC10.

### 3. Counsel's failure to retain an expert to provide a workable damages model suggests inadequacy of legal representation.

As further explained in the 23(b)(3) predominance section below, and as illustrated in Sections I-II above, this case is in dire need of expert assistance, and Plaintiffs have utterly failed to retain an expert. Specifically, Plaintiffs' (1) proposed class definitions and (2) ostensible damages model both appear to be based on an oversimplified arithmetic equation that fails to

23

capture all the considerations required to determine, ultimately, whether a putative class member had any "surplus equity." Frankly, we are surprised and confused by Plaintiffs' counsel's decision here, as the absence of an expert-supported, workable damages model is plainly fatal to this action. Counsel's failure to retain an expert to provide a scrutable, functional damages model suggests inadequacy of legal representation.

### E. Predominance and Superiority under Rule 23(b)(3).

#### 1. Predominance.

Rule 23(b)(3)'s predominance requirement is "more demanding than Rule 23(a)." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015). The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). As further explained by the Second Circuit in *Myers*:

> The requirement's purpose is to ensure that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. Therefore the requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.

*Id.* (internal quotations and citations omitted).

Like the Rule 23(a)(2) commonality inquiry, a court examining Rule 23(b)(3) predominance must assess (1) the elements of the claims and defenses to be litigated and (2) "whether generalized evidence could be offered to prove those elements on a class-wide basis or

whether individualized proof will be needed to establish each class member's entitlement to relief." *Johnson v Nextel Communications Inc.*, 780 F.3d 128, 138 (2d Cir. 2015). "Predominance requires a further inquiry… into whether the common issues can profitably be tried on a classwide basis, or whether they will be overwhelmed by individual issues." *Id.*

### a. *PC1-9: The statue of limitations issue will predominate over all other issues relating to this proposed class action.*

As demonstrated in Section III(A)(1) above, PC1-9's putative claims are all time-barred by Section 1983's statute of limitations. This issue will predominate over the issues Plaintiffs had hoped to litigate vis-à-vis PC1-9.  Contrary to Plaintiffs' suggestion, the statute of limitations issue does not support class certification because there is no need for the Court to certify this class prior to deciding the limitations issue.

### b. *PC1-9 and PC10: Forensic Appraisals, Proof Problems, HDFC Agreements and Bylaws.*

At least three material issues will predominate over those Plaintiffs had intended to litigate with respect to both PC1-9 and PC10. Were either of the Proposed Classes certified, this class action would quickly devolve into an endless series of "mini trials" relating, *inter alia*, to the following:

First, each of the hundreds of distressed properties implicated by this class action would need to be forensically appraised. Each property was unique, and not one of them underwent a true, detailed appraisal, taking into account such issues as property condition, preexisting non-market rate conditions, i.e., below-market rent, inalienability of the property and/or units, and the statutory requirement that the HDFCs remain owned by an HDFC and continue their low-income housing status—rendering it virtually impossible to determine whether an HDFC Shareholder or even a traditional fee-simple owner, like Dorce, had "surplus equity."

Second, many of the HDFC Shareholders will likely have proof problems relating to their very standing, similar to those of Thomas and Jones. Moreover, Plaintiffs have not offered a workable plan for determining who the true HDFC Shareholders are, and this sub-issue will fatally dominate this litigation.

Third, each HDFC had its own unique Regulatory Agreement and bylaws. These would need to be collected and reviewed in order to determine whether an HDFC had a right to sell its building at a given time and/or whether any HDFC Shareholder had a right to sell their unit at a given time.

This list is not exhaustive. These are but three examples of the main sub-issues that will predominate this proposed class action.

### c. *PC1-9 and PC-10: Total Absence of a Workable Damages Model.*

The ultimate question in this case is whether a given putative class member had any surplus equity, was wrongfully denied their surplus equity, and, if so, in what amount. In order to answer this question—essentially, the question of calculable damages—Plaintiffs must provide a workable damages formula or model. Here, Plaintiffs seem to suggest that very simple arithmetic will suffice to calculate a given putative class member's damages. This could not be farther from the truth. Indeed, determining each putative class member's damages would require an individualized "mini trial"—as already thoroughly illustrated herein.

Alternatively, Plaintiff could and arguably should have retained experts to (1) accurately appraise each of the properties in question and (2) develop a sufficiently complicated formula designed to accurately calculate each putative class member's damages (including any surplus equity and superfluous installment payments).

090174\1\171035669.v1

In *Comcast v. Behrend*, the Supreme Court of the United States left no room for doubt: the absence of a workable class-wide damages model means that the proposed class must not be certified. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). The *Comcast* case concerned a potential class of two million Comcast subscribers seeking damages for alleged violations of the federal antitrust laws. Plaintiffs' attorneys retained an expert who designed a regression model comparing actual cable prices with hypothetical prices that would have prevailed but for allegedly anticompetitive activities. However, the model did not isolate damages resulting from any one theory of antitrust impact, and ultimately only one theory of recovery survived (i.e., reduced overbuilder competition). Therefore, the Court held:

> Respondents' class action was improperly certified under Rule 23(b)(3). By refusing to entertain arguments against respondents' damages model that bore on the propriety of class certification, simply because those arguments would also be pertinent to the merits determination, the Court of Appeals ran afoul of our precedents requiring precisely that inquiry. And it is clear that, under the proper standard for evaluating certification, respondents' model falls far short of establishing that damages are capable of measurement on a classwide basis. Without presenting another methodology, respondents cannot show Rule 23(b)(3) predominance: Questions of individual damage calculations will inevitably overwhelm questions common to the class. This case thus turns on the straightforward application of class-certification principles…

*Id.*

Thus, *Comcast* reminds us that (1) the District Court's evaluation of a motion for class certification "will frequently entail overlap with the merits of the plaintiff's underlying claim… because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action" (*id.* at 33-34 [internal quotations

omitted]); and, moreover, (2) in order to obtain class certification, Plaintiffs must provide the Court with a damages model that is capable of calculating damages "classwide."

Shockingly, Plaintiffs have retained no experts whatsoever in this action, and Plaintiffs have offered no genuinely workable damages model. The Court, and the Defendants, are left guessing how exactly the Court should answer the ultimate question in this case, rendering this an unwieldy, unworkable class action. Instead, Plaintiffs suggest that simple arithmetic will suffice to calculate the alleged damages of every proposed class member, from fee-simple building owners to HDFC Shareholders. Nothing could be further from the truth. Plaintiffs' failure to provide a workable, classwide damages model is fatal to their class action suit, and their motion to certify the Proposed Classes must be denied.

### 2. Superiority

It bears repeating that the class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v Behrend*, 569 US 27, 33, (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). For all of the reasons stated above, a class action lawsuit is not the superior method of adjudicating the disputes at issue here. Each putative class member is differently situated from the next, and Plaintiffs have offered no workable damages model by which the Court could offer class-wide redress. All told, this case is not fit for the "exception to the usual rule" that is a class action lawsuit.

090174\1\171035669.v1

**CONCLUSION**

For all of the reasons set forth above, Plaintiffs' motion to certify Proposed Classes PC1-9 and PC10 must be denied.

Dated:  New York, New York
        January 10, 2025

Respectfully submitted,

**TARTER KRINSKY & DROGIN LLP**

*Attorneys for Neighborhood Restore*
*Housing Development Fund Corp., and*
*BSDC Kings Covenant Housing*
*Development Fund Company, Inc.*

By: _____
Brian J. Markowitz, Esq.
K. Greer Kuras, Esq.
1350 Broadway
New York, New York 10018
Phone: (212) 216-8000
Email: bmarkowitz@tarterkrinsky.com
        gkuras@tarterkrinsky.com

29

## WORD COUNT CERTIFICATION

I hereby certify that the foregoing Memorandum of Law ("Memorandum") complies with The Honorable Jennifer L. Rochon's rule limiting such memoranda to 8,750 words. This Memorandum was prepared using Microsoft Word, with 12-point Times New Roman typeface. This Memorandum contains 8,591 words, as calculated by the word-processing system used to prepare the document, exclusive of the caption and signature block.

Dated: New York, New York
      January 10, 2025

                                         Brian J. Markowitz

090174\1\171035669.v1