**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

McCONNELL DORCE, CECELIA JONES, and SHERLIVIA THOMAS-MURCHISON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CITY OF NEW YORK, LOUISE CARROLL (Commissioner of the New York City Department of Housing Preservation and Development), SHERIF SOLIMAN (Commissioner of the New York City Department of Finance), NEIGHBORHOOD RESTORE HOUSING DEVELOPMENT FUND CORP., and BSDC KINGS COVENANT HOUSING DEVELOPMENT FUND COMPANY, INC.,

Defendants,

-and-

585 NOSTRAND AVENUE HOUSING DEVELOPMENT FUND CORPORATION and 248 MADISON STREET HOUSING DEVELOPMENT FUND CORPORATION,

Nominal Defendants.

Civil Action No. 1:19-cv-02216-JLR

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 2

I. THE TPT PROGRAM ........ 2

II. PROCEDURAL HISTORY ........ 3

III. SETTLEMENT TERMS ........ 4

A. Notice and Claims Administration ........ 5

B. Attorneys' Fees and Expenses ........ 7

C. Service Awards ........ 7

LEGAL STANDARD ........ 7

ARGUMENT ........ 8

I. THE SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY APPROVAL ........ 8

A. The Settlement Warrants Preliminary Approval under Rule 23(e) ........ 8

1. *The Settlement Class Named Plaintiff and Class Counsel have adequately represented the Settlement Class.* ........ 8

2. *The Settlement is the product of serious, informed, arm's-length negotiations.* ........ 9

3. *The relief provided for the Class is adequate, and the proposal treats Class Members equitably relative to each other.* ........ 10

(a) The costs, risks, and delay of continued litigation. ........ 10

(b) The process for claims administration. ........ 11

(c) Attorneys' fees and expenses, and class representatives' incentive awards ........ 12

4. *Grinnell Factors* ........ 13

(a) Factor 2 – The reaction of the class to the settlement. ........ 14

(b) Factor 3 – The stage of the proceedings and the amount of discovery completed. ........ 14

(c) Factor 7 – The ability of Defendants to withstand a greater judgment. ........ 15

(d) Factors 8 and 9 – The range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation. ........ 15

II. PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ........ 16

A. The Settlement Class Satisfies Rule 23(a) ....................17
1. Numerosity ....................18
2. Commonality ....................19
3. Typicality ....................20
4. Adequacy ....................21
5. Ascertainability ....................23
B. The Settlement Class satisfies Rule 23(b)(3) ....................23
1. Predominance ....................23
2. Superiority ....................25
III. THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM ....................26
IV. THE COURT SHOULD APPOINT THE CLAIMS ADMINISTRATOR ....................27
V. THE COURT SHOULD APPOINT THE CLASS REPRESENTATIVE ....................27
VI. THE COURT SHOULD APPOINT CLASS COUNSEL ....................27
VII. PROPOSED SCHEDULE OF SETTLEMENT RELATED EVENTS ....................28
CONCLUSION ....................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adon v. City of New York*,
2025 WL 961997 (S.D.N.Y. Mar. 31, 2025) ....................25

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ....................11, 12

*In re Allergan PLC Sec. Litig.*,
2021 WL 4077942 (S.D.N.Y. Sep. 8, 2021) ....................23

*In re Amaranth Nat. Gas Commodities Litig.*,
269 F.R.D. 366 (S.D.N.Y. 2010) ....................26

*Barrows v. Becerra*,
24 F.4th 116 (2d Cir. 2022) ....................19

*Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
2012 WL 2064907 (S.D.N.Y. June 7, 2012) ....................13

*Bernstein v. Cengage Learning, Inc.*,
2023 WL 6211771 (S.D.N.Y. Sep. 25, 2023) ....................25

*Buffington v. Progressive Advanced Ins.*,
342 F.R.D. 66 (S.D.N.Y. 2022) ....................23

*Coleman ex rel. Bunn v. District of Columbia*,
306 F.R.D. 68 (D.D.C. 2015) ....................17, 19, 20

*Chalmers v. City of New York*,
2022 WL 4330119 (S.D.N.Y. Sep. 19, 2022) ....................20, 21, 22, 23

*Charron v. Pinnacle Grp. N.Y. LLC*,
874 F. Supp. 2d 179 (S.D.N.Y. 2012) ....................27

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .................... *passim*

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ....................18

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007) ....................8

*In re Currency Conversion Fee Antitrust Litig.*,
264 F.R.D. 100 (S.D.N.Y. 2010) ....................26

*Dial Corp. v. News Corp.*,
314 F.R.D. 108 (S.D.N.Y. 2015) ....................21

*Dorce v. City of New York*,
2 F.4th 82 (2d Cir. 2021) ....................22

*Dornberger v. Metro. Life Ins.*,
203 F.R.D. 118 (S.D.N.Y. 2001) ....................13

*Floyd v. City of New York*,
283 F.R.D. 153 (S.D.N.Y. 2012) ....................19, 20, 21

*George v. Shamrock Saloon II, LLC*,
2019 WL 8106153 (S.D.N.Y. Aug. 7, 2019) ....................25, 26

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ....................16

*Goidel v. Aetna Life Ins.*,
2024 WL 4441806 (S.D.N.Y. Oct. 8, 2024) ....................22

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
317 F.R.D. 374 (S.D.N.Y. 2016) ....................21

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019)....................8, 9, 14, 15

*Hart v. BHH, LLC*,
2020 WL 5645984 (S.D.N.Y. Sep. 22, 2020)....................13

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
333 F.R.D. 314 (S.D.N.Y. 2019) ....................14

*In re Magnetic Audiotape Antitrust Litig.*,
2001 WL 619305 (S.D.N.Y. June 6, 2001) ....................17

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)....................17

*Martinek v. AmTrust Fin. Servs., Inc.*,
2022 WL 326320 (S.D.N.Y. Feb. 3, 2022)....................23

*Martinenko v. 212 Steakhouses, Inc.*,
2023 WL 2919766 (S.D.N.Y. Apr. 12, 2023)....................18, 19, 25

*In re Metlife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ....................15, 16

*Moses v. N.Y. Times Co.*,
79 F.4th 235 (2d Cir. 2023) ....................12, 13

*In re Nassau Cnty. Strip Search Cases*,
461 F.3d 219 (2d Cir. 2006)....................23

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)....................16

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ....................11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ....................7, 8, 9, 10

*Reyes v. Summit Health Mgmt., LLC*,
2024 WL 472841 (S.D.N.Y. Feb. 6, 2024)....................11

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)....................18, 21

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*,
559 U.S. 393 (2010)....................17

*Sheppard v. Consol. Edison Co. of N.Y., Inc.*,
2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002)....................13

*Soberal-Perez v. Heckler*,
717 F.2d 36 (2d Cir. 1983)....................26

*Stinson v. City of New York*,
282 F.R.D. 360 (S.D.N.Y. 2012) .................... *passim*

*Sykes v. Mel S. Harris & Assocs., LLC*,
2016 WL 3030156 (S.D.N.Y. May 24, 2016) ....................10

*Sykes v. Mel S. Harris & Assocs., LLC*,
285 F.R.D. 279 (S.D.N.Y. 2012) ....................17, 21, 23, 24

*Tsereteli v. Residential Asset Securitization Tr. 2006-A8*,
283 F.R.D. 199 (S.D.N.Y. 2012) ....................20, 21

*Tyler v. Hennepin County*,
598 U.S. 631 (2023).................... *passim*

*Tyler v. Hennepin County*,
No. 62-CV-19-6012, slip op. (Minn. Dist. Ct. July 19, 2024) ....17

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 ....28

**Other Authorities**

Fed. R. Civ. P. 23 .... *passim*

## INTRODUCTION

For over seven years, Plaintiff Cecelia Jones ("Settlement Class Named Plaintiff"), together with the late McConnell Dorce, on behalf of themselves and all members of the proposed settlement class,[1] and their counsel have diligently investigated and litigated this case to vindicate the rights of a putative class of former New York City property owners whose properties were seized and transferred by Municipal Defendants through the City's Third Party Transfer Program ("TPT Program"), regardless of these properties' value in excess of any tax liens (the "Surplus Equity"). After over a year of hard-fought, arm's-length negotiations, the Parties have reached a settlement regarding all Round 10 Settlement Class Members (defined below, also referred to herein as "Class Members") through a fair, adequate, and reasonable Round 10 Settlement Agreement (the "Settlement" or "Settlement Agreement"), which is attached as **Exhibit 1** to the Declaration of Alexander B. Simkin (the "Simkin Decl."), filed herewith.[2] The claims of plaintiffs whose properties were taken in Rounds 1-9 of the TPT Program are still being litigated.

The proposed settlement of $60,000,000.00 (sixty million dollars) provides considerable payment to Round 10 Settlement Class Members in proportion to their losses while eliminating the risks and costs of continued litigation. For a Class that includes many elderly former property owners, the Settlement also eliminates the risk that protracted litigation may outlast some Class

[1] Mr. Dorce passed away in February 2026 prior to the Settlement's execution. Sherlivia Thomas-Murchison remains named plaintiff for the putative Rounds 1-9 class.

[2] Citations to "Ex." refer to the Simkin Declaration's Exhibits. In addition to the Simkin Declaration, Plaintiff is also filing herewith the Declarations of Gregg L. Weiner (the "Weiner Decl."), Matthew L. Berman (the "Berman Decl."), and Keith H. Wofford (the "Wofford Decl."), which detail Class Counsel's qualifications. Plaintiff, to streamline the motion for the Court, also cites back to exhibits previously filed in support of her original motion to certify the Round 10 class and does not re-attach those exhibits to this motion. *See* Dkt. Nos. 400-1 to 400-91. Unless otherwise indicated: emphases are added; internal alterations, citations, and quotation marks are omitted. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement. *See* Simkin Decl., Ex. 1.

Members, as was the case for Mr. Dorce. The Settlement meets all requirements for preliminary approval and dissemination of notice to the Round 10 Settlement Class Members.[3]

Thus, Plaintiff Cecelia Jones, by and through her undersigned counsel, respectfully requests that the Court, pursuant to Federal Rule of Civil Procedure 23, grant preliminary approval of the proposed class action settlement—including the Settlement, its attached exhibits (which include the written notice to Class Members (the "Class Notice"), the Claim Form, the Individual Settlement Award Spreadsheet, and the Reminder Notice, *see* Exs. 1-A, 1-B, 1-C, and 1-D), and the proposed order for preliminary approval of the settlement filed herewith (the "Proposed Order"), so that notice of the Settlement can be provided to the Round 10 Settlement Class. Plaintiff Cecelia Jones further requests that the Court preliminarily certify the Round 10 Settlement Class for settlement purposes. Defendants do not oppose this motion, but do not concede any of Plaintiff's factual assertions or legal arguments made herein, and contend that they complied with the law at all times.

## FACTUAL BACKGROUND

### I. THE TPT PROGRAM

Since 1996, Municipal Defendants have conducted 10 Rounds of the TPT Program, wherein Municipal Defendants seized and transferred hundreds of properties on the basis of alleged unpaid tax liens without returning Surplus Equity to the former property owners. During Round 10, Municipal Defendants transferred title to 64 properties, consisting of approximately 839 units. Of these properties, 30 were multi-unit buildings owned by New York Housing Development Fund Corporations ("HDFCs"). McConnell Dorce owned a property in fee simple

[3] In agreeing to the Settlement, Defendants deny Plaintiff's allegations and contend that they complied with the law at all times.

that was taken during Round 10 and Cecelia Jones is a shareholder of an HDFC property that was taken during Round 10.

## II. PROCEDURAL HISTORY

On March 11, 2019, McConnell Dorce, Cecelia Jones, and Sherlivia Thomas-Murchison filed this putative class action. Plaintiffs and their counsel have since supervised over seven years of litigation, including by sustaining their claims against multiple motions to dismiss and successfully reversing dismissal on appeal to the Second Circuit. They conducted extensive discovery that led to the production of over one million pages of documents and completion of 23 depositions, and briefed motions for class certification and summary judgment as to the Round 10 claims.

On January 24, 2025, with Plaintiffs' class certification and summary judgment motions pending (Dkt. Nos. 391, 393), the Parties notified this Court that they had begun discussions to resolve the litigation through mediation. Simkin Decl. ¶ 8. On April 15, 2025 and June 13, 2025, the Parties attended two in-person mediation sessions. *Id.* ¶ 10. Between such sessions, the Parties repeatedly exchanged correspondence and documents in support of their mediation positions. The mediation was overseen by the Honorable Steven M. Gold of JAMS, an experienced mediator who has previously presided over civil rights settlement conferences involving the City. *Id.*

On June 13, 2025, at the second mediation session, the Parties reached a settlement in principle on the Round 10 claims. *Id.* ¶ 11. Since then, the Parties have engaged in over a year's worth of arm's-length negotiations concerning almost every aspect of the Settlement Agreement, including, the release of claims, notice plan, claims and payment procedures, and selection of a claims administrator. *Id.* ¶ 12. To help resolve the Parties' differences, Magistrate Judge Sarah L. Cave conducted ***11*** settlement conferences with the Parties. *Id.* ¶ 13. With the mediator's and the Court's assistance, the Parties finalized the Settlement Agreement.

## III. SETTLEMENT TERMS

This proposed Settlement resolves the Round 10 claims, which concern properties subject to the in rem foreclosure judgments entered on or about December 14, 2017. (Ex. 1 § I ("Round 10 Properties")). The Settlement Agreement defines the "Round 10 Settlement Class" as "all former owners of Round 10 Properties, including all HDFCs and HDFC Shareholders, which had their property conveyed to Neighborhood Restore through in rem foreclosure proceedings initiated by the City of New York during Round 10 of the TPT program," and the "Round 10 Settlement Class Members" as all Class Members who do not opt out. (Ex. 1 § I).

The Settlement provides for the payment of $60,000,000.00 (the "Round 10 Settlement Amount") into an interest bearing Qualified Settlement Fund to be created by the Claims Administrator (the "QSF"). This amount is reasonable in that it was derived from Defendants' own valuations reflected in HPD's internal 2018 desktop appraisal that were produced in the litigation, while accounting for the risk and expense of protracted litigation.[4]

Under the Settlement, Municipal Defendants will pay the $60,000,000 settlement amount into the interest bearing QSF from which Claims Administrator fees and costs, Service Awards, and Class Counsel fees, expenses and costs are deducted to determine the "Net Settlement Fund." Round 10 Settlement Class Members will be provided notice and the opportunity to submit a Claim Form along with other documentation to support their claim and participate in the Settlement. The Claims Administrator will then evaluate each Claimant's eligibility using a preponderance-of-the-evidence standard.

Distributions to eligible Claimants will occur in several rounds. A First Distribution will

[4] While Defendants maintain that the Round 10 Properties had lower value than what is stated in the HPD desktop appraisals, and Plaintiffs maintain that the Round 10 Properties had higher value than what is stated in the HPD desktop appraisals, the Parties accepted the desktop appraisals as a starting point to reach settlement.

allocate to Claimants with timely approved claims, 30 days after the Effective Date, an initial pro rata share of the Net Settlement Fund. A Second Distribution will pay then-approved Claimants their full pro rata share of the Net Settlement Fund and pay a $25,000 minimum to the "Fixed Distribution Claimants," *i.e.*, Claimants whose Surplus Equity is less than $25,000, and a subsequent True-Up distribution will bring earlier recipients up to their total pro rata share, in each case capped at the Claimant's Individualized Recovery Ceiling,[5] which equals the greater of the Claimant's Surplus Equity plus interest or the $25,000 minimum payment. After all such distributions are made, any remaining funds will be placed into an Undisbursed Funds Pool for a period of two years. During that period, Round 10 Settlement Class Members who did not submit a claim, or whose claims were denied for insufficient documentation, may submit new claims or additional information to recover under the Settlement so long as funds remain available. After that two-year period, any residual funds will revert to the City. That reversion operates only after every Round 10 Settlement Class Member has had the opportunity, through the initial claims process, the subsequent distributions, and the two-year late-claims period, to recover up to their Individualized Recovery Ceiling.

### A. Notice and Claims Administration

The Parties have selected Simpluris, Inc. ("Simpluris") as Claims Administrator. Upon the Settlement's preliminary approval, Municipal Defendants' counsel shall provide the Claims Administrator with copies of documents purporting to identify the initial shareholders and/or residents of the Round 10 HDFCs, along with a "Round 10 Masterfile" spreadsheet containing contact information.

---

[5] The "Individualized Recovery Ceiling" (Ex. 1 § I) is the maximum recovery payable to each Class Member, based upon the Parties' mutually agreed calculation of their Surplus Equity.

Simpluris will then transmit the Court-approved Class Notice and the Claim Form to Class Members individually by first class mail to the current and last known addresses, if known. If additional contact information for Class Members is available, Simpluris will additionally transmit the Court-approved Class Notice by email and/or text message. For any notices returned without a forwarding address, Simpluris will conduct a skip trace and re-mail notices to any updated addresses it identifies.

Furthermore, upon the Settlement's preliminary approval, Simpluris, in consultation with Class Counsel and Defendants' counsel, may use, where appropriate and reasonable under the circumstances, additional forms of notification, publication and dissemination (including, for example, posting flyers in the Round 10 Properties, delivering notices to individual residences within the Round 10 Properties, publication in local newspapers, online listings, and/or announcements at local community events). Simpluris will also establish a website—www.TPTRound10Settlement.com—providing Class Members with settlement-related information, including relevant case documents and contact information for the Claims Administrator and Class Counsel. These overlapping notice methods will maximize the likelihood that all Class Members will receive actual notice of the settlement.

The Class Notice also sets out the nature of the action, the definition of the Round 10 Settlement Class, the Class claims, Class Members' right to enter an appearance through an attorney, the procedure and deadline for requesting exclusion or for objecting, the requested amount of the Service Awards, the requested amount of Class Counsel's attorneys' fees and expenses, and the binding effect of a judgment, as Rule 23(c)(2)(B) requires. *See* Exs. 1-A, 1-D. Simpluris will also review and adjudicate all claims and any disputes that arise from the claim process.

### B. Attorneys' Fees and Expenses

No later than 30 days before the deadline for objections and exclusions Class Counsel may apply to this Court for an award of attorneys' fees and/or costs, not to exceed 30 percent of the Round 10 Settlement Amount. That amount is reasonable given Class Counsel have worked on this case for almost seven years (and counting) without reimbursement or compensation. Defendants have reserved the right to object to any application for attorneys' fees and/or costs on any grounds.

### C. Service Awards

No later than 30 days before the deadline for objections and exclusions, Class Counsel will apply to this Court for service awards of $35,000 for each of the Estate of McConnell Dorce and Cecelia Jones in recognition of the significant services they rendered on behalf of the Class. Both Ms. Jones and the late Mr. Dorce devoted tremendous time to the case: investigating the seizure and transfer of their properties, talking with Class Counsel before the case was filed, answering written discovery, being deposed, reviewing numerous emails from Class Counsel, participating in meetings and conference calls with Class Counsel about the progress of the case, participating in the mediation in various ways, and approving key settlement terms.

## LEGAL STANDARD

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019). Pursuant to Federal Rule of Civil Procedure 23(e), a class action may be settled only with the Court's approval. In evaluating a preliminary approval motion, the Court determines whether it is appropriate to notify class members of the settlement pending final approval of the settlement based upon the parties' showing that the court will likely be able to approve the

proposed settlement under Rule 23(e)(2) and certify the class for settlement purposes. Fed. R. Civ. P. 23(e)(2). The Settlement warrants preliminary approval.

## ARGUMENT

### I. THE SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY APPROVAL

At the preliminary approval stage, the Court must determine whether it will likely be able to approve a proposed settlement pursuant to Rule 23. Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2) sets forth the following factors for the Court to consider in approving a proposed settlement: (1) that the class representatives and class counsel have adequately represented the class; (2) that the proposed settlement was negotiated at arm's length; (3) that the relief provided by the settlement is adequate; and (4) that the proposed settlement treats all class members equitably. *See Payment Card*, 330 F.R.D. at 29. In determining that Rule 23(e) is satisfied, courts in the Second Circuit also evaluate the nine *Grinnell* factors. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). The Settlement easily satisfies the Rule 23 and *Grinnell* requirements.

#### A. The Settlement Warrants Preliminary Approval under Rule 23(e)

##### 1. *The Settlement Class Named Plaintiff and Class Counsel have adequately represented the Settlement Class.*

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007). Cecelia Jones and the Round 10 Settlement Class share a unified interest in receiving compensation for their Surplus Equity. *See Tyler v.*

*Hennepin County*, 598 U.S. 631, 639 (2023) (holding that the government's retention of the surplus value of a taxpayer's property beyond the tax debt effects a taking).

Cecelia Jones, McConnell Dorce—prior to his passing—and their counsel have diligently conducted years of high-stakes constitutional class action litigation, including substantial briefing, discovery, and over a year's worth of arm's-length settlement negotiations. The adequacy of Plaintiff's representation is demonstrated by their achievement of a substantial $60,000,000 settlement, which will provide immediate relief to the Class. As discussed below, proposed Class Counsel is highly qualified and well-positioned to continue conducting the present litigation. *See GSE Bonds*, 414 F. Supp. 3d at 692 ("Co-Lead Counsel have demonstrated that they are qualified, experienced, and able to conduct the litigation, as evidenced in their interactions with the [c]ourt as well as with a mediator.").

2. *The Settlement is the product of serious, informed, arm's-length negotiations.*

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Payment Card*, 330 F.R.D. at 34-35. "Further, a mediator's involvement in settlement negotiations can help demonstrate their fairness." *GSE Bonds*, 414 F. Supp. 3d at 693.

The Settlement was the product of lengthy, contentious, and informed arm's-length negotiations between sophisticated counsel, after extensive discovery, with the assistance of a qualified independent mediator, Hon. Steven Gold, and the assistance of an experienced complex commercial litigator and current Magistrate Judge, Hon. Sarah L. Cave. Before the first mediation, the Parties exchanged over one million pages of documents in discovery and completed 23 depositions. The Parties submitted briefing to Judge Gold on the facts and legal issues. Following a productive but unsuccessful first mediation session, the Parties exchanged several additional

rounds of correspondence and documentation and met for a second mediation, at which time they agreed in principle on the settlement amount. After that agreement, the Parties spent over one year negotiating the Settlement's terms, exchanged numerous drafts of the agreement, and participated in 11 conferences with the Court to finalize the Settlement. Simkin Decl. ¶¶ 12-13. Accordingly, these negotiations are entitled to "a presumption of fairness." *Payment Card*, 330 F.R.D. at 34-35.

3. *The relief provided for the Class is adequate, and the proposal treats Class Members equitably relative to each other.*

In assessing a proposed settlement's adequacy, courts consider (a) the costs, risks, and delay imposed by continued litigation, (b) the parties' proposed method for claims administration, (c) the reasonableness of any fees, costs, and awards to be deducted from the Settlement fund, and (d) any additional agreements related to the Settlement. Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).[6] To assess a settlement's adequacy, courts may also "need to forecast the likely range of possible class-wide recoveries and the likelihood of success in obtaining such results." *Payment Card*, 330 F.R.D. at 36.

(a) The costs, risks, and delay of continued litigation.

The substantial relief provided to Class Members is adequate considering the likely costs of protracted litigation and risks that further litigation could result in a reduced or no recovery. This litigation involves numerous complex issues of law and fact arising under multiple New York State and federal causes of action and, with respect to the Round 10 Settlement Class, discovery dating back almost a decade. *See Sykes v. Mel S. Harris & Assocs., LLC*, 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016) ("[C]lass period dating back over a decade and claims arising under a variety of federal and state statutory provisions" made litigation "particularly complex,

[6] As no additional agreements related to the Settlement exist, the fourth factor is irrelevant here.

expensive, and time consuming—and [the litigation] would have continued to be so if the case had proceeded to trial."). While Plaintiff is confident of the claims' merit, she is mindful that Defendants may have asserted a number of potentially dispositive defenses. Even in the event of a liability determination, the Parties have hotly contested damages, and a fact-intensive inquiry potentially subject to costly expert discovery if Plaintiff's prior summary judgment motion was not fully dispositive. *See* Dkt. No. 418, at 24-26. Accordingly, further litigation would result in substantial risks and costs, requiring "expenditures of both private and public resources," considering Defendants' municipality status. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997). The certainty of a substantial recovery through settlement balanced against the significant costs, risks, and delay of proceeding with this litigation weigh strongly in favor of settlement.

(b) The process for claims administration.

The Parties have devised a fair and objective method for processing claims and distributing relief. "When formulated by competent and experienced class counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014). As discussed above, recovery here follows a straightforward, sequential process. A First Distribution will allocate to Claimants with timely approved claims, 30 days after the Effective Date, an initial pro rata share of the Net Settlement Fund. A Second Distribution will pay then-approved Claimants their full pro rata share of the Net Settlement Fund and pay a $25,000 minimum to the "Fixed Distribution Claimants," and a subsequent True-Up distribution will bring earlier recipients up to their total pro rata share, in each case capped at the Claimant's Individualized Recovery Ceiling, which equals the greater of the Claimant's Surplus Equity plus interest or the $25,000 minimum payment. *See supra* Section III. This process ensures, first, that all Class Members are compensated with a meaningful recovery,

and second, that Class Members are awarded damages in proportion to their losses. *See Reyes v. Summit Health Mgmt., LLC*, 2024 WL 472841, at *4-5 (S.D.N.Y. Feb. 6, 2024) (preliminarily approving a settlement that provided for a minimum distribution and additional proportionate *pro rata* sum). Because the Parties have already calculated each Round 10 Settlement Class Member's Individualized Recovery Ceiling, this process will not substantially delay anyone's recovery and will allow for efficient administration of claims.

Furthermore, this process also treats Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). Every Class Member is subject to the same claims process and the same allocation formula: a minimum payment of $25,000 plus a pro rata share of the Net Settlement Fund, capped at the member's Individualized Recovery Ceiling. The Settlement Class Named Plaintiff participates on the same terms as every other Class Member, apart from the Court-approved Service Award. *See supra* Section III.C.

Accordingly, the claims administration process is reasonable. *See Advanced Battery Techs.*, 298 F.R.D. at 180.

(c) Attorneys' fees and expenses, and class representatives' incentive awards.

The costs to be deducted from the Settlement fund will include attorneys' fees, costs, and expenses, in an amount to be determined, and $35,000 individual service awards for the Settlement Class Named Plaintiff and the Estate of McConnell Dorce. The award of attorneys' fees and expenses will be subject to this Court's approval as part of Plaintiff's motion for final approval of the settlement, ensuring that these deductions will be reasonable in light of the expenses incurred and labor expended in service of the Settlement Class.

As to the service awards, such awards are permitted under Rule 23(e)(2)(D) provided that they are not excessive compared to the service provided by class representatives. *See Moses v.*

*N.Y. Times Co.*, 79 F.4th 235, 245 (2d Cir. 2023). In this circuit, "[a]wards on an individualized basis have generally ranged from $2,500 to $85,000." *Hart v. BHH, LLC*, 2020 WL 5645984, at *5 (S.D.N.Y. Sep. 22, 2020).

The $35,000 service awards to be paid each to the Estate of McConnell Dorce and Ms. Jones is reasonable in light of the $60,000,000 total recovery and Mr. Dorce's and Ms. Jones's substantial effort in investigating and bringing, and for seven years, supervising the present litigation for the benefit of the Class. *See Moses*, 79 F.4th at 245; *see also Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 2012 WL 2064907, at *3 (S.D.N.Y. June 7, 2012) (approving Service Awards of $50,000 to each of the three named class representatives out of $150 million Settlement Fund); *Sheppard v. Consol. Edison Co. of N.Y., Inc.*, 2002 WL 2003206, at *6-8 (E.D.N.Y. Aug. 1, 2002) (approving Service Awards of $119,167 for six named plaintiffs in a race discrimination class action out of $6.75 million Settlement Fund). Ms. Jones and Mr. Dorce (prior to his passing) contributed substantially to discovery by producing documents and appearing for depositions, to the Settlement by approving key terms, and to the action at large by coordinating with Class Counsel as required for pursuit of the litigation. Moreover, the proposed $35,000 incentive awards (each) in an action where other Class Members will receive a minimum $25,000 award from a $60,000,000 fund is proportionately reasonable. *See Dornberger v. Metro. Life Ins.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (approving an incentive award of $10,000 to a class representative associated with $13 million in settlement value).

4. *Grinnell Factors*

In the Second Circuit, courts supplement their analysis under Rule 23(e) by applying the factors from *Grinnell*, 495 F.2d at 463. Those are

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of

> establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id*. As the first, fourth, fifth, and sixth factors are addressed above and support preliminary approval, the remaining factors—two, three, seven, eight, and nine—are addressed below. *See Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 321 (S.D.N.Y. 2019) (weighing both the Rule 23 and *Grinnell* factors on consideration of a motion for preliminary approval).

(a) Factor 2 – The reaction of the class to the settlement.

Consideration of the second *Grinnell* factor is "generally premature at the preliminary approval stage," as Class Members have not yet been notified of the settlement. *GSE Bonds*, 414 F. Supp. 3d at 699 n.1. The Settlement Class Named Plaintiff, however, has reviewed and approved the Round 10 Settlement Agreement. Other Round 10 Settlement Class Members will have the opportunity to opt out or to object once notice is given. As such, the absence of a reaction by the class at this stage should not bar preliminary approval.

(b) Factor 3 – The stage of the proceedings and the amount of discovery completed.

Under the third *Grinnell* factor, courts consider "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *Id.* at 699.

Before mediation, the Parties concluded fact discovery, began expert discovery, and filed motion and opposition papers for summary judgment and class certification. Additionally, the extensive discovery, briefing, and meet-and-confers during mediation gave Plaintiff an additional and thorough understanding of the non-public details of the TPT Program. By defending her

claims, including through appeal, against motions to dismiss and by submitting motions for summary judgment and class certification, Plaintiff has duly demonstrated her understanding of the strengths and weaknesses of the claims. Given the procedural and substantive legal developments across the several years of this litigation, the Parties entered settlement negotiations with ample knowledge of the case and the strengths and weaknesses of their positions. This factor strongly supports preliminary approval.

(c) <u>Factor 7 – The ability of Defendants to withstand a greater judgment</u>.

Whether Defendants can withstand a greater judgment should not alone "undermine the reasonableness of the instant settlement" when weighed among other *Grinnell* factors. *GSE Bonds*, 414 F. Supp. 3d at 696. Accordingly, this factor does not preclude preliminary approval.

(d) <u>Factors 8 and 9 – The range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation</u>.

Under the eighth and ninth *Grinnell* factors, courts assess the range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation. *Id.* This determination is "not susceptible of a mathematical equation" and "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010).

Plaintiffs argued on summary judgment that Defendants would be liable for $88,783,299.26 in damages and $47,475,951.00 in prejudgment interest, which reflects the total Surplus Equity of the properties seized in Round 10, notwithstanding relevant deductions, *see* Dkt. No. 401, at 21, whereas Defendants estimated their maximum liability as $10.4 million, *see* Dkt. No. 418, at 25. The Settlement provides for a total $60,000,000 fund, approximately 44% of

Plaintiff's combined damages-and-interest calculation of $136.3 million, derived from Defendants' internal desktop appraisal, and nearly six times Defendants' $10.4 million estimate.

The Settlement offers Class Members a substantial benefit in light of the risks of fully litigating damages. As discussed above, the Settlement eliminates the risk of ongoing litigation while ensuring that all Class Members who were impacted by Round 10 of the TPT Program will receive at a minimum a material recovery, and in many instances a life-changing one. *Metlife Demutualization*, 689 F. Supp. 2d at 340 (finding the settlement reasonable where it provides "[a] meaningful benefit" when considered against the obstacles to proving plaintiffs' claims with respect to damages in particular). As also discussed in Section I(A)(3)(a), Plaintiff remains confident in the merits of her case, but Defendants submitted cross-motions with case-dispositive defenses to the Court, and both Parties held vastly different positions on the method of calculating damages, factors relevant to the calculation, and the source of authority for calculating factors. *See Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery").

This case presents acute risks, as discussed *supra* Section I.A.3.a, that are relieved by a Settlement. These final *Grinnell* factors thus support preliminary approval.

## II. PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

The Court should also preliminarily certify the Round 10 Settlement Class. In evaluating a motion for preliminary approval, the Court must also determine that it will likely be able to certify the class for purposes of judgment on the proposed settlement. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). Plaintiffs who satisfy the requirements of Rule 23(a) and fit into one of the types

of classes enumerated in Rule 23(b) have a "categorical" right entitling them "to pursue [their] claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 559 U.S. 393, 398 (2010). Plaintiffs "bear[] the burden of showing, by a preponderance of the evidence, that the requirements of Rule 23 are met," *Sykes v. Mel S. Harris & Assocs., LLC*, 285 F.R.D. 279, 286 (S.D.N.Y. 2012), *aff'd*, 780 F.3d 70 (2d Cir. 2015). Pursuant to these standards, the Court is to "adopt a standard of flexibility," *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997), and "should resolve doubts about whether a class should be created in favor of certification," *In re Magnetic Audiotape Antitrust Litig.*, 2001 WL 619305, at *1 (S.D.N.Y. June 6, 2001). A Court's review of a settlement-only class certification motion is lessened with respect to case management issues that would not arise absent a trial.

The Round 10 Settlement Class readily meets the Rule 23 requirements for certification—just like property owners in similar class actions seeking monetary damages against local governments for unconstitutional seizures of their surplus equity in foreclosed properties (including in the seminal *Tyler* case). *See Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 72 (D.D.C. 2015) (certifying a class of homeowners whose properties were seized by the District of Columbia); Order Preliminarily Approving Settlement, *Tyler v. Hennepin County*, No. 62-CV-19-6012, slip op. at 4 (Minn. Dist. Ct. July 19, 2024) (finding prerequisites of state court's analogue to Fed. R. Civ. P. 23(a) and 23(b)(3) satisfied).

**A. The Settlement Class Satisfies Rule 23(a)**

Each of the four prerequisites for class certification under Rule 23(a)—numerosity, commonality, typicality, and adequacy—as well as the Second Circuit's implied requirement of ascertainability—is "not demanding" and is satisfied for the Round 10 Settlement Class. *See, e.g.*, *Stinson v. City of New York*, 282 F.R.D. 360, 368, 373 (S.D.N.Y. 2012) (finding all Rule 23(a) prerequisites satisfied).

1. Numerosity

"For class certification to be appropriate, the proposed class must be so numerous that joinder of all of its individual members would be impracticable." *Id.* at 368. "Numerosity is presumed when a class consists of forty members or more." *Id.* at 369; *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (same). "[E]vidence of exact class size or identity of class members" is "not required." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Rather, "plaintiffs must show some evidence of or reasonably estimate the number of class members." *Id*. "The court may also draw reasonable inference from that evidence and rely on those inferences when making its determination." *Martinenko v. 212 Steakhouses, Inc.*, 2023 WL 2919766, at *5 (S.D.N.Y. Apr. 12, 2023), *adopted by* 2023 WL 3160118 (S.D.N.Y. Apr. 27, 2023).

The Round 10 Settlement Class is presumptively numerous. During Round 10 of the TPT Program, Defendants transferred 64 seized properties to Neighborhood Restore, consisting of approximately 839 dwelling units, and no less than 47 of them had Surplus Equity, as determined by comparing property values from Defendants' contemporaneous desktop appraisals and the tax liens on the properties at the time of seizure. *See* Ex. 1-C. Out of the 64 properties, 30 were owned by HDFCs, *id.*, whose multiple cooperative shareholders, like Jones, Dkt. No. 395, Jones Decl. ¶¶ 3-4, were effectively co-owners of the buildings. Therefore, the Round 10 Settlement Class consists of well over 40 property owners who lost Surplus Equity. *See Martinenko*, 2023 WL 2919766, at *5 ("infer[ring]" numerosity based on supporting facts including purported class list consisting of 24 tipped employees for unpaid wages claims).

Even if numerosity is not presumed, joinder of the individual members of the Class would be impracticable, in part due to Class Members' financial difficulties. *See Robidoux*, 987 F.2d at 935-36. The Round 10 Settlement Class consists primarily of elderly individuals, who were unable to pay property taxes, and "[t]he members of the proposed class[] in this case are, by definition,

uniquely vulnerable." *Coleman*, 306 F.R.D. at 80-81. They have limited resources with which to secure separate counsel and are "unlikely to commence individual suits" to vindicate violation of their constitutional rights against a well-resourced group of Defendants. *Martinenko*, 2023 WL 2919766, at *6. Moreover, a class action will achieve "[j]udicial economy," *id.*, because this case arises from Defendants' seizure of Surplus Equity pursuant to the same program during the same round of transfers.

2. <u>Commonality</u>

"[W]hat matters to class certification" is "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022) (emphasis in original). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Id.*

"[T]here can be no dispute that the [City] has a single [TPT] [P]rogram." *Floyd v. City of New York*, 283 F.R.D. 153, 173 (S.D.N.Y. 2012) (concluding same regarding New York Police Department's "Stop and Frisk" program). The TPT Program is the product of a single legislative enactment, *see* Dkt. No. 400-18, Ex. 18, administered jointly by the same set of governmental entities, pursuant to a uniform process of property selection and transfer, *see* Dkt. No. 400-23, Ex. 23 & Dkt. No. 400-25, Ex. 25. "[T]he process regarding how the Third-Party Transfer Program works has remained consistent across all ten rounds." Dkt. No. 400-17, Ex. 17, at 259:6-11. Such a "centralized and hierarchical" program supports commonality. *Floyd*, 283 F.R.D. at 173.

Moreover, the Class' claims "boil down to a series of common legal questions" that would generate common, class-wide answers. *Coleman*, 306 F.R.D. at 82-83. These questions include whether Defendants seized the properties at issue and retained Surplus Equity without just compensation to prior owners. *Tyler* controls these questions. 598 U.S. at 638-39. Additional

common questions include: whether Defendants' seizures disproportionately impacted elderly Black and Brown property owners; whether Defendants failed to provide property owners with adequate notice in advance of the seizures; and whether the seizures were partially punitive in nature and substantially exceeded the outstanding tax liens that served as the basis for the takings. These questions are similarly "susceptible to class-wide answers because their resolution does not depend upon the particular circumstances of any individual's loss," but upon "the same set of facts and the same course of conduct" by Defendants in operating the TPT Program. *Coleman*, 306 F.R.D. at 83 (certifying a class of property owners whose claims "raise common legal questions regarding whether D.C. law creates a property interest in equity; whether the District's tax-sale statutes effect a taking of that property; whether any such taking was done without public purpose; and whether the plaintiffs were granted just compensation for any such taking"). Here, all Class Members were "aggrieved by a single policy of the defendants, and there is strong commonality of the violation and the harm, this is precisely the type of situation for which the class action device is suited." *Floyd*, 283 F.R.D. at 173.

3. Typicality

"Typicality is satisfied when the lead plaintiffs' claims arise from the same series of events and find support in the same legal theories as the claims of all of the remaining class members." *Chalmers v. City of New York*, 2022 WL 4330119, at *16 (S.D.N.Y. Sep. 19, 2022). "Courts finding typicality generally look . . . at the defendant's actions," *Tsereteli v. Residential Asset Securitization Tr. 2006-A8*, 283 F.R.D. 199, 208 (S.D.N.Y. 2012), such that "the typicality requirement may be satisfied where injuries derive from a unitary course of conduct by a single system," *Floyd*, 283 F.R.D. at 161. "So long as plaintiffs assert . . . that defendants committed the same wrongful acts in the same manner, against all members of the class, they establish the

necessary typicality." *Tsereteli*, 283 F.R.D. at 208. "[M]inor variations in the fact patterns underlying individual claims" will not defeat typicality. *Robidoux*, 987 F.2d at 937.

Just like absent Class Members, Settlement Class Named Plaintiff's claims stem from Defendants' "unitary course of conduct by a single system," *Floyd*, 283 F.R.D. at 161—the TPT Program—by which Defendants seized properties and failed to provide any compensation for the Surplus Equity seized. Settlement Class Named Plaintiff, like the absent Class Members, also asserts additional claims stemming from Defendants' operation of the TPT Program, including the disparate impact of the program on Black and Brown property owners and the inadequacy of notice provided. Indeed, Defendants' conduct is a "unifying thread that warrants class treatment." *Sykes*, 285 F.R.D. at 290 (ruling typicality was satisfied for same reason). Since Settlement Class Named Plaintiff's claims "ar[o]se from [Defendants'] same course of conduct," typicality is satisfied. *Floyd*, 283 F.R.D. at 175 (holding typicality satisfied where claims arose from same centralized program); *see also Stinson*, 282 F.R.D. at 371 (similar).

4. <u>Adequacy</u>

"Adequacy requires courts to inquire whether (1) plaintiffs' interests are antagonistic to the interest of other members of the class, and (2) plaintiffs' attorneys are qualified, experienced and able to conduct the litigation." *Chalmers*, 2022 WL 4330119, at *16. "Where the class representatives are prepared to prosecute fully the action and have no known conflicts with any class member, the adequacy requirements are met." *Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 401 (S.D.N.Y. 2016).

As Settlement Class Named Plaintiff "ha[s] been allegedly injured by the same . . . actions on the part of [d]efendants" to seize Surplus Equity, her "interests are identical to those of the putative class." *Stinson*, 282 F.R.D. at 371 (concluding same); *see also Dial Corp. v. News Corp.*, 314 F.R.D. 108, 114 (S.D.N.Y. 2015) (ruling typicality "is strong evidence that [plaintiffs']

interests are not antagonistic to those of the class"). Settlement Class Named Plaintiff fully shares her Class Members' interests in establishing the unconstitutionality of those seizures and securing monetary damages, a recovery that *Tyler* strongly supports on the Takings Claims. *See* 598 U.S. at 638-39. Further, Settlement Class Named Plaintiff "ha[s] shown [her] commitment to the case by answering interrogatories, responding to requests for production, and sitting for depositions." *Chalmers*, 2022 WL 4330119, at *16; Dkt. No. 395, Jones Decl. ¶¶ 13-15.

Settlement Class Named Plaintiff's counsel also satisfy the second prong of the adequacy test and the considerations of Rule 23(g). Gregg L. Weiner and Alexander B. Simkin of Ropes & Gray LLP, Matthew Berman, Sara Wyn Kane, and Robert J. Valli, Jr. of Valli Kane & Vagnini LLP, Yolande I. Nicholson, P.C., who is serving as Of Counsel to Valli Kane & Vagnini LLP in this action, and Keith H. Wofford of White & Case LLP (together, "Proposed Class Counsel") possess demonstrated competence and experience relevant to vindicating absent Class Members' constitutional rights. These firms have deep benches and substantial experience from routinely litigating complex civil rights, foreclosure and real estate matters, as well as class actions. These lawyers have diligently litigated this matter for more than seven years and in that span have protected and advanced the interests of the Round 10 Settlement Class by securing favorable decisions in the Second Circuit, *see Dorce v. City of New York*, 2 F.4th 82 (2d Cir. 2021), and before this Court, *see* Dkt. No. 166. Counsel have also amassed deep knowledge of Defendants' operation of the TPT Program that is at the heart of this action in initially investigating the merits of Plaintiffs' claims, by reviewing voluminous document discovery and taking and defending 23 depositions following the commencement of the case. *See Goidel v. Aetna Life Ins.*, 2024 WL 4441806, at *4 (S.D.N.Y. Oct. 8, 2024) (crediting plaintiffs' counsel's work on discovery and negotiating a mediated settlement in approving a settlement class).

5. Ascertainability

The "implicit ascertainability requirement" requires "that the proposed class be defined using objective criteria that establish a membership with definite boundaries." *Martinek v. AmTrust Fin. Servs., Inc.*, 2022 WL 326320, at *3 (S.D.N.Y. Feb. 3, 2022). A proposed class "does not necessarily have to be determined prior to class certification" as long as it is ascertainable "at some point in the case." *Sykes*, 285 F.R.D. at 287.

"The class here is ascertainable" based on objective criteria. *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at *5, *7 (S.D.N.Y. Sep. 8, 2021). Class members are those whose properties were seized by Defendants during Round 10 of the TPT Program. Here, the proposed Round 10 Settlement Class can be determined based on publicly available records, including deeds maintained on the City's Automated City Register Information System. Because "[t]he City's records allow the ascertainment of all members of the proposed class," *Chalmers*, 2022 WL 4330119, at *20, and "determining class membership would be simple," *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 229 (2d Cir. 2006), this requirement is satisfied. *See Buffington v. Progressive Advanced Ins.*, 342 F.R.D. 66, 73 (S.D.N.Y. 2022) (finding ascertainability satisfied where putative class members could be identified via defendants' data).

**B. The Settlement Class satisfies Rule 23(b)(3)**

The Class also satisfies Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Stinson*, 282 F.R.D. at 382-84.

1. Predominance

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized

proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Id.* at 382. "[S]atisfaction of the typicality requirement of Rule 23(a)," as here, "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Id.* As in other cases involving defendants' "unitary course of conduct by a single system," "[t]he common issues of law and fact presented in this litigation predominate over any individual ones." *Sykes*, 285 F.R.D. at 287, 293.

The common issues discussed above, *supra* Sections II.A.2-3, that support a finding of commonality and typicality also support a finding of predominance. *See id.* at 293 (assessing predominance in terms of common issues of law and fact as well as typicality of "[e]very potential class member's claim [that] ar[o]se[] out of defendants' uniform, widespread practice"). Whether Defendants (1) unlawfully took putative Class Members' properties (and further, their Surplus Equity), (2) operated the TPT Program in a discriminatory manner, (3) effectuated unconstitutional excessive fines, (4) and operated a deficient notification system in violation of Due Process protections are questions of law and fact that can be settled through generalized proof that is the same for the entire Round 10 Settlement Class. If Settlement Class Named Plaintiff and each of the other Class Members were to bring individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability. Thus, here, the common questions predominate since the common issues constitute a significant part of each of the Class Members' individual cases. Any individual issues would be secondary. *See id.* at 282-83, 293-94 (ruling "defendants' unitary course of conduct purportedly to obtain default judgments in a fraudulent manner" in violation of NY GBL § 349 and other protections "d[id] not depend on individualized considerations" and satisfied predominance).

2. Superiority

"Rule 23(b)(3) requires consideration of several factors to make the superiority determination; namely, (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Martinenko*, 2023 WL 2919766, at *9. These factors all weigh in favor of superiority.

***First***, absent Class Members have minimal financial resources with which to prosecute, much less control, individual actions. Properties transferred under the TPT Program included those whose owners could not afford to pay taxes along with elderly and other disadvantaged individuals. Therefore, "requiring each putative class member to proceed individually would be costly and inefficient," *Martinenko*, 2023 WL 2919766, at *9, and would likely mean "that the constitutional violations [p]laintiffs allege would go unadjudicated," *Stinson*, 282 F.R.D. at 383. Moreover, "because all members of the proposed class would have the same injury" arising from Defendants' unconstitutional seizure of Surplus Equity, "it does not appear that any class member would have a unique reason to individually control the prosecution of his or her case." *George v. Shamrock Saloon II, LLC*, 2019 WL 8106153, at *10 (S.D.N.Y. Aug. 7, 2019), *adopted by* 2020 WL 133621 (S.D.N.Y. Jan. 13, 2020).

***Second***, Settlement Class Named Plaintiff has been litigating the matter for seven years and during that time has substantially advanced interests of her Class. Counsel is aware of a single TPT-related action. *See Adon v. City of New York*, 2025 WL 961997 (S.D.N.Y. Mar. 31, 2025). But the "mere existence of a handful of individual suits does not defeat superiority." *Bernstein v. Cengage Learning, Inc.*, 2023 WL 6211771, at *7 (S.D.N.Y. Sep. 25, 2023). Here, that only one

other action has been filed—compared to the hundreds of owners who lost their properties during Round 10—demonstrates that Class Members have little interest in *individually* prosecuting their own actions.

***Third***, "concentrating this litigation in the Southern District of New York is appropriate because the allegedly wrongful conduct occurred," and Defendants are "located in" this jurisdiction. *George*, 2019 WL 8106153, at *10. The Court has also gained significant familiarity with the Parties, the factual contentions regarding the TPT Program, and the Class' claims, such that it will be a "significant waste of judicial resources" to forgo that expertise in favor of numerous individual actions. *In re Amaranth Nat. Gas Commodities Litig.*, 269 F.R.D. 366, 386 (S.D.N.Y. 2010).

***Fourth***, "managing this litigation as a class action will not pose any substantial difficulties for the [c]ourt," *id.*, because, for example, "the precise amount of damages each class member suffered" is ascertainable and "do[es] not pose a specter preventing certification," *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 117 (S.D.N.Y. 2010).

## III. THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM

Rule 23(e)(1) also requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement and, for classes certified under Rule 23(b)(3), the parties must provide "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B) and (e). Rule 23(c)(2)(B) specifically permits notice by U.S. Mail, electronic mail, or other appropriate means. The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness, *see Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983), and a Rule 23 notice will generally be approved if it describes the terms of the settlement, informs the class about

allocation of attorneys' fees, and specifies the date, time, and place of the final approval hearing, *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012). Here, the proposed notice plan combines multiple methods of individual and summary notice that will provide the best practicable notice available to all Class Members. *See* Fed. R. Civ. P. 23(c)(2). The substance of the notice is likewise clear and informative and will appropriately notify Class Members of all critical information regarding the Settlement. *See Charron,* 874 F. Supp. 2d at 191. The Court should approve the proposed notice program. *See* Ex. 1-A.

## IV. THE COURT SHOULD APPOINT THE CLAIMS ADMINISTRATOR

Settlement Class Named Plaintiff also requests that the Court appoint Simpluris to serve as the Claims Administrator. Simpluris will provide all notices approved by the Court, process Claim Forms, and administer the Settlement. Simpluris is a nationally recognized claims administrator with extensive experience and a strong record of administering cases with complex noticing requirements. *See* Simkin Decl., Ex. 2. Simpluris' fees and expenses, payable from the QSF, will be based primarily on the number of notices mailed and claims processed and, under the Settlement, will not exceed $250,000.

## V. THE COURT SHOULD APPOINT THE CLASS REPRESENTATIVE

Cecelia Jones should be provisionally appointed as class representative. As discussed above, Ms. Jones has diligently supervised this litigation over several years and has repeatedly assisted Counsel, not only on her own behalf but for the benefit of all individuals whose properties were taken through the TPT Program.

## VI. THE COURT SHOULD APPOINT CLASS COUNSEL

Settlement Class Named Plaintiff requests appointment of the Proposed Class Counsel. As discussed above, Proposed Class Counsel has substantial experience prosecuting mass, class, and

collective actions and other complex litigation, including the present Action. *See* Weiner Decl.; Berman Decl.; Wofford Decl.

## VII. PROPOSED SCHEDULE OF SETTLEMENT RELATED EVENTS

Settlement Class Named Plaintiff respectfully proposes the following schedule for Settlement-related events. Defendants will serve the notices required by the Class Action Fairness Act within ten days of this filing, 28 U.S.C. § 1715(b), and the proposed Final Approval Hearing falls more than 90 days thereafter, as § 1715(d) requires. *See* Ex. 1.

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice and Claim Form to potential members of the Class (the "Notice Date") | 30 days from the Claims Administrator's receipt of the materials described in Section IV.E of the Settlement Agreement or 30 days from the Preliminary Approval Date, whichever is later. |
| Deadline for sending the Reminder Notice | 45 days after the Notice Date |
| Deadline for submitting Claim Form | 90 days after the Notice Date |
| Deadline for Class Counsel to file their motion for attorneys' fees and expenses | 60 days after the Notice Date |
| Deadline for filing exclusions or objections | 90 days after the Notice Date |
| Deadline for filing Final Approval Motion | 15 days before the Final Approval Hearing |
| Final Approval Hearing | 187 days after the Preliminary Approval Date |

## CONCLUSION

For the foregoing reasons, the Court should enter an Order: (i) certifying the Round 10 Settlement Class for settlement purposes; (ii) preliminarily approving the proposed Settlement; (iii) approving the form and manner of providing notice of the proposed Settlement to the class; (iv) scheduling a date for the Final Approval Hearing (at the earliest date available on its calendar that is at least 187 days after the Court preliminarily approves the Settlement); (v) appointing

Simpluris, Inc. as the Claims Administrator; (vi) appointing Cecelia Jones as representative of the Round 10 Settlement Class; (vii) appointing Ropes & Gray LLP, Valli Kane & Vagnini LLP along with its of counsel, Yolande I. Nicholson, P.C., and White & Case LLP as Class Counsel; and (viii) granting such other and further relief as the Court may deem fair and proper. Defendants do not oppose the relief requested herein.

Dated: September 11, 2026

Respectfully submitted,

*/s/ Sara Wyn Kane*
Sara Wyn Kane
Matthew L. Berman
Robert J. Valli, Jr.
Yolande I. Nicholson, Esq., Of Counsel
VALLI KANE & VAGNINI LLP
600 Old Country Road
Garden City, NY 11530
(516) 203-7180
skane@vkvlawyers.com
mberman@vkvlawyers.com
rvalli@vkvlawyers.com
attorneynicholson@gmail.com

*Attorneys for Plaintiffs Cecelia Jones and Sherlivia Thomas-Murchison*

*/s/ Keith H. Wofford*
Keith H. Wofford
WHITE & CASE LLP
200 South Biscayne Blvd, Suite 4900
Miami, FL 33131
kwofford@whitecase.com

*Attorney for Plaintiffs Cecelia Jones and Sherlivia Thomas-Murchison*

*/s/ Gregg L. Weiner*
Gregg L. Weiner
Alexander B. Simkin
Mohammed S. Hassan
Bradley McKnight
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000
Gregg.Weiner@ropesgray.com
Alexander.Simkin@ropesgray.com
Mohammed.Hassan@ropesgray.com
Bradley.McKnight@ropesgray.com

J. William Piereson (admitted *pro hac vice*)
Cambrey C. Dent (admitted *pro hac vice*)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000
Will.Piereson@ropesgray.com
Cambrey.Dent@ropesgray.com

*Attorneys for Plaintiffs Cecelia Jones and Sherlivia Thomas-Murchison*

**WORD COUNT CERTIFICATION**

I hereby certify that the foregoing contains 8,748 words excluding the parts of the brief exempted from the word-count limitation by Rochon Indiv. R. Prac. 3(C).

Dated: September 11, 2026

*/s/ Alexander B. Simkin*
Alexander B. Simkin